C. D. Michel – SBN 144258
cmichel@michellawyers.com
Sean A. Brady – SBN 262007
sbrady@michellawyers.com
Konstadinos T. Moros – SBN 306610
kmoros@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| RENO MAY, an individual; ANTHONY MIRANDA, an individual; ERIC HANS, an individual; GARY BRENNAN, an individual; OSCAR A. BARRETTO, JR., an individual; ISABELLE R. BARRETTO, an individual; BARRY BAHRAMI, an individual; PETE STEPHENSON, an individual; ANDREW HARMS, an individual; JOSE FLORES, an individual; DR. SHELDON HOUGH, DDS, an individual; SECOND AMENDMENT FOUNDATION; GUN OWNERS OF AMERICA; GUN OWNERS FOUNDATION; GUN OWNERS OF CALIFORNIA, INC.; LIBERAL GUN OWNERS ASSOCIATION; and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT BONTA, in his official capacity as Attorney General of the State of California, and DOES 1-10, <br><br> Defendants. | CASE NO: <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> **42 U.S.C. §§ 1983 & 1988** |

1

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW COME Plaintiffs Reno May, Anthony Miranda, Eric Hans, Gary Brennan, Tony Barretto, Isabelle R. Barretto, Barry Bahrami, Pete Stephenson, Jose Flores, Andrew Harms, Dr. Sheldon Hough, DDS, The Second Amendment Foundation, Gun Owners of America, Gun Owners Foundation, Gun Owners of California, Inc., the Liberal Gun Owners Association, and the California Rifle & Pistol Association, Incorporated (collectively "Plaintiffs"), and through their respective counsel, bring this action against Defendant Attorney General Robert Bonta, in his official capacity, and make the following allegations.

## INTRODUCTION

1.    In *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111 (2022), the Supreme Court provided its third statement in recent memory affirming that the Second Amendment is not a second-class right and reiterating that firearm regulations must comport with the original meaning of the amendment's text as understood in the Founding era. In doing so, *Bruen* put an end to discretionary firearm licensing regimes and vindicated the natural right to be armed in public for lawful purposes including self-defense. To be sure, the Court restated its dicta from *District of Columbia v. Heller*, 554 U.S. 570 (2008), enumerating a discrete category of so-called "sensitive places" where firearms presumptively may be prohibited survived, but only as a limited exception to the general rule that the Second Amendment secures a broad right to be armed in all but a very few public places. Finally, anticipating sophistry from jurisdictions hostile to the Second Amendment, the Court explained that "there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Bruen*, 142 S. Ct. at 2118-19.

2.    Unsurprisingly, however, the California legislature and governor have treated the central holding in *Bruen* as, at best, policy preferences rather than constitutional requirements.  To that end, California has enacted policies that

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

eviscerate the very right to be armed in public that the plain language of the Second Amendment secures and that our forebears uniformly understood to preexist any constitutional text. California's newly passed Senate Bill 2 (hereafter "SB 2") turns the *Bruen* decision on its head, making nearly every public place in California a "sensitive place" (in name only), and forbidding firearm carry even after someone has undertaken the lengthy and expensive process to be issued a concealed handgun license ("CCW permit") under state law.[1]

3.     California's atextual, ahistorical, novel "sensitive places" include every park and playground, every hospital, all public transportation, any place that sells alcohol (which, in California, includes most gas stations and convenience and grocery stores), all land under the control of the Department of Parks and Recreation or the Department of Fish and Wildlife (with exceptions for hunting), libraries, churches, banks, and many more. California's SB 2 even transforms private businesses into "gun-free zones" by default, imposing an unprecedented affirmative duty on private business owners to post signage to authorize people exercising an enumerated constitutional right to enter the property.

4.     In stark contrast to SB 2, *Bruen* recognized a general right to be armed in public places, subject only to limited, historically valid exceptions. In defiance of that holding, California has made the right a rare exception in most public places. Californians who desire to exercise their enumerated right to carry are essentially

---

[1] Obtaining a CCW permit in California is already a time-consuming process involving a lengthy application, police interview, background check with fingerprints, training course and shooting proficiency exam, psychological exam at the issuing authority's discretion, and sometimes more than $1,000 in fees. Jake Fogelman, *California City to Charge More Than $1,000 for Gun Carry Permits*, The Reload (Mar. 1, 2023, 3:29 PM), <https://thereload.com/california-city-charges-more-than-1000-for-gun-carry-permits/> (as of August 14, 2023). Indeed, while not the subject of this lawsuit, SB 2 also makes the process to get a CCW permit even more difficult than it already is, and those portions of the law will also likely face legal challenges of their own. This case focuses on the pretextual "sensitive places" doctrine of SB 2. Only law-abiding and responsible citizens would willingly subject themselves to California's onerous CCW permit process just to exercise a natural right. SB 2 abuses these citizens' good faith. Criminals will continue to carry illegally.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

limited to some streets and sidewalks (so long as those public places are not adjacent to certain other "sensitive" places), plus a few businesses willing to post a "guns allowed" sign at the risk of potentially losing other customers by doing so.

5.    And, although not relevant to its constitutional infirmity, it is worth noting that SB 2 does nothing to impede criminals who, of course, will not bother to qualify for and obtain CCW permits and who certainly will not follow the law on "sensitive places" when committing other crimes.

6.    SB 2 creates a patchwork quilt of locations where Second Amendment rights may and may not be exercised, thus making exercise of the right so impractical and legally risky in practice that ordinary citizens will be deterred from even attempting to exercise their rights in the first place.

7.    In short, if California must issue ordinary citizens CCW permits after *Bruen*, California has decided that it simply will render these permits effectively useless.

8.    Just as this complaint was being finalized, news broke that New Mexico Governor Michelle Lujan Grisham had issued an emergency order suspending all carry in Albuquerque and Bernalillo County for thirty days, even with a valid CCW permit. The reaction was immediate, with numerous lawsuits filed, and even some famous gun control advocates acknowledging the Order is unconstitutional.[2] The New Mexico Attorney General has refused to defend the

---

[2] Adam Sabes, *New Mexico Republican legislators call for Dem Gov. Grisham's impeachment after gun order: 'She's rogue'*, Fox News (Sep. 9, 2023), < https://www.foxnews.com/politics/new-mexico-republican-legislators-call-dem-gov-grishams-impeachment-gun-order-rogue> (as of September 10, 2023) ("Rep. Ted Lieu, D-Calif., weighed in on Grisham's executive order, saying it's unconstitutional. 'I support gun safety laws. However, this order from the Governor of New Mexico violates the U.S. Constitution. No state in the union can suspend the federal Constitution. There is no such thing as a state public health emergency exception to the U.S. Constitution,' Lieu said on X, formerly known as Twitter. David Hogg, who advocates for stricter gun laws, said on X 'I support gun safety but there is no such thing as a state public health emergency exception to the U.S. Constitution.'").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Order in court.[3] That same consensus is applicable here. SB 2 accomplishes almost the same thing as Governor Grisham's blatantly unconstitutional Order, except on a permanent, statewide basis. By declaring every relevant place off-limits for carry, the only difference between SB 2 and the Bernalillo County Order is that under SB 2, those with CCW permits may still carry on some streets and sidewalks, as well as a few private businesses that post signs allowing legal carry.

9.     Each of the Plaintiffs named in this Complaint, as well as the members and supporters of the associational Plaintiffs, will have their Second Amendment rights to keep *and bear* arms infringed if the challenged provisions of SB 2 are not enjoined.

## PARTIES

### Plaintiffs

10.    The individual Plaintiffs are law-abiding residents of California who (save one) have CCW permits issued under California Penal Code Section 26150.

11.    The associational Plaintiffs are non-profit civil rights organizations representing their members who have CCW permits and who are harmed by SB 2. The associational Plaintiffs have standing independently of the individual Plaintiffs because their members have standing to sue in their own right (and indeed, several individual Plaintiffs are also members of the associational Plaintiffs), the right to carry is germane to their mission to protect Second Amendment rights, and the constitutional questions presented here do not strictly require the participation of only individual members. *Int'l Longshore & Warehouse Union v. Nelson*, 599 F.

---

[3] Nicole Maxwell, *AG says he won't defend Lujan Grisham administration in gun order lawsuits*, NM Political Report (Sep. 12, 2023), < https://nmpolitical report.com/2023/09/12/ag-says-he-wont-defend-lujan-grisham-administration-in-gun-order-lawsuits/> (as of September 12, 2023) ("Though I recognize my statutory obligation as New Mexico's chief legal officer to defend state officials when they are sued in their official capacity, my duty to uphold and defend the constitutional rights of every citizen takes precedence," Torrez's letter stated. "Simply put, I do not believe that the Emergency Order will have any meaningful impact on public safety but, more importantly, I do not believe it passes constitutional muster.").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

App'x 701, 702 (9th Cir. 2015).

12. Plaintiffs bring this action to vindicate their Second Amendment rights to publicly bear arms for self-defense.

13. All individual Plaintiffs are natural persons and citizens of the United States.

14. All individual Plaintiffs are eligible to possess firearms under state and federal law and currently own at least one firearm. All individual Plaintiffs also have valid CCW permits (save for Plaintiff Flores, who has a CCW application pending, and who joins this lawsuit with a First Amendment claim as a business owner). Each desire to carry a firearm in public just as they did prior to SB 2, especially considering the rising crime plaguing California.[4]

15. Plaintiff Reno May is a resident of Sonoma County, California and a law-abiding citizen of the United States. Mr. May has a CCW permit issued pursuant to California Penal Code Section 26150 by the Sonoma County Sheriff's Department. Prior to SB 2, Mr. May carried a handgun daily, except when he visited one of the very few places where that carry was prohibited, such as schools or courthouses. SB 2 harms Mr. May in many ways, including but not limited to:

 a) Mr. May is a regular customer at a gun store called Sportsman's Arms, and he normally carries when he visits that business establishment. Sportsman's Arms, however, shares a parking lot with several other businesses, including an establishment that serves alcohol. Because SB 2 forbids carrying arms even in the parking lots of establishments that serve liquor, Mr. May cannot carry his sidearm while patronizing Sportsman's Arms.

---

[4] Will Shuck, *Amid pandemic, California murder rate shows shocking rise*, Capitol Weekly (Dec. 8, 2021), <https://capitolweekly.net/amid-pandemic-california-murder-rate-shows-shocking-rise/> (as of June 7, 2023) ("Preliminary numbers from California's biggest cities suggest that 2020's stunning 30-percent increase in the statewide murder rate – the largest since 1960 – has continued to rise this year....").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

b) Furthermore, while Sportsman's Arms may choose to put up a sign allowing its customers to carry arms in the establishment, most businesses are unlikely to do so, and Mr. May will be barred by the State from carrying while he engages in commerce if he also chooses to exercise his right of self-defense in public.

c) Under SB 2, Mr. May cannot carry arms when he fills up his car with gas, because every gas station that he patronizes also sells lottery tickets.[5] If a business sells any out-of-state lottery tickets (i.e., not the California State Lottery), arms bearing is forbidden within that business and its parking lot.

d) Mr. May also cannot exercise his right to public carry in the Santa Rosa Plaza, because the mall hosts an "athletic facility" which is considered a "sensitive place" under SB 2. He thus cannot carry arms in the mall, in its parking lot, or on any of the adjacent sidewalks.

e) Mr. May frequently visits the city of San Francisco and the greater Bay Area. When he does, he exercises his right to carrying while using the Bay Area Rapid Transit system ("BART"). But for SB 2 and its prohibition against carrying on public transportation, Mr. May would continue carrying a firearm for personal protection while using BART, as he would on all the other public transportation he currently uses.

f) While conducting his due diligence research to comply with the post-*Bruen* changes to California law,[6] Mr. May discovered that there is not a

---

[5] It is important to note that while SB 2 allows private businesses to post signs affirmatively allowing carry, such signs do not matter if the business serves alcohol or sells lottery tickets (besides the California lottery). Those are separate prohibitions under SB 2.

[6] Prior to this lawsuit, Mr. May released a video on YouTube in which he described some of the places where he could no longer carry, despite having his CCW permit. <https://youtu.be/ZFW5zU1oEEl> (as of June 8, 2023). While the video was about SB 918, it applies just as much to SB 2, as the list of "sensitive places" is identical.

7

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

single location he regularly visits, besides some sidewalks, where he could actually carry a firearm under SB 2. From his bank to his favorite restaurants, to his gym, everything is now off-limits. His right to carry a firearm for personal protection will be effectively eliminated once SB 2 takes effect, in spite of his record of safe and responsible carry and his valid CCW permit.

16.     Plaintiff Anthony Miranda is a resident of Kings County, California and a law-abiding citizen of the United States. Mr. Miranda has a CCW permit issued pursuant to California Penal Code Section 26150 by the Kings County Sheriff's Department. The infringements on Mr. Miranda's Second Amendment rights caused by SB 2 include but are not limited to:

a) Prior to SB 2, Mr. Miranda carried daily, except when he intended to visit one of the very few places where carry was prohibited, such as schools or courthouses. SB 2 changes that status quo and now Mr. Miranda practically cannot carry arms in public once the law takes effect.

b) For example, most of the restaurants Mr. Miranda frequents serve alcohol, so he is barred by SB 2 from carrying within those establishments even if he is not consuming alcohol. He patronizes Chili's, Applebee's, Buffalo Wild Wings, and other chains of that nature. He also likes to visit local establishments that serve alcohol such as Figaro's and El Tarasco, both in Hanford, and Sal's in Selma.

c) Mr. Miranda does a lot of his shopping in the Hanford Mall. Mr. Miranda will no longer be able to carry there because some of the businesses inside of it serve alcohol, so he cannot even park his car on the premises. And even if the mall had no businesses that served alcohol, it shares a parking lot with restaurants that serve alcohol, so carry is prohibited in the mall's parking lot and its adjacent sidewalks.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

d) Nor could Mr. Miranda easily stop for gas while publicly carrying arms, given nearly all gas stations in the State sell both California and out-of-state lottery tickets.

e) Mr. Miranda will also be barred from carrying a firearm for self-defense in his church unless the church chooses to post a sign affirmatively allowing firearms, even though it doesn't currently prohibit those with valid CCW permits from carrying. Given recent attacks in churches that targeted people of faith, Mr. Miranda fears for his life. He knows that SB 2 would disarm him because he intends to comply with the law, but those restrictions will not stop criminals intent on violence from attacking people of faith.

f) Mr. Miranda cannot carry his licensed sidearm while walking in the community where he lives, because his community has a park in the middle of it. Under SB 2, that park and the streets and sidewalks adjacent to it are now off-limits for Mr. Miranda while he is carrying. For example, prior to SB 2, he regularly carried his firearm as he walked to a mailbox across the street from the park to retrieve his mail. SB 2 now makes that act subject to prosecution under the California Penal Code.

g) As with Mr. May, these are just a few examples of how SB 2 impacts the right to carry arms in public. Mr. Miranda's right to carry will be infringed by SB 2 once it takes effect, despite his CCW permit.

17. Plaintiff Eric Hans is a resident of Riverside County, California and a law-abiding citizen of the United States. Mr. Hans has a CCW permit issued pursuant to California Penal Code Section 26150 by the Riverside County Sheriff's Department. He sometimes travels out of state, and therefore also has an out-of-state permit issued by Arizona, which is also valid and recognized in the State of Nevada.

9

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

a) Prior to SB 2, Mr. Hans carried daily, except when he visited one of the very few places where carry was prohibited, such as schools or courthouses. SB 2's drastic change in the status quo means that Mr. Hans will no longer be able to carry at nearly all of the places he visits.

b) SB 2 causes even more harm to Mr. Hans than most other people because his employment involves constant travel around Southern California. Mr. Hans carries to defend himself during his regular travel to these unfamiliar areas. Often, he must stop at gas stations in places he has never been before. Being unfamiliar with such areas, he typically has no way to know what types of businesses or facilities exist in any given location, much less will he have advance knowledge of which businesses have taken the step to post signage allowing firearms.  Thus, he is at risk of inadvertently violating the law by carrying a firearm during his travels.

c) As part of his business duties, Mr. Hans carries and must deposit large sums of cash at the bank, and he carries a pistol when he does so for his own safety. His bank does not otherwise prohibit his carrying of a concealed firearm, and yet SB 2 strips away his ability to enter a bank or its parking lot (meaning he cannot even leave his gun secured in his car), despite his CCW permit.

d) Mr. Hans lives directly across the street from a city park, so now if he happens to need to park his car on the street, he risks being in violation of SB 2. While the new law includes an exception for people who must walk through a park to access their residence, it is not clear if that exception applies to the sidewalks and street adjacent to the park. Even if Mr. Hans is covered by that exception, he frequently goes for walks in that same park while carrying, and but for SB 2, would continue to do so.

10

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

e)  Furthermore, Mr. Hans carries in all of the shopping malls, grocery stores, and restaurants he visits across the state. He also carries at church every Sunday. These places will now be off-limits to him unless these destinations affirmatively post a sign announcing that CCW permit holders are allowed to carry on the property. Of course, those properties also must not otherwise fall under any other SB 2 restrictions.

f)  As with the other individual Plaintiffs listed above, this is merely a sample of the ways Mr. Hans's right to publicly carry arms is harmed, in spite of his compliance with California's existing (pre-SB 2) laws on public carry and its CCW permit process.

18.  Plaintiff Gary Brennan is a resident of San Diego County, California and a law-abiding citizen of the United States. Mr. Brennan has a CCW permit issued pursuant to California Penal Code Section 26150 by the San Diego County Sheriff's Department. SB 2's harm to Mr. Brennan's right to public carry of arms includes but is not limited to:

a)  Mr. Brennan carried a firearm daily, except when he intended to visit one of the very few places where carry was prohibited, such as schools or courthouses. Due to the changes made by SB 2 to the status quo, Mr. Brennan will effectively no longer be able to carry at nearly all of the places he frequents once the law takes effect.

b)  Mr. Brennan is the President of the San Diego County Wildlife Federation. As part of his duties, he regularly visits and hikes through public lands. He frequently carries a firearm while performing his duties. While SB 2 exempts certain areas that allow hunting, Mr. Brennan regularly travels through areas that do not allow hunting. He is harmed by SB 2 in both his role as President of the Federation and his own recreational hobbies.

11

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

c) Mr. Brennan is also a certified CCW firearms instructor/trainer for the San Diego County Sheriff's Department, and frequently instructs students how to safely carry a firearm. SB 2's complexity alone affects his ability to provide certainty and clear guidance to his students, given all of the places where public carry of a firearm is jeopardized by SB 2's arbitrary and capricious maze of rules.

d) Mr. Brennan also cannot carry at church, at his bank, or at private businesses, unless those establishments post the State's required signage. This is particularly troubling to Mr. Brennan, given that he frequents many nice restaurants throughout San Diego County and California generally, and all of them serve alcohol.  This is so even if Mr. Brennan is not consuming alcohol.

e) Mr. Brennan's position as the President of the San Diego County Wildlife Federation frequently requires him to carry large sums of cash to the bank, and he can no longer do so while carrying for self-protection, due to SB 2.

f) As with the other named Plaintiffs, these are just a few examples of the many ways Mr. Brennan's right to carry will be harmed by SB 2, in spite of his compliance with the CCW permit process.

19. Plaintiffs Oscar A. Barretto, Jr. and Isabelle R. Barretto are a married couple who reside in Ventura County, California. They are both law-abiding citizens of the United States. The Barrettos each have CCW permits issued pursuant to California Penal Code Section 26150 by the Ventura County Sheriff's Department.

a) Prior to SB 2 becoming law, each of them carried daily, except when they intended to go to one of the very few places where carry was prohibited, such as schools or courthouses. Due to the status quo

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

changes made by SB 2, the Barrettos are practically unable to carry arms publicly at nearly all of the places they frequent.

b) The need to be able to effectively defend one's self is especially acute for the Barrettos due to Mr. Barretto's former career as a retired California Bail Fugitive Recovery Agent. His work brought him in contact with many unsavory individuals, some of whom likely still harbor ill will towards him. Indeed, his career is one of the major reasons the Barrettos decided to obtain CCW permits in the first place. Now that SB 2 has rendered those permits largely useless, their lives are in danger as a result of being unable to bear arms for self-defense.

c) The Barrettos also attend church regularly and teach Sunday school at a church that is located on the Camarillo airport grounds. Prior to SB 2, they carried to church in case of a violent attack against people of faith like them. Now, they can no longer do so. Even if their church was willing to post signs allowing them to carry, the church's parking lot is located on government-run airport grounds, and is thus a gun-free zone under SB 2.

d) Mr. Barretto also needs to regularly attend doctor's appointments for treatment of his diabetes and for physical therapy. SB 2 now prohibits Mr. Barretto from carrying his means of self-defense during, to, and from all of these medical appointments.

e) Most of the restaurants the Barrettos frequent, as well as parks and other places of recreation, are now off-limits if they want to exercise their right to carry arms.

f) The Barrettos do not consume alcohol, and yet SB 2 restricts them from some of their favorite restaurants even though there is no risk of them becoming intoxicated.

13

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

g) As with the other named individual Plaintiffs, these are just a few examples of how the Barrettos will effectively lose their rights to carry once SB 2 takes effect, despite their CCW permits.

20. Plaintiff Barry Bahrami is a resident of San Diego County, California and a law-abiding citizen of the United States. Mr. Bahrami has a CCW permit issued pursuant to California Penal Code Section 26150 by the San Diego County Sheriff's Department.

a) Prior to SB 2's enactment, Mr. Bahrami carried a firearm daily, except when he visited one of the very few places where such carry was prohibited, like schools or courthouses. Due to the changes made by SB 2, Mr. Bahrami will no longer be able to carry at nearly all the places he frequents once the law takes effect.

b) Mr. Bahrami has two children aged 10 and 9, respectively. He is a very involved father and takes his children on trips throughout the state. His son is a big fan of trains, including freight trains, and so they visit railroads and public transit stations. Mr. Bahrami rides the train with his children too and carries his firearm as allowed by law, including on weekend trips between Oceanside and San Clemente to get ice cream by the pier. Both children love to play in parks and visit the library, so Mr. Bahrami takes them to these places frequently. SB 2 will end all these sorts of trips if Mr. Bahrami insists on exercising his right to be armed in public to protect his children. Thus, one of his primary objectives in obtaining a CCW permit is undone by SB 2.

c) As with the other individual Plaintiffs, these are just a few examples of SB 2's impact on law-abiding citizens. Mr. Bahrami's right to carry will be effectively eliminated once SB 2 takes effect.

21. Plaintiff Pete Stephenson is a resident of Alameda County, California and a law-abiding citizen of the United States. Mr. Stephenson is a veteran who was

14

honorably discharged in the mid-2000s. Mr. Stephenson has a CCW permit issued pursuant to California Penal Code Section 26150 by the Alameda County Sheriff's Department. The ways in which SB 2 harms Mr. Stephenson include but are not limited to:

a) Prior to SB 2 becoming law, Mr. Stephenson carried daily, except when he visited one of the very few places where carry was prohibited, such as schools or courthouses. Due to the changes made by SB 2, Mr. Stephenson will effectively no longer be able to carry at nearly all the other places he frequents once the law takes effect.

b) One example of the way SB 2 harms Mr. Stephenson is that he frequently takes his family to visit public attractions in San Francisco, including Fisherman's Wharf, the city's museums, and parks. While there, he will often visit banks (e.g., to withdraw cash from an ATM), dine in restaurants, go shopping, and otherwise enter typical privately owned businesses that are open to the public like shops, galleries, and so forth. On these regular trips to San Francisco, the easiest way to travel is by BART (Bay Area Rapid Transit), from the Dublin/Pleasanton station near Mr. Stephenson's residence in Livermore, to stations in San Francisco and back. SB 2 will make this impossible if he wants to exercise his right to carry arms in public because SB 2 bans carry on public transportation.

c) As with the other individual Plaintiffs, these are just a few examples, and many more could be listed at length. Mr. Stephenson's right to carry will be effectively eliminated once SB 2 takes effect, despite his CCW permit.

22.     Plaintiff Andrew Harms is a resident of Los Angeles County, California and a law-abiding citizen of the United States. Mr. Harms has a CCW

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

permit issued pursuant to California Penal Code Section 26155 by the Glendale Police Department.

    a) Prior to SB 2 becoming law, Mr. Harms carried daily, except when he intended to visit one of the very few places where carry was prohibited, such as schools or courthouses. Due to the changes made by SB 2, Mr. Harms will effectively no longer be able to carry at nearly all of the other places he frequently visits.

    b) In particular, Mr. Harms takes his children to various places such as restaurants for a meal, parks and playgrounds so they can play, and libraries so they can check out books. All of those will be off-limits once SB 2 takes effect.

    c) As with the other individual Plaintiffs, these are just a few examples, and many more could be listed at length. Mr. Harms's right to carry will be effectively eliminated once SB 2 takes effect, despite his CCW permit.

23. Plaintiff Jose Flores is a resident of Fresno County, California and a law-abiding citizen of the United States. He has never been found by any law enforcement agency, any court, or any other government agency to be irresponsible, unsafe, or negligent with firearms in any manner, and he is not prohibited from owning firearms.

    a) Unlike the other individual Plaintiffs, Mr. Flores has not yet been issued a CCW permit, but he is currently in the process of obtaining one from the Fresno County Sheriff's Department.

    b) Mr. Flores is a first-generation Mexican American, a small business owner, and an advocate for Second Amendment rights. He comes from a family of entrepreneurs who own multiple businesses in Fresno. During his high school years, Mr. Flores witnessed a brutal murder outside his family's restraint where a man was mercilessly stabbed

16

multiple times. It was a transformative experience that reinforced his unwavering belief in the importance of the right to self-defense and the Second Amendment – especially the right to be armed in public places. Since he became eligible to purchase firearms, he has been an avid gun owner with a genuine interest in protecting and preserving the constitutional right to keep and bear arms.

c) While SB 2 will limit Mr. Flores from carrying nearly everywhere once he gets his CCW permit, the law will affect him in an additional and unique way. Mr. Flores is also the owner and operator of Flores Flooring Solutions, a small business in Fresno which includes a showroom open to the public. Plenty of people in Fresno have CCW permits, and Mr. Flores would welcome such individuals carrying in his showroom.

d) However, as a business owner, Mr. Flores understands the implications of having signage that concealed carry and possession of firearms on his premises is permitted. SB 2 forces him to publicly take a position on a controversial issue that may needlessly alienate customers who oppose gun rights or who do not understand the law. Moreover, burglary and theft are a frequent concern for any business in California, and Mr. Flores fears putting up a "guns allowed" sign may make his business an even more desirable target for thieves, because they may believe he stores firearms on the premises.

e) Furthermore, Mr. Flores does not want to be a part of legitimizing California's unconstitutional, anti-Second Amendment scheme by agreeing to put up such a sign. SB 2's compelled speech requirements violate Mr. Flores's First Amendment rights, as well as his Second Amendment rights once he obtains his CCW permit.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

24.     Plaintiff Sheldon Hough, DDS, is a resident of San Bernardino County, California and a law-abiding citizen of the United States. Dr. Hough has a CCW permit issued pursuant to California Penal Code Section 26150 by the San Bernardino County Sheriff's Department.

a) Prior to SB 2's addition to the statute books, Dr. Hough carried arms in public daily, except when he intended to visit any of the few places where carry was prohibited, such as schools or courthouses. Due to the changes made by SB 2, Dr. Hough will effectively no longer be able to carry at nearly all of the places he frequents.

b) Dr. Hough and his wife, who have been married since 1970, have both made a commitment never to drink alcoholic beverages. There is therefore no risk of him becoming intoxicated while he carries arms in public. Yet under SB 2, if he wants to go out to dinner with his wife, Dr. Hough cannot do so while carrying, because nearly all the restaurants he patronizes also serve alcohol.

c) While Dr. Hough shares many of the issues that all Plaintiffs have in common, the Doctor, like Plaintiff Flores, has an additional and unique concern: the status of his own dental office. Dr. Hough has always welcomed people carrying arms into his dental office and he assumes that many of his customers have CCW permits. He wants his business to continue to be open to all peaceable patrons, including those like him with CCW permits, but he does not want to be compelled to put up a sign saying so. Such a sign may alienate other customers and hurt his business, and he should not be compelled to engage in speech to publicly declare a position on a controversial issue in California. This compelled speech would be a violation of his rights under the First Amendment.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

d) Furthermore, even if Dr. Hough wanted to put up such a sign, SB 2 contains a separate prohibition for carrying arms in medical facilities like his dental office (a prohibition which also stops him from carrying in his own office). SB 2 makes Dr. Hough's office off-limits for the public carry of arms for him and his patients.

25. Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization. It is incorporated under the laws of the state of Washington and was founded in 1974. SAF has over 720,000 members and supporters nationwide, including thousands of members in California. SAF is dedicated to promoting a better understanding about our constitutional heritage to privately own, possess, and carry firearms through educational and legal action programs designed to better inform the public about gun control issues. SAF has been a pioneer and innovator in defense of the right to keep and bear arms, through its publications and public education programs like the Gun Rights Policy Conference. SAF also expends significant sums of money sponsoring public interest litigation to defend its own interests to disseminate information to like-minded individuals. SAF members with CCW permits are harmed by SB 2 because it effectively makes their efforts and the permits themselves futile by making nearly every public place a "sensitive place" where firearms are forbidden.

26. Plaintiff Gun Owners of America ("GOA") is a California non-stock corporation and a not-for-profit membership organization with its principal place of business in Springfield, Virginia and is organized and operated as a non-profit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. It has more than 2 million members and supporters across the country, including residents within this judicial district and throughout the State of California.  GOA members and supporters with CCW permits are harmed by SB 2 because it effectively makes their permits

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  pointless by making nearly everywhere they go in their daily lives a place where

2  carry is forbidden.

3      27.    Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock

4  corporation and a not-for-profit legal defense and educational foundation with its

5  principal place of business in Springfield, Virginia and is organized and operated as

6  a non-profit legal defense and educational foundation that is exempt from federal

7  income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. GOF was

8  formed in 1983 and is supported by gun owners across the country, within this

9  judicial district, and throughout the State of California who, like the individual

10  Plaintiffs, will be irreparably harmed by the implementation and enforcement of SB

11  2. GOF's supporters with CCW permits are harmed by SB 2 because it effectively

12  makes their permits pointless by making nearly everywhere they go in their daily

13  lives a place where carry is forbidden.

14      28.    Plaintiff Gun Owners of California, Inc. ("GOC") is a non-profit

15  organization incorporated under the laws of the state of California with

16  headquarters in El Dorado Hills, California. GOC is dedicated to the restoration of

17  the Second Amendment in California. GOC members with CCW permits are

18  harmed by SB 2 because it effectively makes their permits pointless by making

19  nearly everywhere they go in their daily lives a place where carry is forbidden.

20      29.    Plaintiff Liberal Gun Owners Association of California ("LGC" and

21  also known as the "Liberal Gun Club of California") carries a rich tradition in the

22  state. As a nonprofit mutual benefit organization registered in California, LGC

23  promotes training and education, diversity, inclusion, and ownership of modern

24  firearms for self-defense. LGC believes that the new, modern shooter is

25  intentionally gender-neutral, and they represent an important part of the firearm

26  owner community. Their members help to represent the minority voices of gun

27  owners across the state. The mission of the LGC is to provide a pro-Second

28  Amendment voice for left-of-center gun owners in the national conversation on

firearms. To achieve its mission, LGC encourages new participation in shooting sports and provides firearm safety and shooting instruction programs as well as providing a forum for civil discourse on Second Amendment issues. LGC's members and supporters with CCW permits are harmed by SB 2 because it effectively makes their permits pointless by making nearly everywhere they go in their daily lives a place where carry is forbidden.

30.     Plaintiff California Rifle & Pistol Association ("CRPA") is a non-profit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. Section 501(c)(4) with its headquarters in Fullerton, California. Founded in 1875, CRPA seeks to defend the civil rights of all law-abiding individuals, including the enumerated right to bear firearms for lawful purposes like self-defense.  CRPA regularly participates as a party or amicus in litigation challenging unlawful restrictions on the right to keep and bear arms. It also provides guidance to California gun owners regarding their legal rights and responsibilities. CRPA members include law enforcement officers, prosecutors, professionals, firearm experts, and the general public.  CRPA members with CCW permits are harmed by SB 2 because it effectively makes their permits pointless by making nearly everywhere they go in their daily lives a place where carry is forbidden.

31.     The individual Plaintiffs, and members and supporters of the associational Plaintiffs, wish to continue to exercise their constitutional rights to carry a firearm in public for self-defense, but they cannot continue to do so without risking criminal charges, because SB 2 makes most places off-limits for carry even for those with valid CCW permits.

32.     The individual Plaintiffs intend to continue to carry their firearms in all places they did before SB 2 was enacted and only refrain from doing so in order to not be charged with a crime. In other words, but for Defendants' enforcement of statutes and policies that prohibit the individual Plaintiffs and members and supporters of the associational Plaintiffs from lawfully carrying a firearm in public,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

they would continue carrying a firearm in public for self-defense.

**Defendants**

33.    Defendant Robert Bonta is the Attorney General of California. He is the chief law enforcement officer of California. Defendant Bonta is charged by Article V, Section 13 of the California Constitution with the duty to see that the laws of California are uniformly and adequately enforced. Defendant Bonta also has direct supervision over every district attorney and sheriff in all matters pertaining to the duties of those respective officers. Defendant Bonta's duties also include informing the public, local prosecutors, and law enforcement regarding the meaning of the laws of California, including enforcing the law in places where concealed carry is forbidden as defined by SB 2. He is sued in his official capacity.

34.    The true names or capacities – whether individual, corporate, associate, or otherwise – of the Defendants named herein as Does 1 through 10 are presently unknown to Plaintiffs and are therefore sued by these fictitious names. Plaintiffs pray for leave to amend this Complaint to show the true names or capacities of these Defendants if and when they have been determined.

## JURISDICTION AND VENUE

35.    This Court has original jurisdiction over this civil action under 28 U.S.C. Section 1331 because the claims arise under the Constitution and laws of the United States, thus raising federal questions.

36.    This Court also has jurisdiction under 28 U.S.C. Section 1343(a)(3) and 42 U.S.C. Section 1983 because this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California, political subdivisions, and state actors thereof, of the rights, privileges, and/or immunities secured to all persons and citizens by the United States Constitution and by Acts of Congress.

37.    Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. Sections 2201-02, and their claim for attorneys' fees is authorized by 42

1  U.S.C. Section 1988.

2       38.    Venue in this judicial district is proper under 28 U.S.C. Section

3  1391(b)(2) because a substantial part of the events or omissions giving rise to the

4  claims occurred in the Central District, Southern Division. All of the associational

5  Plaintiffs have members who live within Orange County, and Plaintiff CRPA is

6  located in Fullerton. Moreover, a related case that shares Plaintiffs with this case

7  (both Reno May and CRPA) is proceeding in the Southern Division, with the

8  Attorney General also listed as the Defendant. *See Lance Boland, et al. v. Robert*

9  *Bonta*, Case No. 8:22-cv-01421-CJC(ADSx).

10              **THE RIGHT TO KEEP AND BEAR ARMS**

11       39.    The Second Amendment to the United States Constitution provides:

12  "A well regulated Militia, being necessary to the security of a free State, the right of

13  the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

14       40.    The Supreme Court has recognized that the Second Amendment right

15  to keep and bear arms is an individual right that contemplates, in part, the right of

16  law-abiding, competent adults to "possess and carry weapons in case of

17  confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

18       41.    The Supreme Court has also held that the Second Amendment, by way

19  of its incorporation through the Fourteenth Amendment, applies equally to prohibit

20  infringements of that right by state and local governments. *McDonald v. City of*

21  *Chicago*, 561 U.S. 742, 750 (2010).

22       42.    *Heller* established a "text, history, and tradition" framework for

23  analyzing Second Amendment challenges. *N.Y. State Rifle & Pistol Ass'n v. Bruen*,

24  142 S. Ct. 2111, 2127-29 (2022) (citing *Heller*, 554 U.S. at 634). The *Heller* Court

25  then assessed the historical evidence to determine the prevailing understanding of

26  the Second Amendment at the time of its ratification in 1791. Based on that

27  assessment, the Court concluded that the District of Columbia statute which

28  prohibited possession of the most common type of firearm in the nation (the

handgun) lacked a Revolutionary-era analog, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment. Thus, the District of Columbia's handgun ban at issue in that case was declared unconstitutional.

43.     More recently, the Supreme Court confirmed and clarified *Heller*'s historical approach to analyzing the Second Amendment's scope:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2129-30.

44.     In correcting the misapplication of *Heller* by the lower courts between 2010 and 2022, the *Bruen* Court confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 2122.

45.     The *Bruen* Court retained some dicta from the *Heller* decision and noted that the carrying of arms may be restricted in certain presumptively "sensitive places." But the Court has also noted that "the historical record yields relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited." *Id.* at 2133.

46.     The *Bruen* Court issued its own caution about sensitive places, warning state actors that "expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly [as it] would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense." *Id.* at 2134.

47.     The Supreme Court unequivocally confirmed "that the Second and

24

1  Fourteenth Amendments protect an individual's right to carry a handgun for self-

2  defense outside the home." *Id.* at 2122. That right extends to any public area that is

3  not a "sensitive place." *Heller*, 554 U.S. at 592, 626-27. Attorney General Bonta

4  has already conceded that this holding means California can no longer require

5  subjective "good cause" to obtain a permit.[7]

6         48.    The Supreme Court's current universe of "sensitive places" where the

7  right can be restricted include "legislative assemblies, polling places, and

8  courthouses." *Bruen*, 142 S. Ct at 2133.

9         49.    Beyond those specific places, the Court has instructed courts to

10  conduct a historical inquiry to determine whether particular areas were considered

11  (or would have been considered) "sensitive places" during the Founding era. *Id.* at

12  2135-36. While the Court noted that there may be "new and analogous sensitive

13  places" to those historically considered as such, it also noted that the term could not

14  be so broad as to "include all 'places where people typically congregate.'" *Id.* at

15  2133.

16         50.    The Second and Fourteenth Amendments thus guarantee to all law-

17  abiding, competent adults the right to carry firearms and ammunition for self-

18  defense in all public areas that have *not* historically been considered "sensitive

19  places" or their modern analogues based on relevant history.

20                **[CCW Permit Holders Are Effective First Responders]**

21         51.    On July 17, 2022, a gunman opened fire at Greenwood Park Mall in

22  Greenwood, Indiana. Tragically, the assailant managed to kill three people.

23  Fortunately, his rampage was quickly cut short, thanks to the actions of 22-year-old

24  Elisjsha Dicken. Dicken, who was legally carrying a concealed handgun, fired on

25  _____

26     [7] Until recently, California law required "good cause" to issue a permit. CAL.
    PENAL CODE § 26150(a)(2) (Deering 2022). That requirement fails under *Bruen*, as
27  the Attorney General of California has already confirmed through a legal alert
    memorandum he sent out directing state and local officials to cease enforcing it. A
28  copy of that legal alert can be found here: <https://crpa.org/news/blogs/ag-bonta-
    good-cause-requirement-is-unconstitutional/> (as of June 7, 2023).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

the attacker, killing him, and ending the slaughter. Dicken's actions likely saved the lives of his girlfriend, who was there with him, and countless others as well.[8]

52.     On December 29, 2019, two people were killed in a crowded church in Texas when an attacker opened fire. A congregant, Jack Wilson, killed the assailant with his legally carried concealed handgun, stopping the attack in seconds. Other armed congregants were also present and quickly responded as well.[9]

53.     On August 4, 2018, 150 children at a back-to-school event in a Florida park were engaging in festivities when a shooter opened fire. Before anyone could be injured or killed, an armed bystander who was legally carrying a handgun stopped the gunman.[10]

54.     On June 23, 2023, a man wearing a helmet and carrying a rifle walked into the Turnberry Towers condominium complex in Las Vegas and fired shots at the front desk. The violent attack was stopped by an armed employee before the man could hurt anyone. A resident who witnessed the incident told reporters the employee was "a hero who deserves recognition for stepping in."[11]

---

[8] National Review Editors, *A Good Guy with a Gun,* National Review (July 20, 2022, 6:30 AM), <https://www.nationalreview.com/2022/07/a-good-guy-with-a-gun/> (as of June 7, 2023) ("Just 15 seconds elapsed between the beginning of the shooting at the Greenwood Park Mall and Elisjsha Dicken's intervening. Had Dicken not been there, the three innocent people who were killed would have been joined by many others.").

[9] Travis Fedschun, *Texas church shooting: Gunman kills 2, 'heroic' congregants take down shooter*, Fox News (Dec. 29, 2019, 7:47 PM), <https://www.foxnews.com/us/texas-church-shooting-texas-injured-active> (as of June 7, 2023); Fox News Editors, *Texas man who stopped church shooting says he 'had to take out' gunman because 'evil exists,'* Fox News (Dec. 30, 2019, 2:39 PM), <https://www.foxnews.com/us/texas-church-shooting-man-take-out-gunman-west-freeway-church> (as of June 7, 2023).

[10] Kyle Swenson, *Bullets flew at a Florida 'Peace in the City' event for kids. An armed bystander was ready.*, Washington Post (Aug. 7, 2018, 5:00 AM), <https://www.washingtonpost.com/news/morning-mix/wp/2018/08/07/bullets-flew-at-a-florida-peace-in-the-city-event-for-kids-an-armed-bystander-was-ready/> (as of June 7, 2023).

[11] *Man hailed 'hero' for stopping shooter at condo complex in Las Vegas*, Scripps News Las Vegas (June 25, 2023), <https://scrippsnews.com/stories /man-hailed-hero-for-stopping-shooter-at-condo-complex-in-las-vegas/> (as of June 27, 2023).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

55.     Most criminally violent encounters are not as dramatic as mass shooting situations, but they still represent deadly threats. On August 31, 2019, a man in Ohio threatened people in a McDonald's with a knife. A customer inside with a carry permit confronted the man at gunpoint. The man put down his knife and was later arrested by the police without further incident.[12]

56.     There are countless more examples of legally armed men and women heroically stopping violent attacks and saving lives. Such actions make armed citizens "first responders" of the kind that stop violence in public places, even before the police can arrive.

57.     One database has recorded over 780 defensive gun-use incidents in 2022 alone.[13] But such databases can only capture incidents reported by the media, leaving out countless defensive gun uses that did not result in causalities and did make the news.

58.     The five heroic individuals listed above, as well as the thousands more who have defended themselves with their lawfully carried handguns, come from diverse backgrounds and all walks of life. But they would have all been considered *criminals* in California under SB 2, as the people in these examples each carried somewhere that is forbidden under this new law.

**[CCW Permit Holders Are Law-Abiding]**

59.     Punishing good people is apparently a feature and not a bug of SB 2. The law targets perhaps the most law-abiding demographic in the country – citizens with CCW permits. Even before the *Bruen* decision, over 40 states were either "shall issue," where a permit must be issued to all citizens who apply and qualify,

---

[12] NBC4 Staff, *Police: Man with gun stops man with knife in Coshocton McDonald's*, NBC4 (Sept. 2, 2019, 11:12 AM), <https://www.nbc4i.com/news/local-news/police-man-with-gun-stops-man-with-knife-in-coshocton-mcdonalds/> (as of June 7, 2023).
[13] Heritage Staff, *Defensive Gun Uses in the U.S.*, Heritage (July 26, 2022), <https://datavisualizations.heritage.org/firearms/defensive-gun-uses-in-the-us/> (as of June 7, 2023).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

or "constitutional carry," where anyone who is legally eligible to own a gun may carry a pistol concealed or openly without a permit.

60.     In California, permit issuance is done at the county level, and most counties in the state were effectively "shall issue" despite the unconstitutional good-cause requirement that was previously codified but now defunct after *Bruen*. For instance, Tehama County Sheriff's Department stated on its Concealed Weapons Permits website that "Sheriff-Coroner Dave Kain supports the right of law-abiding citizens to keep and bear arms. In this regard, all qualified residents of Tehama County are eligible to apply for a permit to carry concealed weapons."[14] An identical statement existed on the website before the *Bruen* ruling.[15]

61.     Despite most counties in California being effectively "shall issue" for decades before *Bruen*, there have been no crime problems resulting from people issued CCW permits in those counties. In fact, last year's failed SB 918 was opposed by the California State Sheriffs' Association – in part – because people with CCW permits almost never commit crimes and are not a problem for law enforcement. The Association stated in a letter to all members of the California State Assembly that SB 918 "greatly restricts when and where licensees may carry concealed and could severely restrict the exercising of the right [to bear arms]. . . . [*I*]*ndividuals who go through the process to carry concealed legally are exceedingly unlikely to violate the law*, yet SB 918 turns much of the state into 'no-carry' zones that will do nothing to foster public safety."[16]

62.     The evidence available from other states also establishes how overwhelmingly peaceable and law-abiding people with CCW permits are. For example, in 2020, Texas had 1,626,242 active concealed-carry weapon license

---

[14] <https://tehamaso.org/concealed-weapons/> (as of June 8, 2023).
[15] <https://web.archive.org/web/20210918103718/https://tehamaso.org/administration/licenses-permits/concealed-weapons/> (archived snapshot as of Sept. 18, 2021).
[16] <https://www.cocosheriff.org/home/showpublisheddocument/496/637973844465821905> (emphasis added) (as of Sept. 4, 2023).

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

holders.[17] That made people with such licenses 5.7% of Texas's population, yet according to the Texas Department of Public Safety, they only committed 0.4334% of the state's serious crimes, being responsible for just 114 out of a total of 26,304 convictions. Even among those few convictions, only some of the crimes involved a gun at all. And of the ones that did, license holders were responsible for an even smaller proportion of them. For example, there were 1,441 convictions for aggravated assault with a deadly weapon in 2020, but people with a valid concealed weapon license were just 4 of those, or 0.2776% of the total, which is below their per-capita 5.7% share of the population as a whole.

63.    The State of Florida confirms this phenomenon. As of May 31, 2023, the state had issued a total of 5,764,684 concealed weapon licenses since October 1, 1987, of which 2,598,330 are currently active.[18] In that nearly 26-year timespan, only 18,290 permits have been revoked (for any reason) without being subsequently reinstated. This is roughly 0.3% of the total permits issued.

64.    Florida was the state where the modern right-to-carry movement originally gathered steam (though a handful of states had liberal permit-issuance policies before then). The state's enactment of shall-issue permitting was met with breathless predictions of wild west-style violence and "blood in the streets," but none of that happened. Indeed, at least one prominent opponent admitted his error. Florida Representative Ronald A. Silver stated in 1990 that "[t]here are lots of people, including myself, who thought things would be a lot worse as far as that particular situation [carry reform] is concerned. I'm happy to say they're not." Clayton E. Cramer & David B. Kopel, *"Shall Issue": The New Wave of Concealed Handgun Permit Laws*, 62 Tenn. L. Rev. 679, 692-93 (1995). John Fuller, general

---

[17] All data for Texas is from the Texas Department of Public Safety and can be found at <https://www.dps.texas.gov/section/handgun-licensing/demographic-reports-fiscal-year-2020> (as of August 14, 2022).
[18] All data for Florida is from the Florida Division of Licensing and can be found at <https://www.fdacs.gov/Divisions-Offices/Licensing/Statistical-Reports> (as of June 7, 2023).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

counsel for the Florida Sheriffs Association, added: "I haven't seen where we have had any instance of persons with permits causing violent crimes, and I'm constantly on the lookout." *Id.* The Metro Dade Police Department originally kept detailed records of every incident involving concealed weapon licensees from enactment of the new law in 1987 until August 31, 1992. They stopped doing so because the rarity of such incidents made the effort a waste of time. *Id.*

65.     There are more states with similar data, but Plaintiffs believe these examples, along with the California State Sheriffs' Association's letter, make the point: Even if Defendants could use "public safety" as a reason to curtail the right to carry in places that are not truly sensitive (and Defendants cannot, because *Bruen* forbids such interest balancing), people with carry permits are dramatically more law-abiding than the population as a whole and are thus unlikely to ever pose a threat that can be addressed by SB 2's draconian policies. Fear of CCW permit holders is irrational, given these statistics. Worse yet, SB 2 dissuades good people from exercising their rights to carry in most places, where people otherwise would have a chance to stop or mitigate criminal attacks. SB 2's ultimate effect is the continuation of California's regressive slide into urban anarchy, while law-abiding citizens are left powerless to defend themselves.

66.     Recently, after Hawaii passed a law very similar to SB 2, some of the Plaintiffs in this action filed an amicus brief. *See Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 WL 5043805, at *1 (D. Haw. Aug. 8, 2023). Some of the statistical evidence presented here was presented to that court. The *Wolford* court relied in part on this evidence to conclude that there is indeed little threat from people with CCW permits:

> Although it is possible post-Bruen that more conceal carry permits are eventually issued in Hawai'i, that alone does not negate Plaintiffs' position that the vast majority of conceal carry permit holders are law-abiding. See, e.g., GOA Amicus Brief at 21-22 (stating that Texas in 2020 had [1,441] convictions for aggravated assault with a deadly weapon but only four of those

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

convictions were people with valid concealed carry permits – roughly 0.278% of the total).

2

*Id.* at *91-92.

3

### The Legislative Response to *Bruen* and Subsequent Legal Challenges

4

67.     Following *Bruen*, New York moved quickly to undermine the

5

Supreme Court's ruling by passing a law that would: (a) make acquiring a permit

6

more difficult and (b) make most places off-limits for carry. Given how much SB 2

7

mimics what New York enacted, there is no doubt that it was either inspired by the

8

New York law or inspired by the same anti-Second Amendment sentiment.

9

68.     Federal district courts that have examined New York's law have all

10

ruled mostly against it as contrary to *Bruen*. *See Antonyuk v. Hochul*, No. 1:22-CV-

11

0986 (GTS/CFH), 2022 U.S. Dist. LEXIS 201944 (N.D.N.Y. Nov. 7, 2022);[19]

12

*Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 U.S. Dist. LEXIS 200813

13

(W.D.N.Y. Nov. 3, 2022); *Christian v. Nigrelli*, No. 22-CV-695 (JLS), 2022 U.S.

14

Dist. LEXIS 211652 (W.D.N.Y. Nov. 22, 2022); *Spencer v. Nigrelli*, No. 22-CV-

15

6486 (JLS), 2022 U.S. Dist. LEXIS 233341 (W.D.N.Y. Dec. 29, 2022). Each of

16

these rulings went into tremendous detail about why New York's "sensitive places"

17

laws (which California now copies with SB 2) are unconstitutional under either the

18

First or Second Amendments.

19

69.     New Jersey followed New York in its post-*Bruen* response, passing a

20

very similar law likewise turning most places into "sensitive places" to nullify the

21

22

[19] While the Supreme Court denied emergency relief to lift the Second

23

Circuit's stay on Judge Suddaby's ruling in *Antonyuk*, Justices Alito and Thomas referred to that ruling as "thorough" and encouraged the plaintiffs in that matter to

24

file again for emergency relief if the Second Circuit failed to move reasonably quickly in hearing the appeal. *Antonyuk v. Nigrelli*, 143 S. Ct. 481, 481 (2023)

25

(Alito, J., and Thomas, J., concurring) ("The District Court found, in a thorough opinion, that the applicants were likely to succeed on a number of their claims, and

26

it issued a preliminary injunction as to twelve provisions of the challenged law…I understand the Court's denial today to reflect respect for the Second Circuit's

27

procedures in managing its own docket, rather than expressing any view on the merits of the case. Applicants should not be deterred by today's order from again seeking relief if the Second Circuit does not, within a reasonable time, provide an

28

explanation for its stay order or expedite consideration of the appeal.").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

right to carry arms in public for self-defense. Predictably, just like the New York laws, New Jersey's *Bruen*-response laws have been struck down in federal court. *See Koons v. Reynolds*, No. 22-7464 (RMB/EAP), 2023 U.S. Dist. LEXIS 3293 (D.N.J. Jan. 9, 2023); *Siegel v. Platkin*, No. 22-7464 (RMB/AMD), 2023 U.S. Dist. LEXIS 15096 (D.N.J. Jan. 30, 2023); *Koons v. Platkin*, No. CV 22-7463 (RMB/AMD), 2023 WL 3478604 (D.N.J. May 16, 2023).

70.    Most recently, Hawaii followed in the footsteps of New York and New Jersey and was likewise met with failure at the district court level. *See Wolford*, 2023 WL 5043805, at *1.

## BACKGROUND ON THE PASSAGE OF SB 2

71.    California politicians (including Attorney General Bonta), angry at the Supreme Court for striking down the subjective "good cause" standard under which thousands were wrongly denied their constitutional rights to carry, responded in kind.

72.    First, only a short time after the Court's ruling, the California Department of Justice leaked the names and private confidential individual addresses of hundreds of thousands of individuals with CCW permits, including hundreds of judges and other public officials, exposing them to danger.[20]

73.    Then, in 2022, the legislature tried but failed to pass SB 918. While SB 918 would have changed numerous penal codes and made *obtaining* a permit much more difficult (in ways that are unconstitutional just as SB 2 does), its most nefarious goal was to make almost every place imaginable a "sensitive place" where carrying arms is forbidden, even with a CCW permit. The bill included a

---

[20] Katy Grimes, *Assemblyman Patterson Makes Audit Request of Calif. DOJ Over Leaked Gun Owners List*, The California Globe (July 19, 2022, 12:07 PM), <https://californiaglobe.com/fr/assemblyman-patterson-makes-audit-request-of-calif-doj-over-leaked-gun-owners-list/> (as of June 7, 2023) ("'The DOJ is supposed to keep Californians safe. This dump of information does the opposite,' Patterson said. 'The Attorney General and Department of Justice should not investigate themselves,' Patterson said. 'I don't trust them.'").

---

"vampire provision" which declared that all private businesses are *per se* "sensitive places" unless the business owners place a sign on their door stating that firearms are permitted on the premises.

74.     The "sensitive places" in SB 2 are identical to those listed in SB 918, including the vampire provision.

75.     SB 918 failed last year in part because even law enforcement officers and their agencies opposed it. The California State Sheriffs' Association wrote in a letter to all members of the California State Assembly that "the bill greatly restricts when and where licensees may carry concealed and could severely restrict the exercising of the right. Again, individuals who go through the process to carry concealed legally are exceedingly unlikely to violate the law, yet SB 918 turns much of the state into 'no-carry' zones that will do nothing to foster public safety."[21]

76.     Notably, even after SB 918 failed to pass, there was no flood of violent crime from people who had only just received CCW permits for the first time. This is common sense – people who go through a costly and time-consuming application process so they can carry firearms legally are simply not likely to break the law. Violent criminals don't bother with CCW permits and simply carry illegally. This was just as true before *Bruen* as it is now.

77.     Unfortunately, SB 918 was resurrected in 2023 in the form of SB 2. Politicians lined up with their supporting interest groups for a press conference to announce the bill on February 1, 2023.[22]

78.     If there were any doubt that the point of SB 2 is to repudiate and nullify the *Bruen* ruling, the speakers at the press conference erased that doubt.  A speaker from the Giffords organization complained about the "radical *Bruen* ruling" and lamented the fact that there was a "flood of applicants" now seeking to exercise

---

[21] *Supra* note 15.
[22] <https://twitter.com/i/broadcasts/1yAxRAXgXRVJl> (as of June 7, 2023).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   their constitutional rights. A speaker from a similar organization, Brady, said the

2   bill would help with the "disastrous effect of the *Bruen* decision."[23]

3        79.    At that same press conference, Governor Newsom used air quotes

4   when discussing the "right" to carry firearms outside the home, making his

5   contempt for the Constitution clear. He also praised the dissent in *Bruen* and

6   complained about judges who issued rulings upholding Second Amendment rights.

7   When a member of the press asked if there was any known issue of people with

8   CCW permits committing crimes, the Governor dodged the question twice and

9   instead complained again about the judges he dislikes. He also called *Bruen* a "very

10  bad ruling." Of course, Governor Newsom's security team is not hampered by SB

11  2's vast "sensitive place" definitions. Rather, he is protected wherever he travels in

12  California.

13       80.    The legislative history of SB 2 is replete with vocal opposition from

14  law enforcement groups such as the Peace Officers Research Association of

15  California (PORAC), the largest law enforcement organization in California.

16  PORAC intends to submit a declaration in support of Plaintiffs' motion for

17  preliminary injunction in this matter.

18       81.    The California State Sheriffs' Association also opposed SB 2, just as it

19  opposed SB 918. In its argument to the State Senate in opposition to SB 2, the

20  Association reiterated that "[t]he circumstance of a CCW holder committing a

21  crime is exceedingly rare yet this bill imposes overreaching provisions that will

22  likely be challenged in court, leaving uncertainty in issuance procedures. Instead of

23  focusing on a law-abiding population, efforts should address preventing gun crimes

24  committed by those who disobey the law and holding them accountable."

25       82.    Other law enforcement groups in opposition to SB 2 include:

26  Arcadia Police Officers' Association

27

28            [23] *Id.*

34

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Burbank Police Officers' Association

California Coalition of School Safety Professionals

Claremont Police Officers Association

Corona Police Officers Association

Culver City Police Officers' Association

Deputy Sheriffs' Association of Monterey County

Fullerton Police Officers' Association

Los Angeles School Police Officers Association

Murrieta Police Officers' Association

Newport Beach Police Association

Orange County Sheriff's Department

Palos Verdes Police Officers Association

Placer County Deputy Sheriffs Association

Pomona Police Officers' Association

Riverside County Sheriff's Office

Riverside Police Officers Association

Riverside Sheriffs' Association

San Bernardino County Sheriff's Department

Santa Ana Police Officers Association

Upland Police Officers Association

83.     Aside from ignoring the widespread opposition from law enforcement, the legislature simply ignored the several different district court rulings that struck down large portions of similar laws passed by New York and New Jersey while drafting SB 2. Undaunted, the California legislature acted on Governor Newsom's instructions and passed SB 2.

84.     In the legislative findings for SB 2, the authors wrote that, "when it comes to restrictions on carrying firearms in public, the United States Supreme Court has recognized three times that states may restrict the carrying of firearms in

35

'sensitive places.'" The findings predictably omit the Court's warnings against making effectively every place a "sensitive place," including its admonition that "there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Bruen*, 142 S. Ct. at 2118-19.

85.     In other legislative findings, the authors attempted to place blame on people with CCW permits for criminal violence, stating that "[b]roadly allowing individuals to carry firearms in most public areas increases the number of people wounded and killed by gun violence." Yet the data from other states is clear; people with CCW permits very rarely commit crimes. Indeed, the legislative findings contain **no evidence** that *people with CCW permits* commit a large share of crime because no such evidence exists. Nor is there evidence to suggest that the majority of California counties, which were "shall issue" in practice before *Bruen*, had any significant number of crimes committed by people exercising their rights pursuant to California's then-existing CCW policies. SB 2 is not a response to any public safety crisis. It is a response to a political crisis by a legislature and governor who believe they can score points with their voters by restricting the constitutionally enumerated rights of others.

86.     While many of the changes and additions SB 2 makes to the Penal Code are unconstitutional and likely will face legal challenges in other cases, this Complaint is focused on how SB 2 makes nearly everywhere in California off-limits for licensed firearm carry, even for those with a valid CCW permit.

### How SB 2 Changes Existing Law on the Public Carry of Arms

87.     SB 2 adds Section 26230 to the Penal Code, which reads in pertinent part as follows:

(a) A person granted a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person pursuant to Section 26150, 26155, or 26170 shall not carry a firearm on or into any of the following:

36

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(1) A place prohibited by Section 626.9.

(2) A building, real property, or parking area under the control of a preschool or childcare facility, including a room or portion of a building under the control of a preschool or childcare facility. Nothing in this paragraph shall prevent the operator of a childcare facility in a family home from owning or possessing a firearm in the home if no child under child care at the home is present in the home or the firearm in the home is unloaded, stored in a locked container, and stored separately from ammunition when a child under child care at the home is present in the home so long as the childcare provider notifies clients that there is a firearm in the home.

(3) A building, parking area, or portion of a building under the control of an officer of the executive or legislative branch of the state government, except as allowed pursuant to paragraph (2) of subdivision (b) of Section 171c.

(4) A building designated for a court proceeding, including matters before a superior court, district court of appeal, or the California Supreme Court, parking area under the control of the owner or operator of that building, or a building or portion of a building under the control of the Supreme Court, unless the person is a justice, judge, or commissioner of that court.

(5) A building, parking area, or portion of a building under the control of a unit of local government, unless the firearm is being carried for purposes of training pursuant to Section 26165.

(6) A building, real property, and parking area under the control of an adult or juvenile detention or correctional institution, prison, or jail.

(7) A building, real property, and parking area under the control of a public or private hospital or hospital affiliate, mental health facility, nursing home, medical office, urgent care facility, or other place at which medical services are customarily provided.

(8) A bus, train, or other form of transportation paid for in whole or in part with public funds, and a building, real property, or parking area under the control of a transportation authority supported in whole or in part with public funds.

(9) A building, real property, and parking area under the control of a vendor or an establishment where intoxicating liquor is sold for consumption on the premises.

(10) A public gathering or special event conducted on property open to the public that requires the issuance of a permit from a federal, state, or local government and sidewalk or street immediately adjacent to the public gathering or special event but is not more than 1,000 feet from the event or gathering, provided this prohibition shall not apply to a licensee who must walk through a public gathering in order to access their residence, place of business, or vehicle.

(11) A playground or public or private youth center, as defined in Section 626.95, and a street or sidewalk immediately adjacent to the

37

playground or youth center.

(12) A park, athletic area, or athletic facility that is open to the public and a street or sidewalk immediately adjacent to those areas, provided this prohibition shall not apply to a licensee who must walk through such a place in order to access their residence, place of business, or vehicle.

(13) Real property under the control of the Department of Parks and Recreation or Department of Fish and Wildlife, except those areas designated for hunting pursuant to Section 5003.1 of the Public Resources Code, Section 4501 of Title 14 of the California Code of Regulations, or any other designated public hunting area, public shooting ground, or building where firearm possession is permitted by applicable law.

(14) Any area under the control of a public or private community college, college, or university, including, but not limited to, buildings, classrooms, laboratories, medical clinics, hospitals, artistic venues, athletic fields or venues, entertainment venues, officially recognized university-related organization properties, whether owned or leased, and any real property, including parking areas, sidewalks, and common areas.

(15) A building, real property, or parking area that is or would be used for gambling or gaming of any kind whatsoever, including, but not limited to, casinos, gambling establishments, gaming clubs, bingo operations, facilities licensed by the California Horse Racing Board, or a facility wherein banked or percentage games, any form of gambling device, or lotteries, other than the California State Lottery, are or will be played.

(16) A stadium, arena, or the real property or parking area under the control of a stadium, arena, or a collegiate or professional sporting or eSporting event.

(17) A building, real property, or parking area under the control of a public library.

(18) A building, real property, or parking area under the control of an airport or passenger vessel terminal, as those terms are defined in subdivision (a) of Section 171.5.

(19) A building, real property, or parking area under the control of an amusement park.

(20) A building, real property, or parking area under the control of a zoo or museum.

(21) A street, driveway, parking area, property, building, or facility, owned, leased, controlled, or used by a nuclear energy, storage, weapons, or development site or facility regulated by the federal Nuclear Regulatory Commission.

(22) A church, synagogue, mosque, or other place of worship, including in any parking area immediately adjacent thereto, unless the

38

operator of the place of worship clearly and conspicuously posts a sign at the entrance of the building or on the premises indicating that licenseholders are permitted to carry firearms on the property. Signs shall be of a uniform design as prescribed by the Department of Justice and shall be at least four inches by six inches in size.

(23) A financial institution or parking area under the control of a financial institution.

(24) A police, sheriff, or highway patrol station or parking area under control of a law enforcement agency.

(25) A polling place, voting center, precinct, or other area or location where votes are being cast or cast ballots are being returned or counted, or the streets or sidewalks immediately adjacent to any of these places.

(26) Any other privately owned commercial establishment that is open to the public, unless the operator of the establishment clearly and conspicuously posts a sign at the entrance of the building or on the premises indicating that licenseholders are permitted to carry firearms on the property. Signs shall be of a uniform design as prescribed by the Department of Justice and shall be at least four inches by six inches in size.

(27) Any other place or area prohibited by other provisions of state law.

(28) Any other place or area prohibited by federal law.

(29) Any other place or area prohibited by local law.

CAL. PENAL CODE § 26230(a) (Deering 2022).

## GENERAL ALLEGATIONS

### [SB 2's Designation of Sensitive Places Violates the Second Amendment]

88. This case does not involve a challenge to any of the presumptively "sensitive places" currently identified by the U.S. Supreme Court. Rather, the focus of this suit is the radical expansion of so-called "sensitive places" made by SB 2.

89. SB 2 leaves Plaintiffs with few, if any, places they can carry arms for self-defense. For example:

   a) If Plaintiffs have to pick up a child from daycare, they cannot carry a weapon for self-defense and/or the defense of their child.

   b) If they are going into any building (or adjacent parking lot) under the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

control of an officer of the State's legislative or executive branch, or of a local government, they cannot carry there, even in the absence of any posted signage and even if they are not aware of who controls the building or the parking lot.

c) Plaintiffs are forbidden to exercise their rights where a municipality provides city-owned public parking in a downtown area or shopping center to allow for commerce to be conducted. CCW holders cannot park in those areas, notwithstanding that the CCW holder is present in that parking lot to transact business wholly unrelated to any government function or agency, e.g., to make purchases at a mall, deposit cash at a bank, etc.  Under SB 2, every municipally owned parking lot is now a no-go "gun free zone" for concealed carry permit holders exercising their rights to public carry of arms. Plaintiffs may have no idea they are even violating the law if it is not clear who owns the building or parking lot they have entered.

d) Plaintiffs cannot carry arms into a building where medical services are provided, even if those services are only provided in some rooms in the building and they are not aware of it, as this would violate SB 2.

e) SB 2 makes all public transportation off-limits for carry, effectively nullifying a constitutional right when Plaintiffs (or other people with CCW permits) must rely on public transportation to conduct their daily activities, including going to and from work, grocery shopping, and other common activities. SB 2 thus creates a means-test (access to private transportation) for the exercise of a constitutionally enumerated right that shall not be infringed.

f) If Plaintiffs (or other permit holders) park in a parking lot of an establishment where alcohol is served while they are carrying, even if they do not enter that establishment, they are in violation of SB 2.

40

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

g) All major "public gatherings" are also off-limits, as are playgrounds, athletic areas and facilities, and parks, as well as the streets and sidewalks adjacent to them. Since public gatherings often involve the exercise of other constitutional rights (speech, assembly, petition, religious exercise), Plaintiffs are required to trade one constitutional right for another.

h) The public carry of arms is now forbidden even on land operated by the Department of Parks and Recreation or Department of Fish and Wildlife, except those areas that allow hunting or recreational shooting.

i) Plaintiffs also would be forbidden to carry in casinos or their parking lots, as well as almost anywhere lottery tickets are sold. Because almost all businesses that sell California lottery tickets also sell multi-state lottery tickets (like Powerball), SB 2 eliminates just about every convenience store, gas station, and grocery store from being a place where a person can carry arms to protect themselves. Thus, even if those businesses put up a sign affirmatively allowing their patrons to carry arms on the premises to undo SB 2's unprecedented vampire provision, other SB 2 provisions independently make customers' carry illegal.

j) Plaintiffs who wish to exercise their rights to carry are also excluded from stadiums, arenas, public libraries, airports, amusement parks, zoos, museums, all places of worship that do not affirmatively post signs allowing firearms, and financial institutions. Additionally, the parking lots of all such places are also considered "sensitive places" Under SB 2.

k) Perhaps most egregiously of all, SB 2 adds a "vampire clause" for private businesses. While some states with "shall issue" permitting

41

systems allow private businesses to put up signs that forbid carrying arms into the business, SB 2 inverts that policy. If a business wants to welcome people with carry permits, it is compelled to put a sign on its door saying so. In the parts of California hostile to Second Amendment rights, most businesses will opt not to post such a sign (politically unpopular speech) for fear of public backlash, further ostracizing Plaintiffs.  There is no historical basis for this kind of compelled speech on businesses that wish to *allow* constitutionally permissible activity on their privately owned places of public accommodation. Whether or not a business is actually sensitive, of course, is not determined by the desires of the State, or even of that business. It is either categorically justified pursuant to *Bruen*'s exacting historical test, or it isn't. It cannot be made sensitive based on the subjective desires of the State or a business's owners.

l) On top of all of that, SB 2 also allows local governments unfettered and open-ended discretion to create additional places where carry is forbidden, though it is difficult to imagine what is left to restrict.

90.    SB 2 has unintended (or perhaps intended) consequences that are counterproductive to public safety. Even if Plaintiffs park somewhere else and leave their firearms in a locked box in their cars to avoid violating SB 2, they expose those firearms to theft. Firearm theft and loss is a problem California law already tries to avoid. *See, e.g.*, California Penal Code Section 25250 (requiring prompt reporting of lost or stolen firearms). By making nearly everywhere off-limits for the right to carry arms in public, for any CCW permit holder who is still willing to attempt the feat, SB 2 will force them to leave their firearms unattended in their cars and risk having them stolen. This is especially a risk in cities like San Francisco, where car windows and trunks are frequently left open by their owners

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

because otherwise, criminals will shatter them to steal whatever is inside.[24] If one of these criminals gets their hands on a firearm someone was forced to leave in their vehicle due to overbearing SB 2 restrictions, disaster may result.

91.     This predicament will only encourage firearm theft, and SB 2 likely will be a great boon to the black-market gun trade. It is not hard to imagine would-be thieves waiting near parking lots to see signs of someone unholstering and securing their gun in a car before entering a SB 2 "sensitive place." The safer place for a firearm is concealed on one's person, not stored in an unoccupied vehicle that can be broken into (even if the firearm is secured, because an entire lockbox can be taken away and pried open elsewhere).

92.     In essence, Plaintiffs are left with some streets, some sidewalks, a few parking lots, and a handful of private businesses that are willing to put up signs allowing carry (so long as those businesses are not restricted under another SB 2 provision) as places where they can exercise their rights to carry arms for self-defense in public. Plaintiffs practically cannot carry arms for self-defense at all if they use public transportation for their daily affairs, and even those who own their own vehicles risk having to constantly leave their firearm in their car, exposing it to theft.

93.     SB 2 infringes the right of self-defense of the law-abiding while empowering violent predators with the knowledge that they are unlikely to encounter armed resistance at nearly any public place.  Indeed, criminals will have

---

[24] Marjorie Hernandez, *Brazen Bay-area burglars in a Lexus filmed breaking into line of cars one after the other in broad daylight*, New York Post (August 17, 2023, 5:09 PM), <https://nypost.com/2023/08/17/lexus-driving-san-francisco-burglar-breaks-into-line-of-cars/> (as of September 8, 2023); see also Meghan Roos, *Bay Area Car Owners Leaving Trunks Open While Parked Amid Wave of Car Break-ins,* Newsweek (December 16, 2021, 12:29 PM), <https://www.newsweek.com/bay-area-car-owners-leaving-trunks-open-while-parked-amid-wave-car-break-ins-1660185> (as of September 8, 2023).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

even greater freedom to act with impunity after SB 2's effective date, as even prior existing permit holders are now almost entirely prohibited from carrying in public.

94.    SB 2 makes obtaining a CCW permit a futile exercise. Plaintiffs now have far fewer places to exercise the right to carry than they did before SB 2 and even before *Bruen*. They effectively have to map out their entire day ahead of time (including consulting property records) if they want to try and exercise their right to carry arms in public to ensure they do not inadvertently stray into a prohibited place.

95.    The State bears the burden to prove that all areas included in SB 2 are supported by a broad and enduring early American tradition of identical or relevantly similar regulation. *Bruen*, 142 S. Ct at 2129-30 (explaining that the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation"). The State cannot meet that burden. No similar historical analogues exist (let alone evidencing a tradition broad enough to survive review) for restricting arms in the places that SB 2 transmutes into a "sensitive place."

96.    Accordingly, Plaintiffs seek declaratory relief that (1) the State's expansive list of "sensitive places" fails the *Heller-Bruen* test and (2) as written, SB 2's restriction on CCW permit holders possessing a firearm or ammunition in places that are not historically sensitive violates the Second and Fourteenth Amendments.

97.    Plaintiffs also seek preliminary and permanent injunctive relief to halt the enforcement of SB 2, now codified as Penal Code Section 26230, except for those places where carry would have been illegal before the passage of SB 2.

### [**SB 2 Violates Due Process**]

98.    SB 2 also violates Plaintiffs' due process rights through lack of notice. By inverting the rule that governments and private business owners must provide signage where public carry is forbidden, SB 2 requires signage where enumerated

44

rights are permitted. In light of the Second Amendment's default rule that public carry is permitted unless historically prohibited, SB 2 introduces a defective *mens rea* element should any CCW permit holder be prosecuted under this new law. Individual Plaintiffs as well as members and supporters of the associational Plaintiffs may have no idea a particular place is off-limits for public carry of arms (e.g., when they are not aware that a parking lot they entered is shared with a business that serves alcohol, is owned by a municipality, or is associated with an athletic facility or a doctor's office, etc.).

99.    The general maxim that ignorance of the law is no excuse is limited by the due process requirement of notice. "Ingrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to avoid charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed." *See Lambert v. California*, 355 U.S. 225, 228 (1957).

**[SB 2 Compels Speech in Violation of the First Amendment]**

100.    As business owners, Plaintiffs Flores and Dr. Hough are compelled to put up a sign if they want to welcome people with CCW permits to carry into their places of business.[25] They are forced to choose between supporting their customers' rights to carry and taking a very public stance on what is a controversial issue in California, which may alienate other customers. SB 2 compels them to speak if they want to continue to allow customers with CCW permits to carry in their businesses.

101.    This compelled-speech requirement before a business owner can invite customers into a business while exercising their constitutional rights is

---

[25] As noted before, Dr. Hough's place of business is also a "sensitive place" in which he is prohibited from carrying because, as a dental office, it qualifies as a "medical facility sensitive place" under SB 2. Although Dr. Hough's practice may actually be at a higher risk for targeting by thieves because it contains medications coveted for sale on the black market, Dr. Hough cannot even carry a firearm in his own office to mitigate that higher risk. Thus, Dr. Hough is doubly harmed by SB 2 through its compelled speech policy and its preventing him from carrying for self-defense at his own privately owned business.

1   unconstitutional. "Just as the First Amendment may prevent the government from

2   prohibiting speech, the Amendment may prevent the government from compelling

3   individuals to express certain views." *United States v. United Foods*, 533 U.S. 405,

4   410 (2001). And because the signage requirement has both ministerial and pure

5   political speech elements by requiring Plaintiffs to take a position on a controversial

6   issue, it is subject to strict scrutiny, with the government bearing the burden of

7   proof and the burden of persuasion.

8       102.   In sum, but for SB 2 prohibiting the carrying of firearms in obviously

9   non-sensitive places, the individual Plaintiffs and members and supporters of the

10   associational Plaintiffs with CCW permits would carry firearms and ammunition in

11   places that do not – in fact or by law – meet the *Bruen* definition of a "sensitive

12   place." They refrain from exercising a constitutional right out of legitimate fear of

13   criminal prosecution. This fear stems from the likelihood of violating the new law

14   due to lack of notice, and through this lack of notice they may inadvertently carry

15   their licensed handguns in places forbidden by SB 2.

16       103.   The business-owning individual Plaintiffs share the same concerns,

17   and also contend that SB 2 unconstitutionally compels speech in violation of the

18   First Amendment.

19       104.   SB 2 contradicts the *Bruen* holding. The Supreme Court held that

20   some places may be "sensitive" but that the historical record supports the existence

21   of "relatively few" such places. *Bruen*, 142 S. Ct. at 2133. Yet while making nearly

22   every public place a sensitive place, the State has eviscerated the right to bear arms

23   and acts in open defiance of the Supreme Court. All but one of the Plaintiffs had a

24   CCW permit prior to *Bruen.*  Their rights are now diminished by SB 2 after *Bruen.*

25   Defendant Bonta and his officers and agents must not be allowed to enforce SB 2.

26       105.   Crucially, and fatal to SB 2, the burden to establish that *each* of the

27   places listed in Section 26230 are actually sensitive lies with the Defendant(s).

28   Given the Supreme Court's "sensitive places" doctrine announced in *Bruen*, that is

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    a burden they cannot meet.

2    **DECLARATORY RELIEF ALLEGATIONS**

3    106.   There is an actual and present controversy between the parties.

4    Plaintiffs contend that SB 2 is unconstitutional, both facially and as applied to

5    them, because it precludes Plaintiffs and other law-abiding individuals from

6    exercising their enumerated rights to publicly bear arms in *non*-sensitive places.

7    Plaintiffs anticipate that Defendants will deny and dispute this contention.

8    Plaintiffs desire a judicial declaration of their rights and of the duties of the State on

9    this question.

10   107.   Plaintiffs also allege that SB 2 violates their rights to due process, both

11   facially and as applied to them. SB 2's lack of notice violates principles of

12   fundamental fairness because Plaintiffs frequently will not have notice as to

13   whether a place prohibits carrying arms on that property.  Plaintiffs anticipate that

14   Defendants will deny and dispute this allegation. Plaintiffs desire a judicial

15   declaration of their rights and of the duties of the State on this question.

16   108.   Plaintiffs Flores and Dr. Hough own businesses and allege that SB 2

17   imposes unconstitutional compelled-speech requirements on them by forcing them

18   to post signage if they want to welcome people with CCW permits. This is a facial

19   and as-applied challenge under the First Amendment. Plaintiffs desire a judicial

20   declaration of their rights and of the duties of the State on this question.

21   **INJUNCTIVE RELIEF ALLEGATIONS**

22   109.   Injunctive relief is necessary to prevent the State from enforcing SB 2

23   against people with CCW permits who carry firearms in public. Specifically,

24   Plaintiffs will request that this Court enjoin – statewide – the enforcement of

25   California Penal Code Section 26230(a).

26   110.   If the California legislature follows standard practices, SB 2 will take

27   effect January 1, 2024. Plaintiffs intend to seek an injunction that takes before that

28   time. Should SB 2 take effect, Plaintiffs will be irreparably injured insofar as its

provisions preclude Plaintiffs from exercising rights guaranteed by the Second and Fourteenth Amendments. Defendants' enforcement of SB 2 would deny Plaintiffs the right to possess firearms or ammunition in places where they are constitutionally entitled to do so without subjecting themselves to risk of criminal prosecution, including for the lawful purpose of carrying those arms for self-defense.

111.   SB 2 also contains no signage requirement for places where carry is forbidden, so Plaintiffs have no notice of whether they are violating the law at many of the places they would like to carry. This violates Plaintiffs' due process rights guaranteed by the Fourteenth Amendment.

112.   SB 2 also unconstitutionally compels speech for Plaintiffs Flores and Dr. Hough who wish to continue to welcome people with CCW permits to carry in their businesses.

113.   If not enjoined by this Court, Defendants (and law enforcement agencies throughout the state) may enforce SB 2 in violation of Plaintiffs' Second and Fourteenth Amendment rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate and unascertainable and would not fully redress any harm suffered by Plaintiffs to engage in activity protected by the Second and Fourteenth Amendments.

114.   The injunctive relief sought would eliminate that irreparable harm and allow Plaintiffs to exercise their rights to possess a firearm and ammunition in *non*-sensitive public places, including for self-defense. Accordingly, injunctive relief is appropriate.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

115.   Plaintiffs hereby reallege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

116.   SB 2 prohibits Plaintiffs (and similarly situated people) with CCW permits from carrying firearms in public for lawful purposes, including self-defense, in violation of the Constitution.

117.   Plaintiffs are prohibited from possessing a firearm or ammunition in places listed in the new Penal Code Section 26230; which includes areas that are manifestly *not* "sensitive places" under Supreme Court precedents interpreting the original meaning of the Second Amendment.

118.   By prohibiting law-abiding adults, like Plaintiffs, from bearing arms for self-defense in places where the Second and Fourteenth Amendments guarantee their rights to do so, SB 2 violates those Amendments.

119.   Defendants are thus propagating customs, policies, and practices that deprive California residents, including Plaintiffs, of their constitutional rights to bear arms for self-defense in *non*-sensitive public places, as guaranteed by the Second and Fourteenth Amendments.

120.   Defendants cannot satisfy their burden to justify these customs, policies, and practices that preclude Plaintiffs from exercising those enumerated rights.

121.   Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

**SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. XIV**
**RIGHT TO DUE PROCESS (NOTICE)**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

122.     Plaintiffs hereby reallege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

123.   SB 2 prohibits Plaintiffs with CCW permits from carrying arms in a multitude of non-sensitive public places, in violation of the Constitution. The areas that SB 2 covers include areas that are not even remotely like the "sensitive places" the Supreme Court has presumptively identified, nor are they historically analogous to such places.

124.   As a result, Plaintiffs are prohibited from possessing a firearm or ammunition in any of the places listed in the new California Penal Code Section 26230, which includes areas that markedly are not "sensitive places."

125.   Penal Code Section 26230, however, contains no requirement that signage be posted at all these newly forbidden places, notifying Plaintiffs that carry is prohibited. Plaintiffs thus risk inadvertently entering a place where carry is prohibited despite possessing valid CCW permits, putting them in serious legal jeopardy.

126.   In this way, Penal Code Section 26230 violates Plaintiffs' due process rights by failing to provide them sufficient notice.

127.   Defendants are thus propagating customs, policies, and practices that deprive California residents, including Plaintiffs, of their constitutional right to due process, as guaranteed by the Fourteenth Amendment.

128.   Defendants cannot satisfy their burden to justify these customs, policies, and practices that violate due process.

129.   Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

**THIRD CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. I**
**RIGHT TO FREE SPEECH**
**42 U.S.C. § 1983**
**PLAINTIFFS FLORES AND DR. HOUGH AGAINST ALL DEFENDANTS**

130.   Plaintiffs hereby reallege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

131.   SB 2 prohibits Plaintiffs with CCW permits from carrying in several non-sensitive places, in violation of the Constitution. The areas that SB 2 covers include areas that are not even remotely like the "sensitive places" the Supreme Court has presumptively identified, nor are they historically analogous to such places.

132.   Relevant to business owners, SB 2 implements California Penal Code Section 26230(a)(26), which prohibits carry at all privately owned commercial establishments that are open to the public, "unless the operator of the establishment clearly and conspicuously posts a sign at the entrance of the building or on the premises indicating that license holders are permitted to carry firearms on the property."

133.   Prior to SB 2, Plaintiffs Flores and Dr. Hough welcomed customers and patients with valid CCW permits, as they were permitted to carry on their respective business premises. Now, Plaintiffs must post conspicuous signage affirmatively allowing people to carry on their premises. Plaintiffs object to this compelled speech as it forces them to take a public stance on an issue that is controversial in California.

134.   Defendants are thus propagating customs, policies, and practices that deprive California residents, including Plaintiffs, of their constitutional rights to free speech by compelling government mandated speech if Plaintiffs wish to continue to allow their customers and patients to exercise their rights to bear arms on their properties. The First Amendment forbids this.

135.   Defendants cannot satisfy their burden to justify these customs,

51

1 policies, and practices that violate free speech.

2     136.   Plaintiffs are thus entitled to declaratory and injunctive relief against

3 such unconstitutional customs, policies, and practices.

4 **PRAYER**

5     WHEREFORE, Plaintiffs request that judgment be entered in their favor and

6 against Defendants as follows:

7     1.    A declaration that SB 2 and California Penal Code Section 26230(a),

8 which it enacts into law, include areas that are not "sensitive places" where

9 restrictions on firearm and ammunition possession have traditionally been tolerated

10 under the Second Amendment;

11     2.    A declaration that California Penal Code Section 26230(a) violates the

12 Second and Fourteenth Amendments facially and as applied to Plaintiffs, insomuch

13 as it precludes law-abiding citizens from possessing a firearm or ammunition in

14 public areas that are not "sensitive places."

15     3.    A declaration that California Penal Code Section 26230(a) violates due

16 process by not requiring signage or any other form of notice in all places that are

17 off-limits for carry, thus robbing Plaintiffs of fair notice regarding whether or not

18 they are violating the law;

19     4.    A declaration that California Penal Code Section 26230(a) violates the

20 First Amendment by compelling speech on the part of business owners if they want

21 to allow carry on their property;

22     5.    An order preliminarily and permanently enjoining Defendants and all

23 other officers, agents, servants, employees, and persons under the authority of the

24 State, from enforcing California Penal Code Section 26230(a);

25     6.    Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C.

26 Section 1988; and

27     7.    All other relief the court deems appropriate.

28

52

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Respectfully Submitted,

Dated:  September 12, 2023          **MICHEL & ASSOCIATES, P.C.**

*/s/Konstadinos T. Moros*
Konstadinos T. Moros
Counsel for Plaintiffs

Dated:  September 12, 2023          **LAW OFFICES OF DON KILMER**

*/s/ Don Kilmer*
Don Kilmer
Counsel for Plaintiff The Second Amendment
Foundation

## ATTESTATION OF E-FILED SIGNATURES

I, Konstadinos T. Moros, am the ECF User whose ID and password are being used to file this COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. In compliance with Central District of California L.R. 5-4.3.4, I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: September 12, 2023          */s/Konstadinos T. Moros*
Konstadinos T. Moros

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF