| | |
|---|---|
| 1 | C. D. Michel – SBN 144258 |
|   | cmichel@michellawyers.com |
| 2 | Sean A. Brady – SBN 262007 |
|   | sbrady@michellawyers.com |
| 3 | Konstadinos T. Moros – SBN 306610 |
|   | kmoros@michellawyers.com |
| 4 | MICHEL & ASSOCIATES, P.C. |
|   | 180 E. Ocean Blvd., Suite 200 |
| 5 | Long Beach, CA 90802 |
|   | Telephone: (562) 216-4444 |
| 6 | Facsimile:   (562) 216-4445 |
| 7 | Donald Kilmer-SBN 179986 |
|   | Law Offices of Donald Kilmer, APC |
| 8 | 14085 Silver Ridge Road |
|   | Caldwell, Idaho 83607 |
| 9 | Telephone: (408) 264-8489 |
|   | Email: Don@DKLawOffice.com |
| 10 | |
|   | Attorneys for Plaintiffs |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| RENO MAY, an individual; ANTHONY MIRANDA, an individual; ERIC HANS, an individual; GARY BRENNAN, an individual; OSCAR A. BARRETTO, JR., an individual; ISABELLE R. BARRETTO, an individual; BARRY BAHRAMI, an individual; PETE STEPHENSON, an individual; ANDREW HARMS, an individual; JOSE FLORES, an individual; DR. SHELDON HOUGH, DDS, an individual; SECOND AMENDMENT FOUNDATION; GUN OWNERS OF AMERICA; GUN OWNERS FOUNDATION; GUN OWNERS OF CALIFORNIA, INC.; THE LIBERAL GUN CLUB, INC.; and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, <br><br> Plaintiffs, <br> v. <br><br> ROBERT BONTA, in his official capacity as Attorney General of the State of California, and DOES 1-10, <br><br> Defendants. | Case No.: 8:23-cv-01696 CJC (ADSx) <br><br> **DECLARATION OF BRIAN R. MARVEL, PRESIDENT OF PEACE OFFICERS RESEARCH ASSOCIATION OF CALIFORNIA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> **42 U.S.C. §§ 1983 & 1988** <br><br> Hearing Date:  December 4, 2023 <br> Hearing Time:  1:30 p.m. <br> Courtroom:      9 B <br> Judge:          Hon. Cormac J. Carney |

DECLARATION OF BRIAN R. MARVEL

# DECLARATION OF BRIAN R. MARVEL

I, Brian R. Marvel, declare:

1. Since 2018, I have served as the elected President of Peace Officers Research Association of California ("PORAC"). I am a Police Officer, and as the President of PORAC, I represent the interests of law enforcement on a daily basis both in California and nationally. I also serve on the Governor's Medal of Valor Review Board, and the California Peace Officers Memorial Foundation ("CPOMF"). I am a former Navy veteran qualified as a small arms instructor and armorer.

2. Founded in 1953, PORAC is a professional federation of local, state, and federal law enforcement agencies that represents over 80,000 law enforcement and public safety professionals in California. It is the largest law enforcement organization in California and the largest statewide association in the Nation. It has a significant presence in Sacramento where it lobbies on behalf of its membership.

3. PORAC's mission is to maintain a leadership role in organizing, empowering, and representing the interests of rank-and-file peace officers. It works to identify the needs of the law enforcement community and provide programs to meet those needs through conducting research, providing education and training, and defining and enhancing standards for professionalism. Its goal is to protect the rights and benefits of officers while also creating an environment in which the law enforcement community can interact and work toward achieving common goals and objectives.

4. PORAC believes that law-abiding citizens have a Constitutional right to be armed for self-defense. Self-defense "is one of the inalienable rights guaranteed by the constitution of the state." (*People v. McDonnell* (1917) 32 Cal.App. 694; Cal. Const. Art. 1, § 1.)  "Central to the rights guaranteed by the Second Amendment is 'the inherent right of self-defense.'" (*United States v. Torres*, 911 F.3d 1253 (9th Cir. 2019), citing *District of Columbia v. Heller,* 554

1

U.S. 570 (2008).) Thus, the Second Amendment is an important part of American life for both law enforcement officers and members of the public. Armed citizens do for themselves what law enforcement cannot always be there to do.

5. I am submitting this declaration because California's newly enacted Penal Code section 26230, passed as part of S.B. 2, is out of step with PORAC's values. PORAC believes in encouraging citizens who wish to exercise their Constitutional right to carry to go through the legal process to do so and acquire concealed handgun licenses ("CCW permits"). S.B. 2 undermines that goal by rendering CCW permits effectively impossible to exercise in California by defining nearly every location a purported "sensitive place" where carry is prohibited. This will undoubtedly discourage people from even applying for CCW permits, which is perhaps part of the goal behind the law.

6. PORAC supports criminal background investigations, firearm safety training and proficiency verifications, but PORAC must oppose Senate Bill ("S.B.") 2 unless amended to incorporate sensitive places definitions that are consistent with *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). As our members have a duty both to enforce California criminal statutes and to uphold the Constitution, firearm legislation primarily targeting law-abiding citizens must be carefully and constitutionally drafted.

7. While PORAC agrees with some of the sensitive places listed in section 26230, such as schools, courthouses and polling places, under S.B. 2 nearly every public place is designated a "sensitive place" where carry is forbidden, even with a CCW permit. The expansiveness of this legislation's "sensitive places" definition is exceeded only by the outright prohibition on concealed carried in the New Mexico Department of Health's "Public Health Emergency Order Imposing Temporary Firearm Restrictions" which was enjoined on September 13, 2023. (Nat'l Ass'n for Gun Rts. v. Grisham, No. 1:23-CV-00771-DHU-LF, 2023 WL 5951940 (D.N.M. Sept. 13, 2023).) Law abiding citizens would be deemed

criminals in California simply for exercising their constitutional right to bear arms, while a criminal intent on causing harm with a firearm will not be deterred by these sensitive places designations. In fact, someone intent on committing a mass murder will likely chose to do so in a "sensitive" place, where he or she is less likely to encounter armed victims.

8. The existing sensitive places definitions provide a proper balancing of legitimate safety concerns against self-defense rights. S.B. 2 fails to adhere to the directive of the Supreme Court in *Bruen*, and instead seeks to obviate its efficacy. This legislation is so extreme, S.B. 2 even bans carry in private businesses open to the general public unless the property owners affirmatively puts up a sign welcoming people with firearms. Many businesses may be hesitant to post such notices for fear of being forced into a political controversy or pressured by public officials. The prohibition even extends to public transposition, imposing discriminatory impacts on people of lesser means and harming the environment.

9. PORAC's members will be required to enforce this law, which will subject them to claims of civil rights violations and discrimination from otherwise law-abiding citizens. Enforcement of this legislation is also likely to lead to negative interactions with members of the public that may damage public confidence in law enforcement or lead to avoidable assaults on officers.

10. Moreover, the Assembly Committee on Appropriations estimates that the costs of implementing this bill will be as high as $16.8 million for the state Department of Justice in fiscal year 2025-26 and an ongoing cost of $13.9 million annually. https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=202120220SB2# The report also found that "unknown but significant" reimbursable costs will be imposed on local law enforcement agencies.

11. These costs will divert PORAC members from suppressing and investigating crimes and instead require them to implement a Constitutionally

3

DECLARATION OF BRIAN R. MARVEL

suspect licensing regime which will not improve public safety. "In California, no shooting by a CCW holder has ever occurred at an existing protected location or one proposed by S.B. 2." (*SB 2 – A Law in Search of a Crime*, Steve Smith, September 19, 2023, Pacific Research Institute at https://www.pacificresearch.org/sb-2-a-law-in-search-of-a-crime/.) Burdening law enforcement officers with enforcing arbitrary restriction on where otherwise law abiding and licensed citizens can carry will impair their ability to stop actual public safety threats.

12. These rules simply make no sense from a law enforcement perspective. S.B. 2 has little impact on violent individuals who are likely to commit crimes with firearms, who will ignore the law and obviously do not bother getting CCW permits in the first place.

13. It's important to keep in mind that getting a CCW permit in California requires considerable effort and expense. Applicants subject themselves to a months-long process that includes considerable expense, a mandatory training course, a thorough background check conducted by the Department of Justice, and sometimes even a psychological exam in certain jurisdictions. People who are willing to go through this process before they exercise their right to carry are simply not likely to break the law; quite the opposite – they demonstrate a tremendous law-abiding predisposition. Criminals intent on committing gun violence are not going to obtain concealed carry permits, nor refrain from committing gun crimes in areas simply because its labeled a "sensitive place."

14. For these reasons, PORAC joins with several other law enforcement organizations in opposing S.B. 2's overly expansive "sensitive places" restrictions. For example, the California State Sheriffs' Association gave testimony to the State Senate saying in part "*[t]he circumstance of a CCW holder committing a crime is exceedingly rare yet this bill imposes overreaching provisions that will likely be challenged in court, leaving uncertainty in issuance procedures. Instead of focusing*

*on a law-abiding population, efforts should address preventing gun crimes committed by those who disobey the law and holding them accountable.*" PORAC entirely agrees.

15. There is no principled reason why all law-abiding citizens in California who get CCW permits should not be able to carry a firearm in most places permitted prior to the enactment of S.B. 2. PORAC believes in the legitimacy of the entire Constitution, and that means the right of the people to keep and bear arms under the Second Amendment. As peace officers, we have an obligation to safeguard people's Constitutional rights. We urge this Court to grant Plaintiffs' requested preliminary injunction.

16. On August 15, 2023, Attorney General Rob Bonta issued a press release stating, "[g]un violence is America's disease, and it's infecting our communities and traumatizing our families. Protecting public safety and preventing further devastation from these tragedies is my top priority." (Attorney General Bonta Releases First-Ever Data Report by DOJ's Office of Gun Violence Prevention, https://oag.ca.gov/news/press-releases/attorney-general-bonta-releases-first-ever-data-report-doj%E2%80%99s-office-gun-violence?print=true) As a father and the President of PORAC, I agree the Attorney General's concerns, but unfortunately this legislation will have no appreciable impact on gun violence.

17. I strongly believe that scarce law enforcement resources and personnel should be directed at suppressing violent crime and prosecuting those who use firearms to commit violent crimes to the fullest. Currently, progressive prosecutors in large urban counties, such as Los Angeles and Contra Costa, have adopted policies and directives effectively prohibiting enforcement of the Three Strikes law and Penal Code section 12022.53. These laws had dramatically reduced gun violence in California by ensuring that the most dangerous criminals who use firearms in the commission of specified crimes are off the streets and incarcerated for meaningful sentences.

18. Penal Code section 12022.53 applies to the most serious felonies, such as murder, rape, mayhem, kidnapping, robbery, carjacking, lewd acts on a child, and assault with a firearm on a peace officer or firefighter. In response to surging gun violence, the California Legislature enacted these sentence enhancements to disincentivize criminals from using guns while committing crimes, thereby reducing the public risk of death or great bodily injury. Persons convicted of enumerated felonies who use firearms in the commission of their crimes are subject to enhancements of 10 years for possession of the firearm, 20 years if they discharge the firearm, and 25 years to life if the discharge causes great bodily injury or death.

19. District Attorney Gascón issued Special Directive 20-08.02 on December 18, 2020, which states in part, "[t]he following sentence enhancements and allegations shall not be pursued in any case and shall be withdrawn in pending matters: … Firearm allegations pursuant to Penal Code section 12022.53 shall not be filed, will not be used for sentencing, and will be dismissed or withdrawn from the charging document."

20. District Attorney Price has adopted similar directives prohibiting Alameda County prosecutors from charging over 100 sentencing enhancements. (See, https://www.alcoda.org/a-statement-from-alameda-county-district-attorney-pamela-y-price-on-special-directive-23-01/ .) Prices' Special Directive 23-01, March 1, 2023, provides that "[f]irearm allegations pursuant to Penal Code section 12022.53 shall not be filed and will not be used for sentencing, and will be dismissed or withdrawn from the charging document."

21. Rather than encumber California's already overburdened peace officers with enforcing feel-good legislation designating most public places as sensitive areas, public officials should actually enforce existing law which make it a crime for prohibited persons, such as felons, to possess any gun, anywhere. Enforcement of S.B. 2's sensitive places definition will entangle law enforcement

officers in unending legal proceedings over the infringement of the Constitutional Rights of law-abiding citizens who completed safety training and passed through background checks as a prerequisite to obtaining a CCW permit.

22. The willful nonenforcement of existing gun laws targeting actual public safety threats has already led to dire consequences. Sadly, on June 14, 2022, two El Monte peace officers were murdered by a gang member who, by all accounts, should have been in prison after being arrested for unlawful possession of a firearm. Due to the failure of the District Attorney in Los Angeles to enforce prohibited persons laws these two officers were murdered.

23. In fact, the Attorney General appears to have abdicated his constitutional and statutory authority to "step in and prosecute" these gun cases "to ensure that the laws of the state are enforced rather than to insulate criminal defendants from enforcement of the laws." (*People v. Honig* (1996) 48 Cal.App.4th 289, 354.) The California constitution requires the Attorney General "to see that the laws of the State are uniformly and adequately enforced." (Cal. Const., art. V, § 13.) Government Code section 12250 also authorizes the Attorney General to assume full responsibility for enforcing criminal laws within each county and permits the Governor to direct the Attorney General to do so in the public interest.

24. Invalidating this ineffectual, politically motivated legislation may force the State of California, the Attorney General, and local prosecutors to fulfil their public obligation to actually reduce and prevent gun violence, firearm injury, and related trauma by imposing serious consequences on those who use firearms to commit violent crimes.

25. PORAC supports reasonable and longstanding definitions of sensitive places where concealed carry is not permitted.  PORAC also supports narrowly tailored training and proficiency requirements, and good moral character requirements that grant discretion to deny CCW violent or serious felony suspects and convicts.  However, I believe this legislation extends far beyond the

permissible parameters under *Bruen* and will place PORAC members in the untenable position of enforcing an unconstitutional law or facing charges of insubordination.

    I declare under penalty of perjury of the laws of State of California and the United States that the foregoing is true and correct. Executed within the United States on September 29, 2023.

_____
Brian R. Marvel, declarant

# CERTIFICATE OF SERVICE
## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Case Name: *May, et al. v. Bonta*
Case No.: 8:23-cv-01696 CJC (ADSx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**DECLARATION OF BRIAN R. MARVEL, PRESIDENT OF PEACE OFFICERS RESEARCH ASSOCIATION OF CALIFORNIA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Robert L. Meyerhoff, Deputy Attorney General
California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Email: Robert.Meyerhoff@doj.ca.gov
*Attorney for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed September 29, 2023.

_Laura Palmerin_