ROB BONTA
Attorney General of California
MATTHEW WISE
MARK R. BECKINGTON
Supervising Deputy Attorneys General
TODD GRABARSKY
JANE REILLEY
LISA PLANK
ROBERT L. MEYERHOFF
Deputy Attorneys General
State Bar No. 298196
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6177
Fax: (916) 731-2144
E-mail: Robert.Meyerhoff@doj.ca.gov
*Attorneys for Rob Bonta, in his Official Capacity as Attorney General of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

**RENO MAY, an individual, et al.,**

Plaintiffs,

**v.**

**ROBERT BONTA, in his official capacity as Attorney General of the State of California, and Does 1-10,**

Defendants.

**MARCO ANTONIO CARRALERO, an individual, et al.,**

Plaintiffs,

**v.**

**ROBERT BONTA, in his official capacity as Attorney General of California,**

Defendant.

Case Nos. 8:23-cv-01696 CJC (ADSx)
8:23-cv-01798 CJC (ADSx)

**DECLARATION OF PATRICK J. CHARLES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Date: December 20, 2023
Time: 1:30 p.m.
Courtroom: 9B
Judge: Hon. Cormac J. Carney

**DECLARATION OF PATRICK J. CHARLES**

Pursuant to 28 U.S.C. § 1746, I, Patrick J. Charles, declare and state as follows:

1. I am over the age of eighteen (18) years, competent to testify to the matters contained in this declaration and testify based on my personal knowledge and information.

2. I have been retained by the Office of the Attorney General for California as a historical and constitutional expert on Second Amendment matters. I also have expertise in legal history and its multiple uses in adjudicating constitutional questions.

3. California is currently defending multiple lawsuits, including *May v. Bonta*, C.D. Cal. No. 8:23-cv-01696 CJC (ADSx) and *Carralero v. Bonta*, C.D. Cal. No. 8:23-cv-01798 CJC (ADSx), challenging California laws and regulations that govern where individuals may legally wear, carry, and transport firearms.

4. I have read the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), and California has asked me to expound on the history of the law restricting armed carriage in locations jurisprudentially referred to as "sensitive places."

5. Most of the information contained in this declaration is from research conducted prior to having been retained by the Office of the Attorney General for California on September 26, 2023.

**BACKGROUND AND QUALIFICATIONS**

6. I am a historian, legal scholar, and author of dozens of articles and books on the Constitution, legal history, and standards of review. I received my L.L.M. in Legal Theory and History with distinction from Queen Mary University of London in 2014, J.D. from Cleveland-Marshall College of Law in 2009, and B.A. in History and International Affairs with honors from George Washington University in 2005. My writings on the history of the law have been cited by the

Supreme Court of the United States, federal Circuit Courts of Appeal, federal District Courts, and State supreme courts. A true and correct copy of my curriculum vitae is attached as **Exhibit 1** to this declaration.

7. For the past 13 years I have served as a historian for the United States Air Force (USAF) in several capacities, including deploying several times with Special Operations Forces (SOF) for contingency operations in Afghanistan and the Middle East. I currently serve as the Oral History and Studies Division Chief for the Air Force Historical Research Agency (AFHRA) located at Maxwell Air Force Base, Alabama, where I oversee all Department of Air Force (DAF) oral history interviews and historical studies.

8. This declaration was compiled and completed outside my official duties for the USAF and DAF. Moreover, the contents and opinions expressed in this declaration are solely my own, and not those of the USAF, DAF, AFHRA, Department of Defense, or the federal government.

## I. THE HISTORY OF "SENSITIVE PLACES" THROUGH THE NINETEENTH CENTURY

9. For nearly five centuries in England, from the late thirteenth century through the late eighteenth century, what constituted a "sensitive place" in which arms bearing could be regulated or altogether restricted was rather broad. It encompassed densely populated areas, as well as areas where people regularly congregated for lawful purposes or conducted commerce. The text "fairs" and "markets" language contained within the 1328 Statute of Northampton makes this abundantly clear. 2 Edw. 3, c. 3 (1328) (Eng.). So too do several other English legal sources. For instance, in 1351, Edward III issued a proclamation declaring it was unlawful to "go armed" with dangerous weapons "within the City of London, or within the Suburbs, or any other places between the said city and the Palace of Westminster…except the officers of the King…" *Royal Proclamation as to the Wearing of Arms in the City, and at Westminster; and as to Playing at Games in the*

*Palace at Westminster*, MEMORIALS OF LONDON AND LIFE 268-69, 273 (H.T. Riley ed., 1868). Similarly, in John Carpenter's 1419 treatise *Liber Albus*, it stipulates that "no one, of whatever condition he be, go armed in the said *city [of London] or in the suburbs*, or carry arms, by day or by night, except the va[]lets of the great lords of the land, carrying the swords of their masters in their presence, and the serjeants-at-arms of his lordship the King, of my lady the Queen, the Prince, and the other children of his lordship the King, and the officers of the City, and such persons as shall come in their company in aid of them, at their command, for saving and maintaining the said peace; under the penalty aforesaid, and the loss of their arms and armour." JOHN CARPENTER, LIBER ALBUS: THE WHITE BOOK OF THE CITY OF LONDON (Henry Thomas Riley ed., 1861); *see also id*. at 229, 555, 556, 558, 560, 580 (providing other examples denoting that going armed in densely populated public places was unlawful).

10. As it pertains to express restrictions on carrying dangerous weapons into specific locations, English law was relatively silent. This is because English restrictions on going armed in "sensitive places" were worded quite broadly, and therefore there was no need for the law to carve out individual locations. Churches or places of worship are one notable exception. *See* 4 Hen 4, c. 29 (1403) ("no Man be armed nor bear defensible armor to Merchant Towns Churches nor Congregations in the same, nor in the Highways, in affray of the Peace or the King's Liege people").

11. As to whether this broad, English understanding of what constituted a "sensitive place"—that is where arms bearing could be restricted—traveled across the Atlantic, local enforcement records did not survive for historical posterity, and therefore it is impossible for historians or anyone to reconstruct exactly how often, when, and where armed carriage restrictions were enforced. Most instances of legal enforcement were done at the local level, and, as a result, the records of said enforcement have been lost to time. And those records of enforcement that have

miraculously survived often require time consuming, archival research, not ad hoc, keyword digital searches. *See, e.g.,* Laura Edwards, *Weapons and the Peace*, DUKE CTR. FOR FIREARMS LAW (Jul. 25, 2023), https://firearmslaw.duke.edu/2023/07/weapons-and-the-peace/.

12.     What the historical record does unequivocally inform is that armed carriage restrictions and the English common law against 'going armed' in urban and densely populated locations indeed made their way into the American Colonies and subsequent United States. *See* Patrick J. Charles, *The Faces of the Second Amendment Outside the Home: History Versus Ahistorical Standards of Review*, 60 CLEV. ST. L. REV. 1, 31-32 (2012). Additionally, historians can state with certainty that state and local governments were well within their authority to prohibit armed assemblies circa the late eighteenth century, no matter whether said assemblies were deemed the militia or not. *See* Patrick J. Charles, *The 1792 National Militia Act, the Second Amendment, and Individual Militia Rights: A Legal and Historical Perspective*, 9 GEO. J.L. & PUB. POL'Y 323, 326,-27, 374-90 (2011); AN ACT TO PREVENT ROUTS, RIOTS, AND TUMULTUOUS ASSEMBLIES, AND THE EVIL CONSEQUENCES THEREOF, SEPTEMBER SESSION, CHAPTER VIII (Mass. 1786); AN ACT FOR THE MORE SPEEDY AND EFFECTUAL SUPPRESSION OF TUMULTS AND INSURRECTIONS IN THE COMMONWEALTH, SEPTEMBER SESSION, CHAPTER IX (Mass. 1787); AN ACT TO PREVENT ROUTS, RIOTS, AND TUMULTUOUS ASSEMBLIES (N.J. 1797); AN ACT TO PREVENT HUNTING WITH FIRE-ARMS IN THE CITY OF NEW-YORK, AND THE LIBERTIES THEREOF (NY 1763); AN ACT AGAINST RIOTS AND RIOTERS (Pa. 1705); *see also* WILLIAM RAWLE, A VIEW OF THE CONSTITUTION OF THE UNITED STATES 126 (2d ed., 1829) (noting that the Second Amendment "ought not…in any government…be abused to the disturbance of the public peace," which included the assembling "of persons with arms, for an unlawful purpose"). This is because it had

long been understood that any armed assemblage required the consent of government officials.[1]

13. The mid-to-late nineteenth century saw state and local governments within the United States enacting express, location specific armed carriage restrictions.[2] Beginning with state laws, in 1869 Tennessee enacted a law restricting the carrying of dangerous weapons into "any election…fair, race course, or other public assembly of the people." PUBLIC STATUTES OF THE STATE OF TENNESSEE SINCE THE YEAR 1858, at 108 (James H. Shankland ed., 1871), *available at* https://catalog.hathitrust.org/Record/010432413. Not long thereafter, in 1870, Texas enacted a law restricting the carrying of dangerous weapons "into any church or religious assembly, any school-room or other place where persons assembled for educational, literary, or scientific purposes, or into a ball room, social party, or other social gathering, composed of ladies and gentlemen, or to any election precinct on the day or days of any election, where any portion of the people of this state are collected to vote at any election, or to any other place where people may be assembled to muster or to perform any other public duty, or any other public assembly…" 2 GEORGE W. PASCHAL, A DIGEST OF THE LAWS OF TEXAS: CONTAINING THE LAWS IN FORCE, AND THE REPEALED LAWS ON WHICH RIGHTS REST FROM 1864 TO 1872, at 1322 (1873), *available at* https://catalog.hathitrust.org/Record/010448003. That very same year, Georgia enacted a law providing that "no person in said State of Georgia be permitted or allowed to carry about his or her person any . . . pistol or revolver, or any kind of

[1] This understanding of the law goes all the way back to the 1328 Statute of Northampton. *See* 2 Edw. 3, c. 3 (1328) (Eng.); *see also* 3 CALENDAR OF CLOSE ROLLS, RICHARD II, 1385-1389, at 399-400 (May 16, 1388, Westminster) (H.C. Maxwell-Lyte ed., 1914); 1 CALENDAR OF CLOSE ROLLS, RICHARD II, 1377-1381, at 34 (December 1, 1377, Westminster) (H.C. Maxwell-Lyte ed., 1914).

[2] There are, of course, a few exceptions, such as two mid-seventeenth century Maryland laws that prohibited dangerous weapons within legislative assemblies. 1647 Md. Laws 216; 1650 Md. Laws 273. But other than these two Maryland laws, the historical record until the mid-to-late nineteenth century provides very little in the way of express "sensitive" locations where armed carriage could be prohibited.

deadly weapon, to any Court of justice, or any election ground, or precinct, or any place of public worship, or any other public gathering in this State…" ACTS AND RESOLUTIONS OF THE GENERAL ASSEMBLY OF THE STATE OF GEORGIA PASSED…AT THE SESSION OF 1870, at 421 (1870), *available at* https://catalog.hathitrust.org/Record/100143502.

14.    In 1874, Missouri followed suit by enacting a restriction on carrying "any kind of fire-arms…or other deadly weapon" into "any place where people may be assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any court-room during the sitting of court, or into any other public assemblage of persons meet for other than militia drill or meetings…" ACTS OF THE…GENERAL ASSEMBLY OF THE STATE OF MISSOURI 43 (1874), *available at* https://catalog.hathitrust.org/Record/000534559; *see also* LAWS OF MISSOURI: GENERAL AND LOCAL LAWS PASSED AT THE REGULAR SESSION OF THE TWENTY-EIGHTH GENERAL ASSEMBLY 50-51 (1875), *available at* https://catalog.hathitrust.org/Record/000534559 (same). In 1883, Missouri amended the law to increase the fine. LAWS OF MISSOURI PASSED AT THE SESSION OF THE THIRTY-SECOND GENERAL ASSEMBLY 76 (1883), *available at* https://catalog.hathitrust.org/Record/000534559.

15.    In 1889, Arizona enacted a law providing that "[i]f any person shall go into any church or religious assembly, any school room, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into a ball room, social party or social gathering, or to any election precinct on the day or days of any election, where any portion of the people of this Territory are collected to vote at any election, or to any other place where people may be assembled to minister or to perform any other public duty, or to any other public assembly, and shall have or carry about his person a pistol or other firearm . . . he shall be punished by a fine not less than fifty nor more than five hundred dollars, and shall forfeit to the County

the weapon or weapons so found on his person." ACTS, RESOLUTIONS AND MEMORIALS OF THE FIFTEENTH LEGISLATIVE ASSEMBLY OF THE TERRITORY OF ARIZONA 30-31 (1889), *available at* https://catalog.hathitrust.org/Record/010083734. Then there was the state of Oklahoma, which in 1890 restricted the carrying of dangerous weapons "into any church or religious assembly, any school room or other place where persons are assembled for public worship, for amusement, or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into any ball room, or to any social party or social gathering, or to any election, or to any place where intoxicating liquors are sold, or to any political convention, or to any other public assembly…" STATUTES OF OKLAHOMA 1890, at 495-96 (Will T. Little, L.G. Pitman, & R.J. Barker eds., 1891), *available at* https://catalog.hathitrust.org/Record/010447936.

16. In addition to the above state laws, there was an abundance of mid-to-late nineteenth century ordinances restricting the carrying of dangerous weapons in so-called "sensitive places."[3] The reason that so many localities enacted these ordinances was the prevalence of the legal concept of "firearms localism"—this concept being a preference among state and local lawmakers to regulate firearms and deadly weapons more strictly at the local rather than the state level. *See* Joseph Blocher, *Firearms Localism*, 123 YALE L.J. 82, 112-16 (2013).[4] One example is

[3] *See, e.g., An Ordinance*, July 9, 1891, *reprinted in* WACO DAILY NEWS (Tx), July 12, 1891, at 8 (**Exhibit 2**) ("If any person shall go into any church or religious assembly, any schoolroom, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into any ball room, or social party or social gathering or to any election precinct on the day or the days of any election, where any portion of the people of the State are collected to vote at any election, or to any other place where people may be assembled to muster, or to perform any public duty, or to any other public assembly, and shall have or carry about [their] person a pistol or other fire-arm…[they] shall be punished by a fine…").

[4] Many mid-to-late nineteenth century state laws and local government charters bear this out. *See, e.g.,* ACTS OF THE GENERAL ASSEMBLY OF THE COMMONWEALTH OF KENTUCKY 1066, 1076 (1893), *available at*

(continued…)

that of Columbia, Missouri, which in 1890 passed an ordinance expressly restricting the carrying of dangerous weapons "into any church, or place where people have assembled for religious worship; or into any school room, or place where people are assembled for educational, literary or social purposes; or into any court room, during the sitting of court, or to any election precinct on any election day; or into any other public assemblage of persons met for any lawful purpose…" *Chapter XVII: Carrying Concealed Weapons—Firing Guns, Pistols, Fire Crackers, Etc.*, May 22, 1890, *reprinted in* GENERAL ORDINANCES OF THE TOWN OF COLUMBIA, IN BOONE COUNTY, MISSOURI 34, 35 (Lewis M. Switzler ed., 1890), *available at* https://catalog.hathitrust.org/Record/001754262.[5] The Columbia

---

https://catalog.hathitrust.org/Record/010134273 (providing all Kentucky cities "of the third class" wide latitude to "regulate the sale of fire-arms, and to prevent the carrying of concealed deadly weapons" and make "all police regulations to secure and protect the general health, comfort, convenience, morals and safety of the public"); THE LAWS OF THE STATE OF KANSAS 118, 134 (1871), *available at* https://catalog.hathitrust.org/Record/100836175 (providing all Kansas cities "of the third class" wide latitude to "prohibit and punish the carrying of firearms or other deadly weapons, concealed or otherwise"); LAWS OF THE STATE OF INDIANA PASSED AT THE FIFTY-FIRST REGULAR SESSION OF THE GENERAL ASSEMBLY 201, 202 (1879), *available at* https://catalog.hathitrust.org/Record/008892461 (1879 law providing all Indiana towns the authority "to regulate or prohibit the use of firearms, fireworks, or other things tending to endanger persons and property"); ACTS OF TENNESSEE: EXTRAORDINARY SESSION 48, 55 (1885), *available at* https://catalog.hathitrust.org/Record/100666682 (providing the mayor and alderman of the city of Knoxville the authority to "prevent and suppress the sale of fire-arms and carrying of concealed weapons"); ACTS OF THE ONE HUNDRED AND TWELFTH LEGISLATURE OF THE STATE OF NEW JERSEY AND THE FORTY-FOURTH UNDER THE NEW CONSTITUTION 483, 501 (1888), *available at* https://catalog.hathitrust.org/Record/010134285 (1888 law providing all New Jersey towns the authority "to regulate or prohibit the use of firearms and the carrying of weapons of any kind"); THE COMPLETE CODES AND STATUTES OF THE STATE OF MONTANA IN FORCE JULY 1, 1895, at 424, 427 (1895), *available at* https://catalog.hathitrust.org/Record/010447759 (providing all Montana "city or town council[s]" the authority to "prevent and suppress the sale of firearms the carrying of concealed weapons"); *see also* Patrick J. Charles, *The Fugazi Second Amendment:* Bruen*'s Text, History, and Tradition Problem and How to Fix It*, 71 CLEV. ST. L. REV. 623, 662 n.256, 685 n.406 (2023) (providing more than two dozen examples of firearms localism within state laws and local government charters).

[5] *See* LAWS OF MISSOURI: GENERAL AND LOCAL LAWS PASSED AT THE REGULAR SESSION OF THE TWENTY-NINTH GENERAL ASSEMBLY 158, 166 (1877), *available at* https://catalog.hathitrust.org/Record/000534559 (1877 Missouri state law empowering city and town councils, such as Columbia, with the authority to

(continued…)

ordinance mirrored Missouri state law, and was not the only Missouri locality to do so. The localities of Gainesville (1896),[6] Huntsville (1894),[7] Leonard (1891),[8] Marceline (1892),[9] Ridgeway (1893),[10] Rocheport (1895*),[11] and Warrensburg (1890),[12] all enacted similar ordinances. Meanwhile, other Missouri localities,

---

"prohibit and punish the carrying of firearms and other deadly weapons, concealed or otherwise"). Like Columbia, Webb City, Missouri and Huntsville, Missouri enacted similar laws. *See Ordinance No. 577: An Ordinance Defining What Shall constitute Misdemeanors or Offenses Against the City of Webb City, and Providing Penalties Therefor*, May 15, 1905, *reprinted in* REVISED ORDINANCES OF THE CITY OF WEBB CITY, MISSOURI, 1905, at 99, 100 (1905), *available at* https://catalog.hathitrust.org/Record/008604358; *An Ordinance in Relation to Carrying Deadly Weapons*, July 17, 1894, *reprinted in* THE REVISED ORDINANCES OF THE CITY OF HUNTSVILLE, MISSOURI OF 1894, at 58-59 (1894), *available at* https://everytownlaw.org/documents/2022/12/huntsville-mo-1894.pdf/.

[6] *Ordinances, of the Incorporation of the Town of Gainesville*, May 26, 1896, *reprinted in* OZARK COUNTY NEWS (Gainesville, MO), June 4, 1896, at 1 (**Exhibit 3**) ("It shall be unlawful for any person…to go into any public gathering or place where people are assembled for any lawful purpose, with any kind of fire-arms…or other deadly weapon…").

[7] *An Ordinance in Relation to Carrying Deadly Weapons*, July 17, 1894, *reprinted in* THE REVISED ORDINANCES OF THE CITY OF HUNTSVILLE, MISSOURI OF 1894, at 58-59 (1894), *available at* https://everytownlaw.org/documents/2022/12/huntsville-mo-1894.pdf/.

[8] *Ordinance No. 23: Ordinance Concerning the Carrying of Deadly Weapons*, July 6, 1891, *reprinted in* SHELBY COUNTY HERALD (Shelbyville, MO), July 29, 1891, at 4 (**Exhibit 4**).

[9] *Ordinance No. 9*, September 12, 1892, *reprinted in* MARCELINE JOURNAL-MIRROR (MO), October 28, 1892, at 8 (**Exhibit 5**).

[10] *Town Ordinance No, XXVIII: An Ordinance in Relation to Misdemeanors*, April 3, 1893, *reprinted in* RIDGEWAY JOURNAL (MO), April 6, 1893, at 4 (**Exhibit 6**).

[11] *An Ordinance: Misdemeanors*, undated, *reprinted in* ROCHEPORT COMMERCIAL (MO), September 20, 1895, at 8 (**Exhibit 7**) ("If any person shall carry concealed upon or about his person any deadly or dangerous weapon, or shall go into any court, or into any public assemblage of persons met for a lawful purpose, having upon or about his person any kind of fire arms…or other deadly weapon…shall be deemed guilty of a misdemeanor…"). The asterisks next to Exhibits 7, 10, and 20 indicate that the actual date that the respective ordinances were enacted is unknown, but because those ordinances appeared in print for those respective years, it is assumed those are the years of enactment (or at least no later than that year).

[12] *Concealed or Deadly Weapons*, June 5, 1890, *reprinted in* JOHNSON COUNTY STAR (Warrensburg, MO), June 7, 1890, at 4 (**Exhibit 8**).

including Collins (1887),[13] Craig (1880*),[14] Cuba (1881),[15] Granby (1873)[16] just to name a few, enacted ordinances restricting the carrying of dangerous weapons within their "corporate" or "incorporate" limits, whether such carrying was open, concealed, or both. This meant that the carrying of dangerous weapons within these localities' commercial and public epicenters was legally deemed off limits.

17. Localities throughout the state of Kansas enacted similar ordinances. Indeed, in the case of Stockton, Kansas, persons were prohibited from carrying dangerous weapons "into any church or place where the people have assembled for public worship, or into any school room or place where people have assembled for educational, literary or social purposes, or to any election on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons …or shall go upon the public streets or public places of the city…" *Ordinance No. 76: An Ordinance Prohibiting Deadly Weapons*, July 1, 1887, *reprinted in* STOCKTON REVIEW AND ROOKS COUNTY RECORD (KS), July 1, 1887, at 1 (**Exhibit 13**). However, most Kansas localities that enacted restrictions on the

---

[13] *Town Ordinances: Adopted by the Board of Trustees of the Town of Collins, Mo.: Ordinance No. 4*, May 2, 1887, *reprinted in* OSCEOLA ADVANCE (Osceola, MO), July 7, 1887, at 4 (**Exhibit 9**) ("Any person who shall carry any concealed weapon or any revolver, pistol, knife or dirk which may not be concealed within the corporate limits of the town of Collins, shall…be fined…except however, that upon good cause shown, the board may grant a permit to any citizen of good reputation to carry weapons for self defense.").

[14] *Ordinances of Craig, Mo.: Ordinance No. 8—Carrying Concealed Weapons*, undated, *reprinted in* CRAIG WEEKLY GAZETTE (MO), October 13, 1880, at 4 (**Exhibit 10**) ("Any person who shall within the corporate limits of said city of Craig, carry of have upon his person, any concealed weapon or weapons, shall be adjudged guilty of a misdemeanor…").

[15] *Revised Ordinances: Ordained and Established May 24, 1881: Chapter VIII: Misdemeanors*, May 24, 1882, *reprinted in* CRAWFORD MIRROR (Steelville, MO), July 27, 1882, at 1 (**Exhibit 11**) ("If any person be found carrying concealed about his person in the corporate limits, any kind of fire arms…or other deadly weapon, within the limits of said town he shall be fined....").

[16] *Ordinances of the Town of Granby: No. 8: An Ordinance Concerning the Carrying of Weapons*, October 30, 1873, *reprinted in* GRANBY MINER (Granby, MO), November 1, 1873, at 2 (**Exhibit 12**) ("That any person within the corporate limits of the town of Granby who shall be found carrying, either openly or concealed, any pistol…or any other offensive weapon…shall be fined…").

carrying of dangerous weapons in "sensitive places" did so by making their entire "corporate" or "incorporate" area off limits, whether such carrying was open, concealed, or both. Abilene (1870),[17] Arkansas City (1885),[18] Beloit (1872),[19] Caldwell (1885),[20] Coolidge (1886),[21] Elk City (1898),[22] Harper (1887*),[23] Howard

---

[17] *An Ordinance Relating to the Carrying of Fire Arms and Other Deadly Weapons*, to take effect on May 20, 1870, *reprinted in* ABILENE WEEKLY CHRONICLE (KS), May 12, 1870, at 1 (**Exhibit 14**) ("That any person who shall carry, within the limits of the town of Abilene, or commons, a pistol, revolver….or other dangerous weapon…either openly or concealed, except to bring the same and forthwith to deposit it or them at their house, boarding house, store room or residence, shall be fined…").

[18] *Ordinance No. 1*, May 11, 1885, *reprinted in* ARKANSAS CITY WEEKLY TRAVELER (KS), May 20, 1885, at 4 (**Exhibit 15**) ("That any person carrying any deadly or dangerous weapons, such as loaded fire-arms…or any other weapons which when used are liable to produce death or great bodily harm, unconcealed, within the corporate limits of the city" shall pay a fine of $1 to $10, and the carrying of said weapons "concealed" will pay a fine of $5 to $25).

[19] *An Ordinance in Relation to the Carrying of Fire-Arms or Other Weapons*, September 9, 1872, *reprinted in* BELOIT GAZETTE (KS), September 19, 1872, at 4 (**Exhibit 16**) ("That any person who shall be found within the corporate limits of this city with any revolver, pistol…or any other dangerous or deadly weapon concealed or otherwise shall be deemed guilty of a misdemeanor…").

[20] *Revised Ordinances of the City of Caldwell*, undated, *reprinted in* CALDWELL ADVANCE (KS), May 4, 1885, at 2 (**Exhibit 17**) ("Any person carrying any deadly or dangerous weapon, such as firearms…or any other weapon which when used is liable to produce death or great bodily harm, unconcealed, within the corporate limits of the city" shall pay a fine of $10 to $100, and carrying of said weapons "concealed" will pay a fine of $15 to $100).

[21] *An Ordinance Concerning Offenses in the Nature of Misdemeanors*, April 26, 1886, *reprinted in* BORDER RUFFIAN (Coolidge, KS), May 1, 1886, at 1 (**Exhibit 18**) ("It shall be unlawful for any person or persons to display or make any improper use of any deadly weapon withing the corporate limits of this city…Any person or persons, other than the duly appointed and commissioned officers of this city, or officers of this county or State, carrying concealed deadly weapons…within the corporate limits of the city, shall, upon conviction, be deemed guilty of a misdemeanor.").

[22] *Ordinance No. 165*, March 7, 1898, *reprinted in* ELK CITY ENTERPRISE (KS), March 11, 1898, at 2 (**Exhibit 19**) ("That any person within the corporate limits of said city of Elk City who…shall carry or have on his or her person in a concealed manner, or otherwise any pistol…or any deadly weapon…shall be deemed guilty of a misdemeanor…").

[23] *Ordinance No. 180*, undated, *reprinted in* HARPER DAILY SENTINEL (KS), August 23, 1887, at 2 (**Exhibit 20**) ("That it shall be unlawful for any person to carry any deadly or dangerous weapon, such as fire arms…within the incorporate limits of said city.").

(1889),[24] Kendall (1887),[25] Meade Center (1885),[26] Mount Hope (1887),[27] and Scandia (1893)[28] are just a few examples in this regard.

18. Ordinances restricting the carrying of dangerous weapons in localities' entire "corporate" or "incorporate" areas were not limited to the states of Missouri and Kansas. Much like armed carriage licensing laws, Charles, *The Fugazi Second Amendment*, *supra*, at 569-65, ordinances restricting the carrying of dangerous weapons in "corporate" or "incorporate" areas proliferated across the United States during the mid-to-late nineteenth century, *id*. at 709-10. For instance, Asheville, North Carolina enacted an ordinance prohibiting the carrying of "pistols, bowie-knives, sling-shots, billeys, [and] other deadly weapons (officers excepted) within the corporate limits…" *Ordinances of the Town of Asheville*, in force as of June 1, 1882, *reprinted in* ASHEVILLE WEEKLY CITIZEN (NC), June 3, 1882, at 1 (**Exhibit 26**). Similarly, in 1874, Lake Charles, Louisiana passed an ordinance prohibiting

---

[24] *Ordinance No. 72: An Ordinance to Prevent Carrying Concealed Weapons and the Discharge of Firearms*, May 16, 1889, *reprinted in* CITIZEN (Howard, KS), May 22, 1889, at 3 (**Exhibit 21**).

[25] *Ordinances: Of the City of Kendall, in the County of Hamilton, State of Kansas*, undated, *reprinted in* KENDALL FREE PRESS (KS), March 23, 1887, at 1 (**Exhibit 22**) ("It shall be unlawful for any person or persons to display or make any improper use of any deadly weapon withing the corporate limits of this city…Any person or persons, other than the duly appointed and commissioned officers of this city, or officers of this county or State, carrying concealed deadly weapons…within the corporate limits of the city, shall, upon conviction, be deemed guilty of a misdemeanor.").

[26] *City Ordinances*, November 23, 1885, *reprinted in* MEADE GLOBE (Meade Center, KS), November 28, 1885, at 2 (**Exhibit 23**) (prohibiting all persons "not authorized by the laws of the United States or the state of Kansas" from carrying a "pistol…or other deadly weapons" within the "incorporate limits").

[27] *Ordinance No. Twelve: Peace, Good Government and Welfare*, May 4, 1887, *reprinted in* MOUNT HOPE CLARION (KS), May 5, 1887, at 3 (**Exhibit 24**) (prohibiting all except officers and travelers from carrying "firearms…or other deadly weapons, concealed, within the corporate limits," and "any person under the age of twenty one years of age" from "carrying any deadly weapon, concealed or otherwise").

[28] *Ordinance No. 79*, December 27, 1893, *reprinted in* SCANDIA JOURNAL (KS), January 5, 1894, at 8 (**Exhibit 25**) (prohibiting the concealed carry of any "pistol…or other deadly weapon" within the "corporate limits" except for persons "engaged in a lawful occupation and of good moral character" who are "granted a permit to carry such concealed weapons").

the carrying of any "weapon or weapons…within the corporate limits…such as Bowie knives, pistols, revolvers, dirks…or any other dangerous weapon…" *The Town Council*, June 20, 1874, *reprinted in* LAKE CHARLES ECHO (Lake Charles, LA), July 18, 1894, at 4 (**Exhibit 27**). The same was true for the Pennsylvania capital city of Harrisburg, which in 1873 enacted an ordinance prohibiting the carrying of "any pistol, dirk-knife, slung-shot or deadly weapon, within the city limits…except police officers…" LOUIS RICHARDS & JAMES M. LAMBERTON, A DIGEST OF LAWS AND ORDINANCES FOR THE GOVERNMENT OF THE CITY OF HARRISBURG, PENNSYLVANIA IN FORCE AUGUST 1, A.D. 1906, at 557-58 (1906), *available at* https://catalog.hathitrust.org/Record/100565572.

19. There are other local ordinance examples.[29] Historically speaking, however, it is impossible to state with specificity just how many localities

---

[29] *See, e.g., Ordinance No. 20*, February 6, 1900, *reprinted in* WELLSTON NEWS (OK), February 9, 1900, at 4 (**Exhibit 28**) (prohibiting "within the town" of Wellston, Oklahoma the carrying of "any pistol, dirk or bowie knife or other deadly weapon" whether done in a "concealed or unconcealed manner"); *Misdemeanors: Chapter 12, By Laws and Ordinances*, undated, *reprinted in* LAWRENCE DEMOCRAT (Lawrenceburg, TN), July 26, 1895, at 4 (**Exhibit 29**) ("That is shall not be lawful for any person to carry about their person any pistol…or other deadly weapon within this Corporation…"); *An Ordinance Prohibiting the Carrying of Concealed Weapon and Fixing the Punishment Therefor*, January 23, 1895, *reprinted in* PERRY DAILY TIMES (OK), February 2, 1895, at 2 (**Exhibit 30**) (prohibiting the concealed carry of dangerous weapons across the city of Perry, Oklahoma, and all carrying of dangerous weapons within the "corporate limits"); *Will Be Enforced*, STATE RIGHTS DEMOCRAT (Albany, OR), March 9, 1894, at 3 (**Exhibit 31**) (reprint of Albany, Oregon Ordinance No. 152 prohibiting "any person or persons [from carrying] any deadly or dangerous weapons of any kind whatever in a concealed manner within the corporate limits…"); THE REVISED ORDINANCES OF PROVO CITY, UTAH 96 (1893), *available at* https://catalog.hathitrust.org/Record/009037720 ("Every person who shall wear, or carry upon his person any pistol, or other fire arm, slungshot, false-knuckles, bowieknife, dagger or any other dangerous or deadly weapon within the city limits of this city is guilty of an offence, and upon conviction thereof shall be liable to a fine in any sum not exceeding twenty-five dollars, or to be imprisoned in the city jail not exceeding twenty-five days, or to both fine and imprisonment."); *Ordinances: Chapter VIII: Deadly Weapons*, August 11, 1891, *reprinted in* SANTA FE WEEKLY SUN (NM), August 15, 1891, at 4 (**Exhibit 32**) ("That it shall be unlawful for any person to carry a deadly weapon, either concealed or unconcealed, within the limits of the city of Sante Fe, unless the same be carried in lawful defense of himself, his family or his property, the same being at the time threatened with danger, or unless by order of legal authority..."); *Ordinance—Continued: Chapter VII: Deadly Weapons*, undated 1891, *reprinted in* THE RUSTLER (Cerrillos, NM), September 11, 1891, at 5 (**Exhibit 33**) ("That it shall (continued…)

maintained "sensitive places" ordinances by the close of the nineteenth century. Like most local government records up to the close of the nineteenth century, many local ordinances have been lost to time. Indeed, often localities published their ordinances in local newspapers, and, in fact, it is from local newspapers that I was able to locate many "sensitive places" ordinances. But as any professional historian or archivist can attest, the records of local ordinances that have survived for historical posterity are only a fragment of the whole.

---

be unlawful for any person to carry a deadly weapon, either concealed or unconcealed, within the limits of the Town of Cerrillos, unless the same be carried in lawful defense of himself, his family or his property, the same being at the time threatened with danger, or unless by order of legal authority..."); *Ordinance No. 2133*, July 23, 1889, *reprinted in* OMAHA WORLD-HERALD (NE), August 4, 1889, at 12 (**Exhibit 34**) ("It shall be unlawful for any person to wear under his clothes, or concealed about his person, any pistol or revolver, colt, billy, slug-shot, brass knuckles or knuckles of lead, dirk, dagger, or any knife resembling a bowie knife, or any other dangerous or deadly weapon within the corporate limits of Omaha."); *Ordinance No. 11*, December 4, 1882, *reprinted in* BLACK HILLS WEEKLY JOURNAL (SD), December 8, 1882, at 1 (**Exhibit 35**) ("That is shall be, and it is hereby declared to be unlawful for any person to carry, openly or concealed, any musket, rifle, shot gun, pistol…or any other dangerous or deadly weapon within the corporate limits of the town of Rapid City, Dakota territory…me[re]…transportation from one place to another" excluded); *Ordinance No. 44*, May 8, 1883, *reprinted in* ARIZONA DAILY STAR (Tucson, AZ), May 19, 1883, at 3 (**Exhibit 36**) ("If any person within the corporate limits if the city of Tucson carry concealed upon his person any gun, pistol, bowie-knife, dagger, or other deadly weapon, he shall be deemed guilty of…a misdemeanor"); *An Ordinance (No. 18): Regulating the Keeping and Bearing of Deadly Weapons*, August 19, 1873, *reprinted in* GALVESTON DAILY NEWS (TX), August 28, 1873, at 4 (**Exhibit 37**) ("That any person carrying on or about his person, saddle or vehicle, within the corporate limits of the city of Galveston, any pistol [or other dangerous weapons]…for the purposes of offense or defense….unless he has reasonable grounds for fearing an unlawful attack on his person, and that such attack shall be immediate and pressing" will be a pay between $25 and $100); *An Ordinance to Prevent the Carrying of Arms*, April 9, 1873, *reprinted in* DAILY TIMES (Chattanooga, TN), April 24, 1873, at 1 (**Exhibit 38**) ("That if any person shall, within the corporate limits of the City of Chattanooga, either publicly or privately carry any dirk, sword-cane, Spanish stiletto, belt or pocket pistol, Bowie knife or any large knife of like form or size to a Bowie knife, brass knuckles or slung shot, [they] shall be deemed guilty of a misdemeanor and…shall be fined not less than fifty dollars and confined in the city jail not less than thirty days."); *An Ordinance Prohibiting the Carrying of Fire Arms and Concealed Weapons*, undated, *reprinted in* NEBRASKA CITY NEWS (NE), July 7, 1869, at 3 (**Exhibit 39**) ("That it shall be, and it is hereby declared to be unlawful for any person to carry openly or concealed, any musket, rifle, shot gun, pistol…or any other dangerous or deadly weapons, within the corporate limits of Nebraska City, Nebraska…mere…transportation from one place to another" excluded).

20. Despite being unable to fully reconstruct the exact number "sensitive places" laws, what is known upon examining all the state and local "sensitive places" laws from a macro level is that come the mid-to-late nineteenth century state and local governments maintained the authority to restrict the carrying of dangerous weapons in a variety of "sensitive places" where people were known to congregate. Such "sensitive places" categories included 1) churches and places of worship; 2) places where large public assemblies generally took place, *i.e.*, parks,[30] town squares, and the like; 3) polling places and other buildings where political activity generally took place; 4) schools and institutions of higher learning; 5) places where events of amusement took place, *i.e.*, places where people congregate for large planned events; and 6) bars, clubs, social venues, or anywhere in which alcohol or psychoactive or mood altering drugs were purchased or consumed.

21. What historically buttresses that each of these categories were generally understood to be "sensitive places" is the fact that there is no historical evidence that informs otherwise. As far as I am aware, not one nineteenth century court of law found any of these "sensitive places" categories to be unconstitutional.[31] The same is true for nineteenth century legal commentary—not one said commentary calls these "sensitive places" categories into constitutional

[30] For some "park" examples, see Charles, *The Fugazi Second Amendment*, *supra*, at 710-12 and accompanying notes.

[31] In fact, the opposite is true. *See State v. Shelby*, 90 Mo. 302, 468–69 (Mo. 1886); *State v. Wilforth*, 74 Mo. 528, 530–31 (Mo. 1881); *Owens v. State*, 3 Tex. App. 404 (Tex. App. 1878), *reprinted in* CASES ARGUED AND ADJUDGED IN THE COURT OF APPEALS OF THE STATE OF TEXAS 404–8 (Vol. 3, 1878); Hill v. State, 53 Ga. 472, 473–75 (Ga. 1874); *English v. State*, 35 Tex. 473, 473–74, 476 (Tex. 1873); *Andrews v. State*, 50 Tenn. 165, 168 (Tenn. 1871). *See also The Supreme Court: On Carrying Concealed Weapons*, STATE JOURNAL (Jefferson City, MO), April 12, 1878, at 2 (**Exhibit 40**) (copy of 1878 Missouri Supreme Court decision *State v. Reando*, upholding a constitutional challenge to the state's "sensitive places" law). The case cannot be found in the Missouri Supreme Court Historical Database but was briefly reported in a contemporaneous issue of *The Central Law Journal*. *See Abstract of Decisions of the Supreme Court of Missouri: October Term, 1877*, 6 CENTRAL L. J. 16, 16 (1878) ("The act of the legislature prohibiting the conveying of fire-arms into courts, churches, etc.…is constitutional. It is a police regulation not in conflict with the provisions of the organic law…*State v. Reando*.").

question. This is rather important because *Bruen* denotes that when it comes to the "sensitive places" doctrine a *lack* of historical evidence disputing their lawfulness *presumes* their constitutionality. 142 S. Ct. at 2133.

## II.   THE HISTORY OF RESTRICTIONS ON LIQUOR AND ARMS BEARING

22.     All the while armed carriage licensing laws and "sensitive places" laws were spreading across the country, so too were laws regulating liquor and arms bearing. It is difficult to state with specificity when the first law restricting arms bearing and liquor came into existence in the American Colonies. *See, e.g.*, *General Court for Elections, Boston*, May 28, 1679, reprinted in 2 MILITARY OBLIGATION: THE AMERICAN TRADITION: PART 6. MASSACHUSETTS ENACTMENTS 125 (1947), *available at* https://catalog.hathitrust.org/Record/100721030 (prohibiting the bringing to any militia muster or training "any wine, strong liquor, cider, or any other inebriating" drinks). What is known is that by the mid-eighteenth century, many colonial lawmakers viewed liquor and arms bearing as a potentially dangerous combination. For instance, in 1746, New Jersey made it unlawful "to sell any strong Liquor" to any militiaman during the "Days or Times that they are obliged to appear in Arms at the Place of Mustering or Training, or within a Mile thereof, until after they are dismissed for that day"—militiamen on leave from their commanding officers excluded. *An Act for Better Settling and Regulating the Militia of the Colony of New-Jersey, for the Repelling of Invasion, and Suppressing Insurrections and Rebellions*, May 8, 1746, *reprinted in* ACTS OF THE GENERAL ASSEMBLY OF THE PROVINCE OF JERSEY 139, 146 (1776), *available at* https://catalog.hathitrust.org/Record/010448351. Similarly, in 1756, Delaware made it unlawful to "expose to sale at or Bring on any Pretence whatsoever any strong Liquor" to any militia muster or meeting. *An Act for the Establishing a Militia in this Government*, March 24, 1756, *reprinted in* 2 MILITARY OBLIGATION: THE AMERICAN TRADITION: PART 3. DELAWARE ENACTMENTS 10, 12 (1947),

available at https://catalog.hathitrust.org/Record/100721030; *see also An Act for Regulating the Militia of the Province of Maryland*, May 22, 1756, *reprinted in* 2 MILITARY OBLIGATION: THE AMERICAN TRADITION: PART 5. MARYLAND ENACTMENTS 83, 93 (1947), *available at* https://catalog.hathitrust.org/Record/100721030 (prohibiting the selling, disposing, or vending of "Strong Liquor" at "any place of training or at any other Place within Five Miles of any Place of training").

23.    After the ratification of the Constitution, many lawmakers continued to view liquor and arms bearing as a potentially dangerous combination. *See, e.g., An Act for the Regulation of the Militia of New-Jersey*, June 13, 1799, *reprinted in* LAWS OF THE STATE OF NEW JERSEY 436, 444 (William Patterson ed., 1800), *available at* https://catalog.hathitrust.org/Record/010448353 ("Any person, who shall bring any kind of spiritous liquors to the place of exercise, shall forfeit such liquors…"); *New Militia Law: An Act for the Regulation of the Militia of the Commonwealth of Pennsylvania*, April 11, 1793, *reprinted in* INDEPENDENT GAZETTEER (Philadelphia, PA), April 20, 1793, at 1, 4 (**Exhibit 41**) ("No company or regiment shall meet at a tavern on any of the days of exercise, nor shall march to any tavern before they are discharged, and any person who shall bring any kind of spiritous liquors to such place of training, shall forfeit such liquors so brought…"); AN ACT FOR THE BETTER REGULATION OF THE MILITIA, IF THE CITY OF BALTIMORE, PASSED BY THE LEGISLATURE OF MARYLAND, DECEMBER SESSION, 1817, at 15 (1818), *available at* https://archive.org/details/gpl_1337206/page/n9/mode/2up (law prohibiting militia members from "appear[ing] drunk"). Of course, not every state enacted liquor-related arms bearing restrictions, nor did every locality effectively enforce them. But this is in part why the state militias fell into such disrepute by the mid-nineteenth century. *See, e.g., Lena London, The Militia Fine 1830-1860*, 15 MILITARY AFFAIRS 133, 136 (1951) ("The excessive consumption of liquor at militia musters resulted in more than just inebriation. Disorderly conduct and riots

were often the outcome."); PATRICK J. CHARLES, ARMED IN AMERICA: A HISTORY OF GUN RIGHTS FROM COLONIAL MILITIAS TO CONCEALED CARRY 79, 130 (2018) (containing historical images of the militia drinking alcohol during musters).

24. As for non-militia based restrictions on liquor and arms bearing, the territory of New Mexico appears to have been the forefront. Therein, in 1852, it was made unlawful for "any person" to carry "fire arms or other deadly weapons" into any "ball where Liquors are sold…" LAWS OF THE TERRITORY OF NEW MEXICO, PASSED BY THE SECOND LEGISLATIVE ASSEMBLY IN THE CITY OF SANTA FE 69 (1853), *available at* https://catalog.hathitrust.org/Record/010476920. However, it was not until after the Civil War—after lawmakers and public officials began to increasingly witness the negative consequences of alcohol on war veterans[32]—that broad, general restrictions on liquor and arms bearing began to spread across the country. On the state level, Kansas (1867),[33] Mississippi (1878),[34] Missouri (1879),[35] Oklahoma (1890),[36] and Wisconsin (1883)[37] all enacted liquor-related arms bearing restrictions.

[32] *"Half the Time Unfit for Duty": Alcoholism in the Civil War*, NATIONAL MUSEUM OF CIVIL WAR MEDICINE, September 2, 2021, *available at* https://www.civilwarmed.org/alcoholism/.

[33] *An Act to Prevent the Carrying of Deadly Weapons*, February 23, 1867, *reprinted in* LAWS OF THE STATE OF KANSAS 25 (1867), *available at* https://catalog.hathitrust.org/Record/100836175 (prohibiting any "person under the influence of intoxicating drink" from carrying dangerous weapons).

[34] *Laws of the State of Mississippi: An Act to Prevent the Carrying of Concealed Weapons, and For Other Purposes*, February 28, 1878, *reprinted in* CLARION-LEDGER (Jackson, MS), March 13, 1878, at 3 (**Exhibit 42**) ("That it shall not be lawful for any person to sell to…any person intoxicated, knowing him to be…in a state of intoxication, any" dangerous weapons).

[35] REVISED STATUTES OF THE STATE OF MISSOURI, 1879 at 224 (1879), *available at* https://catalog.hathitrust.org/Record/002030306 (law prohibiting any person from carrying any dangerous weapons "upon his person when intoxicated or under the influence of intoxicating drinks").

[36] STATUTES OF OKLAHOMA 1890, *supra*, at 496 (prohibiting the carrying of dangerous weapons "to any place where intoxicating liquors are sold").

[37] *An Act to Prohibit the Use and Sale of Pistols and Revolvers*, April 7, 1883, *reprinted in* LAWS OF WISCONSIN 290 (1883), *available at* https://catalog.hathitrust.org/Record/005877100 ("It shall be unlawful for any person in a state of intoxication, to go armed with any pistol or revolver.").

25. And given the prevalence of firearms localism during the mid-to-late nineteenth century, *see supra* pp. 9-10, so too did many localities. Much like "sensitive places" and armed carriage licensing laws during this period, it is impossible to historically pinpoint just how many localities enacted ordinances governing liquor and arms bearing. Many localities made intoxication and unlawful arms bearing separate offenses, each with their own penalty or fine. Other localities, however, combined the two offenses into one. Such was the case for Grand Junction, Colorado circa 1899, which made it unlawful to not only "carry any…weapon or weapons when drunk or in a state of intoxication," and to "sell, barter, loan or deliver any such weapon or weapons to any drunk or intoxicated person." *Ordinance No. 83: Article VIII: Offensives Affecting the Public Safety*, June 30, 1899, *reprinted in* GRAND JUNCTION NEWS (CO), July 8, 1899, at 4, 7 (Exhibit 37). In 1895, Rocheport, Missouri enacted an ordinance, prohibiting the carrying of "any…weapon upon or about [their] person when intoxicated or under the influence of intoxicating drinks…" *An Ordinance: Misdemeanors*, undated, *reprinted in* ROCHEPORT COMMERCIAL (MO), September 20, 1895, at 8 (**Exhibit 7**). Meanwhile, in 1891, Lyons, Kansas enacted an ordinance prohibiting the carrying of any "pistol, bowie knife, dirk or other deadly weapon" with the city limits by anyone "not engaged in any legitimate business" or "under the influence of intoxicating drink…" *Ordinance No. 179*, September 7, 1891, *reprinted in* LYONS REPUBLICAN (KS), September 10, 1891, at 4 (**Exhibit 43**). There are indeed other examples to point to,[38] but none as broad as the prohibition adopted by two of the

[38] *Town Ordinance No. 21*, August 7, 1894, *reprinted in* K COUNTY DEMOCRAT (Blackwell, OK), August 23, 1894, at 8 (**Exhibit 44**) (prohibiting the general carrying of dangerous weapons within the "corporate limits," but also prohibiting all "public officers" from carrying if "under the influence of intoxicating drinks"); *An Ordinance—To Prohibit Intoxication Breach of the Peace, Carrying of Deadly Weapons…and to Repeal Certain Ordinances in Said City*, December 22, 1887, *reprinted in* WALLACE COUNTY REGISTER (KS), December 24, 1887, at 7 (**Exhibit 45**) ("Any person who shall, while intoxicated be found carrying on his person, a pistol…or other deadly weapon, shall upon conviction be fined in a sum not exceeding $100, or by imprisonment in the city jail not

(continued…)

country's three most populous cities—New York and Brooklyn respectively. Both enacted prohibitions on the selling, loaning, or giving of any dangerous weapon to a person that posed "any danger to [the] life" of others, which naturally would have precluded the selling, loaning, or giving of any dangerous weapons to any intoxicated persons. *See* METROPOLITAN BOARD OF HEALTH: CODE OF HEALTH ORDINANCES, AND RULES AND SANITARY REGULATIONS 52 (1866), *available at* https://catalog.hathitrust.org/Record/008905639; *Sanitary Code*, July 15, 1873, *reprinted in* BROOKLYN UNION (NY), August 21, 1873, at 1 (**Exhibit 47**).

26. As far as I am aware, not one nineteenth century legal commentator or nineteenth century court of law found any liquor-related arms bearing restriction unconstitutional. In fact, the opposite is true. *See Shelby*, 90 Mo. at 468-69; *see also Tipler v. State*, 57 M. 365 (1880), *reprinted in* 57 REPORTS OF CASES IN THE SUPREME COURT FOR THE STATE OF MISSISSIPPI (1880) (noting that the reasonableness exception to the state's armed carriage law could not apply to instances of "idle threats" or "'the offspring of intoxication"); *Concealed Weapons: Judge Brannon's Decision on This Subject*, WHEELING REGISTER (WV), October 15, 1883, at 1 (**Exhibit 48**) (noting that the principal purpose of most armed carriage restrictions are to prevent an "armed riot or affray," particularly during "dangerous moments of anger or intoxication").

## III. PLAINTIFFS' RELIANCE ON "BRING ARMS TO CHURCH" LAWS IS HISTORICALLY MISPLACED

27. From the mid-seventeenth through the late eighteenth century, it is indeed true, as the *May* Plaintiffs point out, that several American Colonies enacted laws requiring church parishioners to bring their arms to church. *See May* MPA

exceeding 3 months."); *Ordinance No. 39*, January 4, 1886, *reprinted in* DADE COUNTY ADVOCATE (Greenfield, MO), January 21, 1886, at 4 (**Exhibit 46**) (prohibiting the carrying of dangerous weapons by those "intoxicated, or under the influence of intoxicating drinks").

(Dkt. No. 13-1), at 22. However, in proffering this historical evidence to the court, the *May* Plaintiffs do not present it in proper historical context.

28. First and foremost, it must be noted that many "bring your arms to church" laws are antecedents of slavery and were principally intended to quell potential slave revolt. *See, e.g.*, 7 THE STATUTES OF LARGE OF SOUTH CAROLINA 417-19 (1840) (reprint of a 1743 South Carolina law requiring white persons to bring arms to church for the "better ordering and government negroes and other slaves"); *see also* SALLY E. HADDEN, SLAVE PATROLS: LAW AND VIOLENCE IN VIRGINIA AND THE CAROLINAS 140-41 (2001). To be clear, these laws are inherently racist. For example, a 1770 Georgia law required white persons to bring arms to church for the purpose of quelling "internal dangers and insurrections." 19 THE COLONIAL RECORDS OF THE STATE OF GEORGIA (pt. 1) 137-38 (1911). The law was an updated version of a 1757 Georgia law of a similar name that also required white persons to bring arms to church to quell "domestick insurrections." 1 THE EARLIEST PRINTED LAWS OF THE PROVINCE OF GEORGIA, 1755-1770, at 15 (1978).

29. Secondly, all other 'bring your gun to church' laws—that is laws that were not intended to quell slave revolts or subjugate people of color—were enacted with the express purpose of training government sponsored "well regulated" militias. *See, e.g.*, 6 WILLIAM WALLER HENING, THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, at 534 (1819) (1755 Virginia law declaring it will be lawful for militia officers to require all militiamen "to go armed to their respective parish churches" for training). To be clear, 'bring your gun to church' militia laws were not 'right to carry to church' laws. Rather, they were compulsory laws enacted within the constitutional confines of state plenary power to call forth and muster the militia for training or internal security. *See* Charles, *1792 National Militia Act*, *supra*, at 344-46, 374-90 (outlining the history of this state plenary power over the militia); *see also Presser v. Illinois*, 116 U.S. 252 (1886) (affirming

state plenary power to muster, assemble, and train the militia); *District of Columbia v. Heller*, 554 U.S. 570, 620-21 (2008) (noting that nothing in *Heller* seeks to upend *Presser*'s holding of forbidding bodies of men from marching or assembling with arms). The point is that the historical evidence, when placed in context suggests that colonial and later state governments had sufficient leeway to enact time, place, and manner restrictions when it came to public arms-bearing and armed assemblage. To interpret these 'bring your guns to church' militia laws as Plaintiffs suggest is to break the bounds of historical elasticity. It would ultimately mean that any eighteenth century law that legally compelled persons to do a particular act could make said act forever a constitutional right, and any modern law that restricts or prohibits said act is ipso facto unconstitutional. Such a utilization of history for law would create a dangerous precedent that would ultimately upend many state police powers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 30, 2023, at Auburn, Alabama.

PATRICK J. CHARLES

# Exhibit 1

Exhibit 1
Page 024

PATRICK J. CHARLES
www.patrickjcharles.com

## EDUCATION

**Queen Mary-University of London School of Law**, LLM Legal Theory and History with Distinction, Dec 2014.
Legal Theory and History Full Scholarship Recipient
Peer Review Editor, Queen Mary Law Journal

**Cleveland-Marshall School of Law**, Juris Doctor, May 2009.
2008 Judge John R. Brown Award for Legal Writing ($10,000 award given annually to best student article, note, comment or paper in the United States)

**George Washington University**, B.A. History with Honors, International Affairs Conflict & Security, International Affairs European Affairs, Jun 2005.

## EXPERIENCE

**Air Force Historical Research Agency, USAF**, Maxwell AFB, AL *Oral History and Studies Div Chief* 07/23 – Pres

**Air Force Historical Research Agency, USAF**, Maxwell AFB, AL *Lead Research Team Archivist* 04/22 – 9/23

**U.S. Special Operations Command, Legislative Affairs, USAF**, Washington, DC *Legislative Liaison* 01/21 – 4/22

**U.S. Senate, Office of U.S. Senator Martin Heinrich**, Washington, DC *Legislative Fellow* 01/20 – 01/21

**Dept of State, Office of U.S. Foreign Assistance Resources**, Washington, DC *Legislative Analyst* 07/19 - 01/20

**U.S. Special Operations Command, USAF**, MacDill AFB, FL *Senior Historian* 07/16 - 07/19

**Journal of Immigration, Asylum, and Nationality Law**, London, UK *Peer Review Editor* 09/15 - 09/18

**24th Special Operations Wing, USAF**, Hurlburt Field, FL *Historian* 08-14 - 07/16

**352nd Special Operations Group, USAF**, Mildenhall, UK *Historian* 12/10 - 08/14

**Immigration Reform Law Institute**, Washington, DC *Legal Analyst/Legal Historian* 5/09 - 12/10

**United States Marine Corps**, Shanghai, China *Sergeant/Assistant Detachment Commander* 8/97 - 8/02

## FELLOWSHIPS AND GRANTS

United States Air Force, Air Force Legislative Fellows Program, July 2019-April 2022.

Eisenhower Foundation Research Travel Grant 2019, Dwight D. Eisenhower Presidential Library, Abilene, KS.

Carl Albert Congressional Research Center Visiting Scholars Grant 2018, University of Oklahoma, Norman, OK.

Bordin-Gillette Research Fellowship 2018, University of Michigan Bentley Historical Library, Ann Arbor, MI.

Clark-Yudkin Research Fellowship 2013-14, United States Air Force Academy Library, Colorado Springs, CO.

## BOOK PUBLICATIONS AND BOOK CHAPTERS

*Vote Gun: How Gun Rights Became Politicized in the United States* (Columbia University Press, 2023).

"The 'Reasonable Regulation' Right to Arms: The Gun Rights Second Amendment Before the Standard Model," *A Right to Bear Arms?: The Contested Role of History in Contemporary Debates on the Second Amendment*, Jennifer Tucker, Barton C. Hacker, and Margaret Vining eds. (Smithsonian Institution Press, 2019).

*Armed in America: A History of Gun Rights from Colonial Militias to Concealed Carry* (Prometheus Books, 2019) (paperback edition with new foreword).

*Armed in America: A History of Gun Rights from Colonial Militias to Concealed Carry* (Prometheus Books, 2018).

*United States Special Operations History, 1987-2017* (7th edition, USSOCOM History and Research Office, 2017) (contributor).

*Historicism, Originalism and the Constitution: The Use and Abuse of History in American Jurisprudence* (McFarland, 2014).

*The Second Amendment: The Intent and its Interpretation by the States and the Supreme Court* (McFarland, 2009).

*Irreconcilable Grievances: The Events that Shaped the Declaration of Independence* (Heritage Books, 2008).

## ARTICLES AND OTHER PRINT PUBLICATIONS

"The Fugazi Second Amendment: *Bruen*'s Test, History, and Tradition Problem and How to Fix It," 71 *Cleveland State Law Review* 623 (2023).

"Racist History and the Second Amendment: A Critical Commentary," 43 *Cardozo Law Review* 1343 (2022).

"The Invention of the Right to 'Peaceable Carry' in Modern Second Amendment Scholarship," 2021 *Illinois Law Review Online* 195 (2021).

"The Faces of the Second Amendment Outside the Home, Take Three: Critiquing the Circuit Courts Use of History-in-Law," 67 *Cleveland State Law Review* 197 (2019).

"The Second Amendment and the Basic Right to Transport Firearms for Lawful Purposes, 13 *Charleston Law Review* 125 (2018) (invited).

"The Forgotten Emblems of the World War II Air Commandos," 6 *Air Commando Journal*, Issue 3, 2018: 42-47.

"The Difficulties in Changing an Air Force Emblem," 6 *Air Commando Journal*, Issue 3, 2018: 48.

"Dissecting the Origins of Air-Centric Special Operations Theory," 81 *Journal of Military History*, Issue 3, July 2017: 803-28.

"The Call to Embrace Immigration Federalism in the United States," 30 *Journal of Immigration, Asylum, and Nationality Law* 353 (2016).

"The Faces of the Second Amendment Outside the Home, Take Two: How We Got Here and Why it Matters," 64 *Cleveland State Law Review* 373 (2016) (lead article).

"The Sudden Embrace of Executive Discretion in Immigration Law," 55 *Washburn Law Journal* 59 (2015) (invited).

"The Second Amendment in the Twenty-First Century: What Hath *Heller* Wrought?" 23 *William & Mary Bill of Rights Journal* 1143 (2015).

"The 'Originalism is Not History' Disclaimer: A Historian's Rebuttal," 63 *Cleveland State Law Review Et Cetera* 1 (2015).

"Finding History: How Captain Cortez Enloe's Journal Sheds New Light on the History of the World War II Air Commandos and Operation THURSDAY," 3 *Air Commando Journal*, Issue 4, 2015: 11-17.

"Weighing the Constitutionality of State Immigration Verification Laws in the Wake of *Arizona v. United States*," 27 *Journal of Civil Rights & Economic Development* 441 (2014) (invited) (lead article).

"History in Law, Mythmaking, and Constitutional Legitimacy," 63 *Cleveland State Law Review* 23 (2014) (invited).

"The Statute of Northampton by the Late Eighteenth Century: Clarifying the Intellectual Legacy," 40 *Fordham Urban Law Journal City Square* 10 (2013).

"The Second Amendment and Militia Rights: Distinguishing Standard Model Legal Theory from the Historical Record," 40 *Fordham Urban Law Journal City Square* 1 (2013).

"Historical Reflections on the Beginnings of an Air Commando Theory," 2 *Air Commando Journal*, Issue 3, 2013: 9-13.

"The Second Amendment in Historiographical Crisis: Why the Supreme Court Must Reevaluate the Embarrassing 'Standard Model' Moving Forward," 39 *Fordham Urban Law Journal* 1727 (2012) (invited).

"Saving the Press Clause from Ruin: The Customary Origins of a 'Free Press' as Interface to the Present and Future," 2012 *Utah Law Review* 1691 (2012).

"Recentering Foreign Affairs Preemption in *Arizona v. United States*," 60 *Cleveland State Law Review* 133 (2012).

"The Faces of the Second Amendment Outside the Home: History Versus Ahistorical Standards of Review," 60 *Cleveland State Law Review* 1 (2012) (lead article).

"Decoding the Fourteenth Amendment's Citizenship Clause: Unlawful Immigrants, Allegiance, Personal Subjection, and the Law," 51 *Washburn Law Journal* 211 (2012) (invited and lead article).

"Scribble Scrabble, the Second Amendment, and Historical Guideposts: A Reply to Lawrence Rosenthal and Joyce Lee Malcolm," 105 *Northwestern University Law Review* 1821 (2011) (selected for print from Colloquy).

"Restoring 'Life, Liberty, and the Pursuit of Happiness' in Our Constitutional Jurisprudence: An Exercise in Legal History," 20 *William & Mary Bill of Rights Journal* 457 (2011).

"The 1792 National Militia Act, the Second Amendment, and Individual Militia Rights: A Legal and Historical Perspective," 9 *Georgetown Journal of Law & Public Policy* 323 (2011).

"The Second Amendment Standard of Review After *McDonald*: Historical Guideposts and the Missing Arguments in *McDonald v. City of Chicago*," 2 *Akron Law Journal of Constitutional Law & Policy* 7 (2011) (invited).

"The Constitutional Significance of a 'Well-Regulated' Militia Asserted and Proven with Commentary on the Future of Second Amendment Jurisprudence," 3 *Northeastern Law Journal* 1 (2011) (invited and lead article).

"Scribble Scrabble, the Second Amendment, and Historical Guideposts: A Reply to Lawrence Rosenthal and Joyce Lee Malcolm," 105 *Northwestern University Law Review Colloquy* 227 (2011).

"Representation Without Documentation?: Unlawfully Present Aliens, Apportionment, the Doctrine of Allegiance, and the Law," 25 *BYU Journal of Public Law* 35 (2011).

"Originalism, John Marshall, and the Necessary and Proper Clause: Resurrecting the Jurisprudence of Alexander Addison," 58 *Cleveland State Law Review* 529 (2010) (lead article).

"The Plenary Power Doctrine and the Constitutionality of Ideological Exclusions: A Historical Perspective," 15 *Texas Review of Law & Politics* 61 (2010).

"The Right of Self-Preservation and Resistance: A True Legal and Historical Understanding of the Anglo-American Right to Arms," 2010 *Cardozo Law Review De Novo* 18 (2010) (invited).

"'Arms for Their Defence'?: A Historical, Legal and Textual Analysis of the English Right to Have Arms and Whether the Second Amendment Should Be Incorporated in *McDonald v. City of Chicago*," 57 *Cleveland State Law Review* 351 (2009) (lead article).

**NEWSPAPER AND ONLINE MEDIA PUBLICATIONS**

"The Long Fight to Achieving Military Integration," *Air Force Historical Research Agency* (Feb. 2023).

"The History of the Air Force Song," *Air Force Historical Research Agency* (Sep. 2022).

"NRA Convention Protests Highlight US Gun Reform Divide," *Deutsche Welle*, May 30, 2022.

Q&A with Frank Wilkinson, "America's Long History of Gun Regulation," *Bloomberg News* and *Washington Post*, November 3, 2021.

"A Historian's Assessment of the Anti-Immigrant Narrative in *NYSRPA v. Bruen*," Second Thoughts: A Blog from the Center for Firearms Law at Duke University, August 4, 2021.

"Judging the Ninth Circuits Use of History in *Young v. Hawaii*," Second Thoughts: A Blog from the Center for Firearms Law at Duke University, April 16, 2021.

"The Black Panthers, NRA, Ronald Reagan, Armed Extremists, and the Second Amendment," *Second Thoughts: A Blog from the Center for Firearms Law at Duke University*, April 8, 2019.

"The 90th Anniversary of NRA's First Guiding Legislative Policies and the Implications for NYSRPA v. City of New York," *Second Thoughts: A Blog from the Center for Firearms Law at Duke University*, December 1, 2019.

"The Untold, Somewhat Embarrassing Story Behind the NRA's Laudatory Messages from Presidents Roosevelt, Truman, and Eisenhower," *Second Thoughts: A Blog from the Center for Firearms Law at Duke University*, September 23, 2019.

"The NRA is Blaming Journalists for Gun Violence," *Slate*, May 25, 2018.

"Why Does the NRA Almost Always Win?" *Buzzfeed News*, March 23, 2018.

"Conceal-Carrying the Day: We Debated Arming More People in the 1920s as a Solution to Gun Violence. The Idea Lost then, But It's Winning Now," *Slate*, March 6, 2018.

"Propaganda Machinery: How the NRA Pioneered the Right-Wing Art of Demonizing the Media," *Slate*, February 28, 2018.

"How the Gun Lobby Came to Be So Powerful," *Newsweek*, February 16, 2018.

"Justice Thomas Needs a History Lesson in the History of the 2nd Amendment," *History News Network*, December 11, 2015.

"The Hollow Impact of *Moore v. Madigan* on Gun Control?" *Huffington Post*, December 12, 2012.

"The Tale of Two Second Amendments," *Huffington Post*, September 7, 2012.

"Placing the Declaration of Independence in Historical Context: Thoughts on Educating Current and Future Generations About America's Founding Document," *ConSource Blog*, August 4, 2012.

Encyclopedia Entries "Second Amendment" and "Gun Control," *Encyclopedia Britannica*, December 2010.

## PUBLISHED BOOK REVIEWS

"Governing Immigration Through Crime: A Reader," 28 *Journal of Immigration, Asylum, and Nationality Law* 409 (2014).

"The Latino Threat: Constructing Immigrants, Citizens, and the Nation," 28 *Journal of Immigration, Asylum, and Nationality Law* 193 (2014).

## PRESENTATIONS, PANELS, AND DEBATES

"5th Annual Firearms Research Works in Progress Workshop," Texas A&M University School of Law, June 7-8, 2023.

"Debate with Stephen P. Halbrook: What Rights Does the Second Amendment Guarantee Outside the Home," Federalist Society, November 17, 2021 (available online).

"Militias Challenge Gun Laws in Virginia: 'It's About Shooting Tyrants in the Face'," *CBS News*, November 12, 2020 (available online).

"NRA Origins and 1930s Politics," C-SPAN 3 American History TV, Washington, DC, January 3, 2020 (available online).

"A Right to Bear Arms? The Contested Role of History in Contemporary Debates on the Second Amendment," 2020 American Historical Association Meeting, January 3, 2020.

"Jim Bohannon Show: *Armed in America* Book Talk," *Westwood One Affiliates*, April 19, 2019 (available online).

"Law and Society Series: The Second Amendment 228 Years Later," Riley Institute and Charleston Law Review, Charleston, SC, February 2019.

"Book Talk: History of Gun Rights in America," National Constitution Center, Philadelphia, PA, February 2018 (available online).

"Guns in American Society," Wesleyan University, Middletown, CT, October 2017.

"Firearms and the Common Law Tradition," Aspen Institute, Washington, DC, September 2016.

"Fifty Years of 7th Special Operations Squadron History," Duxford Imperial War Museum, Cambridge, UK, May 2014.

"History and the Meaning of the Constitution," Cleveland-Marshall School of Law, Cleveland, Ohio, April 2014.

"How Much Do We Really Know About Our Gun Laws?" *NPR WBEZ 91.5 Afternoon Shift*, Chicago, IL, January 14, 2013 (available online).

"The Second Amendment is First on Our Minds," *NPR WBEZ 91.5 Morning Shift*, Chicago, IL, January 14, 2013 (available online).

"The Second Amendment Steps Outside," *Huffington Post Live*, New York, NY, December 12, 2012 (available online).

"The Objective Dilemma Facing State Immigration Enforcement," Indiana University School of Law—Indianapolis Junior Faculty Workshop, Indianapolis, Indiana, March 2012.

"Does the Second Amendment Extend Outside the Home?" Cleveland-Marshall School of Law, Cleveland, Ohio, March 2012.

"Foreign Affairs Preemption and the Federal-State Spheres of Government," St. John's University School of Law Immigration Symposium, New York, New York, March 2012.

"The History and Evolving Conceptions of the Right to Bear Arms," Fordham School of Law Second Amendment Symposium, New York, New York, March 2012 (available online).

"State Policy Potpourri: Some Comparative Assessments," and "Curtailing Birthright Citizenship," Washburn School of Law Breaching Borders Symposium, Topeka, Kansas, October 2011 (available online).

"Law Enforcement Authority to Verify Immigration Status: *Estrada v. Rhode Island*," Law Enforcement and Public Safety Channel, Washington, District of Columbia, April 2010.

"*McDonald v. City of Chicago*: An Anglo-American Right to Arms?" Cleveland-Marshall School of Law, Cleveland, Ohio, April 2010.

"Debate with Clark M. Neilly on *McDonald v. City of Chicago*," Akron University School of Law Federalist Society, Akron, Ohio, April 2010.

"Keynote Speaker for 'Chamber to Chambers: Second Amendment Symposium'," and "Panelist for 'Who's Right to Bear Arms?'" Northeastern University School of Law, Boston, Massachusetts, March 2010.

"Bearing Arms in the Ohio Constitution," Cleveland-Marshall School of Law, Cleveland, Ohio, April 2008.

"Washington's Decision: George Washington's Decision to Reaccept Black Enlistments," Trenton Chamber of Commerce Patriot Week, Trenton, New Jersey, December 2006.

**AWARDS**

Joint Civilian Service Commendation Award, July 2019.

Allan S. Major Award for Air Force History Program Excellence, July 2016 (Air Force Level Award).

24th Special Operations Wing Supervisory Civilian of the Quarter, Civilian Category IV, July 2015.

Allan S. Major Award for Air Force History Program Excellence, July 2014 (Air Force Level Award).

352d Special Operations Group Supervisory Civilian of the Quarter, Civilian Category II, March 2013.

352d Special Operations Group Supervisory Civilian of the Quarter, Civilian Category II, March 2012.

Air Force Special Operations Command Excellence in Periodic History Award, February 2012.

Judge John R. Brown Award for Excellence in Legal Writing, August 2008 (National Award).

Certificate of Commendation, Commanding Officer, Marine Security Guard Battalion, May 2002.

Meritorious Mast, United States Marine Corps, April 2000.

Meritorious Mast, United States Marine Corps, August 1999.

Navy and Marine Corps Achievement Medal, United States Marine Corps, July 1999.

Certificate of Commendation, Commanding Officer, Marine Aviation Support Group, April 1998.

# Exhibit 2

Exhibit 2
Page 032

# Unprecedented Bargains.

IN

# Ladies Muslin Underwear.

During the next two weeks we will have on sale, for account of the [illegible] Underwear Co., of Baltimore a large invoice of assorted Muslin Underwear. The goods are CONSIGNED to us [illegible] with the explanation that the factory [illegible] heavy summer orders ran to full time during the spring months, but owing to [illegible] east and west a heavy overstock is the result, hence an effort to seek a southern outlet for the over-production. Having no Muslin Underwear department and not wishing to put in a line of these goods this late, our first intention was to re-ship the entire lot, wrote the firm to advise what disposition they wished made of them, and in reply they urge us in order to save them expenses of freight both ways to place the goods on sale FOR THEIR ACCOUNT and without a price limit for two weeks and at the expiration of the time to return them all unsold goods. The line is displayed in our windows with prices attached and offers an opportunity to the ladies to replenish their wardrobes at a minimum cost. Will be pleased to have the goods and prices compared with offerings of other houses.

Corner Eighth and Austin Streets.

# WACO FURNITURE CO.

UNDERTAKING AND EMBALMING

COFFINS, CASKETS, SHROUDS, ETC.

AN ORDINANCE

Be it ordained by the city council of the city of Waco:

Section 1. That the "public peace and order" of the ordinance of the city of Waco be amended by adding thereto article 112 a.

Article 112 a. Any person who, in this city shall commit an aggravated assault or an aggravated assault and battery upon the person of another, shall upon conviction be fined in any sum not less than twenty-five and more than one thousand dollars, or by imprisonment in the calaboose [illegible]

[illegible]

Section 2. That this ordinance take effect and be in force from and after ten days after its passage.

Passed July 9, 1891.

Approved: C. C. McCulloch, Mayor.

Attest:

[illegible], City Secretary.

[illegible] by adding thereto article 119 [illegible], to read as follows:

Art. 119 a. If any person shall go into any church or religious assembly, any schoolroom, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into a ball room, or social party or social gathering, or to any election precinct on the day or the days of any election, where any portion of the people of this State are collected to vote at any election, or to any other place where people may be assembled to muster or to perform any public duty, or to any other public assembly, and shall have or carry about his person a pistol or other fire-arm, dirk, dagger, slung shot, sword cane, spear, brass-knuckles, bowie-knife, or any other kind of a knife manufactured and sold for the purpose of offense or defense, he shall be punished by fine of not less than Fifty nor more than Five hundred dollars.

Section 2. That this ordinance shall take effect and be in force from and after ten days after its passage.

Passed July 9th, 1891. Approved, C. C. McCulloch, Mayor.

Attest:

[illegible], City Secretary.

Real Estate News.

[illegible]

SPECIAL OFFERINGS.

[illegible]

For $600 and upward [illegible].

[illegible] Company.

109 S. Fourth street, Waco, Texas.

Hay For Sale.

[illegible]

Gone to a Better Place.

[illegible]

Joe S. [illegible]

[illegible]

Joe F. [illegible]

Grippen has the best of [illegible].

Grippen has the best of [illegible].

Grippen has the best of sausage.

Grippen has the best of beef.

Grippen has the best of veal.

Tenth street, corner [illegible] and Franklin.

A Short Address Out on the Palace

Fellow Citizens—[illegible]

[illegible]

# Exhibit 3

Exhibit 3
Page 034

Newspapers.com by ancestry

https://www.newspapers.com/image/492594128

Printed on Jun 25, 2023

# OZARK COUNTY WEEKLY NEWS

Volume XIV. GAINESVILLE, MISSOURI, THURSDAY, JUNE 4, 1896. Number 28.

Notice to Correspondents.

Does this Mean You?

M'CLENDON & BOONE, ATTORNEYS AT LAW

Gainesville, Mo.

J. W. PUMPHREY, Attorney At Law.

MONKS & COBB,

J. C. BISHOP, Physician and Obstetrician

W. E. GORDON, C. E.

NOTICE FOR PUBLICATION.

NOTICE FOR PUBLICATION.

NOTICE FOR PUBLICATION.

ANNOUNCEMENTS.

For Sheriff.

For Constable.

FOR SURVEYOR.

FOR ASSESSOR.

FOR STATE SENATOR.

TOWN AND COUNTY.

Local News Items.

Begg's Hair Renewer.

EXECUTOR'S NOTICE.

Theodosia Times.

ORDINANCES,

Of the Incorporation of the Town of Gainesville.

What is

CASTORIA

Castoria.

Castoria.

Children Cry for Pitcher's Castoria.

It Does Not Pay.

ADMINISTRATORS NOTICE.

REID'S German COUGH AND KIDNEY CURE. Contains no Poison.

Children Cry for Pitcher's Castoria.
Children Cry for Pitcher's Castoria.
Children Cry for Pitcher's Castoria.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 3
Page 035

# Exhibit 4

Exhibit 4
Page 036

Newspapers.com by Ancestry
https://www.newspapers.com/image/208831791

Shelby County Herald (Shelbyville, Missouri) · Wed, Jul 29, 1891 · Page 4

Printed on Jun 25, 2023

T. P. MANUEL, Chairman Board of Trustees.
I. N. WATSON, Village Clerk.

## ORDINANCE NO. 23.

AN ORDINANCE CONCERNING THE CARRYING OF DEADLY WEAPONS.

Be it ordained by the Board of Trustees of the inhabitants of the Village of Leonard, Mo., as follows:

SECTION 1. If any person shall carry concealed upon or about his person any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school-room or place where people are assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose other than for militia drill or meetings called under the militia law of this state, having upon or about his person any kind of fire-arms, bowie-knife, dirk, dagger, slung-shot or other deadly weapon, or shall in the presence of one or more persons, exhibit any such weapons in a rude, angry or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks, or shall directly or indirectly sell or deliver, loan or barter to any minor any such weapon, without the consent of the parent or guardian of such minor, he shall upon conviction be punished by a fine of not less than fifty nor more than two hundred dollars.

SECTION 2. This ordinance shall be in force from and after its passage and publication.

Passed and approved July 6th, 1891.

T. P. MANUEL, Chairman Board of Trustees.
I. N. WATSON, Village Clerk.

TRUSTEE'S SALE

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 5

Exhibit 5
Page 038

Newspapers.com by ancestry
The Marceline Mirror (Marceline, Missouri) · Fri, Oct 28, 1892 · Page 8
https://www.newspapers.com/image/953638676

Printed on Jun 25, 2023

## ORDINANCE NO. 9.

1. Penalty for violations of this ordinance.
2. Assault and battery.
3. Failing to assist in making arrests, etc.
4. Resisting arrest, etc.
5. Permitting games of chance.
6. Betting.
7. Disturbing religious meetings, etc.
8. Carrying concealed weapons into assemblies, etc.
9. Section 8 not to apply to police, etc.
10. Conflicting ordinances repealed.
11. Ordinance to take effect, when.

### In Relation to Miscellaneous Offenses and Their Penalties.

Be it ordained by the Board of Aldermen of the City of Marceline, as follows:

SECTION 1. It shall be unlawful for any person to commit any of the acts hereinafter mentioned or enumerated within the corporate limits of the City of Marceline, and any person so offending shall be deemed guilty of a misdemeanor against the ordinances of the city, and for each offense shall be punished as hereinafter provided.

SEC. 2. Every person who shall commit an assault and battery or a common assault upon another, or indecently expose his person, shall, upon conviction, be punished by a fine of not less than one, nor more than one hundred, dollars.

SEC. 3. Every person who, without reasonable cause, shall fail to assist in making an arrest or committing any person to the city jail when required to do so by any police officer of the city in the performance of his official duty, shall be punished by a fine of not less than five, nor more than twenty, dollars, for every such offense.

SEC. 4. Every person who shall resist or attempt to hinder any officer of the city in the performance of his official duty, shall be punished by a fine of not less than ten, nor more than one hundred, dollars.

SEC. 5. Every person who shall suffer or permit any game of chance, upon the result of which any money or property or valuable thing whatever is bet, to be played in any building or room or upon any premises of which such person is the owner or has possession or control, shall be punished by a fine of not less than ten, nor more than one hundred, dollars.

SEC. 6. Every person who shall bet any money or property or valuable thing whatever upon the result of any game of chance shall be punished by a fine of not less than five, nor more than twenty-five, dollars.

SEC. 7. Every person who shall willfully or contemptuously disquiet or disturb any congregation or assembly of persons met for religious worship, or for social or literary purposes, by making a noise or by rude or indecent behavior, or profane discourse within the place of assembly, or so near the same as to interrupt or disturb the order or solemnity thereof, or who shall willfully menace, threaten or assault any person there being, shall be punished by a fine of not less than one, nor more than one hundred, dollars.

SEC. 8. Every person who shall carry concealed upon or about his person any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people have assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose other than for malitia drill or meetings called under the militia law of this state, having upon or about his person any kind of fire arms, bowie-knife, dagger, slung-shot, or other deadly weapon, or shall in the presence of one or more persons exhibit any such weapon in a rude or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drink, or shall directly or indirectly sell or deliver, loan or barter, to any minor any such weapon without the consent of the parent or guardian of such minor, shall, upon conviction, be punished by a fine of not less than fifty, nor more than one hundred, dollars.

SEC. 9. The next preceding section shall not apply to any police officer, nor to any officer or person whose duty it is to execute process or warrants, or to suppress breaches of the peace or make arrests, nor to persons moving or traveling peaceably through this state, and it shall be a good defense to the charge of carrying such weapon if the defendant shall show that he has been threatened with great bodily harm, or has good reason to carry the same in the necessary defense of his person, home or property.

SEC. 10. All ordinances and parts of ordinances in conflict with this ordinance are hereby repealed.

SEC. 11. This ordinance shall take effect and be in force from and after its passage.

Read three times and passed and approved this 12th day of March, 1892.

W. A. CATER, Mayor.
[SEAL.] AARON ROOTS, President of Board.
ATTEST: J. HEMMINGS, City Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers™ POWERED BY

# Exhibit 6

Exhibit 6
Page 040



Newspapers.com by Ancestry

The Ridgeway Journal (Ridgeway, Missouri) · Thu, Apr 6, 1893 · Page 4

https://www.newspapers.com/image/858847805

Printed on Jun 25, 2023

wrong. The real coward is the one who is laughed or frightened into sin. Do not neglect little things if they can affect the comfort of others in the smallest degree. Avoid moods and pets and fits of sulkiness. Honestly take to yourself your own share of blame: and never let another be punished for your fault. Avoid trashy, sensational and impure novels, as the very eminations of the pit, and cultivate a taste for a pure and standard literature. Never read any but famed books. Remember nothing good is ever effected without perseverance. Know how to be occupied and never have to ask yourself "What am I going to do?" Whatever you find to do, do it immediately. Do not talk of your ailments, your worries, your disappointments, your blues. Tell of the unexpected good which has befallen you: of the sunshine which has bespread your path. Life has its troublesome side, but it only becomes the greater part of life through our contemplation of it to the exclusion of what is brighter. And that bad habit weakens the nerve and sinew of our best energies by robbing us of cheerfulness and of hope.

"Life has its desert shadow,
Its interspace of tears;
And yet a sunburst often breaks
And scatters swift our fears;
For as a father pitieth
The children of his love,
So God, our Father, watcheth us
With pity from above.

J. FRANK SPAUNHURST.

**TOWN ORDINANCE NO. XXVIII,**

An Ordinance In Relation to Misdemeanors.

**Harness, Saddles, Bridles, Halters, Robes, Pads,**

Examine and Price our Pocket and Table Cutlery and Harness and Harness Goo[ds] and most complete assortment of Sweat Pads ever shown in the place, which will be the best Sweat Pad made, if not we will refund the money. We have the largest Saddles ever brought to the town. Some fine Saddles will arrive in a few days W[e] car load of Nails and Baker Barb Wire that will be sold at astonishingly low prices,

deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people have assembled for educational, literary or social purposes, or to any election precinct on any election day in said village, or into any court room during the sitting of court, or into any public assemblage of persons met for any lawful purpose, other than military drill or meetings called under the military law of the state, having on or about his person any kind of fire arms, bowie knife, dirk, dagger, slung shot or other deadly weapon, or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry or threatening manner, or shall have or carry any such weapon on or about his person when intoxicated or under the influence of intoxicating drinks, or shall directly or indirectly sell or deliver, loan or barter to any minor any such weapon, without the consent of his parent or guardian, he shall, upon conviction, be adjudged guilty of a misdemeanor and fined in a sum not less than twenty-five nor more than one hundred dollars. Provided that this section shall not apply to officers or persons whose duty it is to execute warrants or suppress breaches of the peace, nor to persons travelling peaceably through said village, not a resident of said county.

STATE OF MIS[SOURI,]
County of Har[rison,]
Town of Ridgew[ay.]

Before ——
Board of Truste[es] ... Ridgeway, plai[ntiff] ... defendant, to th[e] ... Dr.

**NEW GOODS.**

**S. H. Coleman w[ill] ... about them. Watch.**

**SEE NEXT ISSU[E]**

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

Newspapers.com by Ancestry

The Ridgeway Journal (Ridgeway, Missouri) · Thu, Apr 6, 1893 · Page 4

https://www.newspapers.com/image/858847805

Printed on Jun 25, 2023

deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people have assembled for educational, literary or social purposes, or to any election precinct on any election day in said village, or into any court room during the sitting of court, or into any public assemblage of persons met for any lawful purpose, other than military drill or meetings called under the military law of the state, having on or about his person any kind of fire arms, bowie knife, dirk, dagger, slung shot or other deadly weapon, or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry or threatening manner, or shall have or carry any such weapon on or about his person when intoxicated or under the influence of intoxicating drinks, or shall directly or indirectly sell or deliver, loan or barter to any minor any such weapon, without the consent of his parent or guardian, he shall, upon conviction, be adjudged guilty of a misdemeanor, and fined in a sum not less than twenty-five nor more than one hundred dollars, Provided that this section shall not apply to officers or persons whose duty it is to execute warrants or suppress breaches of the peace, nor to persons traveling peaceably through said village, not a resident of said county.

SEC. 13. Every person who shall play at any game of any kind whatsoever for money or property, with dice, cards or any other devise which may be used in playing any game of chance, or in which chance is an element, or shall bet or wager on the hands, or cards or sides of such as do play in said village, shall be deemed guilty of a misdemeanor and punished by a fine of not less than ten nor more than one hundred dollars.

SEC. 14. Every person who shall either labor himself or compel or permit his apprentice or servants or any other person under his charge or

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 7

Exhibit 7
Page 043

Newspapers.com by ancestry

https://www.newspapers.com/image/953556139

Printed on Jun 25, 2023

## An Ordinance.

MISDEMEANORS.

Be it enacted by the Board of Trustees of the Town of Rocheport as follows:

SECTION 1. DISTURBING THE PEACE. Every person who shall willfully disturb the peace of any other person or persons, by loud and unusual noise, loud and offensive or indecent conversation, or by using any profane or offensive language calculated to provoke a disturbance of the peace, or by threatening, quarreling, challenging, or fighting, shall be deemed guilty of a misdemeanor and, upon conviction, fined not less than five dollars.

Sec. 2. CONCEALED WEAPONS. If any person shall carry concealed upon or about his person any deadly or dangerous weapon, or shall go into any court room during the sitting of the court, or into any public assemblage of persons met for a lawful purpose, having upon or about his person any kind of fire arms, bowie knife, dirk, dagger, slunk-shot, or other deadly weapon, or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry and threatening manner, or shall have or carry any such weapon upon or

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers POWERED BY

Newspapers.com by Ancestry

Rocheport Commercial (Rocheport, Missouri) · Fri, Sep 20, 1895 · Page 8

https://www.newspapers.com/image/953556139

Printed on Jun 25, 2023

about his person when intoxicated or under the influence of intoxicating drinks; or shall, directly or indirectly, sell or deliver, loan or barter, to any minor any such weapon without the consent of the parent or guardian of such minor, he shall be deemed guilty of a misdemeanor and punished by a fine not less than ten dollars nor more than twenty-five dollars.

Sec. 3. Betting Prohibited. Any person who shall play at any game for money or property with cards, dice, or any other device, which may be adapted to or used in playing any game of chance, or shall, bet or wager on the hands, or cards, or sides of such as do play as aforesaid, shall be deemed guilty of a misdemeanor and, on conviction, be fined not less than five dollars.

Sec. 4. Reckless Riding and Driving. If any person shall unnecessarily ride or drive any horse or other animal upon or through any street or alley at a greater speed than a moderate gait, or shall so negligently ride or drive any such animal as to cause such animal, or the vehicle thereto attached, to come in contact with, or strike and injury any person or property; or shall, leave any such animal standing in any street, ally, or open lot, without being fastened or so guarded as to prevent its running away, or shall turn any such animal loose upon any street or alley, he shall be deemed guilty of a misdemeanor and, on conviction, be fined not less than five dollars for every such offense.

Sec. 5. Obstructing Passage on Streets. Whoever shall, upon or near a street or alley, fly a kite or engage in any sport or exercise likely to scare horses, injure persons passing upon such street, or embarrass the passage of vehicle, shall be deemed guilty of a misdemeanor, and, upon conviction, be fined not less than one dollar nor more than ten dollars for every such offense.

Sec. 6. Hitch Racks Any person who shall hitch any horse, mule, or other animal to any tree, post, block, fence, or other thing on Central street, between Third and Water streets, shall be deemed guilty of a misdemeanor, and fined not less than one dollar for every such offense. Provided, that this section shall not apply to doctors, nor to merchants, or butchers running a delivery wagon in connection with their business, and who shall be allowed to hitch such animals, so used in their business, to a post firmly set in the ground, at the edge of the sidewalk, immediately in front of their respective business houses. It shall be the duty of the Marshal to immediately remove or cause to be removed, all posts, rings, or other contrivances heretofore used for hitching purposes, except such as are herein provided for.

Sec. 7. Prisoners Refusing to Work. If any person adjudged to labor shall fail or refuse to obey any reasonable requirement of the Marshal, or to labor as directed, he shall be deemed guilty of a misdemeanor, and fined not less than ten dollars, for every such offense, to be enforced as other fines.

Sec. 8. Marshal Posse. If any person, over the age of eighteen years, who, when called upon by the Marshal or assistant Marshal, to act as a posse to aid him, in arresting and taking prisoner any offender, shall refuse or neglect to do so, he shall be guilty of a misdemeanor, and fined three dollars.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 8

Exhibit 8
Page 046

Newspapers.com by Ancestry

https://www.newspapers.com/image/694571590

Printed on Jun 25, 2023

Secretary.

## Concealed or Deadly Weapons.

The following ordinance in relation to the carrying of concealed or deadly weapons was passed by the council at the regular meeting Tuesday night:

Be it ordained by the Council of the city of Warrensburg as follows:

Sec. 1. If any person shall within this city carry concealed upon or about his person any deadly or dangerous weapon or shall go into any church or place where people have assembled for religious worship, or into any school room, or place where people are assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any Court room during the sitting of court or into any other public assemblage of persons met for any lawful purpose than for Militia drill or meetings called under the militia law of this state, having upon or about his person any kind of fire arms, bowie knife, dirk, dagger, slung shot or other deadly weapons, or shall in the presence of one or more persons, exhibit any such weapons in a rude, angry, or threatening manner or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks or shall directly or indirectly sell or deliver, loan or barter, to any minor without the consent of the parents or guardian of such minor he shall upon conviction be punished by a fine of not less than fifty or more than two hundred dollars or by imprisonment not less than five days or more than six months or by both such fine and imprisonment.

Sec. 2. This ordinance shall take effect and be in force from and after its passage and approval by the Mayor.

Passed June 3, 1890.

Approved June 5, 1890.

A. H. Gilkeson Dry Goods Co. are

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com

# Exhibit 9

Exhibit 9
Page 048

Newspapers.com by Ancestry

https://www.newspapers.com/image/863087542

Printed on Jun 25, 2023

TOWN ORDINANCES.

SIMMONS LIVER REGULATOR

BILIOUSNESS

HEADACHE

SIMMONS LIVER REGULATOR

CASTORIA

for Infants and Children.

MERRELL'S FEMALE TONIC

Stomach, Liver and Bowels

PACIFIC LIVER PILLS

HUMPHREYS'

HOMEOPATHIC SPECIFICS.

Humphreys' Witch Hazel Oil Cures Piles.

GOLDEN MEDICAL DISCOVERY

CURES ALL HUMORS,

CONSUMPTION,

CHRONIC DISEASES

Liver, Blood, and Lungs.

Pierce's LITTLE LIVER PILLS.

$500 REWARD

GRENADES.

"STAR" CHEMICAL

SOMETHING NEW. WORLD RENOWNED GARDEN DRAFT PLOW

J. I. CASE PLOW WORKS, RACINE, WIS.

NEW ADVERTISEMENTS

WANTED

ROOT BEER

Deafness

PARKER'S GINGER TONIC

Cure for the Deaf

KASKINE

MARRIAGE GUIDE

SPENCERIAN STEEL PENS

IT STOPS THE PAIN

DR. HENDERSON.

PARKER'S HAIR BALSAM

HINDERCORNS.

SEWING MACHINES.

Royal St. John and White SEWING MACHINES.

THE ROYAL ST. JOHN.

THE BEST IN THE WORLD

RUNS FORWARD & BACKWARDS

The Cover Can be Used as a Work Box

J. L. ENGLISH & SON

OSCEOLA, MO.

SCHOOL FURNITURE.

PERFORATED FOLDING DESK,

THE HANDSOMEST, MOST DURABLE, MOST DURABLE.

SCHOOL DESK MANUFACTURED

By all means see a sample before purchasing.

OSCEOLA, MO.

COCKLE'S ANTI-BILIOUS PILLS

PAY WHEN CURED

THE HORSE'S FRIEND.

Spooner's Horse Collar.

AUTOMATIC Single Thread Sewing Machine

WESTERN MEDICAL & SURGICAL INSTITUTE,

F. P. DANIEL

Harness, Saddles, Bridles, Collars, Whips, Spurs

Osceola, Mo.

AGENTS WANTED

SHANNON LETTER & BILL FILE

THE COSMOPOLITAN

MADAME DEAN'S SPINAL SUPPORTING CORSETS

LADIES

HARTER'S IRON TONIC

STEWART'S HEALING POWDER.

Tutt's Pills

ANTI-BILIOUS MEDICINE.

Sold Everywhere.

FURNITURE.

THOMAS AMRINE

FURNITURE!

OSCEOLA MO.

UNDERTAKERS GOODS

PATENTS

STEIN'S SAFETY STOCKING SUPPORTER

WINCHESTER REPEATING RIFLES.

Single Shot Rifles, Reloading Tools, and Ammunition of all kinds.

WINCHESTER REPEATING ARMS CO. NEW HAVEN, CONN.

Send for 76-Page ILLUSTRATED CATALOGUE

WEAK & UNDEVELOPED

WESTERN MEDICAL AND SURGICAL INSTITUTE,

PATENTS

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY Newspapers.com

Exhibit 9
Page 049

Case 8:23-cv-01696-CJC-ADS Document 21-2 Filed 11/03/23 Page 50 of 157 Page ID #:416

Newspapers.com by Ancestry

Osceola Advance (Osceola, Missouri) · Thu, Jul 7, 1887 · Page 4

https://www.newspapers.com/image/863087542

Printed on Jun 25, 2023

J. E. Wells, Town Clerk.

## ORDINANCE NO. 4.

Be it ordained by the Board of Trustees of the inhabitants of the town of Collins, Missouri:

Sec. 1.—Any person found intoxicated within the coporate limits of said town shall be arrested and confined in the calaboose or town jail until he shall become sober when he shall be taken before the chairman of the board for trial. If such person be found guilty he shall fined not less than Three nor more than Ten dollars for each offense.

Sec. 2.—Any person who shall use any profane, obscene or indecent language, or talk in a loud or unusual manner, or make any other loud or unusual noise, or threaten violence or quarrel or challenge any person to fight or boisterously obstruct or assist in boisterously obstructing the passage of any street, alley or or sidewalk, or encourage or entice any person or persons to challenge, quarrel or fight, or prevent or attempt to prevent the arrest of any person or persons, or prevent the suppression of any fight or disturbance within the corporate limits of said town shall, on conviction, be fined not less than One nor more than Ten dollars for each offense.

Sec. 3.—Any person or persons who shall in any manner disturb the peace of any person or family or citizen of said town shall, on conviction be fined not less than one nor more than fifty dollars for each offense and if any damage to property has been done, shall forfeit to the town for the use of the person so damaged double the amount of the loss occasioned by such damage.

Sec. 4.—Any person or persons who shall resist any officer of said town in the discharge of his duties in any manner whatever, or any person, who shall when required, refuse to assist any marshal or deputy marshal of said town in making arrests, quelling riots or executing process shall, on conviction, be fined not less than one nor more than fifty dollars for each time that such person or persons shall so resist or refuse.

Sec. 5.—Any person who shall within the corporate limits of said town, engage in any fight, fray, brawl, riot or tumultuous gathering, or who shall strike, beat, wound or assault another, shall, on conviction be fined not less than one nor more than ninety dollars for each offense.

Sec. 6.—Any person who shall carry any concealed weapon or any revolver, pistol, knife or dirk which may not be concealed within the corporate limits of the town of Collins, shall, upon conviction be fined not less than ten nor more than fifty dollars for each offense, except however, that upon good cause shown, the board may grant a permit to any citizen of good reputation to carry weapons for self defense

Sec. 7.—Any person who shall draw or flourish in a threatening manner any firearms or dangerous weapons within the corporate limits of said town, shall upon conviction be fined not less than ten nor more than seventy-five dollars for each offense.

Sec. 8.—Any person who shall discharge any firearms within the corporate limits of said town shall on conviction be fined not less than one nor more than fifteen dollars for each offense.

Sec. 9.—Any person who shall build a bonfire after 3 o'clock p. m. within the corporate limits of said town shall on conviction be fined not less than one nor more than ten dollars for each offense.

Sec. 10.—Any person who shall furiously and unnecessarily ride or drive any animal or animals through the streets of said town or shall ride, drive or lead any horse, mule, ass, ox, bull or cow upon, or hitch any such animal to any pavement sidewalk or awning post, or who shall leave any team of horses or mules standing in the streets of said town harnessed to a vehicle and not secured, shall upon conviction, be fined in a sum not exceeding twenty dollars.

Sec. 11.—Any person who shall indecently expose his person within the corporate limits of said town or the common thereto attached, shall on conviction be fined not less than five nor more than fifty dollars for each offense, and this section shall be construed to prohibit any person bathing in Coon Creek within the jurisdictional limits of the town.

Sec. 12.—Any person who shall in any manner obstruct the passage of any street alley, side walk or crossing shall on conviction be fined not more than twenty dollars for each offense, and shall pay the cost of removing such obstruction.

Sec. 13.—Any person who shall sweep throw or place any straw, ashes, husks, shavings, sawdust, or other rubbish or litter on any sidewalk or street or in any gutter or sewer of said town shall on conviction be fined not more than ten dollars and shall pay the costs of removing such rubbish or litter; but this section shall not apply to persons constructing any building.

Sec. 14.—Any person who shall establish, maintain or commit a nuisance upon or in any manner befoul any lots, street, yards, alleys or commons within the corporate limits of the town of Collins, shall on conviction be fined not less than twenty dollars for each offense.

Sec. 15.—Any person who has no visible means of support and shall be found loitering about the streets of said town, or frequenting dram shops and places of doubtful repute, shall be deemed a vagrant, and any person convicted of being a vagrant shall be fined not less than five nor more than twenty dollars.

Passed by the Board, May 2nd, 1887

JOHN R. GORDON,
Ch'm'n. Town Board.

Attest:
J. E. Wells, Town Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

Exhibit 9
Page 050

# Exhibit 10

Exhibit 10
Page 051

Case 8:23-cv-01696-CJC-ADS Document 21-2 Filed 11/03/23 Page 52 of 157 Page ID #:418

Newspapers by ancestry

The Craig Weekly Gazette (Craig, Missouri) · Wed, Oct 13, 1880 · Page 4

https://www.newspapers.com/image/859684459

Printed on Jun 25, 2023

# City Ordinances of Craig, Mo.

## MISDEMEANORS.

**ORDINANCE No. 1 —For Disturbing The Peace.**

Be It Ordained by the Board of Aldermen of the City of Craig, Missouri, as follows:

Any person who shall willfully disturb the peace and quietude of any inhabitant or inhabitants of the city of Craig, by loud, profane, vulgar or boisterous language, or by loud and unusual noises, or by obstreperous and unruly conduct, shall be adjudged guilty of a misdemeanor and fined therefor in any sum not less than two dollars, nor more than twenty dollars.

P. B. Cook, President. C. H. Thayer, Mayor.

**ORDINANCE No. 2—Drunkenness On The Streets.**

Be It Ordained by the Board of Aldermen of the City of Craig, Missouri, as follows:

Any person who shall be found intoxicated in any street, alley, or public place, or in any business house in the city of Craig, shall be adjudged guilty of a misdemeanor and upon conviction shall be fined in any sum not less than two dollars, nor more than twenty dollars.

P. B. Cook, President. C. H. Thayer, Mayor.

**ORDINANCE No. 3—Persons Using Profane or Abusive Language.**

Be It Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall within the corporate limits of said city of Craig use toward any person, profane indecent or abusive language calculated to provoke a breach of the peace, shall be adjudged guilty of a misdemeanor and shall upon conviction be fined in any sum not less than two dollars, nor more than twenty dollars.

P. B. Cook, President of Board. C. H. Thayer, Mayor.

**ORDINANCE No. 4—A Bill to Prevent Quarreling, Etc.**

Be It Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person, or persons, found within the corporate limits of said city of Craig, fighting, challenging, quarreling, or threatening to fight, shall be adjudged guilty of a misdemeanor and shall upon conviction be fined in any sum not less than one dollar nor more than fifty dollars.

P. B. Cook, President. C. H. Thayer, Mayor.

**ORDINANCE No 5—A Bill For the Protection of Property**

Be It Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall willfully or knowingly destroy or injure the property of any citizen of said city of Craig, or any property of and belonging to said city, or shall destroy or injure any shade, fruit, or ornamental tree, or shrub, or vine, or who shall cut, mark, or deface, or in anywise injure and destroy any sign, furniture or fixtures, within the corporate limits of said city of Craig, shall be adjudged guilty of a misdemeanor, and shall upon conviction be fined in any sum not less than one dollar, nor more than one hundred dollars.

P. B. Cook, President of Board. C. H. Thayer, Mayor.

**ORDINANCE No. 6—A Bill for the Punishment For Riding Over Sidewalks.**

Be It Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall ride or drive any horse or other animal across any sidewalk, or shall ride or drive any horse or other animal upon any sidewalk within the corporate limits of said city of Craig, at any other point or place along the line of any such sidewalk other than at a public crossing of the same, shall be adjudged guilty of a misdemeanor and shall upon conviction be fined in any sum not less than one dollar, nor more than ten dollars.

P. B. Cook, President. C. H. Thayer, Mayor.

**ORDINANCE No. 7—A Bill to Restrain Persons from Fast and Careless Driving.**

Be It Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall ride or drive any horse or other animal, in or upon any street or alley within the corporate limits of said town in a careless, reckless manner, or at an unusual rate of speed, or at a greater speed than ten miles per hour, shall be adjudged guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than one dollar, nor more than ten dollars.

P. B. Cook, President. C. H. Thayer, Mayor.

**ORDINANCE No. 8—Carrying Concealed Weapons.**

Be It Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall within the corporate limits of said city of Craig, carry or have upon his person, any concealed weapon or weapons, shall be adjudged guilty of a misdemeanor, and shall upon conviction be fined in any sum not less than one dollar, nor more than ten dollars.

P. B. Cook, President. C. H. Thayer, Mayor.

**ORDINANCE No. 9—Indecent Exposure of Person.**

Be it Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall willfully expose his or her person publicly, in a vulgar and indecent manner within the corporate limits of said city of Craig, shall be adjudged guilty of a misdemeanor and shall upon conviction be fined not less than two dollars, nor more than twenty dollars.

P. B. Cook, President. C. H. Thayer, Mayor.

**ORDINANCE No. 10—Securely Hitching Teams.**

Be It Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall leave any horse, mule, or ass, in or upon any street or alley within the corporate limits of said city of Craig, without having securely hitched, and tied such horse, mule, or ass, to some firm and safe post, rack, or other fastening, shall be adjudged guilty of a misdemeanor and upon conviction shall be fined not less than two dollars, nor more than twenty dollars.

P. B. Cook, President. C. H. Thayer, Mayor.

**ORDINANCE No. 11—Hitching Animals to Proper Places.**

Be It Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall hitch, tie, or fasten any horse or other animal to any fence, tree, or building within the corporate limits of said city of Craig, without the consent of the owner or person under whose control such fence, tree, or building shall be first had and obtained, shall be adjudged guilty of a misdemeanor and shall upon conviction be fined not less than one dollar, nor more than ten dollars.

P. B. Cook, President. C. H. Thayer, Mayor.

**ORDINANCE No. 12—To Restrain Persons From Keeping Gaming Tables, Etc.**

Be It Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall within the corporate limits of said city of Craig, set up, or keep any table or gambling device, commonly called A, B, C, Faro Bank, E O Roulette, Equality, Keno, or any kind of gambling table or device to be played upon with cards, dice or dominoes, for money or property, shall be adjudged guilty of a misdemeanor and shall upon conviction be fined in any sum not less than five dollars, nor more than fifty dollars.

P. B. Cook, President of Board. C. H. Thayer, Mayor.

**ORDINANCE No. 13—To Restrain Persons From Gambling, Etc.**

Be It Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall within the corporate limits of said city of Craig bet, or wager, money, property, or other article or thing of value upon any game played with cards, dice, or dominoes, or game or device of any kind or nature whatsoever, shall be adjudged guilty of a misdemeanor and shall upon conviction be fined in any sum not less than two dollars nor more than twenty dollars.

P. B. Cook, President of Board. C. H. Thayer, Mayor.

**ORDINANCE No. 14—For the Suppression of Houses of Ill Fame.**

Be It Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall within the corporate limits of said city of Craig set up, establish, or keep a bawdy house, brothel house of ill fame or prostitution, or house assignation, shall be adjudged guilty of a misdemeanor and shall upon conviction be fined in any sum not less than ten dollars, nor more than one hundred dollars.

P. B. Cook, President. C. H. Thayer, Mayor.

**ORDINANCE No. 15—A Bill for the Punishment of Vagrants.**

Be It Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who may be found within the corporate limits of said city of Craig loitering around any house of ill fame gambling house or place where liquors are sold or drank without any visible means of support, and every able bodied married man who shall refuse to provide for the support of his family. And any person found tramping about or wandering from place to place in said city of Craig without any visible means of support shall be deemed a vagrant and shall upon conviction be fined in any sum not less than one dollar nor more than ten dollars.

P. B. Cook, President of Board. C. H. Thayer, Mayor.

**ORDINANCE No. 16—To Restrain Gaming on Sundays.**

Be It Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall within the corporate limits of the said city of Craig, engage in horse-racing, cock-fighting, or playing at games of any kind, whether cards, dice, dominoes, or croquette on the first day of the week, commonly called Sunday, either for money or amusement, shall be adjudged guilty of a misdemeanor, and shall upon conviction be fined not less than one dollar nor more than ten dollars.

P. B. Cook, President Board of Aldermen, city of Craig, Holt county, Mo. C. H. Thayer, Mayor.

**ORDINANCE No. 17—To Restrain Persons from Selling Intoxicating Liquors On Sunday.**

Be it Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall within the corporate limits of said city of Craig sell dispose of or give away any intoxicating liquors, whiskey brandy wine or beer on the first day of the week commonly called Sunday shall be adjudged guilty of a misdemeanor and shall upon conviction be fined in any sum not exceeding twenty dollars provided however, this section shall not be construed as effecting in any manner any Druggist in filling the prescription of any regular physician.

P. B. Cook, President. C. H. Thayer, Mayor.

**ORDINANCE NO. 18—Licensing Peddlers.**

Be it Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows:

Any person who shall within the corporate limits of said city of Craig engaged in or attempt to engage in the sale of any goods wares or merchandise as a foot peddler, broker or auctioneer without having obtained a permit or license from the Mayor so to do shall be adjudged guilty of a misdemeanor and shall upon conviction be fined not less than one dollar nor more than ten dollars, provided that this section shall not be so construed as to include citizens of said city of Craig in publicly or privately making a bona fide sale of goods, property, wares or merchandise belonging to themselves.

P. B. Cook, President. C. H. Thayer, Mayor.

**Do You Believe It.**

That in this town there are scores of persons passing our store every day whose lives are made miserable by Indigestion, Dyspepsia, Sour and distressed Stomach, Liver Complaint, Constipation, when for 75cts. we will sell them Shiloh's Vitalizer, guaranteed to cure them. Sold by W. M. Boyer.

If you are suffering from Indigestion or any complaints of the Stomach or Bowels, you will obtain great relief by using the Prickly Ash Bitters, as they have the property of gently relieving these organs and placing them in a good sound healthy condition.

**A BARGAIN OFFERED.**

Porter & Hathorn offer their Blacksmith Shop Building and two Forges, and tools to run them,

FOR SALE!

The Shop has a good run of business and the firm will give good reasons why they offer the same for sale—the shop is well located, is 66 feet deep and 20 feet wide—a one story frame, fronting on two streets. Some man can get a bargain by calling on the firm, or addressing,

Porter & Hathorn, Craig, Mo.

For the finest toilet and washing Soap, go to Boyer's.

**We Challenge The World.**

When we say we believe, we have evidence to prove that Shiloh's Consumption Cure is decidedly the best Lung medicine made, in as much as it will cure a common or Chronic Cough in one half the time and relieve Asthma, Bronchitis, Whooping Cough, Croup, and show more cases of Consumption cured than all others. It will cure where they fail, it is pleasant to take, harmless to the youngest child and we guarantee what we say. Price, 10cts. 50cts and $1.00. If your Lungs are sore, Chest or Back lame use Shiloh's Porous Plaster. Sold by W. M. Boyer.

**Bilby & Heaton,**

**BANKERS,**

Craig, Mo.

Do a general banking business. Loan money, buy and sell exchange, make collections at all accessable points at the lowest possible rates, receive deposits subject to check at sight, will also allow interest on time deposits.

We persue a conservative policy and avoid speculation, and will deal equitably with all our patrons, whether they do a large or small business with us. Your patronage is respectfully solicited.

**CRAIG Fashion BAZAR**

**MRS. M. E. SMIRL,**

has now a full line of

NEW MILLINERY GOODS,

**Such as Hats, Bonnets, Flowers,**

Trimming Silks, Ornaments, and Notions, Hamburg Edgings, Laces, Zephyrs, of all shades, Mottoes, Card Boards, and ladies' furnishing goods, as cheap as they can be sold in Craig.

Call and learn her prices on the New Stock. [37]

# Dentistry!

**Dr. D. W. TRINQUE,**

SURGEON DENTIST,

Office in the

Gazette Building, Craig, Mo.

Over Furniture Store, on Front street.

**FEED, SALE and TRADE**

# Stable!

**J. W. Bird & Son,**

Proprietors,

CRAIG, MISSOURI,

Keep on hand teams for hire, trade or sale. Passengers conveyed to any point desired at reasonable rates. Teams boarded by the day or week. A number of good teams for sale now, one, a span of large, heavy mules.

They are also agents for the Anti-freezing force pumps, and have them on exhibition in Craig.

J. W. BIRD & SON.,

19-3m Craig, Mo

**Hark ! Ye Hungry Mortals**

If you hunger and thirst after GRUB, go to

**J. H. William's Restaurant !**

And Be Filled.

In connection, I keep Cheese, Crackers, Dried Beef, Bologna, Candies, Nuts, Canned Fruits Oysters, Sardines,

**Bread, Cakes and Pies,**

Tobacco and Fine Cigars.

Call and see us, and we will do you good.

**NEW HARNESS SHOP.**

**J. B. Drappeau. Prop**

East Side Front Street, Craig, Mo.

**Saddles And Harness**

COLLARS, BRIDLES, HALTERS, WHIPS, BRUSHES, Etc.

I wish to inform the public that I am now ready to furnish anything in my line on reasonable terms at short notice.

The Best Article of Harness Oil always in stock.

GIVE ME A CALL!

I will do REPAIRING, and in all particulars **Guarantee Satisfaction**

J. B. Drappeau

**Dock Wells & Co.,**

**BUTCHERS!**

CRAIG, MO.

successors to [illegible] & son,

Keep the best Fresh Beef, Fresh Pork, and Mutton, always in stock, and sell at lowest possible prices.

CASH PAID FOR BUTCHERS' STOCK.

Give us a Call for choice meats.

We will always pay the best prices in cash for Hides.

**W. M. BOYER.**

# Druggist!

At Greer & White's old stand,

CRAIG, MO.

The most reliable and best assorted house in the city, for to buy

**DRUGS, MEDICINES, CHEMICALS,**

**Paints, Oils, &c.**

School Books, Stationery, Musical Instruments, Stationery, Perfumery and Toilet articles, Wall Paper, window glass, lamps and lamp fixes,

**Fancy Groceries, Cigars, Tobacco and Confectionaries.**

Powder and shot, Cleveland Rubber Paint, etc. He is agent for this county for Danforth's Burning Fluid, and Fluid Stoves. Also the Singer Sewing machine.

**Prescriptions Carefully c[illegible] at all hours.**

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers™ POWERED BY .com

Exhibit 10
Page 052

Newspapers.com by Ancestry
https://www.newspapers.com/image/859684459

The Craig Weekly Gazette (Craig, Missouri) · Wed, Oct 13, 1880 · Page 4

Printed on Jun 25, 2023

ORDINANCE No. 8—Carrying Concealed Weapons.

Be it Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows :

Any person who shall within the corporate limits of said city of Craig. carry or have upon his person, any concealed weapon or weapons, shall be adjudged guilty of a misdemeanor, and shall upon conviction be fined in any sum not less than one dollar, nor more than ten dollars.

C. H. Thayer, Mayor.

P. B. Cook, President.

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY Newspapers.com

# Exhibit 11

Exhibit 11
Page 054

Newspapers.com by Ancestry

Crawford Mirror (Steelville, Missouri) · Thu, Jul 27, 1882 · Page 1

https://www.newspapers.com/image/491577103

Printed on Jun 25, 2023

# Crawford Mirror.

AN INDEPENDENT NEWSPAPER, DEVOTED TO HOME INTERESTS.

VOL. 10. STEELVILLE, MO., THURSDAY, JULY 27, 1882. NO. 50.

REVISED ORDINANCES.

Ordained and Established May 24, 1881.

CHAPTER I.

CHAPTER II.

CHAPTER III.

CHAPTER IV.

CHAPTER V.

CHAPTER VI.

CHAPTER VII.

CHAPTER VIII.

Professional Cards.

TRADES.

HOTELS.

St. Louis Seminary.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

Newspapers.com by Ancestry

Crawford Mirror (Steelville, Missouri) · Thu, Jul 27, 1882 · Page 1

https://www.newspapers.com/image/491577103

Printed on Jun 25, 2023

Approved May 21, 1881.
Attest: JAS. A. GREEN, Chm'n.
M. H. HELLYER, Clerk.

CHAPTER VII.

**License.**

*Be it ordained by the Board of Trustees of the Town of Cuba:*

SEC. 1. There shall be levied on all dram shops duly licensed by the county court of Crawford county, Missouri, within the corporate limits of this town, or within one-half mile of such limits, a tax of fifty dollars per annum to be collected semi-annually; license to be issued and signed by the chairman of the board of trustees and attested by the clerk. All persons refusing to pay said license tax, shall upon conviction be fined not less than ten nor more than one hundred dollars.

SEC. 2. The marshal is hereby ordered to levy and collect a tax of twenty-five dollars for every circus or menagerie for each day's exhibition, and a tax of five dollars for each side show accompanying same, and a tax of three dollars for every slight of hand show, minstrel troup, and all other exhibitions for each exhibition, except local shows or exhibitions for benevolent purposes.

SEC. 3. This ordinance shall be in force and effect from and after its approval.

Approved May 21, 1881.
Attest: JAS. A. GREEN, Chm'n.
M. H. HELLYER, Clerk.

CHAPTER VIII.

**Misdemeanors.**

*Be it ordained by the Board of Trustees of the Town of Cuba:*

SEC. 1. If any person, or persons shall put any dead animal carcass or parts thereof, offal or any other filth into any well, spring, brook or branch of which use is made for domestic purposes, every person so offending shall be deemed guilty of a misdemeanor and fined in a sum not less than ten nor more than fifty dollars. If any persons shall remove or cause to be removed and place upon premises not his own or public roads any dead animal carcass or part thereof or other nuisance to the annoyance of the citizens of the town or any of them, every person so offending shall be deemed guilty of a misdemeanor and fined in a sum not less than ten nor more than fifty dollars and if such nuisance be not removed within three days thereafter it shall be deemed a second offense against the provisions of this section.

SEC. 2. If any owner, or owners, occupiers or occupants of any slaughter-house wherein any hogs, beeves or other animals are slaughtered either in said house, or on the premises of the said owner, shall permit the same to remain unclean between the 1st day of April and the 1st day of October in each year to the annoyance of the citizens of this town or any of them, every person so offending shall be fined in any sum not less than five nor more than fifty dollars, and if said nuisance be not removed in five days there after it shall be deemed a second offense against the provisions of this section, and every like neglect of each succeeding five days thereafter shall be considered an additional offense against the provisions of this section.

SEC. 3. Whenever complaint shall be made to the chairman of the board by the street commissioner, marshal or any member of the board or trustees or on the oath or affidavit of any citizen of the town that any person is keeping or permitting his or her property, or premises to remain so unclean or filthy as to be a public nuisance it shall be the duty of the chairman to issue a summons to the owners of such premises if he be a resident of the town, or if not a resident, to the person occupying or having charge of such premises commanding such person to appear before the board of trustees on a day therein named, and show cause why such unclean or filthy premises should not be declared a nuisance; such summons shall be served at least five days before the meeting of the board by reading the same in the presence and hearing of the party, or by leaving a copy with some member of the family over the age of fifteen years, and upon return of the summons the board shall examine into the facts and if the testimony shall warrant they shall declare such premises to be a nuisance and order the same to be abated either by removal or cleaning, and if any person shall permit or continue such nuisance for three days after such order of abatement such person shall be deemed guilty of a misdemeanor and fined not less than five dollars nor more than twenty-five dollars and costs, and the chairman may at his discretion order the marshal to have such nuisance abated and the costs thereof to be taxed against the defendant as other costs in the case.

SEC. 4. Every person who shall set up or keep a common gaming house or a bawdy house or a brothel shall upon a conviction be adjudged guilty of a misdemeanor and be punished by a fine not exceeding five hundred dollars.

SEC. 5. Every person who shall knowingly lease or let to another any house or building for the purpose of being used or kept as as gambling house, brothel, or bawdy house shall on conviction be adjudged guilty of a misdemeanor and punished by a fine not exceeding five hundred dollars.

SEC. 6. Every person who shall shoot off or discharge any gun or pistol or other fire arms within the corporate limits of this town shall be adjudged guilty of a misdemeanor, and fined in any sum of not less than one nor more than ten dollars.

SEC. 7. If any person shall run or drive or cause to be run or driven upon any public streets or public roads within the limits of this town, any horse or horses or other animals so as to interrupt travelers thereon or put to fright the horses by them rode or driven he shall upon conviction be adjudged guilty of a misdemeanor and punished by a fine of not less than five nor more than twenty dollars.

SEC. 8. If any two persons shall voluntarily or by agreement engage in any fight or use any blows or violence toward each other in any angry or quarrelsome manner or do each other any wilful mischief, or if any person shall assault or strike another to the terror or disturbance of the citizens, the person or persons so offending shall be adjudged guilty of a misdemeanor and fined in any sum not less than three nor more than five dollars.

SEC. 9. If any person shall make use of any profane or obscene language in a loud or boisterous manner so as to annoy or disturb any of the citizens of the town, or if any person shall be guilty of indecently exposing his or her person at any public place in said town or shall be found in a state of beastly intoxication, every person so offending shall be deemed guilty of misdemeanor and fined in any sum not less than one nor more than fifty dollars.

SEC. 10. If any person be found carrying concealed about his person in the corporate limits, any kind of fire arms, bowie knife, dirk, dagger, slung shot, or other deadly weapon, within the limits of said town he shall be fined in a sum not less than three nor more than twenty-five dollars provided this section shall not apply to any person whose duty it is to bear arms in discharge of his duty imposed by law.

SEC. 11. Every person who shall be convicted of obstructing a street, crossing or side walk by leaving any carriage or horse or horses standing on sidewalk or by hitching teams or horses on or across the same shall be guilty of a misdemeanor and fined not less than one nor more than ten dollars.

SEC. 12. Every minor who shall be convicted of getting on or entering any railroad engine, coach, or car while running or standing on the main or side track of any company within the corporate limits of said town unless such minors shall have some legitimate business thereon, shall be deemed guilty of a misdemeanor and fined not less than one nor more than ten dollars.

SEC. 13. Every person who shall be convicted of maliciously and cruelly pounding and maiming, beating, or torturing any horse, oxen or other cattle in the limits of the town of Cuba, whether it belongs to himself or another shall be deemed guilty of a misdemeanor and fined not less than ten nor more than one hundred dollars.

SEC. 14. Every person who shall be convicted of leaving a team of horses standing in the streets of said town without being securely fastened shall be deemed guilty of a misdemeanor and find in a sum not less than one nor more than ten dollars.

SEC. 15. Every person who shall be convicted of playing at base ball in the corporate limits on the 1st day of the week commonly called Sunday, shall be deemed guilty of a misdemeanor and fined not less than one nor more than fifty dollars.

SEC. 16. Whoever in the town of Cuba shall live in notorious adultery or any man and woman who shall lewdly and lasciviously cohabit together being unmarried, or guilty of open or notorious acts of public indecency shall be adjudged guilty of a misdemeanor and upon conviction be fined not less than five nor more than one hundred dollars.

*Continued on Eighth page.*

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com by ancestry

Crawford Mirror (Steelville, Missouri) · Thu, Jul 27, 1882 · Page 8

https://www.newspapers.com/image/491577327

Printed on Jun 25, 2023

**Cuba Town Ordinancet.**

[*Continued from first page.*]

SEC. 17. Whoever shall in the town of Cuba either directly or in directly expose to sale or sell intoxicating liquors or keep the doors of his house open for the purpose of selling or exposing liquor for sale on Sunday shall be deemed guilty of a misdemeanor and upon conviction thereof be fined not less than five nor more than one hundred dollars.

SEC. 18. Every person being the owner of a slut who shall permit the same to run at large while in heat or proud shall be deemed guilty of a misdemeanor and upon conviction be fined not less than one nor more than five dollars.

SEC. 19. This ordinance shall be in force and effect from and after its approval.

Approved May 24, 1882.

Attest: JAS. A. GREEN, Chm'n.

M. H. HELLYER, Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com

# Exhibit 12

Exhibit 12
Page 058

Newspapers by ancestry

The Granby Miner (Granby, Missouri) · Sat, Nov 1, 1873 · Page 2

https://www.newspapers.com/image/862701906

Printed on Jun 25, 2023

ORDINANCES

TOWN of GRANBY

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com by Ancestry

The Granby Miner (Granby, Missouri) · Sat, Nov 1, 1873 · Page 2

https://www.newspapers.com/image/862701906

Printed on Jun 25, 2023

W. S. MESPLAY, Clerk.

NO. 8.

AN ORDINANCE concerning the carrying of weapons.

Be it ordained by the Board of Trustees of the Town of Granby, as follows:

Sec. 1. That any person within the corporate limits of the town of Granby who shall be found carrying, either openly or concealed, any pistol, metalic knuckles, slingshot, large knife, or any other offensive weapon (except an official in the lawful discharge of his duty, or a person having such weapon for the purpose of some immediate lawful purpose) shall be fined not less than five nor more than fifteen dollars.

Passed and adopted October 30, 1873.

M. T. WILLIAMS, Chm'n.

W. S. MESPLAY, Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com

# Exhibit 13

Exhibit 13
Page 061

Case 8:23-cv-01696-CJC-ADS Document 21-2 Filed 11/03/23 Page 62 of 157 Page ID #:428

Newspapers.com by Ancestry
The Stockton Review and Rooks County Record (Stockton, Kansas) · Fri, Jul 1, 1887 · Page 1
https://www.newspapers.com/image/379709602
Downloaded on Oct 11, 2022

# ROOKS COUNTY RECORD.

VOL. VIII. NO. 26 STOCKTON, KANSAS, FRIDAY, JULY 1, 1887. W. L. CHAMBERS, PUBLISHER.

THE BIG GUN
WILL BOOM ON THE
FOURTH OF JULY,
AND THE Sham Battle Will be Fought,
But ROSENBERG'S Battle against H. I. Prices,

That enemy of the people, is no sham. If you don't believe it, read the following list of bargains:

| | |
|---|---|
| DRESS PRINTS, | 2 cents per yard |
| SATEEN DRESS GOODS, | 10 " " " |
| Dress Ginghams, | 10 " " " |
| Lawns, | 2½ " " " |
| Seersucker Dress Goods, | 8 " " " |
| Nice Curtain Lace, 1½ yds wide, | 20 to 30 " " " |
| Table Linen, | 25 " " " |
| Fine Laces and Embroideries, | 1 cent to $1.50 " " |
| Nice India Linen, | 10 to 15 " " " |
| Summer Gloves, | 15 " per pair |
| Nice Jersies, | $1.00 and upwards |
| Ladies' Hose, all colors, | 7 cents per pair |
| Towels, | 5 " each |

Also a Full Line of Dry Goods, Ladies' and Gents' Furnishing Goods, Hats and Caps, at Correspondingly Low Prices.

S. Rosenberg.

Edson K. Fish

Announces to the Farmers of Rooks County that he is prepared TO FURNISH MONEY

Direct from Eastern Parties,

Giving to the borrower the advantage of READY MONEY, Lower Rates of Interest and More Satisfactory Terms.

Money at 7 per cent.; with small Commission.

CHOICE LOANS WANTED at 6 per cent.

Principal and Interest payable at my office.

Please Give me a Call before contracting elsewhere. At the

RECORD OFFICE, ROOM "B."
STOCKTON, - - - - KANSAS.

Lubricating Oils

Farmers, Machinists and Everybody who want to get the Best Oil for the Least Money, shoul go to

COOLBAUGH Brothers'.

Eldorado Engine Oil, Golden Machine Oil, Atlantic Red Oil, Challenge Machine Oil, Castor and Cold-Pressed Castor Oils.

Sole Agents for the Celebrated Rubber Paints.

ALABASTINE AND KALSOMINING MATERIAL.

D. B. HURLBUT & BRO.,

Hardware Headquarters

Scythes. Bird Cages. Hose.
Cutlery. Screen Wire. Hose Reels.
Pumps. Lawn Sprinklers.

As City Plumbers we carry in Stock a Full Line of this class of goods, and have a practical workman, whose services may be secured on short notice, and at reasonable figures.

[Published July 1, 1887.]
ORDINANCE NO. 81.

AN ORDINANCE LICENSING TRAVELING PHOTOGRAPHERS.

[illegible]

ORDINANCE NO. 76.

AN ORDINANCE PROHIBITING CARRYING DEADLY WEAPONS.

[illegible] exhibit such weapon in a rude, angry or threatening manner, or shall directly or indirectly, sell or deliver, loan or barter to any minor, any such weapon without the consent of the parent or guardian of said minor, be shall upon conviction be punished by a fine of not less than ten nor more than fifty dollars. Provided, this ordinance shall not apply to peace officers of the city or state.

Sec 2.—This ordinance shall take effect from and after its publication in The Rooks County Record.

Approved, C. W. Smith, Mayor.
Attest, F. A. Chipman, City Clerk.

Published July 1, 1887.
ORDINANCE NO. 78.

AN ORDINANCE FUNDING CERTAIN CITY INDEBTEDNESS.

*Be it ordained by the Mayor and Councilmen of the City of Stockton, Kansas.*

Sec 1.—That for the purpose of taking up, compromising, and refunding, the matured and maturing bonds, coupons and warrants of the city of Stockton, the bonds to be refunded being known as "The Stockton City Water Works Bonds," and in pursuance of an act of the Legislature of the state of Kansas, entitled, "An act to enable counties, municipal corporations, the board of education of any city, and school district, to refund their indebtedness," approved, March 8th, 1879, the Mayor and Clerk are hereby authorized and directed to issue bonds of the city of Stockton in the sum of thirty three thousand dollars, and to mature in twenty years under the restrictions and limitations hereinafter provided.

Sec 2.—The bonds authorized by this ordinance shall be issued in denominations of one thousand dollars, and shall be dated on the first day of July, 1887, payable at the office of the Treasurer of the state of Kansas, and shall bear interest from their date at the rate of five per centum per annum, payable at the office of the Treasurer of the state of Kansas, semi-annually, on the first days of July and January of each year, for which interest coupons shall be attached.

Sec. 3.—Said bonds shall be signed by the Mayor and Clerk and attested with the seal of said city; and said bonds shall be issued only at par with accrued interest in place of the said bonds and warrants refunded hereunder, and shall be delivered only upon the surrender of the bonds and warrants so refunded.

Sec. 4.—The Clerk shall keep a record of all bonds issued under this ordinance, showing the date, number and amount thereof, and on what account issued, and shall make an entry on the record of every bond or other evidence of indebtedness refunded, of its payment, of the issue of a new bond, and shall mark in a plain manner "paid in full," accross the face of each bond, coupon and warrant so refunded; and all the bonds, coupons and warrants so refunded shall be destroyed by order of the council and such destruction shall be noted on the records of the City Clerk.

Sec. 5.—There shall be levied annually, by the city council, in addition to all other taxes provided for in this city, such per cent. on the taxable property in this city as shall be sufficient to pay the interest on all the bonds issued under this ordinance, as designated by the coupons annexed to such bonds, as the same shall mature and become due; and there shall also be levied each year after ten years, a tax sufficient to pay one twentieth part of the principal of the bonds issued hereunder, which tax shall constitute and be and remain a sinking fund for the ultimate payment and redemption of the bonds issued under this ordinance. Provided, that the moneys in the sinking fund may at any time be applied, by the city of Stockton, in the purchase of the bonds hereunder, or their payment and redemption in their numerical order, dollar for dollar with accrued interest added.

Sec. 6.—This ordinance shall take effect and be in force from and after its publication in The Rooks County Record.

Approved, C. W. Smith, Mayor.
Attest, F. A. Chipman, City Clerk.
[SEAL]

Published July 1, 1887.
ORDINANCE NO. 80.

AN ORDINANCE CONCERNING INTOXICATING LIQUORS.

*Be it ordained by the Mayor and Councilmen of the City of Stockton, Kansas.*

Sec. 1.—It shall be unlawful for any person, persons, co-partnership, company or corporation to sell, barter or give away, or to keep for sale, barter or gift within the city any spirituous, malt, vinous or fermented liquor or any intoxicating liquor of any kind whatsoever, without having a druggists permit therefor as by law required; and every person, persons, co-partnership, company or corporation violating this section of this ordinance shall upon conviction be fined for each and every such offence in the sum of one hundred dollars.

Sec. 2.—Every person having a permit to sell intoxicating liquors under the law, who shall sell, barter or give away any such liquors for any purpose other than medical, scientific or mechanical, or to any person whom he has reason to believe desires the same to use as a beverage; or shall sell, barter or give away any liquors described in this ordinance to any minor, any person under the influence of liquor, or who is in the habit of becoming intoxicated; or who shall allow such liquor sold as a medicine or otherwise, to be drank on his premises or premises under his control, shall be guilty of violating this ordinance, and on conviction shall be fined for each and every such offense in the sum of one hundred dollars.

Sec. 3.—Every place where the liquors described in this ordinance are sold, bartered or given away, or kept for sale, barter or delivery in violation of this ordinance, or where persons are permitted to resort and do resort for the purpose of drinking intoxicating liquors as a beverage, are hereby declared to be common nuisances, and upon the judgment of the Police Court or other court of competent jurisdiction finding such place to be a nuisance, the City Marshall shall be directed to abate and shut up such nuisance, by taking possession thereof, and of all intoxicating liquors found therein, together with all bars, bottles, glasses and other paraphernalia connected therewith and used in keeping and maintaining such nuisance, and such personal property shall be forthwith publicly destroyed by said marshall, and the owner, with knowledge of its character, or keeper thereof, shall upon conviction of owning, with such knowledge, or keeping the same, be adjudged guilty of maintaining a common nuisance and shall be punished by a fine of one hundred dollars for each and every such offense.

Sec. 4.—The sale, barter or gift of the liquor commonly known as Phoenix and all other liquors possessing any intoxicating quality or element whatsoever, except by one holding a druggists permit, is hereby prohibited under penalty of one hundred dollars for each violation hereunder.

Sec. 5.—Each separate sale, barter or gift made in violation of this ordinance shall constitute a separate offense and shall be punished as such hereunder.

Sec. 6.—For every conviction of a violation of this ordinance, prosecuted by the city attorney, he shall receive the sum of twenty-five dollars to be taxed as costs against and to be paid by the defendant.

Sec. 7.—All fines and costs assessed for violations of this ordinance shall be a lien upon the premises where and violations occur, such lien shall be enforced by levy and sale of such premises under mittimus or execution in the same manner as other sales under execution are made; provided such mittimus or execution need not be returned until the same is satisfied or the defendant is discharged by due course of law.

Sec. 8.—This ordinance shall take effect and be in force from and after its publication in the Rooks County Record.

Approved, C. W. Smith, Mayor.
Attest, F. A. Chipman, City Clerk.
[SEAL]

[Published July 1, 1887.]
ORDINANCE NO. 77.

AN ORDINANCE CONCERNING THE DOING OF BUSINESS ON SUNDAY.

*Be it ordained by the Mayor and councilmen of the city of Stockton.*

Sec. 1. It shall be unlawful for any person or persons to keep open for the doing of business, their store, shop or other place of business on Sunday, or to permit any business to be done therein on that day. Provided, it shall be lawful for drug stores to sell medicine in case of actual necessity and sickness, for dry goods and other stores to sell goods for burial purposes, for butcher shops to keep open until 10 o'clock a. m., for restaurants to keep open for the furnishing of meals, but for no other purpose, and for livery stables and hotels to keep open on said day; and for every violation of this ordinance the person or persons so offending shall be punished by a fine of not less than ten nor more than twenty five dollars.

Sec. 2. This ordinance shall take effect and be in force from and after its publication in the Rooks County Record.

[SEAL] C. W. Smith, Mayor.
F. A. Chipman, City Clerk.

FARM LOANS.

1st. We loan at the lowest rates, with or without commission.
2d. We make Optional Loans, givin the borrower the privilege of paying part or all at any time—stopping interest.
3d. All privileges given are written in the mortgages and notes.
4th. The interest is payable annually or semi-annually, to suit the borrower.
5th. The principal and interest can be paid at our office.
6th. We pay the money the day papers are signed.
7th. We furnish money to prove up with.
8th. We loan on city property.
9th. We write insurance on farm and city property; we shall be pleased to have you call to see us and get acquainted, if nothing more.

BETZER BRO'S,
Office Room C Opera Block. ATTORNEYS AT LAW.
STOCKTON, KANSAS.
We Loan Money on City Property.

CHAS. C. WOODS, Pres. J. J. SMYTH, Vice-Pres. H. C. REINS, Cashier

FIRST NATIONAL BANK
Of Stockton.
Paid up Capital $50,000.
Collections on all Points West and South.

Eastern Correspondents, First National Bank, New York. Commercial " Chicago. Saxton Nat. " St. Joseph

STOCKTON, KANSAS.

**Location of the Lights.**

A committee of the city council met on Saturday last and designated the points where the arc lights for lighting the streets will be located. Great care was taken to get the lights as thoroughly distributed as possible so as to cover the greatest amount of area. They will be located as follows:

Corner Main and Cyprus.
Corner Main and Cedar.
Corner Main and Walnut.
Corner Main and Elm.
One at depot.
One at southwest corner of court house grounds.
Corner Cedar and Second street north.
Corner Ash and First street south (Christian Church).
Corner Cedar and Second street south.

**R. R. Depot at Motor.**

Motor, June 25.

The meeting was called to order by J. G. Parks; John Parks was elected chairman, and L. C. Foster, secretary. The object of the meeting was to determine where the citizens of Paradise township wanted the town site located.

Moved and seconded that the town remain where it now stands, and that a surveyor be employed to lay off the town site. Carried.

Moved and seconded that M. Drake, D. L. Watkins and J. W. Lamb see to getting a surveyor. Carried.

S. H. Leighton, Jasper Parks and D. Richmond were instructed to correspond with the railroad company in regard to locating depot, etc.

Moved and seconded that the proceedings of this meeting be published in the Rooks County Record. Motion carried.

Moved and seconded that the committee on surveying be appointed a finance committee, and that as soon as they hear from the R. R. Company, they call another meeting. Motion carried.

John Parks, Chairman.
L. C. Foster, Sec'y.

**U. S. Troops for Stockton.**

The following letter has been received It is now definitely decided that a detachment will come over with the big gun:

Fort Hays, Ks., June 26, 1887.

*L. C. Smith, Com. G. A. R. Dept. of Kansas:*—Dear Sir; Yours of 22nd inst. at hand. Our detachment will be ready for moving orders Sunday morning, July 3rd, immediately after reveille Our gun will discharge 1½ pounds. Have powder ready when we arrive, so we can fix up the charges. We will bring everything else with us that belongs to the piece.

I remain Yours very Truly,
W. I. Swain.

—Come to us for farm loans if you want the money promptly and on most liberal terms. Mickey Bro's & Co.

This is the merchant's knife trusty and true, intended to cut all high prices in two, invented by us and kept in our store to insure lower prices than ever before. When we come on the market our stock is complete; we carry no goods that are not bright and neat. We cater alone to the best line of trade, and a customer seen is a customer made. But we find that competitors join in the strife, and we stock up our store and sharpen our knife, and sell off our bargains while others get blue, for we make it a rule to cut prices in two. Just mention our name if you don't know our store, C. E. McDANIEL with GORDON at the car, leaders in low prices, they know us of yore, we will make it a point to show you the knife that worries competitors out of their life. The dagger we always keep pointed quite sharp, to cut every article bearing a mark. So come to our store and great bargains there we shall sell you in price and save you a V

SALESMEN WANTED.

By the oldest, largest and best known Nurseries in the West. PERMANENT POSITIONS; GOOD Pay. STARK NURSERIES, LOUISIANA, MISSOURI.

Money [illegible]

Copyright © 2022 Newspapers.com. All Rights Reserved.
Newspapers™

Newspapers by ancestry
https://www.newspapers.com/image/379709602

The Stockton Review and Rooks County Record (Stockton, Kansas) · Fri, Jul 1, 1887 · Page 1

Downloaded on Oct 11, 2022

[SEAL] F. A. CHIPMAN, C. W. SMITH,
City Clerk. Mayor.

Published July 1, 1887.

## ORDINANCE NO. 76.

AN ORDINANCE PROHIBITING CARRYING DEADLY WEAPONS.

*Be it ordained by the Mayor and Councilmen of the City of Stockton, Kansas.*

SEC. 1.—If any person shall carry upon or about his person any deadly or dangerous weapons, or shall go into any church or place where people have assembled for public worship, or into any school room or place where people have assembled for educational, literary or social purposes, or to any election on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons not met for any unlawful purpose, or shall go upon the public streets or public places of the city having upon or about his person any kind of fire arms, bowie knife, dirk, dagger, sling shot or other deadly weapon, or shall in any of the places above named exhibit such weapon in a rude, angry or threatening manner, or shall directly or indirectly, sell or deliver, loan or barter to any minor, any such weapon without the consent of the parent or guardian of said minor, he shall upon conviction be punished by a fine of not less than ten nor more than fifty dollars. Provided, this ordinance shall not apply to peace officers of the city or state.

SEC 2.-This ordinance shall take effect from and after its publication in The Rooks County RECORD.

Approved, C. W. SMITH,
Attest, F. A. CHIPMAN, Mayor.
City Clerk.

Copyright © 2022 Newspapers.com. All Rights Reserved.

Newspapers

# Exhibit 14

Exhibit 14
Page 064

Newspapers.com by Ancestry

The Abilene Weekly Chronicle (Abilene, Kansas) · Thu, May 12, 1870 · Page 1

https://www.newspapers.com/image/384017570

Printed on Jun 25, 2023

AN ORDINANCE

## Relating to the Carrying of Fire Arms and other Deadly Weapons.

*Be it ordained by the Trustees of the town of Abilene,*

SEC. 1. That any person who shall carry, within the limits of the town of Abilene, or commons, a pistol, revolver, gun, musket, dirk, bowie-knife, or other dangerous weapon upon his or their person or persons, either openly or concealed, except to bring the same and forthwith deposit it or them at their house, boarding house, store room or residence, shall be fined in a sum not less than ten dollars nor more than fifty dollars; and it shall be the duty of any town constable, or policeman of this town, to arrest and disarm any person violating this ordinance, and to deposit the arms so taken with the captain of the town police, to be by him kept until he is, by the magistrate taking cognizance of the offense of carrying arms as aforesaid, authorized to deliver the same to the person or persons from whom the same shall have been taken.

SEC. 2. Any and every person who shall be in violation of this ordinance, within the town of Abilene, or commons, and who shall refuse to deposit his or their arms with the constable or policeman as aforesaid, or shall resist any officer who may attempt to disarm him or them according to the provisions of section one of this obdinance, shall be imprisoned in the common gaol of the town not less than twenty-four hours nor more than ten days, and fined not less than $10 nor more than one hundred dollars: Provided, that the provisions of this ordinance shall not apply to the constable or any officer of the town of Abilene, while in the discharge of their duties as such constable or policeman.

SEC. 3. That any person who shall intentionally discharge any pistol, revolver or gun, within the town of Abilene, in any street, alley, highway, lot, house or other place where the life or limb of any person could be endangered, shall be punished by a fine not less than ten dollars nor more than one hundred dollars.

SEC. 4. This ordinance shall take effect and be in force from the 20th of May 1870.

T. C. HENRY, Chairman.

Attest: G. L. BRINKMAN, Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 15

Exhibit 15
Page 066

Newspapers.com by Ancestry

Arkansas City Weekly Traveler (Arkansas City, Kansas) · Wed, May 20, 1885 · Page 4

https://www.newspapers.com/image/53607957

Printed on Jun 25, 2023

### Ordinance No. 1.

Relating to certain petty offenses, defining the same and providing for the suppression thereof and punishment therefor.

*Be it ordained by the mayor and councilmen of the city of Arkansas City:*

SECTION I. That any person drawing a pistol, revolver, knife or any other deadly weapon upon another person, unless an officer of the law in the discharge of his duty, shall, upon conviction thereof, be fined in any sum not less than $10 nor more than $100.

SEC. 2. That any person who shall, by words, signs or gestures, provoke or attempt to provoke another to commit an assault and battery, or other breach of the peace within the limits of the city, shall upon conviction, be fined in a sum not less than $3 or more than $25.

SEC. 3. That any person who shall curse, swear, quarrel, or use violent and threatening language, or make any great noise so as to disturb the peace of any person within the limits of the city, shall upon conviction, be fined in a sum not exceeding $25.

SEC. 4. That any person who shall be found within the corporate limits of the city of Arkansas City in a state of intoxication or drunkness, shall be fined in a sum not exceeding $10.

SEC. 5. That any person carrying any deadly or dangerous weapons, such as loaded fire-arms, slung-shot, sheath or dirk-knife, or any other weapons which when used are liable to produce death or great bodily harm, unconcealed, within the corporate limits of the city, shall upon conviction, be fined in a sum not less than $1 or more than $10.

SEC. 6. That any person or persons carrying any of the weapons mentioned in section 5 of this ordinance, concealed about his person, shall upon conviction thereof, be fined in a sum not less than $5 or more than $25.

SEC. 7. That any person or persons discharging any fire-arms, letting off any fire-crackers or squibs, or throwing any fire-balls, or making any bonfire in the limits of of the city, shall upon conviction, be fined in any sum of not less than $3 or more than $10, provided, that this section shall not apply to the 24th or 25th day of December, or the 1st day of January, or the 4th day of July, or the 22d day of February; and provided further that this section may be suspended on other days by the mayor; neither shall this section apply to the discharge of fire-arms in licensed shooting galleries, nor to the shooting of dogs running at large in violation of city ordinances.

SEC. 8. That any and every person who shall ride or drive any horse, mule or other animal at an immoderate speed, or at a race within the city limits, shall be fined in a sum not exceeding $25.

SEC. 9. That any and all persons riding, driving or leading any horse, mule, ass, or neat cattle upon or across any sidewalks within the city limits, shall upon conviction, be fined for each offense any sum not less than one or more than ten dollars.

SEC. 10. That any man or woman who are not married to each other, who shall lewdly abide with each other, or shall sleep or occupy the same apartment for lewd and lascivious purposes, within the city limits, shall upon conviction, each be fined in any sum not to exceed one hundred dollars.

SEC. 11. That every person who shall make an indecent exposure of his person within the city, shall upon conviction, be fined in any sum not to exceed one hundred dollars.

SEC. 12. That any person or persons who shall in any way obstruct the street crossings in the city, shall upon conviction thereof, be fined in a sum not less than one dollar or more than five dollars.

SEC. 13. That any person or persons destroying or damaging any city property shall upon conviction, be fined in a sum not less than the amount of damage committed.

SEC. 14. That any person or persons who shall knowingly or willfully create a false alarm of fire within the city of Arkansas City, by building bonfires for that purpose, or by ringing the fire bell or by the cry of fire, shall upon conviction thereof, be fined in a sum not less than five dollars or more than fifty dollars.

SEC. 15. That any person beating, injuring or treating any animal in an immoderate, cruel or unnecessary manner shall upon conviction, be fined in any sum not to exceed fifty dollars.

SEC. 16. For hitching any team or animal to any lamp post, awning post, or growing trees along the streets of Arkansas City, or training or breaking any horse or mule on any street, or between the 1st day of March and the 1st day of October, hitching, training, breaking or displaying or showing any stallion on any street, a fine of not less than three or more than ten dollars.

SEC. 17. That any person who shall be convicted and fined, under any provision of this ordinance or any ordinance of the city, who shall fail to pay such fine and costs of prosecution, shall perform such work for the city as the mayor shall direct, and all prisoners working for the city shall be allowed 50 cents per day to be applied in satisfaction of such fine and costs.

SEC. 18. The fines specified in the foregoing ordinance shall in no case include costs.

SEC. 19. This ordinance to take effect and be in force from and after its publication once in the Arkansas City TRAVELER.

Approved May 11th, 1885.

F. SCHIFFBAUER, Mayor.

Attest, JAS. BENEDICT, City Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY Newspapers.com

# Exhibit 16

Exhibit 16
Page 068

Newspapers by ancestry

The Beloit Gazette (Beloit, Kansas) · Thu, Sep 19, 1872 · Page 4

https://www.newspapers.com/image/418858064

Printed on Jun 25, 2023

## Ordinance No. 5.

An ordinance in relation to the carrying of fire-arms or other weapons.

*Be it ordained by the Mayor and Coucilmen of the City of Beloit.*

Section 1. That any person who shall be found within the corporate limits of this city with any revolver, pistol, gun, sword, dagger, dirk or any other dangerous or deadly weapon concealed or otherwise shall be deemed guilty of a misdemeanor; Provided, that this act shall not be construed in such a manner as to prevent any person or persons from carrying a gun or rifle through the street for the known and avowed purpose of hunting in the country.

Approved Sep. 9th, 1872.

T. F. Hersey,
Mayor.

L. J. Best,
City Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers

# Exhibit 17

Exhibit 17
Page 070

Newspapers.com by Ancestry
https://www.newspapers.com/image/365795786

Printed on Jun 25, 2023

E POST.

ALTON, Editor and Prop'r.

MAY 4, 1882

REVISED ORDINANCES

OF THE

CITY OF CALDWELL.

*Be it ordained by the Mayor and Councilmen of the City of Caldwell:*

That the following revision and compilation of the Ordinances of the City of Caldwell, is hereby declared to be and the same are the laws of the said City:

CHAPTER I.

CITY LIMITS.

The following parts and portions of Sumner county, Kansas, are hereby declared to be within the corporate limits of the City of Caldwell, viz:

Commencing at the southeast corner of section thirty-five in township thirty-four south, of range 3 west, running thence north one mile, thence west three-fourths of a mile, thence south one half mile,

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

Newspapers by ancestry

The Caldwell Advance (Caldwell, Kansas) · Thu, May 4, 1882 · Page 2

https://www.newspapers.com/image/365795786

Printed on Jun 25, 2023

And the city clerk shall at the same time furnish a schedule of all property belonging to the city, and an exhibit of the loans or debts bearing interest due from the city, the rates of interest and the times when payable.

Sec. 4. No bill or claim against the city, other than judgement of the judicial courts shall be allowed or passed by the city council, unless such bill or claim shall be duly certified and sworn to as provided by statute, and also approved or certified by some agent, officer or committee authorized on behalf of the city to make the contract or cause the expenditure to be incurred; or unless such expenditure be expressly required by some specific vote of the city council.

Sec. 5. All officers of the city shall as often, at least, as once every month, pay over to the city treasurer, all moneys belonging to the city, which they shall receive, reporting at the time of payment, the amount of the same to the city clerk, who shall charge the city treasurer with such amount.

Sec. 6. The finance committee shall annually, on or before the first Monday in March, present in writing, an estimate of the amount of money necessary to be raised for the current year.

Sec. 7. The council shall immediately upon the receipt of the estimate of the necessary amount of money required for the expenses of the city, as provided in the preceding section levy a tax upon all the real mixed and personal property within the limits of the city, taxable according to the laws of the State of Kansas, said tax not exceed ten mills on the dollar.

CHAPTER V.

MISDEMEANORS AND OTHER OFFENSES.

Sec. 1. Any person who shall draw a pistol, revolver, knife or any other deadly weapon, upon another person, unless an officer of the law in the execution of his duty, shall, upon conviction, be fined in a sum of not less than five nor more than one hundred dollars.

Sec. 2. Every person who shall by signs, words, or gestures, provoke or attempt to provoke another, to commit an assault and battery, or other breech of the peace within the limits of the city, shall upon conviction, be fined in a sum of of not less than three or more than ten dollars.

Sec. 3. Whoever strikes in anger or in any way commits an assault upon, or engages in a fight, with any person, except in the exercise of his legal rights, or in the defense of his person, his family, or his property shall be punished by a fine of not more than one hundred dollars.

Sec. 4. Every person who shall curse, swear, quarrel or use violent threatening or indecent language, or make any great noise, so as to disturb the peace of any person within the limits of the city, shall upon conviction, be fined in a sum not less than three or more than twenty-five dollars.

Sec. 5. Every person who shall be found within the corporate limits of the city, in a state of intoxication or drunkenness, shall be fined in a sum not exceeding ten dollars.

Sec. 6. Any person riding, driving or leading any horse, mule, ass or neat cattle upon or across any sidewalk, within the city limits, shall upon conviction be fined for each offence, not less than one nor more than ten dollars.

Sec. 7. Any person, who shall upon any street, alley or other public place within the city limits, make any indecent exposure of his or her person, shall be fined in a sum not less than five nor more than ten dollars.

Sec. 8. Any person who shall in any way willfully obstruct the street crossings in the city shall upon conviction thereof be fined in a sum not less than one nor more than five dollars.

Sec. 9. Whoever willfully interrupts any assembly of people met for the worship of God, or who shall willfully interrupt any school or other assembly of people met for a lawful purpose, or who shall unlawfully disturb the peace and quiet of any person, family or neighborhood, shall be fined in a sum not exceeding one hundred dollars.

Sec. 10. Any person carrying any deadly or dangerous weapon, such as firearms, slung shot, sheath or dirk knife or any other weapon which when used is liable to produce death or great bodily harm, unconcealed, within the corporate limits of the city, shall upon conviction, be fined in a sum not less than ten nor more than one hundred dollars.

Sec. 11. Any person or persons carrying any deadly or dangerous weapons concealed about their person, such as firearms, slung shot, sheath or dirk knife, brass knuckles or any other weapon, which when used are liable to produce death or great bodily harm and injury, shall, upon conviction be fined in a sum not less than fifteen nor more than one hundred dollars for each and every offense.

Sec. 12. Any person who shall within the limits of the city, discharge or shoot off any gun, pistol, or other firearms, shall upon conviction thereof, be fined not less than one nor more than twenty-five dollars.

Sec. 13. Any person who shall ride or drive any horse, mule, or other animal, at an immoderate speed, or at a race within the limits of the city shall be fined in a sum not exceeding twenty-five dollars.

Sec. 14. Any person who shall knowingly and wilfully create a false alarm of fire, within the city, by building bonfires for that purpose, or by ringing the fire bell, or by the cry of fire, or in any other way creating a false alarm of fire, shall upon conviction thereof be fined in any sum not exceeding five dollars.

Sec. 15. Any person or persons keeping, owning or conducting a house of prostitution or other place for the purpose of prostitution or lewdness within the corporate limits of the city, shall be fined in a sum not less than ten nor more than one hundred dollars.

Sec. 16. Each and every inmate of a house of prostitution or other place of resort for prostitution and lewdness, shall be punished by a fine of not less than ten nor more than twenty dollars.

Sec. 17. Any woman living in a hotel or tavern, or in apartments or rooms in this city, who shall entice or attempt to entice prostitution, or who shall follow the calling of prostitution for gain, in the city, shall upon conviction, be fined and punished in like manner, and to the same extent as is now or may hereafter be provided by ordinance, in the cases of inmates of houses of prostitution.

Sec. 18. Any person keeping, owning or conducting a house, tent, booth, shanty or other place where roulette, faro, keno, gift-enterprise or chuck luck or other gambling device or game, by whatsoever name it may be known or called, is practiced or allowed to be practiced or carried on within the city limits, shall upon conviction thereof be fined in any sum not less than twenty and not exceeding fifty dollars, and shall stand committeed until such fine and costs are paid.

Sec. 19. Any person or persons, who play at roulette, faro, chuck luck, keno, horse head, monte, poker or any other gambling game, or games of chance, where money or other valuable thing is staked, shall upon conviction thereof be fined in any sum not less than five nor more than fifty dollars for each and every offence.

Sec. 20. If a person shall make oath before the police judge that he suspects or has probable cause to suspect, that a house or other building is unlawfully used as and for a common gaming house, for the purpose of gambling for money or other property, and that idle or dissolute persons resort to the same for that purpose, said police judge, whether the names of the persons last mentioned are known to the complainant or not, shall issue a warrant commanding the marshal or his assistant or deputy, to enter into such house or building and there to arrest all persons who are there found playing for money or otherwise, and also the keeper of the same, and to take into custody all implements of gaming as aforesaid and to keep said persons and implements so that they may be forthcoming before the proper court or magistrate to be dealt with according to law; and whosoever is there found so playing shall, for each offence, be punished by a fine of not less than ten dollars and not more than fifty dollars.

Sec. 21. Any person or persons doing, conducting or carrying on any business in the city of Caldwell who shall by the manner in which they conduct such business, tend to create disturbance, or shall keep and maintain a disorderly house shall upon conviction thereof, be fined in any sum not less than twenty or more than one hundred dollars and for the second offence in addition to fine, have his or their license revoked.

Sec. 22. Any person who shall within the city limits in any way aid or assist any person to resist or escape from the police officers of the city, or from confinement in said city shall upon conviction thereof be fined in a sum not less than ten nor more than fifty dollars.

Sec. 23. Every person who shall take, steal, or carry away any money or personal property or effects of another, under the value of twenty dollars, (not being the subject of grand larceny without regard to value) shall be deemed guilty of petty larceny, and, on conviction, shall be fined in any sum not exceeding one hundred dollars.

Sec. 24. Whoever wilfully and maliciously injures, defaces or destroys any property belonging to the city or any other person, shall be punished by a fine of not less than five dollars nor more than one hundred dollars.

Sec. 25. Any person who shall leave his horse, mule or team unattended by a suitable person, in the streets of this city, without securely hitching such horse, mule or team shall be fined not less than one dollar nor more than ten dollars.

CHAPTER VI.

RIOTS AND UNLAWFUL ASSEMBLIES.

Sec. 1. If any persons to the number of three or more are unlawfully, riotously or tumultuously assembled in the city, it shall be the duty of the Mayor and of each of the councilmen, and also the marshal and each of his assistants or deputies, to go among the persons so assembled, or as near to them as may be with safety, and in the name of the city to command all the persons so assembled to immediately and peaceably disperse; and if such persons do not thereupon immediately disperse, it shall be the duty of each of said magistrates and officers to command the assistance of all persons there present in seizing, arresting and securing such persons in custody.

Sec. 2. If any person present, being commanded by any of the magistrates or officers mentioned in the preceding section to aid or assist in seizing and securing such rioters or persons thus unlawfully assembled, or in suppressing such riot or unlawful assembly, refuses or neglects to obey such command, or when required by such magistrates or officers to depart from the place, refuses or neglects so to do, he shall be deemed one of the rioters or persons unlawfully assembled and may be prosecuted and punished accordingly.

Sec. 3. If any Mayor, councilman, marshal, or any assistant or deputy of the marshal, having notice of any riotous or tumultuous and unlawful assembly in the city, neglects or refuses immediately to proceed to the place of such assembly, or as near thereto as he can with safety, or omits or neglects to exercise the authority with which he is invested by the ordinance for suppress

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com by Ancestry

The Caldwell Advance (Caldwell, Kansas) · Thu, May 4, 1882 · Page 2

https://www.newspapers.com/image/365795786

Printed on Jun 25, 2023

one hundred dollars.

Sec. 10. Any person carrying any deadly or dangerous weapon, such as firearms, slung shot, sheath or dirk knife or any other weapon which when used is liable to produce death or great bodily harm, unconcealed, within the corporate limits of the city, shall upon conviction, be fined in a sum not less than ten nor more than one hundred dollars.

Sec. 11. Any person or persons carrying any deadly or dangerous weapons concealed about their person, such as firearms, slung shot, sheath or dirk knife, brass knuckles or any other weapon, which when used are liable to produce death or great bodily harm and injury, shall, upon conviction be fined in a sum not less than fifteen nor more than one hundred dollars for each and every offense.

Sec. 12. Any person who shall within the limits of the city, discharge or shoot off any gun, pistol, or other firearms, shall upon conviction thereof, be fined not less than one nor more than twenty-five dollars.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 18

Exhibit 18
Page 074

Newspapers.com by Ancestry

Border Ruffian (Coolidge, Kansas) · Sat, May 1, 1886 · Page 1

https://www.newspapers.com/image/274137116

Printed on Jun 25, 2023

## AN ORDINANCE

Concerning Offenses in the Nature of Misdemeanors.

Be it ordained by the Mayor and Councilmen of the City of Coolidge, Hamilton county, Kansas:

DISCHARGING FIREARMS.

SECTION 1. If any person shall, within the corporate limits of the City of Coolidge, fire or discharge any gun, fowling-piece, pistol, revolver or fire-arm of any kind or description, or other thing containing powder or combustibles, or anything made of nitro-glycerine, without first having obtained permission from the Mayor in writing, every such person shall be deemed guilty of a misdemeanor.

INDECENT DRESS AND LEWD CONDUCT.

SEC. 2. If any person shall appear in any public place within the limits of the city in a state of nudity, or in a dress or garb not belonging to his or her sex, or an indecent or lewd dress, or shall make any indecent exposure of his or her person, or be guilty of any lewd or indecent behavior, shall be deemed guilty of a misdemeanor.

OBSCENE BOOKS, ETC.—INDECENT PLAYS.

SEC. 3. If any person shall exhibit, sell or offer to sell, or give away, any indecent, lewd or obscene book, picture or other thing, or shall exhibit or perform any indecent play or other representation, every such person shall be deemed guilty of a misdemeanor.

PLYING THE VOCATION OF A PROSTITUTE.

SEC. 4. Any prostitute or lewd woman who shall, within the corporate limits of this city, by word, sign, letter, picture, action, or the distribution of cards or other thing, ply her vocation upon the streets, at any door or window of any house of this city, or at any other place within the limits of the same, shall be deemed guilty of a misdemeanor.

CRUELTY TO ANIMALS.

SEC. 5. If any person shall inhumanly and unnecessarily beat, injure or otherwise maltreat any dumb animal or animals within the corporate limits of this city, shall be deemed guilty of a misdemeanor.

DISPLAY OF DEADLY WEAPONS.

SEC. 6. It shall be unlawful for any person or persons to display or make any improper use of any deadly weapon within the corporate limits of this city. Any person violating this section shall be deemed guilty of a misdemeanor; and it shall be the duty of the City Marshal and all Police officers of said city to arrest any and all persons found violating this section, with or without process.

FIRE-CRACKERS.

SEC. 7. The explosion of fire-crackers, torpedoes, or other fire-works within the corporate limits of this city, without a written permission from the Mayor shall be, and the same is, hereby prohibited, and any person or persons found guilty of violating this section shall be deemed guilty of a misdemeanor.

CONCEALED DEADLY WEAPON.

SEC. 8. Any person or persons, other than the duly appointed and commissioned officers of this city, or officers of this county or State, carrying concealed deadly weapons, such as pistols, revolvers, slung-shots, dirks or bowie-knives, within the corporate limits of the city, shall, upon conviction, be deemed guilty of a misdemeanor.

OPEN LEWDNESS AND DISORDERLY HOUSES.

SEC. 9. If any person shall be guilty of open lewdness or other notorious act of public indecency tending to debauch the public morals, or shall maintain or keep a lewd house or place of fornication, or shall keep a common, ill-governed and disorderly house, to the encouragement of idleness, gaming, drinking, fornication or other misbehavior, or who shall keep and maintain a common bawdy house, or house of ill-fame, shall, on conviction, be deemed guilty of a misdemeanor.

DRUNKENNESS.

SEC. 10. If any person shall be drunk in any highway, street, or in any public place or building, or if any person shall be drunk in his own house, or in any private building or place, disturbing his family or others, he shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding twenty-five dollars, or by imprisonment in the calaboose or county jail for a period not exceeding thirty days. Prosecutions under this section must be commenced within thirty days after the said misdemeanor is alleged to have been committed.

WEAPONS TO MINORS.

SEC. 11. Any person who shall sell, trade, give, loan or otherwise furnish any pistol, revolver or toy pistol, by which cartridges or caps may be exploded, or any dirk, bowie-knife, brass knuckles, slung-shot, or other dangerous weapon to any minor, or to any person of notoriously unsound mind, shall be deemed guilty of a misdemeanor, and shall, upon conviction before the Police magistrate, or any Justice of the Peace acting in such capacity, be fined not less than five nor more than one hundred dollars.

POSSESSION OF A MINOR.

SEC. 12. Any minor who shall have in his possession any pistol, revolver, or toy pistol, by which cartridges may be exploded, or any dirk, bowie-knife, brass knuckles, slung-shot, or other dangerous weapon, shall be deemed guilty of a misdemeanor, and upon conviction before the Police magistrate, or any Justice of the Peace acting in such capacity shall be fined not less than one nor more than ten dollars.

BUSINESS ON SUNDAY.

SEC. 13. Every person who shall expose to sale any goods, wares or merchandise, or shall keep open any ale, porter house, grocery, saloon or tippling shop, or shall sell, retail or give away any fermented or distilled liquor on the first day of the week (commonly called Sunday), from the hour of twelve o'clock on Saturday night until the hour of twelve o'clock Sunday night, shall, upon conviction, be adjudged guilty of a misdemeanor, and shall be fined in a sum not less than five nor more than fifty dollars for each and every offense. This section shall not be construed to prevent the sale of any drugs or medicines, provisions or other articles of immediate necessity.

AMUSEMENTS ON SUNDAY.

SEC. 14. Every person who shall be convicted of horse-racing, cock-fighting, or playing at cards or games of any kind on the first day of the week (commonly called Sunday), within the corporate limits of this town, shall be deemed guilty of a misdemeanor and fined not less than five nor more than fifty dollars.

LABORING ON SUNDAY.

SEC. 15. Every person who shall either labor himself, or compel his apprentice, servant or any other person under his charge or control, to labor or perform any work other than the household offices of daily necessity or charity, on the first day of the week (commonly called Sunday), shall be guilty of a misdemeanor and fined not to exceed twenty-five dollars. This section shall not be construed to prevent the conveying, opening and delivery of the mail, from the hours of 9 to 10 a. m., and from the hours of 7 to 8 p. m.

DISTURBANCE OF PUBLIC WORSHIP.

SEC. 16. Every person within the corporate limits of this city who shall, at any time interrupt or molest any religious meeting or any member thereof, or any persons when meeting or met together for the purpose of worship, or performing any duties enjoined on or appertaining to them as members of such society, or shall disquiet or disturb any congregation or assembly of people met for religious worship, by making a noise, or by rude and indecent behavior, or profane discourse within their place of worship, or so near to the same as to disturb the order or solemnity of the meeting, or menace or assault any person there being, shall be deemed guilty of a misdemeanor and punished by fine not to exceed one hundred dollars; and, if unable to pay the fine, by confinement in the city calaboose or jail not exceeding three months: Provided, that this section shall not be so construed as to deprive any religious society or assembly of persons met for religious worship of the right of laying hands upon the person or persons who may be disturbing the congregation, and turning him or them out of the church or place of worship.

DISTURBING THE PEACE.

SEC. 17. Every person who shall willfully disturb the peace and quiet of any person, family or neighborhood within the corporate limits of this city, upon conviction thereof shall be fined in a sum not exceeding fifty dollars, or by imprisonment not to exceed forty-five days.

FAST RIDING OR DRIVING.

SEC. 18. If any person shall ride or drive immoderately any animal or animals in any avenue, street, alley, or other public place within the limits of said town, such person or persons shall be deemed guilty of a misdemeanor.

OBSTRUCTING PROCESS.

SEC. 19. If any person or persons shall knowingly and willfully obstruct, resist or oppose any Marshal or other Police officer in the service or execution, or in the attempt to serve or execute any writ, warrant or process, or in the discharge of any official duty, or any duty imposed by the Mayor and Councilmen of this city, every person so offending shall, upon conviction, be punished by fine of not less that five nor more than one hundred dollars, or by imprisonment in the calaboose or county jail not to exceed three months.

ASSAULTING OFFICER.

SEC. 20. Every person who shall knowingly and willfully assault, beat or wound a Marshal or other Police officer, while engaged in the service or execution, or attempt to serve or execute any writ, warrant or process, original or judicial, or any order of the Mayor, and Councilmen, or any order or rule of the Police magistrate or any Justice of the Peace acting as such, while in the discharge of any other official duty, shall, on conviction, be adjudged guilty of a misdemeanor.

AIDING ESCAPE OF PRISONER.

SEC. 21. Every person who shall aid or assist any prisoner in escaping or attempting to escape from the custody of the Marshal or other Police officer, or other person who shall have lawful charge of such prisoner, shall be deemed guilty of a misdemeanor.

BREAKING CALABOOSE.

SEC. 22. If any person, confined in the calaboose of this city for any offense, or awaiting his trial therefor, shall break any lock or window of such calaboose, or destroy any furniture therein, or in any way mutilate, damage, deface, or destroy said calaboose in escaping therefrom, or in attempting to so escape, or through an evil desire to destroy the property of said city of Coolidge, he shall be deemed guilty of a misdemeanor.

ASSAULT AND BATTERY.

SEC. 23. Assault and battery is the unlawful beating of another. Any person or persons found guilty of the offense of assault and battery shall be deemed guilty of a misdemeanor.

SEC. 24. An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. Any person found guilty of an assault, upon conviction shall be deemed to have committed a misdemeanor.

LARCENY.

SEC. 25. Larceny is the felonious stealing, taking, leading, riding or driving away the personal goods and property of another. Larceny shall embrace every theft which deprives another of his money or other personal property, or those means and muniments by which the right and title to property, real or personal, may be ascertained and determined. Larceny may be committed by feloniously taking and conveying away any bond, bill, note, receipt or any instrument of writing of value to the owner. Every person convicted of larceny within the corporate limits of said town, when the amount or value of the thing or article stolen does not exceed twenty dollars shall be deemed guilty of a misdemeanor.

SEC. 26. Any person or persons adjudged guilty of any of the offenses enumerated in this ordinance and declared as misdemeanors where no penalty is prescribed, shall be fined in a sum not less than five dollars and not to exceed three hundred dollars.

Approved and adopted April 22, A. D., 1886.

J. W. SHIRLEY, Mayor.

Attest: HARRY WALTON, Acting-Clk.

[Published May 1, A. D., 1886.]

---

AN ORDINANCE ESTABLISHING A CITY SEAL.

Be it ordained by the Mayor and Councilmen of the City of Coolidge, Hamilton County, Kansas:

That a seal—the impression of which is as follows: On the center of the seal the word "SEAL"; around the outside of said word, "Incorporated March 28, A. D., 1886"; and around the outer edge of the words, "City of Coolidge, Kansas"—shall be and the same is hereby established and declared to be the seal of the City of Coolidge, Kansas.

Approved April 22, 1886.

J. W. SHIRLEY, Mayor.

Attest: W. H. NORTHRUP, Clerk.

[Published May 1, A. D., 1886.]

---

## AN ORDINANCE

Concerning the Powers and Jurisdiction of the Police Judge.

Be it ordained by the Mayor and Councilmen of the City of Coolidge, Hamilton county, Kansas:

OFFICES.

SECTION 1. The Mayor and Councilmen of the city of Coolidge shall provide, at the expense of the city, if the same shall be deemed expedient, a suitable room or office for the Police Judge, or they shall designate the room or office occupied by him in the transaction of other business as a court-room; and he shall hold his court in such room or office, and his court shall be open every day except Sundays.

VACANCY.

SEC. 2. In case of vacancy in the office of Police Judge, the Council shall appoint a Justice of the Peace, or some suitable and proper person, to fill said vacancy; and the person so appointed shall hold his office for the unexpired term. Every person elected or so appointed Police Judge shall qualify by taking and subscribing the usual official oath and by giving such bond and with such sureties as the Council shall require; and said oath and bond shall be filed with the City Clerk.

JURISDICTION.

SEC. 3. The Police Judge shall be a conservator of the peace, and shall have exclusive original jurisdiction to hear and determine all offenses against the ordinances of the city. He shall keep a docket, provided for him by the Council, in which he shall enter every cause commenced before him as Police Judge. If the Police Judge be absent, sick, or disqualified from acting, a Justice of the Peace of said city of Coolidge shall act as Police Judge until such absence or [illegible]

[illegible]

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

Newspapers.com by Ancestry

Border Ruffian (Coolidge, Kansas) · Sat, May 1, 1886 · Page 1

https://www.newspapers.com/image/274137116

Printed on Jun 25, 2023

violating this section shall be deemed guilty of a misdemeanor,

CONCEALED DEADLY WEAPON.

SEC. 8. Any person or persons, other than the duly appointed and commissioned officers of this city, or officers of this county or State, carrying concealed deadly weapons, such as pistols, revolvers, slung-shots, dirks or bowie-knives, within the corporate limits of the city, shall, upon conviction, be deemed guilty of a misdemeanor.

OPEN LEWDNESS AND DISORDERLY HOUSES.

SEC. 9. If any person shall be guilty of open lewdness or other notorious act of public indecency tending to debauch the public morals, or shall maintain or keep a lewd house or place of fornication, or shall keep a common, ill-governed and disorderly house, to the encouragement of idleness, gaming, drinking, fornication or other misbehavior, or who shall keep and maintain a common bawdy house, or house of ill-fame, shall, on conviction, be deemed guilty of a misdemeanor.

DRUNKENNESS.

SEC. 10. If any person shall be drunk in any highway, street, or in any public place or building, or if any person shall be drunk in his own house, or in any private building or place, disturbing his family or others, he shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding twenty-five dollars, or by imprisonment in the calaboose or county jail for a period not exceeding thirty days. Prosecutions under this section must be commenced within thirty days after the said misdemeanor is alleged to have been committed.

WEAPONS TO MINORS.

SEC. 11. Any person who shall sell trade, give, loan or otherwise furnish any pistol, revolver or toy pistol, by which cartridges or caps may be exploded, or any dirk, bowie-knife, brass knuckles, slung-shot, or other dangerous weapon to any minor, or to any person of notoriously unsound mind, shall be deemed guilty of a misdemeanor, and shall, upon conviction before the Police magistrate, or any Justice of the Peace acting in such capacity, be fined not less than five nor more than one hundred dollars.

POSSESSION OF A MINOR

SEC. 12. Any minor who shall have in

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 19

Exhibit 19
Page 077

Newspapers.com by Ancestry
The Elk City Enterprise (Elk City, Kansas) · Fri, Mar 11, 1898 · Page 2
https://www.newspapers.com/image/367253373
Printed on Jun 25, 2023

[Published March 11th, 1898.]

# Ordinance No. 165.

## An Ordinance Prohibiting the Use and the Carrying of Fire Arms and Other Deadly Weapons.

*Be it Ordained by the Mayor and Councilmen of the City of Elk City, Montgomery County, Kansas.*

SECTION 1. That any person within the corporate limits of said city of Elk City, who shall draw any pistol or other weapon in a hostile manner, or shall make any demonstration or threat at using such weapon on or against any person, or any person who shall carry or have on his or her person in a concealed manner, or otherwise any pistol, dirk, bowie-knife, revolver, slung-shot, billy, brass, lead or iron knuckles, or any deadly weapon of any kind within the corporate limits of said city, shall be deemed guilty of a misdemeanor and on conviction thereof shall be fined in any sum of not less than five dollars nor more than one hundred dollars. Provided, that this ordinance shall not be so construed as to prohibit officers of the law from being armed.

SEC. 2. Be it further ordained that all ordinances or parts of ordinances in any manner conflicting with this ordinance, be,and the same are, hereby repealed.

SEC. 3. Be it further ordained that this ordinance shall be in full force and effect on and after its publication in the Elk City ENTERPRISE, the duly designated official paper of said city published and of general circulation therein. Passed and appoved this 7th day of March, A. D. 1898.

[SEAL.] J. A. BROWN, Mayor.
Attest: JOHN A. LOGAN, City Clerk.

STATE OF KANSAS,
MONTGOMERY COUNTY, } ss
CITY OF ELK CITY.

I, J. A. Logan, City Clerk of Elk City, do hereby certify that the above and foregoing ordinance was read and considered by sections at a public meeting of the City Council of said city, held on the seventh day of March, A. D. 1898. And was duly passed section by section and then as a whole by said Council. In witness whereof I have hereunto subscribed my name and caused the seal of said city to be affixed thereto.

[Seal.] J. A. LOGAN, City Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.
Powered by Newspapers

# Exhibit 20

Exhibit 20
Page 079

Newspapers.com by Ancestry

The Harper Daily Sentinel (Harper, Kansas) · Tue, Aug 23, 1887 · Page 2

https://www.newspapers.com/image/419606234

Printed on Jun 25, 2023

**DAILY SENTINEL.**
PUBLISHED EVERY EVENING.

J. L. ISENBERG, - - EDITOR.

OFFICE—Entrance Stairway First National Bank building, Central avenue north.
—TERMS:—
By Carrier, per week............ 10
By Mail per month, in advance........... 45
By Mail, per year, in advance........... $5.00
Address all communications to
THE SENTINEL,
Harper, Kans.

### Ordinance No. 179.

[First published, August 23, 1887.]

An ordinance legalizing the erection of calaboose and declaring its uses.

*Be it ordained* by the Mayor and Council of the city of Harper:

SECTION 1. That the calaboose heretofore erected under the provisions of Ordinance No. 12, approved December 27, 1880, be and the same is hereby declared to be the only and legal calaboose of said city, and the marshal and police of said city of Harper are directed to use the same in all cases of arrest, when confinement is necessary.

SEC. 2. This ordinance shall take effect and be in force from and after its passage on being published according to law in the Harper Daily SENTINEL.

Attest: J. W. HIRST,
ABNER BOURNE, Mayor.
Clerk.

### Ordinance No. 180.

[First published, August 23, 1887.]

An ordinance defining and punishing misdemeanors.

*Be it ordained* by the Mayor and Council of the city of Harper:

SECTION 1. That it shall be unlawful for any person within the limits of the city of Harper to publicly curse, swear or use abusive language towards another person, or publicly use profane, blasphemous, obscene, abusive or offensive language, or to disturb the good order and quietude of the city by violent, tumultuous, offensive or disorderly conduct, or by violently or maliciously assaulting another, or by quarreling or fighting with another person under any pretense whatever.

SEC. 2. That it shall be unlawful for any person able to work and support himself in an honest and respectable calling to be found loitering or strolling about any of the streets, alleys or public grounds or public places within the city of Harper not having any regular or lawful business, or who shall occupy for the purpose of loafing or any other purpose without permission of the owner or party entitled to the possession thereof, any barn, shed, shop or other place, other than such as is kept for that purpose, and all gamesters, tricksters and disorderly persons, or Gypsies, fortune-tellers, street beggers and all persons without visible means of support and unoccupied in any business, occupation or labor within said city, and all persons who harbor any of the persons and characters, described in this section, are declared vagrants, and shall be deemed guilty of a misdemeanor.

SEC. 3. That it shall be unlawful for any person within the limits of the city of Harper in any manner or by any means to disturb the peace and quiet of any assemblage of persons met for religious worship by making any unusual noise or by rude or indecent behavior or conduct, or in any manner by profane discussion within any place of worship or so near the same as to disturb the order or solemnity thereof, any such conduct shall be deemed a misdemeanor.

SEC. 4. That it shall be unlawful for any person within the limits of this city to disturb any lawful assemblage of people by rude or indecent behavior or by making intentionally any unusual noise at or near such assemblage.

SEC. 5. That it shall be unlawful for any person within the city limits to knowingly give or make any false alarm of fire, or to ring any church or other bell, at unusual hours, or for any purpose other than calling the people to assemble, or for an alarm in case of actual fire, or other danger threatening the city or the inhabitants.

SEC. 6. That it shall be unlawful for any person to ride or drive any horse, mule or other animal at a rapid or reckless rate of speed, either with or without a vehicle attached thereto, through any of the streets, alleys or public grounds of the city, or to engage in any horse or mule race within said city, or to drive or place any wagon or vehicle upon any paved or planked sidewalk, or leave the same or any animal standing on or across any foot-way crossing any street or alley in the city.

SEC. 7. That it shall be unlawful for any person under the age of 18 years to climb on, hang to, or ride upon any railroad, engine or car within the limits of said city; provided, this ordinance does not prevent any such persons from entering the cars at the depot when not in motion.

SEC. 8. That it shall be unlawful for the owner or person lawfully in possession of any horse, mule, cow, hog or other animal, to allow or permit the same to run at large within the corporate limits of said city or to picket the same so that any such animal can cross any street or alley with picket rope while so picketed out, and in addition to the fine hereinafter imposed for the violation of this section, any such animals found running at large within the limits of said city may be taken up by the city marshal or police and impounded, and for each animal so impounded, the marshal shall be entitled to receive 50 cents for taking up and impounding and 25 cents each day for keeping and feeding, same to be paid by the owner or person for him, before removing same from the pound, or care of the marshal, and said sums are hereby declared to be a lien on such animals so impounded.

SEC. 9. That it shall be unlawful for any person owning or having in possession any glandered horse, mule or other animal, or any such animal suffering with any contagious disease to allow it to remain within the city limits of said city of Harper.

SEC. 10. That it shall be unlawful for any person (not an officer in the discharge of duty) to draw a pistol, revolver, knife or any other deadly weapon upon another or to assault another person therewith.

SEC. 11. That it shall be unlawful for any person to be found drunk, or in a state of intoxication in any street, alley, public parks or other public place within the incorporate limits of the city of Harper.

SEC. 12. That it shall be unlawful for any person to carry any deadly or dangerous weapon, such as fire arms, slung shots, sheath or dirk knife, billies, brass or metal knuckles or any other dangerous implement, which, when used, are liable to produce death or great bodily harm, within the incorporate limits of said city.

SEC. 13. That it shall be unlawful for any person or persons to discharge or shoot off any gun, pistol or other fire arms, or fire, shoot or discharge any squib, fire crackers, rockets, torpedo or any other species of fire works within the incorporate limits of said city.

SEC. 14. That it shall be unlawful for any person to stand for mares or put to service any stallion or jack within the corporate limits except it be away from all public places or places of business and that under close cover so as not to be seen from the out side of place or building.

SEC. 15. That it shall be unlawful for any butcher, or owner, or keeper of any meat market to kill or slaughter any animal or cause or permit it to be done within the incorporate limits of said city and it shall be unlawful for any owner or keeper of any butcher shop, meat market, or other place for storing or selling meat to build any fire or permit it to be done by others out of doors and within the city limits for the purpose of rendering lard or tallow, boiling water or other purpose. And it shall be unlawful for any person to build or permit to be built any fire out of doors in the city limits so as to endanger the property of any person of said city.

SEC. 16. That it shall be unlawful for any person or persons to keep or allow to be kept for any purpose whatever any hog, hogs, pig or pigs or swine of any kind, on any lot within the original townsite of Harper, and the keeping of any such is hereby declared to be a nuisance and in addition to the fine imposed, it is made the duty of the marshal to cause such nuisance to be abated.

SEC. 17. That it shall be unlawful for any person or persons to stack any hay, straw, or other combustible matter on any lot in the original townsite of Harper. All hay or straw kept on said lots to be kept in tight buildings and well protected and it is made the duty of any person or persons owning or having in control any lot or piece of ground in any of said original town to see that no loose hay, straw, shavings, or other combustible matter be left on said lot or piece of ground under their control.

SEC. 18. That it shall be unlawful for any person or persons by self, clerk, agent or otherwise to keep any house, room or place for the purpose of allowing or permitting persons to assemble and play at any game or games of roulette, faro, keno, cards, gift enterprises, chuck-aluck, hazard or any other gambling game or gambling device by whatever name known or called, within the limits of said city, and the keeping of any such prohibited place shall be a separate and distinct offence for each day the same is so kept or used.

SEC. 19. That it shall be unlawful for any person or persons or corporations or companies to occupy more than three feet of the sidewalk on Main street or Central Avenue in front of their respective place of business for the purpose of displaying goods and said three feet if so used to be on the side of walk next to the buildings.

SEC. 20. That it shall be unlawful for any person, persons or corporation to erect or maintain any barbed wire fence on the line of any lot adjoining or along any street in said city.

SEC. 21. That it shall be unlawful for any person or persons to set up, run, maintain, carry on or engage in any gambling, device, games of chance, or hazzard, three card monte, sale of soap, or other commodity with chance of money or things connected therewith or any other of the so-called street games or thimble riggs or devices, intended to gain something from the public outside of legitimate trade, street jewelry and lottery sales, and all species of ring pitching and all other sleight-of-hand tricks and performance within the corporate limits.

SEC. 22. That any person, persons or corporations who shall violate any one or more of the foregoing sections of this ordinance, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be fined in any sum not less than one dollar nor more than one hundred dollars for each offense, and on such conviction, shall stand committed to the public jail or calaboose until the fine and cost are paid.

SEC. 23. All ordinances in conflict with this are hereby repealed.

SEC. 24. This ordinance shall take effect and be in force from and after its passage on being approved and published in the manner required by law in the Harper Daily SENTINEL.

Attest: J. W. HIRST,
ABNER BOURNE, Mayor.
Clerk.

### Ordinance No. 181.

[First published, August 23, 1887.]

An ordinance to restrain and prohibit prostitution, or keeping houses of ill-fame.

*Be it ordained* by the Mayor and Council of the city of Harper:

SECTION 1. That it shall be unlawful for any person or persons within the incorporate limits of the city of Harper to keep a house of ill-fame or place resorted to for the purposes of prostitution or lewdness, or to keep a disorderly or ill-governed house or place for the practice of fornication or for the resort of persons of evil name or repute, or dishonest conversation; or to knowingly permit or suffer other persons to meet at his or their house or place for such purposes, or commit or suffer to be committed therein any immoral, indecent, or other improper or vulgar conduct or behavior, or any tippling, reveling, rioting or disturbance and all persons, male or female, who resort to such disorderly house, or house of ill-fame, for purposes of prostitution or debauchery, shall be deemed guilty of a misdemeanor and on conviction shall be fined in any sum not less than $10 nor more than $100 and cost of prosecution and stand committed until fine and costs are paid.

SEC. 2. That it shall be unlawful for any female, unmarried, to submit herself to, or have illicit intercourse with, any person at any time or place within the limits of the city of Harper, or to suffer herself to be taken to any hotel or other place for the purpose of illicit intercourse, and it shall be unlawful for any man to entice or cause any female to go to any place within the city of Harper for the purpose of having illicit intercourse or does have illicit intercourse with such person, and any person or persons, male or female, who violates any of the provisions of section 2 of this ordinance shall be guilty of a misdemeanor and on conviction thereof shall be fined in any sum not less than $10 nor more than $100 and cost of prosecution and stand committed until fine and cost are paid.

SEC. 3. This ordinance shall take effect and be in force from and after its passage and publication according to law in the Harper Daily SENTINEL.

Attest: J. W. HIRST,
ABNER BOURNE, Mayor.
Clerk.

### Ordinance No. 182.

[First published, August 23, 1887.]

An ordinance relating to the health and cleanliness of the city.

*Be it ordained* by the mayor and council of the city of Harper:

SECTION 1. That it shall be unlawful for any person, persons or corporation

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

Exhibit 20
Page 080

Newspapers by ancestry
The Harper Daily Sentinel (Harper, Kansas) · Tue, Aug 23, 1887 · Page 2
https://www.newspapers.com/image/419606234
Printed on Jun 25, 2023

son therewith.

SEC. 11. That it shall be unlawful for any person to be found drunk, or in a state of intoxication in any street, alley, public parks or other public place within the incorporate limits of the city of Harper.

SEC. 12. That it shall be unlawful for any person to carry any deadly or dangerous weapon, such as fire arms, slung shots, sheath or dirk knife, billies, brass or metal knuckles or any other dangerous implement, which, when used, are liable to produce death or great bodily harm, within the incorporate limits of said city.

Copyright © 2023 Newspapers.com. All Rights Reserved.
Powered by Newspapers

# Exhibit 21

Exhibit 21
Page 082

Newspapers.com by Ancestry

The Citizen (Howard, Kansas) · Wed, May 22, 1889 · Page 3

https://www.newspapers.com/image/419099948

Printed on Jun 25, 2023

[Published May 22, 1889.]

*ORDINANCE NO. 72*

An ordinance to prevent carrying concealed weapons and the discharge of firearms.

*Be it ordained by the Mayor and Councilmen of the City of Howard:*

Section 1. Any person who shall, within the corporate limits of the city of Howard have or carry concealed or partially concealed upon his or her person any revolver, pistol bowieknife dagger, slungshot or other deadly weapon, shall, on conviction thereof, be fined in any sum not less than one dollar nor more than fifty dollars and costs. Provided, this section shall not apply to peace-officers of the city or state. The carrying of a weapon in a holster exposed to full view shall not be deemed a concealed or partially concealed weapon under this section.

Section 2. Any person who shall, within the corporate limits of the city of Howard, discharge any firearms, except by permission of the Mayor, or when mustered for drill or review, or otherwise acting under the command, or by permission of some commissioned officer, or where done in self-defense, or for the protection of gardens and yards from destructive animals, shall, upon conviction thereof, be fined in any sum not less than One nor more than Fifty Dollars and costs.

Section 3. This ordinance shall take effect and be in force from and after its publication once in the Howard DEMOCRAT.

Passed May 16, 1889.

Approved by me this 16th day of May, 1889.

R. F. GLENN,
Mayor of the city of Howard.

Attest: W. D. BURNS, City Clerk,

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 22

Exhibit 22
Page 084

Newspapers.com by ancestry
The Kendall Free Press (Kendall, Kansas) · Wed, Mar 23, 1887 · Page 1
https://www.newspapers.com/image/379760351
Printed on Jun 25, 2023

Clerk.

Be it ordained by the Mayor and Councilmen of the City of Kendall, Hamilton County, Kansas:

SECTION I.

DISCHARGING FIREARMS.

If any person shall within the corporate limits of the City of Kendall, fire or discharge any gun, fowling-piece, pistol, revolver, or firearm of any kind or description, or any other thing containing powder or combustibles, or anything made of nitro-glicerine, without first having obtained permission from the Mayor in writing, every such person shall be deemed guilty of a misdemeanor.

SECTION II.

INDECENT DRESS AND LEWD CONDUCT.

Any person who shall appear in any public place within the corporate limits of the city in a state of nudity, or a dress or garb not belonging to his or her sex, or an indecent or lewd dress or shall make an indecent exposure of his or her person, or be guilty of any lewd or indecent behavior, shall be deemed guilty of a misdemeanor.

SECTION III.

OBSCENE BOOKS, &C.—INDECENT PLAYS.

Any person who shall exhibit, sell or offer to sell, or give away, any indecent, lewd or obscene book, picture or other thing or shall exhibit or perform any indecent play or other representation, every such person shall be deemed guilty of a misdemeanor.

SECTION IV.

PLYING THE VOCATION OF A PROSTITUTE.

Any prostitute or lewd woman who shall within the corporate limits of this city, by word, sign, letter, picture, action, or the distribution of cards or other thing, ply her vocation upon the streets, at any door, or window of any house of this city, or at any other place within the limits of the same, shall be deemed guilty of a misdemeanor.

SECTION V.

CRUELTY TO ANIMALS.

Any person who shall inhumanly and unnecessarily beat, injure, or maltreat any dumb animal or animals within the corporate limits of this city, shall be deemed guilty of a misdemeanor.

SECTION VI.

DISPLAY OF DEADLY WEAPONS.

It shall be unlawful for any person or persons to display or make any improper use of any deadly weapon within the corporate limits of this city. Any person violating this section shall be deemed guilty of a misdemeanor, and it shall be the duty of the City Marshall and all police officers of said city to arrest any and all persons found violating this section, with or without process.

SECTION VII.

FIRE CRACKERS, &C.

The explosion of fire crackers, torpedoes,

Copyright © 2023 Newspapers.com. All Rights Reserved.
Powered by Newspapers.com

Newspapers.com by Ancestry

The Kendall Free Press (Kendall, Kansas) · Wed, Mar 23, 1887 · Page 1

https://www.newspapers.com/image/379760351

Printed on Jun 25, 2023

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY Newspapers.com

Newspapers.com by Ancestry

The Kendall Free Press (Kendall, Kansas) · Wed, Mar 23, 1887 · Page 1

https://www.newspapers.com/image/379760351

Printed on Jun 25, 2023

OBSCENE BOOKS, &C.—INDECENT PLAYS.

Any person who shall exhibit, sell or offer to sell, or give away, any indecent, lewd or obscene book, picture or other thing or shall exhibit or perform any indecent play or other representation, every such person shall be deemed guilty of a misdemeanor.

SECTION IV.

PLYING THE VOCATION OF A PROSTITUTE.

Any prostitute or lewd woman who shall within the corporate limits of this city, by word, sign, letter, picture, action, or the distribution of cards or other thing, ply her vocation upon the streets, at any door, or window of any house of this city, or at any other place within the limits of the same, shall be deemed guilty of a misdemeanor.

SECTION V.

CRUELTY TO ANIMALS.

Any person who shall inhumanly and unnecessarily beat, injure, or maltreat any dumb animal or animals within the corporate limits of this city, shall be deemed guilty of a misdemeanor.

SECTION VI.

DISPLAY OF DEADLY WEAPONS.

It shall be unlawful for any person or persons to display or make any improper use of any deadly weapon within the corporate limits of this city. Any person violating this section shall be deemed guilty of a misdemeanor, and it shall be the duty of the City Marshall and all police officers of said city to arrest any and all persons found violating this section, with or without process.

SECTION VII.

FIRE CRACKERS, &C.

The explosion of fire crackers, torpedoes,

street, alley or other public place within the corporate limits of said city, such person or persons shall be deemed guilty of a misdemeanor and fined not less than one nor more than ten dollars, in default of payment of said fine he or they shall be confined in the calaboose not less than ten or more than twenty days.

SECTION XXII.

CONCERNING THE CITY CLERK, CITY TREASURER, MARSHAL, AND STREET COMMISSIONER.

ART. 1—There are hereby created the offices of City Clerk, City Treasurer, City Marshal and Street Commissioner. The City Clerk shall keep a record faithfully of all proceedings of the Mayor and Council in books provided for that purpose.

ART. 2—The Treasurer shall safely keep all monies, notes, bonds and credits coming into his possession by virtue of his office and shall give a bond of five thousand dollars to the City of Kendall with at least two securities, conditional that he will faithfully account for all monies, notes, bonds and other credits coming into his possession by virtue of his office, said bond to be approved by the Mayor and Council. He shall pay out money only on the order of the Mayor attested by the City Clerk, which order shall also bear the seal of the city.

ART. 3—The City Marshall shall be the Chief of Police, and shall be charged with the preservation of the peace and good order of the city under the ordinances thereof and under the instructions of the Mayor and Council.

Approved March 18th, A. D., 1887.

[Attest] H. B. BELL,
Mayor.

T. A. JOHNSON,
Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

# Exhibit 23

Exhibit 23
Page 088

Case 8:23-cv-01696-CJC-ADS Document 21-2 Filed 11/03/23 Page 89 of 157 Page ID #:455

Newspapers by ancestry

https://www.newspapers.com/image/420675083

Printed on Jun 25, 2023

## CITY ORDINANCES.

State of Kansas } s s
Meade Co. }

Preamble of an Ordinance passed by the Mayor and Councilmen of the city of Meade Center, at their regular meeting held at the Mayor's office in said city in the county of Meade and the said state of Kansas, on the 23d day of Nov. A. D 1885 for the punishment of crimes and misdemeanors committed within the limits of said city of Meade Center, which limits are described by an order made by James A. Ray, Judge of the 16th Judicial District, on the 21st day of Oct. 1885 in incorporating said city of Meade Center a city of the 3d class under the statutes of said state in such cases made and provided.

[Published Nov., 28th 1885.]

ARTICLE I.

*Sec.* 1. Be it ordained by the Mayor and Councilmen of Meade Center, Kansas, that the marshal, assistant marshal and night watchman and policemen of said city shall at all times have power to make arrests, with or without process or order of arrest of all offenders against the laws of the state of Kansas or of the city of Meade Center, by day or by night to keep all persons arrested in the city prison, county jail or other proper place to prevent their escape until a trial can be had before the proper officer, and to execute all processes issued by the Police Judge and de- [illegible]

[illegible] ance with the statutes of the state of Kansas in such cases made and provided; and every person as afore said who shall violate any of the above and foregoing proceedings, shall be guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not less than one dollar nor more than $100 and shall stand committed until said fine so assessed and the costs thereof shall be paid or replevied.

[Published Nov., 28th 1885.]

ART. III. SEC. I.

*Sec. 3.* Be it further ordained by said mayor and council of Meade Center of said state, that it shall be unlawful for any person or company of persons within the limits of said city, to deal play or practice, or be in any manner accessory to the dealing playing or practicing of any confidence game or swindle known as three card monte or any such game, play or practice, shall be deemed guilty of misdemeanor, and upon conviction thereof shall be fined in any sum not less than $10 nor more than $100 and shall stand committed until said fine and cost of prosecution shall be paid or replevied.

[Published Nov., 28th 1885.]

ART. III. SEC. II.

*Sec. 4.* Be it father ordained by said mayor and council, that it shall be unlawful for any person or company of persons within the limits of said city of Meade Center in said state, who shall set up or keep any table or gambling device commonly called A. B. c., faro bank, E. O. roulett or a game commonly called poker, played with cards or the game of equality, or any kind of gambling table or gambling device adapted, devised and devised and designed for the purpose of playing any game of chance for money or property and shall induce, entice or permit any person to bet or play at or upon any such gaming table or gambling device or on the side or against the keeper thereof shall on conviction be adjudged guilty of a misdemeanor and shall be fined in any sum not more than $100 and shall stand committed until said fine and cost is paid or replevied.

[Published Nov., 28th 1885.]

ART. III. SEC. III.

*Sec. 5.* Be it further ordained that every person who shall bet any money or property upon any gaming table, bank or device prohibited by the preceding section, or at or upon any gaming device or who shall bet upon any game played at or by means of any such gaming table or gaming device shall, on conviction thereof be adjudged guilty of a misdemeanor and punished by fine not more than $50 and stand committed until said fine and cost are paid or replevied.

[Published Nov., 28th 1885.]

ART. III. SEC. IV.

*Sec. 6.* Be it further ordained that it shall be unlawful for any person or company of persons to lease or let to any other person or company of persons any house, room or building of any description within the corporate limits of the city of Meade Center for the purpose of setting up or keeping therein any of the gambling tables or banks or devices prohibited by the preceding sections or for the purposes of being used or kept as a gaming house shall upon conviction be adjudged guilty of a misdemeanor and punished by fine not more than $100 and stand committed until said fine and cost shall be paid or replevied.

[Published Nov., 28th 1885.]

ART. IV. SEC. I.

*Sec. 7.* Be it further ordained by the mayor and council of the city of Meade Center in said state of Kansas that if any person within the corporate limits of said city of Meade Center shall run or cause to be run upon the public streets, alleys or grounds or vacant lots any horse or horses, mules or other animals so as to interrupt travel or travelers or endanger persons crossing the same, shall upon conviction thereof be adjudged guilty of a misdemeanor and upon conviction shall be fined not less than $5 and not to exceed $20 and shall stand committed until said fine and cost be paid or replevied.

[Publishen Nov., 28th 1885.]

ART. IV. SEC. II.

*Sec. 8.* Be it further ordained by the mayor and council of said city of Meade Center, that every person who shall be convicted of horse racing, cock fighting or playing at cards or games of any kind on the first day of the week commonly called Sunday within the corporate limits of said city shall be deemed guilty of misdemeanor and fined not exceeding $50 and shall stand committed until the fine and cost shall be paid or replevied.

[Published Nov., 28th 1885.]

ART. V. SEC. I.

*Sec. 9.* Be it further ordained by the mayor and council of the city of Meade Center in said state of Kansas that every person who shall at any time while within the incorporate [illegible]

[illegible] limits of said city of Meade Center, who shall willfully disturb the peace and quiet of any person, family or neighborhood or public assembly shall upon conviction thereof be fined in a sum not exceeding $25 and stand committed until said fine and costs are paid or replevied.

[Published Nov., 28th 1885.]

ART. VI. SEC. I.

WEAPONS.

*Sec. 11.* Be it ordained by the mayor and councilmen of Meade Center in the state of Kansas, that it shall be unlawful for any person or persons who are not authorized by the laws of the United States or of the state of Kansas or of the said city of Meade Center, who shall be found within the incorporate limits of said city of Meade Center, carrying on his person a pistol, bowie knife, dirk, or other deadly weapons, shall be subject to arrest upon charge of misdemeanor and upon conviction shall be fined in any sum not exceeding $25, and stand committed until paid or replevied.

[Publishen Nov., 28th 1885.]

ART. VII. SEC. I.

SIDEWALK.

*Sec. 12.* Be it ordained by the mayor and council of the city of Meade Center, Kansas, that it shall be unlawful for any person or persons, within the corporate limits of said city, to lead, ride or drive any animal upon any of the sidewalks of said city, and any person so offending this ordinance shall be subject to arrest upon charge of misdemeanor and upon conviction shall be fined in any sum not exceeding $25 and stand committed until said fine and cost are paid or replevied.

[Published Nov., 28th 1885.]

ART. VII. SEC. II.

*Sec. 13.* Be it further ordained by said mayor and council that it shall be unlawful for any person or persons to obstruct any street or street crossing within the incorporate limits of Meade Center or in any way hinder and delay public travel thereon or to make any unnecessary noise thereon unless a permit so to do by the mayor and council of said city has been granted said person or persons and any person so offending against the ordinances of said city shall be subject to arrest upon charge of misdemeanor and upon conviction shall be fined in any sum not exceeding $20 and stand committed until said fine and costs are paid or replevied.

[Published Nov., 28th 1885.]

ART. VII. SEC. III.

*Sec. 14.* Be it further ordained by said mayor and council that it shall be unlawful for any person or persons within the limits of said incorporate city of Meade Center in the state of Kansas, to discharge or fire any fire arms of any kind, fire crackers of any description, torpedoes, or anvils without a permit so to do from the mayor and council of said city and every person so offending against the ordinance of said city shall be subject to arrest upon charge of a misdemeanor and upon conviction shall be fined in any sum not exceeding $20 and stand committed until said fine and cost are paid or replevied.

[Published Nov. 28th, 1885.]

ART. VII. SEC. IV.

*Sec. 15.* Be it further ordained by said mayor and councilmen of said city that it shall be unlawful for any person within the limits of said incorporated city of Meade Center at any public gathering or in the presence of any other person or persons make use of any profane language such as cursing, swearing or using indecent language or making any indecent exposure of their person or property shall be subject to arrest upon charge of a misdemeanor and upon conviction shall be fined in any sum not exceeding $20 and stand committed until said fine and costs are paid or replevied.

[Published Nov. 28th, 1885.]

ART. VII. SEC. V.

*Sec. 16.* Be it further ordained by said mayor and council that it shall be unlawful for any person to be on the public streets, alleys or grounds within the corporate limits of the city of Meade Center in a state of intoxication or under the influence of intoxicating drinks and every person so found within said city shall be subject to arrest upon a charge of misdemeanor, and upon conviction shall be fined in any sum not exceeding $20 and shall stand committed until said fine and costs are paid or replevied.

[Published Nov. 28th, 1885.]

ART. VIII. SEC. I.

*Sec. 17.* Be it further ordained by said mayor and council of Meade Center, in the state of Kansas, that it shall be unlawful for any person or persons within the corporate limits of said city of Meade Center, who shall willfully, maliciously cruelly, maim, beat or torture any horse ox or other animal belonging to himself or another, shall on conviction be adjudged guilty of a misdemeanor, and fined in any sum not exceeding $20 and stand committed until said fine and costs are paid or replevied.

[Published Nov. 28th, 1885.]

ART. IX. SEC. I.

*Sec. 18.* Be it further ordained by the mayor and council of Meade Center, in the state of Kansas, that every person who shall within the corporate limits of the city of Meade Center, in said state, be guilty of adultery or who shall be guilty of open and gross lewdness or lascivious behavior or be the inmate of any house of prostitution or do any open and notorious act of public indecency, or who shall be a public prostitute, or any person who shall associate with any prostitute or visit or frequent any house of ill fame or bawdy house shall upon conviction of any one of the above offences be [illegible]

[illegible] or preparation therefore the person so offending on conviction thereof shall be fined in any sum not exceeding $100 and stand committed until said fine and costs are paid or replevied.

[Published Nov. 28th, 1885.]

ART. XII. SEC. III.

*Sec. 24.* Be it further ordained that when three or more persons shall be assembled as aforesaid and proceed to commit any of the offences in the proceeding sections mentioned, it shall be the duty of the marshal or any other peace officer immediately upon actual view or as soon as may be on information, to make proclamation in the hearing of such offenders commanding them in the name of the state of Kansas to disperse and to depart to their several homes, or lawful employment, and if upon such proclamation such persons shall not disperse and depart as aforesaid, it shall be the duty of such marshal or other peace officer to call upon persons near and if necessary throughout the city limits of Meade center to aid and assist in dispersing and taking into custody all persons assembled and all persons so taken into custody and all persons called on as aforesaid and refusing to render immediate assistance shall each upon conviction thereof be fined in any sum not exceeding $50 and shall stand committed until said fine and costs are paid or replevied.

[Published Nov. 28th, 1885.]

*Sec. 25.* Be it further ordained by said mayor and council of said city of Meade center in said state of Kansas, that any officer who shall make an arrest of any persons under any of the ordinances of this said city is hereby empowered to call upon any attorney at law of said city to place the charges upon which such person or persons were arrested into a form of an affidavit that such officers may be qualified, to make said charges before the police judge who shall qualify said officer thereto and issue his warrant for the apprehension of said offender, who shall forthwith be brought before said police Judge of said city of Meade center for trial and that said attorney at law who was called upon to draw said affidavit shall be requested to conduct the prosecution against said offender and for his services shall be allowed a fee of $5 which shall be taxed as a part and parcel of the [illegible]

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers powered by

Exhibit 23
Page 089

Newspapers.com by Ancestry
https://www.newspapers.com/image/420675083

costs are paid or replevied.

[Published Nov., 28th 1885.]

ART. VI. SEC. I.

WEAPONS.

*Sec. 11.* Be it ordained by the mayor and councilmen of Meade Center in the state of Kansas, that it shall be unlawful for any person or persons who are not authorized by the laws of the United States or of the state of Kansas or of the said city of Meade Center, who shall be found within the incorporate limits of said city of Meade Center, carrying on his person a pistol, bowie knife, dirk, or other deadly weapons, shall be subject to arrest upon charge of misdemeanor and upon conviction shall be fined in any sum not exceeding $25, and stand committed until paid or replevied.

[Publishen Nov., 28th 1885.]

Copyright © 2023 Newspapers.com. All Rights Reserved.
Powered by Newspapers.com

# Exhibit 24

Exhibit 24
Page 091

Newspapers by ancestry
The Mount Hope Clarion (Mount Hope, Kansas) · Thu, May 5, 1887 · Page 3
https://www.newspapers.com/image/478384879
Printed on Jun 25, 2023

doubt.

## ORDINANCE NO. TWELVE,

### Peace, Good Government and General Welfare.

Be it ordained by the Mayor and Councilmen of the city of Mt. Hope Kansas.

SEC. 1. That any person who shall beat, wound or assault another, or obstruct, oppose, or resist any city officer in the discharge of his duty, shal upon conviction be fined in any sum not less than three dollars nor more than twenty-five dollars and costs of suit.

SEC. 2. That any person, not an officer or traveler, who shall carry any knives, (except pocket knives) firearms, brass knucks, slung shots or other deadly weapons, concealed, within the corporate limits of the city of Mt. Hope, shall be deemed guilty of an offense, and upon conviction thereof shall be fined for each and every offense, the sum of ten dollars and costs of suit.

SEC. 3. That any person under the age of twenty one years of age, who shall be found carrying any deadly weapon, concealed or otherwise, shall be deemed guilty of an offense, and upon conviction thereof, shall be fined in any sum not more than ten dollars and costs of suit. PROVIDED, this does not apply to any one leaving the city on a hunting expedition, or returning therefrom.

SEC. 4. That whoever disturbs any assembly of people met for a lawful purpose, or shall disturb the peace and quiet of the city, or any neighborhood, family or person, within the corporate limits of the city of Mt. Hope, by any improper conduct, or by loud or unusual noises, vulgar or offensive language, quarreling, fighting or challinging to fight or display any firearms or other deadly weapons, shall be deemed guilty of an offense, and upon conviction thereof be fined in any sum not less than three dollars, nor more than twenty-five dollars and costs of suit.

SEC. 5. That whoever discharges any firearms, or throws any stones or missiles by the hand or by the means of any device, or shall break, mar, deface, injure or destroy, any property, public or private, real or personal, not his own, within the corporate limits of the city of Mt. Hope, shall be deemed guilty of an offense and upon conviction thereof be fined in any sum not less than three dollars, nor more than twenty-five dollars and costs of suit.

AL
(
MY

On
Good
lb.
and o
3. T.

W. F

Hair
Shav

ESTI
DA
Meet
Third
Rebek
meet w

Copyright © 2023 Newspapers.com. All Rights Reserved.
Newspapers POWERED BY

Newspapers.com by ancestry

The Mount Hope Clarion (Mount Hope, Kansas) · Thu, May 5, 1887 · Page 3

https://www.newspapers.com/image/478384879

Printed on Jun 25, 2023

SEC. 6. That any tramp or any person found wandering, tramping, loafing or begging about, within the corporate limits of the city of Mt. Hope, without any visible means of support or honestly endeavoring to seek employment shall be deemed guilty of an offense and upon conviction thereof shall be fined in any sum not more than ten dollars and costs of suit.

SEC. 7. That any person who shall be found drunk or intoxicated or who shall be guilty of any disorderly conduct on any public street or alley or in any public place, within the corporate limits of the city of Mt. Hope shall be deemed guilty of an offense, and upon conviction thereof be fined in any sum not less than three dollars nor more than twenty dollars and costs of suit.

SEC. 8. That any person who shall be found gambling, owning directing or conducting any game of chance or gambling device, or playing thereat, and any person who shall let, rent or permit his property to be used as a gaming house club room or place where any game of chance or gambling device is kept, conducted or allowed to be carried on, shall be deemed guilty of an offense and upon conviction thereof shall be fined in any sum not xceeding one hundred dollars and costs of suit. PROVIDED this shall not apply to any game for social amusement, where no bets or charges are made and no stakes are played for.

SEC. 6. That this ordinance shall be in full force and effect after its publication in the Mt. Hope Mentor one issue.

Passed by the city council May 4th, 1887.

E. J. LENHART, City Clerk.

APPROVED.

S. M. JOHNS, Mayor

*[Published in the Mt. Hope Mentor May 5th, 1887.]*

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 25

Exhibit 25
Page 094

Newspapers.com by Ancestry

Scandia Journal (Scandia, Kansas) · Fri, Jan 5, 1894 · Page 8

https://www.newspapers.com/image/369072508

Printed on Jun 25, 2023

[Published January 5, 1894.]

## ORDINANCE No. 79.

An ordinance relating to crimes and punishments.

Be it ordained by the mayor and council of the City of Scandia:

SECTION 1. Every person who shall, within the corporate limits of the city of Scandia, disturb the peace of the city, or of any religious, political or other lawful meeting, or who shall disturb the peace of any neighborhood, family or person, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum, not less than Three ($3.00) Dollars, nor more than Fifty ($50.00) Dollars.

SECTION 2. Every person who shall, within the corporate limits of the city of Scandia, use any indecent, improper, obscene or profane language; or who shall be guilty of any indecent, lewd, obscene or boisterous conduct, shall, upon conviction, be adjudged guilty of a violation of this ordinance, and be punished by a fine of not less than One ($1.00) Dollar nor more than Ten ($10.00) Dollars.

SECTION 3. Every person who shall, within the corporate limits of the city of Scandia, be intoxicated, shall, upon conviction, be fined, for the first offense, in any sum not less than Three ($3.00) Dollars, nor more than Twenty-five ($25.00) Dollars. And for each subsequent conviction of a similar offense, within six months, in any sum not less than Five ($5.00) Dollars, nor more than Fifty ($50.00) Dollars.

SECTION 4. Every person who shall, within the corporate limits of the city of Scandia, set up, keep, or operate, any table or gambling device, with cards, dice, or any other kind of gambling device, adapted, designed and devised for the purpose of playing any games of chance, luck or skill, for money, property, chips or any other thing of value, or who shall induce, entice or permit, any person or persons, to play or bet at or upon, or about such gambling table or device, shall upon conviction be fined in any sum not less than Ten ($10.00) Dollars, nor more than Fifty ($50.00) Dollars.

SECTION 5. Every person who shall be found within the corporate limits of the city of Scandia, without visible means of support, or some legitimate business, shall be notified by the city marshal to at once depart from said city and remain outside thereof; and if such notice be not complied with, or if, after leaving, such person shall return, they shall be deemed guilty of vagrancy, and the city marshal shall forthwith arrest such person and upon conviction they shall be fined in any sum not exceeding Fifty ($50.00) Dollars.

SECTION 6. Every person who shall, within the corporate limits of the city of Scandia, carry or have upon their person any concealed pistol, revolver, bowie-knife, dirk, sling-shot, billy, knuckles or other deadly weapon, shall upon conviction be fined in any sum not less than Two ($2.00) Dollars, nor more than Fifty ($50.00) Dollars. Provided:—That any person engaged in a lawful occupation and of good moral character, may, by the mayor, be granted a permit to carry such concealed weapons.

SECTION 7. Every person who shall, within the corporate limits of the city of Scandia, commit any assault, or assault and battery, upon the person of another, or who shall beat, strike or threaten another with bodily injury, shall be deemed guilty of an unlawful disturbance of the peace of the city, and upon conviction shall be punished by a fine of not less than Five ($5.00) Dollars, nor more than Fifty ($50.00) Dollars.

SECTION 8. Every person who shall, within the corporate limits of the city of Scandia, play at, upon, or about, or wager any money, or thing of value, upon any gambling tables and devices set out and described in Section Four (4) of this ordinance, shall upon conviction be punished by a fine of not less than Two ($2.00) Dollars, nor more than Twenty-five ($25.00) Dollars.

SECTION 9. Every person who, [shall] within the corporate limits of the city of Scandia, make any lewd, obscene or indecent exposure of their person, in any public place; or who shall expose to view, in any public place, any lewd, obscene or indecent print, picture, writing or book, shall upon conviction be fined in any sum not less than Two ($2.00) Dollars, nor more than Fifty ($50.00) Dollars.

SECTION 10. Every person who shall, within the corporate limits of the city of Scandia, keep, harbor or maintain any female, knowing her to be a public prostitute, shall upon conviction be fined in any sum not exceeding Fifty ($50.00) Dollars.

SECTION 11. Every person who shall, within the corporate limits of the city of Scandia, discharge any fire-arm, rocket, giant-powder, fireworks, or any combustible or explosive material, without first obtaining a permit therefor from the mayor, shall upon conviction be fined in any sum not exceeding Twenty-five ($25.00) Dollars.

SECTION 12. Every person who shall, within the corporate limits of the city of Scandia, obstruct any street, alley, sidewalk or crossing, by placing thereon any team, wagon, buggy, cart, vehicle, boxes, barrels, wood, stone, coal, dirt, rubbish, or by making any excavation therein, or erecting any structure thereon; and every railway engineer, conductor, yard master, or other person having charge of any railway train, engine or car, who shall permit any engine, train or car, or any part thereof, to obstruct any street, alley, crossing or sidewalk longer than ten minutes at any one time, shall upon conviction be fined in any sum not exceeding Twenty-five ($25.00) Dollars. Provided:—The mayor and council may issue a permit allowing any person to obstruct a designated portion of any street, alley or sidewalk temporarily, to meet the emergencies of business.

SECTION 13. Every person who shall, within the corporate limits of the city of Scandia, wilfully and maliciously annoy any other person, or mar, break, injure, or destroy, any property of another, or tear down, injure, deface, or destroy any sign, fence, gate, building, door, window, or any other property, or open and leave open any door, window, gate or entrance to any house, barn or inclosure, shall upon conviction be fined in any sum not exceeding Fifty ($50.00) Dollars.

SECTION 14. Every person who shall, within the corporate limits of the city of Scandia, be a keeper or inmate of a house of prostitution, brothel, bawdy house, or house of assignation, or disorderly house of any kind; and every person who shall frequent, or patronize, or be found within such house, shall upon conviction be fined in any sum not less than Five [$5.00] Dollars, nor more than Fifty [$50.00] Dollars.

SECTION 15. Every person who shall, within the corporate limits of the city of Scandia, drive, or ride, any team, horse or mule along or upon any street, alley, highway or bridge, at so fast a pace as to endanger the safety of others, shall upon conviction be fined in any sum not exceeding Twenty-five [$25.00] Dollars.

SECTION 16. Every person who shall, within the corporate limits of the city of Scandia, wilfully throw any stone, brick, wood, or other substance likely to cause injury, at another person, or any house, window, door, vehicle or animal, shall upon conviction be fined in any sum not exceeding Fifty [$50.00] Dollars.

SECTION 17. Every person who shall, within the corporate limits of the city of Scandia, leave any team, horse, mule or other animal tied upon any street or alley an unreasonable length of time without proper care, or in cold, stormy and inclement weather longer than necessary, shall upon conviction be fined in any sum not exceeding Twenty-five [$25.00] Dollars.

SECTION 18. Every person who shall, within the corporate limits of the city of Scandia, permit any horse, mule, swine, cattle, chickens or other fowls, or stock of any kind, belonging to them, to run at large, or who shall lariat, herd or pasture any stock on the streets or alleys, or who shall leave any team, horse or mule upon the streets without being properly tied, shall upon conviction be fined in any sum not less than Two [$2.00] Dollars, nor more than Fifty [$50.00] Dollars. And it is hereby made the duty of the city marshal to take up and impound, or properly care for, all stock found running at large, lariated or being herded or pastured upon the streets and alleys. For each animal taken up and impounded, or otherwise cared for, the city marshal shall be entitled to receive a sum not exceeding [$1.00] Dollar, and for keeping such animal the further sum of, not to exceed, Twenty-five cents per day. Every animal taken up and impounded must be claimed by the owner within ten days; and if not so claimed, the city marshal shall advertise the same for sale, and sell to the highest bidder for cash. The proceeds shall be applied to the cost of taking up and keeping such animal, and the balance shall be paid into the city treasury for the use of the owner. Provided:—If no owner be found within three months the proceeds shall become the property of the city.

SECTION 19. Every person who shall, within the corporate limits of the city of Scandia, destroy or injure any fruit tree, shade tree, ornamental tree, hedge or shrubbery, belonging to another, or who shall allow any team, horse, mule or other animal belonging to them, so to do, shall upon conviction be fined in any sum not exceeding Fifty [$50.00] Dollars.

SECTION 20. Every person who shall, within the corporate limits of the city of Scandia, permit or allow any team, horse, mule, or other animal belonging to them, to go upon or along any sidewalk, or who shall drive or lead any animal, or animals, upon such walks, at any place not a regular crossing, shall upon conviction be fined in any sum not exceeding Twenty-five [$25.00] Dollars.

SECTION 21. All prosecutions for any violation of this ordinance shall be before the police judge, and in all cases of conviction the police judge shall forthwith commit the defendant to the city prison until the fine assessed against him and all costs of prosecution are paid. At any time after commitment the mayor may order the city marshal to put the defendant at work upon the streets until the fine is worked out at the rate of One [$1.00] Dollar per day.

SECTION 22. Ordinances number Six [6], number Twenty-four [24], number Thirty-five [35], and all ordinances and parts of ordinances in conflict herewith, are hereby repealed.

SECTION 23. This ordinance shall take effect and be in force from and after its passage, approval and publication in the SCANDIA JOURNAL.

Passed the council December 15, 1893.

Approved this 27th day of December 1893.

C. S. LYONS, Mayor.

STATE OF KANSAS, REPUBLIC COUNTY, ss:

I hereby certify the foregoing to be a true and correct copy of the original ordinance, as passed by the council and approved by the mayor, and now on file in my office. I. C. WARE,

[SEAL.] City Clerk

GEORGE F. PAGE.

Attorney at Law. & Notary Public

Scandia. Kansas.

Important Notice.

All Persons Indebted to J. W. Pinney & Co., will Please Call and Settle at Once.

We need our Money.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

Newspapers by ancestry

https://www.newspapers.com/image/369072508

Printed on Jun 25, 2023

return, they shall be deemed guilty of vagrancy, and the city marshal shall forthwith arrest such person and upon conviction they shall be fined in any sum not exceeding Fifty ($50.00) Dollars.

SECTION 6. Every person who shall, within the corporate limits of the city of Scandia, carry or have upon their person any concealed pistol, revolver, bowie-knife, dirk, sling-shot, billy, knuckles or other deadly weapon, shall upon conviction be fined in any sum not less than Two ($2.00) Dollars, nor more than Fifty ($50.00) Dollars. Provided:—That any person engaged in a lawful occupation and of good moral character, may, by the mayor, be granted a permit to carry such concealed weapons.

SECTION 7. Every person who shall, within the corporate limits of the city of Scandia, com-

alleys ed, o be en Dolla sum Every claim so cl same cash. of tak balan the u be fo becor SEC

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers

# Exhibit 26

Exhibit 26
Page 097

Newspapers by ancestry

The Asheville Weekly Citizen (Asheville, North Carolina) · Sat, Jun 3, 1882 · Page 1

https://www.newspapers.com/image/61589420

Printed on Jun 25, 2023

# The Asheville Citizen.

VOL. I. ASHEVILLE, N. C., SATURDAY, JUNE 3d, 1882. NO. 33.

Semi-Weekly Edition.

## ORDINANCES

Of the Town of Asheville.

ASHEVILLE, N. C., June 1, 1882.

MISCELLANEOUS.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com by ancestry
The Asheville Weekly Citizen (Asheville, North Carolina) · Sat, Jun 3, 1882 · Page 1
https://www.newspapers.com/image/61589420
Printed on Jun 25, 2023

placed under the Street Commissioner and compelled to work upon the public streets for a period not to exceed five days for each offense.

SEC. 61. That if any person or persons are found carrying pistols, bowie-knives, sling-shots, billeys, or other deadly weapons (officers excepted) within the corporate limits of the town of Asheville, every person so offending shall for every such offense forfeit and pay a sum of ten dollars—one-half to the informer.

SEC. 62. Persons conducting gift enterprises, or persons establishing or controling any game of chance within the corporate

Copyright © 2023 Newspapers.com. All Rights Reserved.
Powered by Newspapers.com

Case 8:23-cv-01696-CJC-ADS Document 21-2 Filed 11/03/23 Page 100 of 157 Page ID #:466

[CONTINUED FROM FIRST PAGE.]

within the corporate limits of the town of Asheville, every person so offending shall forfeit and pay for every such offense five dollars.

SEC. 65. That if any person shall on the Sabbath day, within the corporate limits of the town of Asheville, sell or give away any distilled spirits, malt liquors, or intoxicating drinks of any kind, the person so offending shall forfeit and pay for every such offense ten dollars—one-half to the informer.

SEC. 66. Any and all persons who shall play at any game of chance within the corporate limits of the town of Asheville, with cards, for money or other article of value, whether said money or article of value is then and there staked or not, shall pay a fine of ten dollars.

SEC. 67. Any person who shall break or injure the guard house in the town of Asheville shall pay a fine of ten dollars.

SEC. 68. If any person shall commit any breach of the peace, or shall fight or encourage others to fight, or shall engage in any riotous or disorderly conduct, he or she shall be fined twenty-five dollars. Provided, That this Ordinance shall not be construed to relieve the Mayor from the duty of binding over the offender according to law, if the offense is one properly triable by a higher Court.

SEC. 69. That in cases where judgments may be entered up against any person or persons, for fines or penalties, for violations of any Ordinances of the town of Asheville, and the person or persons against whom the same is so adjudged refuses or is unable to pay such judgment, it may and shall be lawful for the Mayor of said town to order and require such persons, so convicted, to work on the streets or other public works until, at fair rates of wages, such person or persons shall have worked out the full amount of the judgment and costs of the prosecution. (Act of March 2, 1867.)

SEC. 70. That all persons desiring to engage in any business or occupation within the corporate limits of the town of Asheville, for which there is assessed a special or privilege tax payable to the said town, shall, before commencing business, give notice to the Mayor of said town, in writing, signifying such purpose, and the nature of the business or occupation to be pursued, and upon payment of the amount of tax due thereon, obtain a license therefor. Provided always, That the Board of Aldermen reserve the right to refuse licenses to any one applying therefor when in their discretion the best interest of the town would not be subserved by the granting thereof. And any person who engages in or carries on any occupation for which a special or license tax is assessed without the payment of the same, shall pay a fine of ten dollars, and if a non-resident of said town, be imprisoned not exceeding twenty days. And each day any person shall engage in or pursue such business or occupation as aforesaid shall constitute a separate and distinct offense, and subject the offender to the like penalties.

SEC. 71. That the violation of any ordinance of the town of Asheville is hereby declared to be a misdemeanor under the provisions of act of 1871-2, chapter 195, and any person convicted shall be punished by a fine not exceeding twenty dollars, or imprisonment, not exceeding ten days, unless the ordinance shall prescribe a different punishment.

SEC. 72. Whenever, by the provisions of any ordinance, a fine is imposed for the violation the act, the Mayor shall have power, at his discretion, to sentence the offender, in lieu of such fine, to imprisonment in the county jail of Buncombe county, or to labor upon the streets or public works of the town of Asheville for a term not more than twenty-five days.

SEC. 73. That for the purpose of raising sufficient revenue to defray the current expenses and to meet the necessary demands upon the said town, the following tax be levied and collected for the year 1882, the tax on merchants to be collected semi-annually, payable July and January 1st, to wit:

| | |
|---|---|
| Each $100 worth of personal property | $ 35 |
| Each $100 worth of real estate | 35 |
| Poll Tax | 1 50 |
| Bowling Alley | 25 00 |
| Billiard Table | 10 00 |
| Circus or animal exhibition per day | 50 00 |
| Sleight of hand or other exhibitions per day | 5 00 |
| Public hacks and carriages | 5 00 |
| Public omnibus | 7 00 |
| Public drays | 3 00 |
| Horses for hire, each | 1 00 |
| Auctioneers | 25 00 |
| Jewelers or silversmiths, itinerant, offering for sale | 25 00 |
| Dentists, local or itinerant | 3 00 |
| License for Wholesaling or retailing spirituous liquors, in advance | 300 00 |
| Drug Store, where liquors are sold, wine, ale, lager beer or porter, other than for medical purposes, shall pay the same taxes as licensed retail liquor dealers. | |
| Dealers in malt liquors | 20 00 |
| Photographer | 5 00 |
| Dealers in leaf tobacco | 5 00 |
| Huckster's stand | 10 00 |
| Itinerant dealers in lightning rods | 10 00 |
| Agt's for the sale of any patented artic'l | 10 00 |
| Banks or bank agent | 50 00 |
| Note-shaver or broker | 25 00 |
| Tobacco Manufactory | 15 00 |
| Tobacco Warehouse | 15 00 |
| Retail dealer in fresh meats | 20 00 |
| Each four horse omnibus or stage | 5 00 |
| " two " carriage by whatever name known | 2 00 |
| Each one-horse carriage by whatever name known | 1 00 |
| Each horse kept for hire | 1 00 |

HOTELS.

| | |
|---|---|
| Eagle Hotel | [illegible] |
| Swannanoa Hotel | [illegible] |
| Bank Hotel | [illegible] |
| Central Hotel | [illegible] |
| Carolina House | [illegible] |
| Siegal House | [illegible] |

BOARDING HOUSES.

| | |
|---|---|
| First class each | [illegible] |
| Second class each | [illegible] |
| Ice Cream saloons | [illegible] |
| Dealers or agents for Fertilizers | [illegible] |
| Dealers in lumber, each yard | [illegible] |
| Soda fountains | [illegible] |
| Lawyers | [illegible] |
| Brewers, manufacturing and wholesaling their own productions | [illegible] |
| Skating rink | [illegible] |
| Dogs each | 1 00 |
| Every dealer in or agent for carriages, buggies, wagons, sewing machines, guns, tobacco, tinware, cotton yarn, or other article not the manufacture of the county of Buncombe | 10 00 |
| All purchases by dealers in stores, tin ware, seeds and agricultural implements, etc., one-tenth of 1 per cent. | |
| Wholesale dealers, one-tenth of 1 per ct. | |
| Dry goods stores, " " " | |
| Millinery stores, " " " | |
| Jewelry stores, " " " | |
| Book and Drug stores " " " | |
| Family Grocery and provision store, " " " | |
| Dealers in cotton yarn and domestic, " " " | |
| Confectionary and toy shop, " " " | |
| Boot and shoe stores, " " " | |
| Hardware " " " | |
| Furniture " " " | |

V. S. LUSK, Mayor.

F. M. MILLER,
JOHN HEY WILLIAMS,
L. P. SORRELLS,
NEWTON SHEPARD,
JOHN E. HAMPTON, } Aldermen.

June 1st, 1882.

Copyright © 2023 Newspapers.com. All Rights Reserved.
Powered by Newspapers.com

# Exhibit 27

Exhibit 27
Page 101

Newspapers.com by Ancestry

The Lake Charles Echo (Lake Charles, Louisiana) · Sat, Jul 18, 1874 · Page 4

https://www.newspapers.com/image/348612058

Printed on Jun 25, 2023

### The Town Council.

Proceedings of the Town Council of the town of Lake Charles, State of Louisiana, held on this 29th day of June, A. D. 1874, for organization.

The following named gentlemen were appointed by his Excellency, W. P. Kellogg, as Mayor and Aldermen of said town, viz: William Meyer, Mayor; John A. Spence, Thomas Hansen, Victor Touchy, A. H. Moss, W. L. Hutchins, Councilmen.

J. D. Leveque was duly elected Secretary and qualified as such for one year, ending June 1st, A. D. 1875.

On motion, an ordinance to prevent the carrying weapons within the corporate limits of the town of Lake Charles, was read twice and adopted, as follows:

Section 1st. Be it ordained by the board of Aldermen of the town of Lake Charles, that whoever shall carry a weapon or weapons upon his person, within the corporate limits of said town, such as Bowie knives, pistols, revolvers, dirks, brass-knuckles, slung-shots, or any other dangerous weapon or weapons, shall be fined not less than five dollars, and in default of payment of fine with all costs, he shall be imprisoned, in the parish jail, not less than twenty-four hours, and for a second offence the fine shall be double.

Sec. 2. Be it further ordained, that whenever the Constable has good reason to believe that any person has a dangerous weapon or weapons on or about his person, it shall be, and is hereby made his duty, forthwith, to obtain a warrant for his arrest from the Mayor of the town or Magistrate of the town; and, shall such person, when arrested, be found with such weapon or weapons upon him, in addition to collecting the fine imposed by section 1st of this ordinance, it shall further be the duty of the Constable to make affidavit against him, and have him bound over to appear before the District Court to answer to the charge of carrying weapons, as provided for by Article 915 of the Revised Statutes of 1870.

Sec. 3. Be it further ordained, that the provisions of this ordinance shall not extend to officers of the law, legally authorized to carry the same.

Sec. 4. Be it further ordained, that all proceedings for the violation of this ordinance shall be instituted by the Constable, in the name of the town, and that he shall be entitled to half of all the fines and penalties imposed and collected for violation of this ordinance.

Sec. 5. Be it further ordained, that whenever the Constable shall find any person actually carrying a dangerous weapon upon his person, he shall forthwith take him into custody and disarm him, and shall, at once, proceed to make affidavit against him to have him bound over to appear before the District Court as provided in section 2 of this ordinance, and for the recovery of the fine imposed by section 1st.

Sec. 6. Be it further ordained, that this ordinance shall take effect ten days from and after its first publication, and that all ordinances on the same subject matter be and the same are hereby repealed.

On motion, the board adjourned until the next regular meeting.

Approved:

WM. MEYER, Mayor.

Attest:

J. D. LEVEQUE, Secretary.

---

The Board met this 4th day of July, A. D. 1874, pursuant to adjournment, it being a regular meeting. Present—Wm. Meyer, Mayor; John A. Spence, A. H. Moss and W. L. Hutchins.

On motion, this being a legal holiday, the Board adjourned till next Tuesday at 9 o'clock A. M., July 7th, A. D. 1874.

Approved:

WM. MEYER, Mayor.

Attest:

J. D. LEVEQUE, Secretary.

---

The Board met this 7th day of July, A. D. 1874, pursuant to adjournment, the following members present: Wm. Meyer, Mayor; Victor Touchy, John A. Spence, A. H. Moss, Councilmen.

On motion of John A. Spence, Be it ordained that the ordinance of February 20th, 1869, relative to dogs be re-enacted, and the Constable be required to enforce the same on and after the first day of August, A. D. 1874.

AN ORDINANCE.

That all dogs owned within the corporation of the town of Lake Charles be required to wear a leather collar, the same to be furnished by the town council.

And be it further ordained, that all persons having dogs, which they are desirous of keeping, shall be required to purchase one of said collars from the Constable, and that he be authorized to charge one dollar for the same; said collar to be stamped L. C.; and that said collars be purchased annually.

The Constable will be prepared to furnish said collars from the 20th of July to the first of August. After the first of September all dogs found on the streets without said collars, will be shot by the Constable.

On motion of John A. Spence, that Mr. Jacob Ryan be appointed Assessor and Collector for this Corporation for the year ending first Monday in June, A. D. 1875.

On motion of John A. Spence, that Mr. M. J. Rosteet be appointed Treasurer for this Corporation for the year ending first Monday in June, A. D. 1875.

On motion of John A. Spence, that a committee of three be appointed to report on the condition of streets, sidewalks, ditches, etc., at the next meeting, whereupon the Mayor appointed Victor Touchy, Thomas Hansen and John A. Spence. On motion,

Resolved, That this Board now adjourn till July 13th, A. D. 1874.

Approved:

WM. MEYER, Mayor.

Attest:

J. D. LEVEQUE, Secretary.

### The Duty of a Woman to be a Lady.

Wildness is a thing which girls can not afford. Delicacy is a thing which can not be lost and found. No art can restore to the grape its bloom. Familiarity without love, without confidence, without regard, is destructive to all that makes woman exalting and ennobling.

"The world is wide, these things are small;
They may be nothing, but they are all."

Nothing?" It is the first duty of woman to be a lady. Good breeding is good sense. Bad manners in women is immorality. Awkwardness may be ineradicable. Bashfulness is constitutional. Ignorance of etiquette is the result of circumstances. All can be condoned, and do not banish man or women from the amenities of their kind. But self-possessed, unshrinking and aggressive coarseness of demeanor may be reckoned as a State prison offense, and certainly merits the mild form of restraint called imprisonment for life.

It is a shame for women to be lectured on their manners. It is a bitter shame that they need it. Women are the umpires of society. It is they to whom all mooted points should be referred. To be a lady is to be more than a prince. A lady is always in her right inalienably worthy of respect. To a lady prince and peasant bow. Do not be restrained. Do not have the impulses that need restraint. Do not wish to dance with the prince unsought. Feel differently. Be such that you confer honor. Carry yourselves so lofty that men shall look up to you for reward, not at you in rebuke.

The natural sentiment of man toward woman is reverence. He loses a large means of grace when he is obliged to account her a being to be trained into propriety. A man's ideal is not wounded when a woman fails in worldly wisdom; but if in grace, in tact, in sentiment, in delicacy, in kindness, she should be found wanting, he receives an inward hurt.

[Gail Hamilton.

---

A cyclone passed over the city of Savannah on the 6th instant, tearing up trees and unroofing houses. The grand stand at the Fair Grounds was destroyed. The track of the storm was narrow, but the force was terrific. The display of electrical phenomena was grand.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

Newspapers.com by ancestry

The Lake Charles Echo (Lake Charles, Louisiana) · Sat, Jul 18, 1874 · Page 4

https://www.newspapers.com/image/348612058

Printed on Jun 25, 2023

On motion, an ordinance to prevent the carrying weapons within the corporate limits of the town of Lake Charles, was read twice and adopted, as follows:

Section 1st. Be it ordained by the board of Aldermen of the town of Lake Charles, that whoever shall carry a weapon or weapons upon his person, within the corporate limits of said town, such as Bowie knives, pistols, revolvers, dirks, brass-knuckles, slung-shots, or any other dangerous weapon or weapons, shall be fined not less than five dollars, and in default of payment of fine with all costs, he shall be imprisoned, in the parish jail, not less than twenty-four hours, and for a second offence the fine shall be double.

Copyright © 2023 Newspapers.com. All Rights Reserved.

# Exhibit 28

Exhibit 28
Page 104

Newspapers by ancestry

https://www.newspapers.com/image/659023288

Printed on Oct 19, 2023

# THE WELLSTON NEWS.

**BEEMAN BROS., Proprietors.**

Entered at the Postoffice at Wellston, Oklahoma, as Second-class Mail matter.

PUBLISHED EVERY FRIDAY EVE.

SUBSCRIPTION RATES.

| | |
|---|---|
| One Year in Advance | $1.00 |
| Six Months | .50 |
| Three Months | .25 |

ADVERTISING RATES

50 cents per inch, single column per month. Locals 5 cents a line, per week. All advertising charged for until ordered out. Estimates on job work furnished on application.

FRANK E. BEEMAN, EDITOR.

BEEMAN BRO'S PROPRIETORS.

## Wellston Markets.

Corrected every Friday.

| | |
|---|---|
| Butter | 15 |
| Eggs | 12½ |
| Bacon | 7½ |
| Dry salt meat | 7 |
| Potatoes | 75 |
| Onions | 75 |
| Flour | 170-180 |
| Corn | 20 |
| Castor Beans | 85 |
| Seed Cotton | 2.25 |
| Cotton lint | 7.00 |
| Hogs | 4.00 |

## Resolution No. 1.

INTRODUCED BY ORDINANCE COMMITTEE.

Be it resolved by the President and Board of Trustees of the Town of Wellston, that the Clerk of said Town of Wellston be, and he is hereby authorized, directed and required to publish and print in pamphlet form, all of the resolutions, by-laws and ordinances of said Town of Wellston that have heretofore, or are at this time duly enacted and published by the Board of Trustees of said Town of Wellston; and to such pamphlet said Clerk shall attach his certificate, showing that the said pamphlet contains all of the resolutions, by laws, and ordinances which have been duly passed and published, and not repealed by the Board of Trustees of the said Town of Wellston on or before the 6th day of February, 1900; and said certificate shall further certify that the said resolutions, by-laws and ordinances so published are full, true and correct copies of the originals of which they purport to be, and when so published, the same shall be evidence in all courts.

Passed, made and established at a regular meeting of the Board of Trustees of the Town of Wellston, this 6th day of February, 1900.

W. H. BIDDLE,
Pres. Board of Trustees.

Attest:
FRANK E. BEEMAN,
{SEAL} Town Clerk.

## Ordinance No. 20.

An ordinance declaring certain acts to be an offence, and prescribing a penalty therefore.

Be it enacted by the President and Board of Trustees of the Town of Wellston.

Section No. 1. That the several offences specified in this ordinance are hereby prohibited in this town, and any person found guilty of any or either of them, shall be adjudged guilty of disturbing the peace and quiet of the town, and shall be subject to the penalties herein provided for them, respectively.

Section No. 2. That any person who shall in this town, disturb the peace of another by assaulting, striking or beating such others, or who shall use insulting language, calculated to provoke a disturbance of the peace, or who shall be guilty of violent, turbulent or tumultious conduct offensive to others, or who shall use any profane, obscene or indecent language in any public place in this town, or any person who shall make or permit any offensive noise or disturbance about the premises under his or her control, shall be deemed guilty of an offence and shall be fined in any sum not less than one dollar nor more than ten dollars.

Section No. 3. That any person who shall in this town disturb or disquiet any congregation or assembly met for religious worship, by making noise, or by rude or indecent behavior, or profane or obscene discourses within their place of worship or so near any worshiping assembly or congregation as to disturb the solemnity of the meeting, shall be deemed guilty of an offence and shall be fined in any sum not less than one dollar nor more than ten dollars.

Section No. 4. That any person who shall in this town, purposely disturb any lawful assemblage of people by rude, noisy or indecent behavior, or otherwise, shall be deemed guilty of an offence and shall be fined in any sum not exceeding ten dollars.

Section No. 5. That any person who shall in this town, intentionally ride or drive any mule, horse or other beast faster than an ordinary traveling gait, or who shall so ride or drive as to be likely to cause other horses or teams to become frightened or run away, or any person who shall leave any of the above mentioned animals or any team, on any of the public streets or public places of said town, without being secured, fastened or hitched, shall be deemed guilty of an offence and shall be fined in any sum not exceeding ten dollars.

Section No. 6. That any person who shall in this town, discharge any fire arms, in any public place, or in the direction of any public place, or in the direction of any house or building in this town, or who shall discharge any fire-crackers, rockets or other kinds of fire works in any public place in this town, shall be deemed guilty of an offence; provided, that the President of the Board of Trustees shall have power to grant proper persons the right to discharge fire works on special occasions, which permit shall be in writing, signed by the President, granting the same, and shall specify the time, when and the place where such fire works are to be exhibited, and any person violating the provisions of this section shall be fined in any sum not exceeding ten dollars.

Section No. 7. That any person who shall in this town draw any pistol or other weapon in a hostile manner, or shall make any threats or demonstrations of using any such weapons on or against any person, or any person who shall carry or have on his or her person in a concealed or unconcealed manner within this town, any pistol, dirk or bowie knife or other deadly weapon, or any person who shall within the town while in a state of intoxication, have in his or her possession any pistol, bowie knife or other deadly weapon, shall be deemed guilty of an offence and fined in any sum not less than one dollar nor more than ten dollars, provided; that this section shall not be so construed as to prevent officers of the law from being armed while on duty and not in a state of intoxication.

Section No. 8. That any person who shall in this town throw any ball, stone, brick, pieces of wood or other hard substances in or across any street or alley, or at, or against any house, building or vehicle with intent to injure any person, or with intent to injure any such house, building or vehicle, and furthermore it shall be unlawful to pitch or catch any ball on any of the public streets of the town of Wellston, and any such person shall be deemed guilty of an offence and shall be fined in any sum not exceeding ten dollars.

Section No. 9. That any person who shall wantonly or intentionally deface, injure, destroy or besmear within this town any public property of the town, or any fence, awning, building, wall, railing or goods or chattels, the property of another, or any property or thing whatever in this town, shall be deemed guilty of an offence and shall be fined in any sum not exceeding ten dollars.

Section No. 10. That any person who shall knowingly bring into this town, any pauper, lunatic or person of unsound mind, and leave such person without being properly cared for, shall be deemed guilty of an offence and shall be fined in any sum not exceeding ten dollars.

Section No. 11. That every person who shall within this town appear in any public place, in a state of nudity, or in any dress not belonging to his or her sex, or in any indecent or lewd dress, or who shall make any indecent or any public exposure of his or her person, or be guilty of any indecent or lewd act or behavior, or shall exhibit, sell or offer for sale any indecent or lewd book, picture or other thing, shall be deemed guilty of an offence and shall be fined in any sum not less than one dollar nor more than ten dollars.

Section No. 12. That any person who shall be found in any public place in this town so drunk as to not be fully competent to take care of himself, or in such a state of intoxication as to make it unsafe for himself or others, to allow him to be at large, shall be taken in charge by the Marshal and put in the town prison and kept until sober, when he shall be brought before the Justice of the Peace and be fined in any sum not exceeding ten dollars.

Section No. 13. Any person who shall in this town wilfully resist, oppose or obstruct the Marshal or any of his deputies, or any other officer of said town in the discharge of an official duty, or shall by threats or otherwise seek to intimidate any such officer from the discharge of an official duty shall be deemed guilty of an offence, and shall be fined for each and every offence in any sum not exceeding ten dollars.

Section No. 14. Any person who shall in this town assault, beat or wound any such officer mentioned in the preceeding section of this ordinance while such officer is in the discharge of any official duty of this town, shall be fined in any sum not exceeding ten dollars.

Section No. 15. If any person or persons shall set at liberty or rescue, or attempt to set at liberty or rescue from any town officer or his deputy having the legal custody or charge of the same, or from the custody of the police court, while in said court, or from the custody or confinement in which they may be held for the violation of any ordinance of this town, any prisoner or prisoners, either before or after conviction, he or they shall be deemed guilty of an offence and fined in any sum not less than one dollar nor more than ten dollars.

Section No. 16. Every person who shall entice or persuade, or by threats, or by any other means, directly or indirectly induce or cause any person summoned as a witness in any case in which said town or any of its officers are interested before the Justice of the Peace to absent himself from the trial of such case, or who shall induce or cause by persuasion, threats or any other means, any person to secrete, or absent himself for the purpose of avoiding the service of process of any kind issued by the said Justice of the peace in such case shall be deemed guilty of an offence and shall be fined in any sum not less than one dollar nor more than ten dollars.

Section No. 17. If any person confined in any place used as a prison by the town of Wellston, or held in the custody of any officer of said town for the violation of any ordinance of said town, or upon charge of violating any ordinance of the town, shall forcibly break such prison and escape therefrom, or who shall attempt by force and violence to any person to break from such prison, or custody, although no escape be effected, shall be deemed guilty of an offence and shall be fined in any sum not less than one dollar nor more than ten dollars.

Section No. 18. It shall be unlawful to keep for the purpose of service as a seed animal, any stallion, jack, bull or other seed animal within the corporate limits of the town of Wellston, or so near the corporate limits of said town, as to disturb the inhabitants of said town, or any one or more of such inhabitants, or parade such animal through the public street or streets of said town for the purpose of exhibition, or to allow any such animal to remain standing upon any of the public streets of said town longer than five minutes at one time, provided; that such animal may be kept within the limits of said town, when not less than one hundred feet from any public street, and in an enclosure consisting of good tight lumber, built tight from the ground, up to a distance of not less than eight feet high, and provided further; that whenever any resident of the block in which said animal is kept, or a block adjacent makes complaint to the town Marshal that such animal is a nuisance, or is disturbing the people in that neighborhood, the Marshal shall notify the owner of said animal, whose duty it shall be to immediately remove said animal from that part of the town, to some more secluded part of said town, and where the people living near to where said animal is kept do not object to its being kept.

Section No. 19. Every person who, either as owner or keeper, of any such animal as mentioned in the foregoing section shall violate the provisions of this ordinance shall be fined in any sum not less than five dollars nor more than ten dollars for each offence.

Section No. 20. That all persons who shall council, assist or abbet in the commission of any of the offences described in this ordinance shall be fined in any sum not less than one dollar nor more than ten dollars.

## Partnership Statement.

Territory of Oklahoma, }
Lincoln County, } ss.

This is to certify that Henry J. Cullen, residing at Wellston, Oklahoma, and Walter P. King, residing at Wellston, Oklahoma, have formed a partnership and are now conducting business as such partnership at Wellston, said Territory.

That the place of business of such partnership is at Wellston, Lincoln County, Oklahoma Territory.

That the style and firm name of such partnership is "Cullen & King."

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY Newspapers.com

Newspapers.com by ancestry

The Wellston News (Wellston, Oklahoma) · Fri, Feb 9, 1900 · Page 4

https://www.newspapers.com/image/659023288

Printed on Oct 19, 2023

sum not exceeding ten dollars.

Section No. 7. That any person who shall in this town draw any pistol or other weapon in a hostile manner, or shall make any threats or demonstrations of using any such weapons on or against any person, or any person who shall carry or have on his or her person in a concealed or unconcealed manner within this town, any pistol, dirk or bowie knife or other deadly weapon, or any person who shall within the town while in a state of intoxication, have in his or her posession any pistol, bowie knife or other deadly weapon, shall be deemed guilty of an offence and fined in any sum not less than one dollar nor more than ten dollars, provided; that this section shall not be so construed as to prevent officers of the law from being armed while on duty and not in a state of intoxication.

Section No. 8. That any person who shall in this town throw any ball, stone.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com

# Exhibit 29

Exhibit 29
Page 107

Newspapers.com by Ancestry

Lawrence Democrat (Lawrenceburg, Tennessee) · Fri, Jul 26, 1895 · Page 4

https://www.newspapers.com/image/174660388

Printed on Jun 25, 2023

# THE GREAT MIDSUMMER CLEARANCE SALE OF THE JOINER DRY GOODS COMPANY.

Continues. People are coming from all parts of the county to attend this great sale, and all have expressed themselves as being delighted with our LOW PRICES. We still have about 500 pair of Sample Shoes on our job counters that we are closing out at prices that will never be heard of again on Shoes. We have no boxes for this lot of Shoes, so we have put the prices remarkable low, in order to run them out before they become soiled. Don't fail to examine these goods, and take advantage of the rare bargains we are offering. Everything in Summer Goods will be slaughtered, to make room for a fall stock.

THE DEMOCRAT.

CITY OF LAWRENCEBURG,

FRIDAY, JULY 26, 1895.

MISDEMEANORS.

Chapter 12.

BY LAWS and ORDINANCES.

LAND SALE.

Chancery Land Sale.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

Newspapers.com by Ancestry

Lawrence Democrat (Lawrenceburg, Tennessee) · Fri, Jul 26, 1895 · Page 4

https://www.newspapers.com/image/174660388

Printed on Jun 25, 2023

more than twenty-five dollars with all cost.

Sec. 18. Be it further ordained. That it shall be unlawful for any person to earry about their person any pistol, bouie knife, sling shot, brass knucks, dirk, sword, loaded cane, stilletto, razor or other deadly wapon in this Corporation, and it is hereby made the duty of the City Marshal or other officer who

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com by Ancestry

Lawrence Democrat (Lawrenceburg, Tennessee) · Fri, Jul 26, 1895 · Page 4

https://www.newspapers.com/image/174660388

Printed on Jun 25, 2023

sees or knows of any person carrying such deadly weapons to immediately arrest every such person that they may be dealt with according to the provisions of this act, and any person found guilty of carrying any of the aboved named weapons or any other deadly weapon shall be fined not less than ten nor more than fifty dollars with all cost. Provided that this Section shall not apply to Marshals Sheriffs or other officer while on duty.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers™ POWERED BY

# Exhibit 30

Exhibit 30
Page 111

Case 8:23-cv-01696-CJC-ADS Document 21-2 Filed 11/03/23 Page 112 of 157 Page ID #:478

Newspapers.com by ancestry

The Perry Daily Times (Perry, Oklahoma) · Sat, Feb 2, 1895 · Page 2

https://www.newspapers.com/image/662973702

Printed on Jun 25, 2023

An Ordinance prohibiting the carrying of concealed weapon and fixing the punishment therefor,

Be it ordained by the mayor and councilmen of the city of Perry.

SECTION 1. It shall be unlawful for any person in the city of Perry to carry concealed on or about his person, saddle or saddlebags, any pistol, revolver, bowie knife, dirk, dagger, razor, slingshot, sword, cane, spear, metal knuckles or any other kind of knife or instrument manufactured or sold for the purpose of defense except in this ordinance provided.

SEC. 2. It shall be unlawful for any person in the corporate limits of the city of Perry to carry upon or about his person any pistol, revolver, bowie knife, dirk knife, loaded cane, billy, metal knuckles or any other offensive or defensive weapon, except as in this article provided.

SEC. 3. It shall be unlawful for any person within the corporate limits of the city of Perry, to sell or give to any minor, any of the arms or weapons designated in sections one and two of this article.

SEC. 4. Public officers while in the discharge of their official duties or while going from their homes to their place of duty or returning therefrom shall be permitted to carry arms, but at no other time and under no other circumstances, provided, however, that if any public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this ordinance as though he were a private person.

SEC. 5. Persons shall be permitted to carry shot guns or rifles for the purpose of hunting, having them repaired, or for killing animals, or for the purpose of using them in public muster or military drills or while traveling or removing from one place to another, and not otherwise.

SEC. 6. It shall be unlawful for any person to point any pistol or any other deadly weapon, whether loaded or not at any other person or persons either in anger or otherwise.

SEC. 7. Any person violating the provisions of any one of the foregoing sections, shall, upon conviction be fined in not less than Twenty Five Dollars and not more than Fifty Dollars, or imprisonment not more than 90 days or both.

SEC. 8. All ordinances or parts of ordinances in conflict with the provisions of this ordinance are hereby repealed.

SEC. 9 This ordinance shall take effect and be in force from and after its passage approved and publication.

Approved this 23 day of Jan. 1895.

(ATTEST) W. A. STONE,
[SEAL] Mayor.
G. W. PURSELL, City Clerk.

BUSINESS LOCALS.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 31

Exhibit 31
Page 113

# The Democrat.

WEEKLY DEMOCRAT,—$1.75 per year in advance. $2.00 at end of year.

MO A

## CIRCUIT COURT

Following is the docket for the Circuit court convening in this city on next Monday March 12, excepting 91 old cases continued from the last term, which proceed these:

R G Klum agt Grant and Samuel Lake. Recovery money.

Assignment Propst & Butler.

J L Barry et al agt Chas Doty et al. Injunction.

I A Morris & Co agt W L Moore. Recovery of money.

Henry Watkins agt Albany Milling & Mining Co. Recovery of money; attachment.

Sylvester Bros agt Pound Bros. Recovery of money; attachment.

Linn County National Bank agt G W Parsfull. Recovery money; attachment.

W A Lane agt E B Michael. Recovery money; attachment.

P Schlosser agt G F Russell and L Viereck. Recovery money; attachment.

J W Althouse agt H J and W H Maple. Recovery money; attachment.

S E Young agt H J Maple. Recovery money; attachment.

S E Young agt W H and M A Maple. Recovery of money; attachment.

E H Maple agt W H Maple. Recovery money; attachment.

F L Dumont agt Eva Dumont. Divorce.

John Isom agt J S Lisles. Recovery of money; attachment.

Assignment M F Pound.

L J Crow agt H M Stone. Damages.

John Hughes, appellant agt J C and F Cawood, resp; appeal.

Reeves & Co agt G W Young et al. Recovery money; attachment.

Harrisburg Lumber Co agt Eugene and Anna Bashaw. To set aside deed.

W I Vawter agt N E Fox et al. Recovery money; attachment.

W H Templeton agt Nancy A Templeton. Divorce.

F T Blount agt Frank Zimmerman et al. Foreclosure Lien.

J C Powell agt J L Cowan. Recovery money.

Strander Froman agt A S Powell and A F Bloom. Recovery money; attachment.

Mitchell, Lewis & Staver Co agt E B Butler. Recovery money; attachment.

W W Briggs and E F Wyatt agt John Roberts. Appeal.

Assignment Boenicke Bros.

Linn County National Bank agt H L Craser. Recovery money; attachment.

Corbett, Failing & Robertson agt F C Ayers & Co. Recovery money; attachment.

W M Quailey agt John Morgan. Re-

[illegible]

## LINN COUNTY COUNCIL

Council Hall of Grand Prairie Grange No. 10, P of K, March 3, 1894.

Considering the bad snowy day the good patrons of husbandry began to fill the house at an early hour. In due time the worthy president, H M Palmer, called the house to order.

The grange choir furnished some fine music for the council.

The worthy agent Bro Miller stated that he had no report to make at present.

The special committee on trade card reported that it be changed from that of last year for the coming year.

The committee on investigating the working of Linn county officials, asked for further time.

The chairman on said committee stated, that on investigation they found a great many irregularities in the actions of the county officers.

A resolution was offered for the repealing of the railroad commission. Referred to the committee on good of the order after a good many remarks.

The next meeting of the council will be held with Sand Ridge grange the first Saturday in April, 1894.

The worthy president declared a recess for dinner.

On reassembling there was a song by the choir.

Bro and Sister Walker rendered a song in the "Chinook wawa" which was well applauded.

The committee on good of the order reported an amendment adding and making the members of the railroad commission to be elected by the people.

The committee on legislation made a very lengthy report on the resolution offered at a former meeting of the council in regard to repealing the board of equalization and asked that it do not pass.

Bro Springer offered a resolution in regard to pledging the candidates for the Oregon legislature that their vote for a law demanding the enacting initiative and referendum system of making laws. Said resolution was talked on by several members explaining their views on question. The resolution was referred to the committee on legislation.

A resolution was read by Bro Kizer in regard to censuring the worthy secretary of U S agriculture as to some of his actions towards the farming community. Said resolution was referred to the committee on good of the order.

The usual vote of thanks was tendered to the members of No. 10 grange for the use of their hall, and the sisters for the repast furnished on the occasion.

Bro "Swansey" of Ill, was called for and made a few remarks, being well satisfied with the working of the P of H.

On motion, the secretary of the council was authorized to procure one thousand trade cards for the use of the different subordinate granges. Carried.

There were a good many suggestions made for the good of the order, which were very interesting to all good grangers, and as many as could should make it their duty to attend the sessions of the council.

The convention called for the purpose

[illegible]

# TUL DAY

# WEDNESDAY

## HOME AND ABROAD

[illegible]

Highest of all in Leavening Power.—Latest U. S. Gov't Report.

# Royal Baking Powder

ABSOLUTELY PURE

## PERSONAL

[illegible]

## New Advertisements.

PURE BRED Silver Laced Wyandotte eggs for sale by D O Woodworth.

FOR RENT.—The room recently occupied by J W Bently as a boot and shoe shop. Call on L Viereck.

EGGS, EGGS, EGGS.—Pure bred Silver Laced Wyandotte. Eggs for setting at the Albany Poultry Yards. From pen No. 1 and 2, $1.25 per 13; pen No. 3 $1 per 13. B Plymouth Rocks, 75 cts per 13. John Brush, Albany, Or, Cor 4th and E R sts

FOR RENT.—The opera house store, splendid location. Call on the secretary at the DEMOCRAT office for particulars.

FOR SALE.—25 shares of Albany electric light stock—the best dividend paying stock in this city. Enquire at this office.

COUNTY WARRANTS—Bought and sold by H F Merrill.

For Sale or Trade, a house and lot in good location in Albany. Will sell cheap for cash or will trade for land partly or wholly improved, not very far from town. Call or write to this office.

# FOR SAN FRANCISCO.

The Steamship HOMER will ply between San Francisco and Willamette Valley points via the Oregon and Southern Pacific railroads, sailing with freight and passengers on or about the following dates: From San Francisco on March 6. From Yaquina: on March 11. Fare from Albany and Corvallis to San Francisco: Cabin, $12; Steerage, $9.

Round trip tickets, including meals and berths, good for 30 days, $18.

## NOTICE OF ANNUAL SCHOOL ELECTION

[illegible]

## SHERIFF'S SALE.

[illegible]

# SYRUP OF FIGS

ONE ENJOYS

CALIFORNIA FIG SYRUP CO.

# Star Bakery

CONRAD MEYER, PROPRIETOR.

ALL KINDS OF PRODUCE

# DRUGS

Hodges & McFarland,

# PATENTS

C.A.SNOW & CO.

GEORGE STINSON & CO.
PORTLAND, MAINE.

5 DOLLARS PER DAY
20 Easily Made.

Awarded Highest Honors at World's Fair

# DR. PRICE'S Cream Baking Powder.

The only Pure Cream of Tartar Powder.—No Ammonia; No Alum.
Used in Millions of Homes—40 Years the Standard

ADMINISTRATOR'S NOTICE.

[illegible]

# Exhibit 32

Exhibit 32
Page 115

Newspapers.com by Ancestry
https://www.newspapers.com/image/985670827

Santa Fe Weekly Sun (Santa Fe, New Mexico) · Sat, Aug 15, 1891 · Page 4

Printed on Oct 19, 2023

# ORDINANCES.

## CHAPTER VIII.

### DEADLY WEAPONS.

Be it ordained by the City Council of the City of Santa Fe:

Sec. 1. That it shall be unlawful for any person to carry a deadly weapon, either concealed or unconcealed, within the limits of the city of Santa Fe, unles the same be carried in lawful defense of himself, his family or his property, the same being at the time threatened with danger, or unless by order of legal authority, or unless such person be a regular authorized officer of the law in the discharge of his official duties.

Sec. 2. Deadly weapons, within the meaning of the preceding section, shall be construed to mean any and all kinds and classes of guns, pistols and revolvers, slung shots, loaded or sword canes or sand-bags and all kinds and classes ot weapons and instruments, by whatever name they may be called, by which a dangerous wound can be inflicted.

Sec. 3. Any person convicted of a violation of sections 1 or 2 of this chapter, shall be punished by a fine of not less than five dollars nor more than fifty dollars, or by imprisonment in the county jail or city prison for a period not less than ten days nor more than sixty days, or by both such fine and imprisonment, in the discretion of the court.

N. T. Thornton,
Mayor.

Attest: J. D. Hughes,
Clerk.

Passed August 11, 1891.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 33

Exhibit 33
Page 117

**ORDINANCE.--Continued.**

Street Commissioner.

Sec. 12. The road supervisor, whose appointment is provided for in Section 26, of chapter 89, of the act of the legislature assembly of 1891, shall be street commissioner of the town of Cerrillos, his duties shall be as prescribed by law for road supervisors and street commissioners and as shall be directed from time to time by the board of trustees.

Sec. 13. The several town officers and appointees shall de and perform all such other duties and render such other services, not specifically defined by ordincance, as may be required of them by the board of trustees.

Approved; W. E. Dame,
Seal. Chairman Board of Trustees, Town of Cerrillos.
Attest: C. A. Whited, Clerk.

## CHAPTER III.

POLICE JUDGE AND MARSHAL.—

Be it ordained by the Board of Trustees of the Town of Cerrillos.

Sec. 1. The police judge shall have sole and exclusive jurisdiction of all violations of any Town ordinance or regulation. He shall keep a docket in which he shall enter a true record of all actions brought before him.

Sec. 2. The police judge shall before proceeding to try any person for the violation of any ordinance or regulation of the Town, cause complaint to be made and a warrant to be issued to arrest such person, and a return to be made upon said warrant.

Sec. 3. All cases tried before the police judge shall be docketed in the name of the Town of Cerrillos against the defendant and the judge shall enter upon his docket in a plain and intelligible manner a minute of each step taken in each case and an itemized statement of all costs and fines imposed and collected by him.

Sec. 4. Judgement of guilty or not of the offense charged shall be entered in each and every case, and by said judgement defendant shall be discharged, fined, imprisoned, or fined and imprisoned as the case may be; and when defendant is found guilty the costs of such case shall be assessed against him, and no costs shall be taxed otherwise, and all judgements imposing a fine, except where a fine and imprisonment are both imposed, shall be in the alternative of imprisonment for a specified number of days or until such fine and costs are paid.

SEC. 5. Whenever judgment of guilty is entered in any case, the police judge shall issue a commitment against the person of the defendent commanding the town marshal in default of the immediate payment of such fine and costs as may have been assessed, to commit the defendant to the town jail subject to labor, and in case where the judgment is that the defendant be imprisoned, that he commit the defendant to the town jail, subject to labor, in accordance with the terms of said judgment and the ordinances of said town.

SEC. 6. Whenever in accordance with the laws of the territory of New Mexico a defendant in any case may be entitled to an appeal, the same shall be allowed in accordance therewith by filing a bond with two sufficient sureties, in double the amount of the highest pecuniary penalty that could or might be assessed in the case. Provided, that said appeal shall not operate as a supersedeas in such case until such bond shall have been given and approved, and no costs shall be demanded as a condition of such appeal, nor the approval of the said appeal bond.

Sec. 7. In each case tried before the the police judge of the said town of Cerrillos said police judge may tax as costs for himself and marshal the same fees as shall be authorized by law to be taxed for similar services in favor of justices of the peace and constables.

Sec. 8. All costs and fines shall be collected by the marshal of the town who shall pay the fines collected by him to the city treasurer at least once a week, and shall pay any costs coming into his hands belonging to the police judge to the police judge and return the execution or commitment for the collection of the said fine and cost satisfied, and in all cases it shall be the duty of said police judge to issue such execution or commitment and endorse on such execution or commitment an itimized statement of costs, and it shall be the duty of marshal to make a weekly report to said board of trustees, of all arrests made and cases tried for the violation of city ordinances, of the disposition of the same and the fines collected and uncollected.

Sec. 9. The marshal shall receive such salary as the board of trustees shall by ordinance fix, the amount of which salary shall be paid to him in warrants drawn upon the police fund, hereinafter provided for, in such manner as to be equivilant to cash for the face value of said warrants.

Sec. 10. All moneys arising from said fines and from licenses paid into the treasury of said town shall constitute and be a police fund in said treasury, out of which all salaries shall be first paid, and in the event of a surplus of said police fund above what may be necessary to pay said salaries, said board of trustees may by resolution direct said surplus to be passed to general fund or other wise appropriated.

Approved: W. E. Dame.
Seal. Chairman Board of Trustees, Town of Cerrillos.
Attest: C. A. Whited, Clerk.

## CHAPTER IV.

Be it ordained by the Board of Trustees of the Town of Cerrillos.

SECTION 1. That no dog, bitch, or whelp, shall be allowed to run at large within the limits of this town, until the owner or keeper of such dog, bitch, or whelp, shall have paid the town clerk the sum of one dollar for each dog, or whelp, and the sum of three dollars for each bitch owned or kept by such person, and shall also place around the neck of such dog, bitch, or whelp, a collar made of durable material.

SEC. 2. It is hereby made the duty of all persons owning or keeping any dog, bitch, or whelp, to apply to the town clerk, and make payment to him each year, as provided in section one of this ordinance. And it shall be the duty of such town clerk to issue a tag to such owner or keeper, with the license number thereon, which tag shall by the owner or keeper be attached to and worn on the collar herein provided for; and the clerk shall keep a full record of such license.

SEC. 3. The town marshal, is hereby authorized and required, to kill and destroy any dog, bitch, or whelp, found running at large within the limits of this town, unless such dog, bitch, or whelp, is duly licensed as provided for in this ordinance.

SEC. 4. This ordinance shall be in force and effect on and after October first, A. D. 1891.

{Seal.} Approved, W. E. DAME, Chairman Board of Trustees for the Town of Cerrillos, New Mexico.
Attest: C. A. Whited, Clerk.

## CHAPTER V.—BREACHES OF THE PEACE.

Be it ordained by the Board of Trustees of the Town of Cerrillos.

SEC. 1. That any person who may hereafter be found lurking, lying in wait or concealed in any house or other building, or in any yard or premises within the limits of the Town of Cerrillos, with intent to do any mischief, or to pilfer or to commit any crime or misdemeanor whatever, shall for every such offense, on conviction, be punished by a fine of not less than $5.00 nor more than fifty dollars, or by imprisonment in the town prison not exceeding ninety days, or by both such fine and imprisonment, in the discretion of the court.

Sec. 2. Any person who shall aid, countenance or assist in making any riot, disturbance, or who shall fight in any public place in the said Town or who shall be guilty of any indecent, or immoral or insulting conduct, language or behavior, in the streets, or elsewhere in said Town, or who may remain prostrate in the streets or other public places in said Town, and all persons who shall collect in bodies or crowds in said Town for unlawful purposes, or to the annoyance or disturbance of the citizens, shall for every such offense be punished by a fine of not less than $5.00 nor more than fifty dollars, or by imprisonment in the Town prison not exceeding ninety days, or by both such fine and imprisonment, in the discretion of the court.

Sec. 3. Any person who shall be found drunk within the limits of said Town, shall for every such offense be punished by a fine of not less than $5 00 nor more than twenty-five dollars, or by imprisonment, in the the Town prison, not exceeding thirty days, or by both such fine and imprisonment, in the discretion of the court.

Sec. 4. Any person who shall make any indecent exposure of his person or be guilty of any lewd or indecent behavior in any public place of said Town, shall for every such offense be punished by a fine of not less than $5.00 nor more than twenty-five dollars, or by imprisonment in the Town prison for a period not exceeding thirty days, or by both such fine and imprisonment, in the discretion of the court.

Sec. 5. Any person who shall disturb or disquiet any congregation engaged in religious worship, or any lawful assemblage of the people within the Town, by making a noise, or by rude or indecent behavior within such meeting, or so near the same as to disturb the order or solemnity thereof, shall for every such offense be punished by a fine not exceeding twenty-five dollars, or by imprisonment in the Town prison, not exceeding thirty days, or by both such fine and imprisonment, in the discreation of the court.

Sec. 6. Any person who shall aid or assist any person confined in the Town prison to escape from such confinement, or who shall aid or assist any person in the custody of any officer of the Town to escape from such officer, and any person who shall resist an officer of said Town in the discharge of his duties, shall be punished by a fine of not less than $10.00 nor more than one hundred dollars, or by imprisonment not exceeding ninety days, in the discretion of the court.

Sec. 7. Every person committed to the Town prison for the violation of any ordinance of the Town of Cerrillos shall be required to work for the Town under the supervision of the marshal, at such labor as his or her strength will permit, within or without such prison not more than ten hours each working day; and for such work the person so employed shall be allowed, exclusive of his or her board, One dollar per day for each day's work, to be applied toward the payment of the fine and costs adjudged by the committing magistrate.

Sec. 8. All persons committed to jail shall be immediately searched and all articles of value, or weapons, shall be turned over to the marshal, together with the name of the person to whom they belong, so that proper disposition can be made of the same.

{Seal.} Approved W. E. DAME, Chairman Board of Trustees for the Town of Cerrillos, New Mexico.
Attest: C. A. Whited, Clerk.

## CHAPTER VI.—NUISANCES.

Be it ordained by the Board of Trustees of the Town of Cerrillos.

Sec. 1. That if any person shall permit or suffer any ground, building or other premises within the Town of Cerrillos, owned or occupied by him, or of which he shall be the agent, having charge of the same, to become or be offensive, nauseous, hurtful or dangerous to the neighborhood or travelers, by reason of stagnant water, dead animal or from any other cause or causes, he shall be punished as hereinafter provided.

Sec. 2. If any person shall suffer any animal belonging to him or in his charge, which may die of disease or otherwise, to be in or upon any street, alley or other grounds or place within the Town; public or private, for the space of twenty-four hours after the same shall have died, he shall be punished as hereinafter provided.

Sec. 3. If any person shall allow to flow from any house, shop, factory, stable, slaughter house or place any foul or nauseous liquor or substance of any kind whatsoever into or upon any adjacent ground or lot or into any street, alley or ditch in the Town so as to be offensive, nauseous, hurtful or dangerous; and any person who shall deposit in any such place any filth, litter or refuse or any carcass or thing so as to be offensive, nauseous, hurtful or dangerous to any portion of the inhabitants of said Town, he shall be punished as hereinafter provided.

Sec. 4. Any person offending against any of the foregoing provisions of this chapter, shall be punished for each offense by a fine of not less than five dollars, nor more than fifty dollars, or by imprisonment in the Town prison, for a term of not less than five days nor more than sixty days or by both such fine and imprisonment in the discretion of the court.

{Seal.} Approved W. E. DAME, Chairman Board of Trustees for the Town of Cerrillos, New Mexico.
Attest: C. A. Whited, Clerk.

## CHAPTER VII.—DEADLY WEAPONS.

Be it ordained by the Board of Trustees of the Town of Cerrillos.

Sec. 1. That it shall be unlawful for any person to carry a deadly weapon, either concealed or unconcealed within the limits of the Town of Cerrillos, unless the same be carried in lawful defense of himself, his family or his property, the same being at the time threatened with danger, or unless by order of legal authority, or unless such person be a regular authorized officer of the law in the discharge of his official duties.

Sec. 2. Deadly weapons, within the meaning of the preceding section, shall be construed to mean any and all kinds and classes of pistols and revolvers, slung shots, loaded or sword canes or sand-bags and all kinds and classes of weapons, and instruments, by whatever name they may be called, by which a dangerous wound can be inflicted.

Sec. 3. Any person convicted of a violation of section one or two of this chapter, shall be punished by a fine of not less than five dollars nor more than fifty dollars, or by imprisonment in the Town prison for a period of not less than ten days nor more than sixty days, or by both such fine and imprisonment, in the discretion of the court.

Sec. 4. Any person who shall be found guilty of discharging any fire-arm within 300 yards of any habitation in the said Town of Cerrillos shall be fined on, conviction thereof, not less than five dollars nor more than Twenty-five dollars, unless the same shall be in defense of himself, his family, or property.

{Seal.} Approved W. E. DAME, Chairman Board of Trustees for the Town of Cerrillos, New Mexico.
Attest: C. A. Whited, Clerk.

**A. L. Kendall,**

**Notary Public.**

— AND —

*Justice of the Peace.*

All notary work given promp attention and careful execution.

**THE CERRILLOS SUPPLY CO**

—Dealers in—

**Hardware, Stoves, Tinware Furniture, Queensware, Glassware.**

Lamps, Woodenware, Paints, Oils, Glass, Miners' Supplies

☞ Giant and Black Powder always in stock.

☞ Studebaker Wagons, both light and heavy, Buggies Road Carts, etc.

**Iron and Steel.**

☞ Orders for Machinery and Machine repairs, will receive prompt attention.

☞ Before making your purches give us a call.

**Miller & Legace,**

— Dealers in —

**Pure Drugs and Medicines,**

Stationery, Toilet Goods, Perfumeries, Paints, Oils, Varnishes Wall Paper, Glass, Cigars and Tobaccos.

*PRESCRIPTIONS CAREFULLY COMPOUNDED*

L. G. Jones' New Building. Cerrillos, N. M.

Exhibit 33

# Exhibit 34

Exhibit 34
Page 119

Newspapers.com by Ancestry

Omaha Daily World-Herald (Omaha, Nebraska) · Sun, Aug 4, 1889 · Page 12

https://www.newspapers.com/image/859729118

Printed on Jun 25, 2023

MAHA, SUNDAY, AUGUST 4, 1889.—TWELVE PAGES.

ORDINANCE No. 2118.

An ordinance declaring certain acts unlawful, and defining certain offenses, misdemeanors and nuisances, and imposing fines and penalties for the violation of the provisions hereof, and repealing Chapter 16, that portion of Chapter 4 entitled "Lotteries", Chapter 28 and Chapter 31 of Chase's Compiled Ordinances, and also repealing Ordinances [illegible]

Be it ordained by the city council of the city of Omaha:

SECTION 1. It shall be unlawful for any person to disturb the good order or peace of the city of Omaha by making any loud or unusual noise; or by fighting or threatening to fight; or by tumultuous threatenings, or offensive carriage; or by using any abusive, obscene or profane language in the streets or other places to the annoyance of citizens. Any person who shall violate any of the provisions of this section, shall, on conviction thereof be fined in any sum not exceeding one hundred dollars or be imprisoned not exceeding thirty days.

[illegible]

Health Is Wealth!

[illegible]

CANCER [illegible]

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers™ powered by Newspapers.com

Exhibit 34

Page 120

Newspapers.com by Ancestry
https://www.newspapers.com/image/859729118

Omaha Daily World-Herald (Omaha, Nebraska) · Sun, Aug 4, 1889 · Page 12

Printed on Jun 25, 2023

be imprisoned not exceeding thirty days.

SEC. 10. It shall be unlawful for any person to wear under his clothes, or concealed about his person, any pistol or revolver, colt, billy, slungshot, brass knuckles or knuckles of lead, dirk, dagger, or any knife resembling a bowie knife, or any other dangerous or deadly weapon within the corporate limits of the city of Omaha. And any person guilty of a violation of this section shall, on conviction, be fined not exceeding one hundred dollars for each and every offense; nothing in this section, however, shall be so construed as to prevent the United States marshals and their deputies, sheriffs and their deputies, regular or special police officers of the city, from carrying or wearing such weapons as may be deemed necessary in the proper discharge of their duties. Provided, however, if it shall be proved from the testimony on the trial of any such case, that the accused was, at the time of carrying any weapon as aforesaid, engaged in the pursuit of any lawful business, calling or employment and the circumstances in which he was placed at the time aforesaid were such as to justify a prudent man in carrying the weapon or weapons aforesaid, for the defense of his person, property or family, the accused shall be acquitted.

Whenever any police officer shall make an arrest of a person having concealed on or about his person any weapon or weapons, as specified in this section, it shall be such officer's duty to take from such person arrested the weapon or weapons found upon him at the time of his arrest, and to retain the same, to abide such order concerning the same as may be made by the police judge.

Copyright © 2023 Newspapers.com. All Rights Reserved.
Powered by Newspapers.com

# Exhibit 35

Exhibit 35
Page 122

Newspapers.com by Ancestry

The Black Hills Weekly Journal (Rapid City, South Dakota) · Fri, Dec 8, 1882 · Page 1

https://www.newspapers.com/image/351946935

Printed on Jun 25, 2023

**Ordinance No. 11.**

Be it ordained by the president and board of trustees of the town of Rapid City:

SECTION 1. That it shall be, and it is hereby declared to be unlawful for any person to carry, openly or concealed, any musket, rifle, shot gun, pistol, sabre, sword, bowie knife, dirk, sword cane, billy, slung shot, brass or other metalic knuckles, or any other dangerous or deadly weapon within the corporate limits of the town of Rapid City, Dakota territory. Provided, that nothing herein contained shall prevent the carrying of such weapon by a civil or military officer, or by a soldier in discharge of his duty, nor by any other person for meer purposes of transportation from one place to another.

SEC. 2. Upon complaint before the justice of the peace of the town, that an offence in violation of this ordinance has been committed, he shall inquire into the circumstances of the case, to determine whether the charge is well founded, and exercise his own discretion as to the dismissal. If the complaint shall be made good and the party arrested shall be adjudged guilty by the said justice of the peace, he shall fine the offender not less than ten nor more than fifty dollars, with the costs of prosecution.

SEC. 3. All funds assessed and collected under this ordinance shall be paid to the treasurer and be credited to the general revenue fund.

SEC. 4. This ordinance shall take effect and be in force from and after its passage and approval and publication as provided by law.

Approved December 4th, 1882.

Attest: JOHN R. BRENNAN, President.

A. C. TUCKER, Clerk.

—New novelties for the ladies at the Montana Store of Felix Poznansky.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 36

Exhibit 36
Page 124

Newspapers.com by ancestry
https://www.newspapers.com/image/162705336

Arizona Daily Star (Tucson, Arizona) · Sat, May 19, 1883 · Page 3

Downloaded on Jul 12, 2023

ORDINANCE No. 42.

Ordinance No. 44.

ORDINANCE No. 46.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Case 8:23-cv-01696-CJC-ADS Document 21-2 Filed 11/03/23 Page 126 of 157 Page ID #:492

Newspapers.com by ancestry
https://www.newspapers.com/image/162705336

Downloaded on Jul 12, 2023

exceeding six months or be punished by both such fine and imprisonment.

Sec. 15. If any person shall within the corporate limits of the city of Tucson carry concealed upon his person any gun, pistol, bowie-knife, dagger or other deadly weapon, he shall be deemed guilty of having committed a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding three hundred dollars or be imprisoned in the County or City jail for any period of time not exceeding six months or be punished by both such fine and imprisonment; provided that this section shall not be construed to apply to sheriffs, constables or police officers, when exercising their legitimate duties.

Sec. 16. If any saloon, gambling house, house of prostitution, dance house keeper or proprietor of any place wherein intoxicating or

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 37

Exhibit 37
Page 127

Newspapers.com by Ancestry
https://www.newspapers.com/image/24064306

The Galveston Daily News (Galveston, Texas) · Thu, Aug 28, 1873 · Page 4

Printed on Jun 25, 2023

# AN ORDINANCE (No. 18)

**Regulating the keeping and bearing of deadly weapons.**

*Be it ordained by the City Council of the city of Galveston:*

SECTION 1. That any person carrying on or about his person, saddle or vehicle, within the corporate limits of the city of Galveston, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for the purposes of offense or defense, or carried for purposes of offense or defense, unless he has reasonable grounds for fearing an unlawful attack on his person, and that such attack shall be immediate and pressing, or unless having or carrying the same on or about his person for the lawful defense of the state of Texas or the city of Galveston, as a militiaman in actual service, or as a peace officer or policeman, shall be fined in a sum of not less than twenty-five dollars nor more than one hundred dollars, and in default of payment thereof shall be confined in the jail for a period not less than ten days nor more than three months, and whilst so confined shall be required to work on the streets of said city, or any public work under the control of the City Council for the period of such confinement; *provided*, that this section shall not be so construed as to prohibit any person from keeping or bearing arms on his or her premises, or at his or her place of business, nor to prohibit sheriffs, their deputies, or other revenue officers, or other civil officers, from keeping or bearing arms whilst engaged in the discharge of their official duties, nor to prohibit persons traveling through the city of Galveston from keeping or carrying arms with their baggage.

SEC. 2. That any person charged under the first section of this act, who may offer to prove, by way of defense, that he was in danger of an attack on his person, or unlawful interference with his property, shall be required to show that such danger was immediate and pressing, and was of such a nature as to alarm a person of ordinary courage, and that such weapon so carried was borne openly and not concealed beneath the clothing; and if it shall apper that this danger had its origin in a difficulty first commenced by the accused, it shall not be considered as a legal defense.

SEC. 3. That this ordinance shall take effect and be of force on and after its due publication as prescribed by the city charter.

Approved August 19th, 1873.

C. W. HURLEY, Mayor.

Attest:
C. C. ALLEN, Clerk. aug20D10t

AN ORDINANCE (No. 19)

Copyright © 2023 Newspapers.com. All Rights Reserved.

# Exhibit 38

Exhibit 38
Page 129

Newspapers.com by Ancestry
https://www.newspapers.com/image/604763466

# An Ordinance to Prevent the Carrying of Arms.

SECTION 1. *Be it Ordained by the Board of Mayor and Aldermen of the City of Chattanooga*, That if any person shall, within the corporate limits of the City of Chattanooga, either publicly or privately carry any dirk, sword-cane, Spanish stilletto, belt or pocket pistol, Bowie knife or any large knife of like form or size to a Bowie knife, brass knuckles or slung shot, he shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than fifty dollars and confined in the city jail not less than thirty days.

SEC. 2. *Be it further Ordained*, That it be and is hereby made the duty of the Marshal and police force to arrest any and all parties found carrying any weapon in violation of the above section, and any policeman who shall fail or refuse to strictly enforce this ordinance by refusing or neglecting to arrest any party known by him to be in violation of this ordinance, shall be at once dismissed from the police force.

SEC. 3. *Be it further Ordained*, That all ordinances or parts of ordinances in conflict with any of the provisions of this ordinance be and the same are hereby repealed, and that this ordinance take effect from and after its passage.

Approved April 9th, 1873.

E. M. WIGHT, Mayor.

W. T. CATE, Recorder.

Copyright © 2023 Newspapers.com. All Rights Reserved.

# Exhibit 39

Exhibit 39
Page 139

Newspapers by ancestry

**AN ORDINANCE**

**Prohibiting the carrying of Fire Arms and Concealed Weapons.**

SECTION 1. *Be it ordained by the Common Council of Nebraska City,* That it shall be, and it is hereby declared to be unlawful for any person to carry openly or concealed, any musket, rifle, shot gun, pistol, sabre, sword, bowie knife, dirk, sword cane billy, slung shot, brass or other metalic knuckles or any other dangerous or deadly weapons, within the corporate limits of Nebraska City, Neb.; *Provided*, that nothing herein contained shall prevent the carrying of such weapon by a civil or military officer, or by a soldier in the discharge of his duty, nor by any other person for mere purposes of transportation from one place to another.

SEC. 2. Upon complaint before the Mayor that an offence in violation of this ordinance has been committed, he shall inquire into the circumstances of the case to determine whether the charge is well founded, and exercise his own discretion as to the dismissal thereof. If the complaint shall be made good and the party arrested shall be adjudged guilty by the Mayor, he shall fine the offender not less than twenty dollars and not more than one hundred with the costs of prosecution.

SEC. 3. All funds assessed shall collected under this ordinance shall be paid to the Treasurer, to be credited to the Police fund.

SEC. 4. This ordinance shall take effect and be in force from and after its passage, approval and publication.

Attest:

W. E. DILLON, Mayor.

J. DAN. LAUER, City Recorder.

— At a regular conclave of Mount

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 40

Exhibit 40
Page 133

Newspapers.com by Ancestry

The State Journal (Jefferson City, Missouri) · Fri, Apr 12, 1878 · Page 2

https://www.newspapers.com/image/68084065

Printed on Jun 25, 2023

STATE JOURNAL

FRIDAY, APRIL 12, 1878.

THE PHILOSOPHY OF IT.

THE SUPREME COURT

On Carrying Concealed Weapons.

A Courageous Syracuse Girl.

DR. SCHENCK'S STANDARD REMEDIES.

Uncle Tom's Cabin.

Copyright © 2023 Newspapers.com. All Rights Reserved.



Newspapers by ancestry

The State Journal (Jefferson City, Missouri) · Fri, Apr 12, 1878 · Page 2

https://www.newspapers.com/image/68084065

Printed on Jun 25, 2023

## THE SUPREME COURT

### On Carrying Concealed Weapons.

State of Missouri, defendant in error, vs. Frank Reando, plaintiff in error.

The defendant was indicted at the February term, 1875, of the Washington County Circuit Court, for carrying concealed weapons.

Defendant was tried, convicted and fined ten dollars, and judgment was entered accordingly.

We are asked to reverse the judgment, because of the insufficiency of the indictment and the unconstitutionality of the act of the legislature, on which the indictment was founded. The act in question, Sess. Acts, 1874, 43, is as follows:

Whoever shall in this State go into any church or place where people have assembled for religious worship or into any schoolroom or into any place where people may be assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any court room, during the sitting of court, or into any other public assemblage of persons met for other than militia drill or meetings called under the militia laws of this State, having concealed about his person any kind of fire arms, bowie knife, dirk, dagger, slung shot or other deadly weapon, shall be deemed guilty of a misdemeanor, &c. The indictment alleges that defendant did unlawfully enter and go into the house or residence of one Baptiste Boyer, where a number of people were assembled for social purposes, and had then and there unlawfully concealed on his person a pistol loaded with gunpowder and leaden balls, which said pistol was then and there a kind of fire arm, &c. The indictment pursues the language of the statute creating the offence except in the use of the word "armer" before people, which we think cannot in any respect vitiate it. It may be treated as mere surplusage.

It is, however, insisted, that the act under which the indictment is framed, is in derogation of the right of the citizen to bear arms, and is in conflict with and violative of the provision in the constitution of 1865, which declares "that their (the people's) right to bear arms in defense of themselves and of the lawful authority of the State cannot be questioned."

The question here presented is one not free from difficulty and has given rise to some diversity of opinion. The right to keep and bear arms, thus secured to the people, has in this country always been regarded as one not to be slightly interfered with or infringed upon; and there can be no question but that any legislative enactment which deprived them of this right, would be obnoxious to the provision of the constitution which guarantees it, and would be absolutely null and void.

In 2, Story on the Con., §1897, the author in speaking of a kindred provision in the constitution of the United States, which declares that "the right of the people to keep and bear arms" shall not be infringed upon, observes that "the right of the citizen to keep and bear arms, has justly been considered as the palladium of the liberties of the republic, since, it offers a strong moral check against usurpation and arbitrary power of rulers, and will in general, if these are successful in the first instance, enable the people to resist and triumph in the end."

If the statute in question had the effect of denying this right, and absolutely prohibiting the citizen from keeping and bearing arms, we would not hesitate to pronounce it void, as being violative of a constitutional right secured to every man by the constitution of the State. It, however, has no such scope. It simply denies to the citizen the right to enter certain places therein designated, having concealed about his person any kind of fire arms, bowie knife, &c. The places designated, into which it is made unlawful for any person to enter secretly armed with concealed weapons, are churches or places where people are assembled for public worship, school houses or other places where people have assembled for educational, literary or social purposes. Under this statute the right to enter, even such places, by any person bearing arms openly and exposed to public view is not prohibited; and if any citizen has so high a regard for the constitutional right guaranteed to him, to keep and bear arms, that he cannot forego the privilege of exercising it when entering a church where his neighbors have congregated for religious worship, or other places where they have met for educational, literary or social purposes, he can exercise it, but in doing so he must expose to view his arms and and deadly weapons, so that all may see and know that he is in the full enjoyment and exercise of his constitutional right. We do not say nor do we wish to be understood as saying that the legislature might not prohibit a person from bearing arms, even openly, in such places as are mentioned in the statute, without such prohibition to constitutional objections. No such enactment as this is before us and, we apprehend, never will be, for the moral sense of every well-regulated community would be so shocked by any one who would so far disregard it, as to invade such places with fire arms and deadly weapons exposed to public view on his person that it would very rarely, if ever, occur.

The statute in question is nothing more than a police regulation, made in the interest of peace and good order, perfectly within the power of the legislature to make. Such, or similar statutes, have been upheld in all the States, so far as we have been able to ascertain, except in Kentucky. Nunn vs. the State, 1 Kelly, Ga., 243. State vs. Jumel, 13 La. Ann., 399. Owen vs. State, 31 Ala., 387. State vs. Burgess, 4 Ark., 18. State vs. Andrews, 3 Heiskel, 165. State vs. Mitchell, 3 Blackford, 229. Cockrum vs. State, 24 Tex., 394.

The right to keep and bear arms necessarily implies the right to use them, and yet acts passed by the legislature regulating their use, or rather making it an offence to use them in certain ways and places, have never been questioned. An instance is to be found in such acts as declare that every person who shall shoot at a mark along or across a public highway shall be deemed guilty of a misdemeanor. This is certainly a police regulation, within the power of the legislature to prescribe, without infringing on the right of a person to keep, bear and use arms.

The constitution protects a person in his right of property, and instances are numerous where the legislature has assumed to regulate and control it. A person has a right to own a mischievous or dangerous animal; yet under our statute, if the owner thereof, knowing its propensities, unlawfully suffer it to go at large or shall keep it without ordinary care, and such animal, while so at large and not confined, kill any human being, such owner is liable to be punished as for manslaughter in the third degree. It is provided in the constitution of the United States that the freedom of speech and of the press shall not be abridged by any law of Congress, and yet this provision has never been so construed as to deny to Congress the power to make it an offence for libelous matter to be published, rendering the offender liable to prosecution and punishment for the libel so published. Such a construction, in the language of Story, "would be too wild to be indulged in by any man." Story on the Con., § 1880.

Judgment affirmed, in which the other judges concur, except Judge Sherwood, who dissents.

E. H. NORTON, J.

Attorney-General, for defendant in error. Reynolds & Relfe, for plaintiff in error.

---

### A Courageous Syracuse Girl.

Residing on Van Buren street, in this city, is a widow named Mrs. Maria M. Beach, who alone occupies a comfortable home with her daughter. On Wednesday afternoon last Mrs. Beach was called to a side door by a woman, who first rapped, and after having the door opened in response, made sacveral inquiries of a natural character of the house-wife. Her presence their subsequently proved to be part of a plan to rob the house, for while Mrs. Beach was engaged in conversation, a sneak-thief entered the front door and was ransacking the parlor, when her eldest daughter came down stairs and discovered him. She fearlessly encountered the intrude and received for her pain a cruel blow in the eyes, which felled her to the floor and allowed the ruffian to escape unrecognized.

This escapade, happening in the daylight, proved to be but the prelude to a still more startling exploit in which Miss Beach, and, it is thought, the other actor of the afternoon before, played a more important part, the scene being enacted some time between 1 and 2 o'clock yesterday morning. Miss Beach, who sleeps with a sister younger than herself, was awakened in the middle of the night. Listening, she soon became aware that somebody was crawling on all fours toward the bed. She no sooner became convinced that such was the case, then she made a movement to get out of bed. As her feet reached the floor, she was caught by the ankles and thrown down by the intruder, a man who had doubtless come in search of plunder. The girl's outcry aroused the other sister, who jumped up and escaped from the room, screaming at the top of her voice for help. She ran outdoors and cried out, but could arouse no one until too late to render aid. Meantime the elder sister was struggling with her assailant in the room. Her efforts were in the direction of a pistol which she had under her pillow, but which fell on the floor out of her grasp before she had time to make use of it. Then a struggle ensued for its possession, the courageous girl finally succeeding in clutching it. By a sudden plunge the would-be thief freed himself and made a precipitate exit, a bullet whizzing in his wake, and penetrating the door, which he pulled after him. He succeeded in making his escape before the neighbors had been aroused by the cries of the younger sister.—Syracuse Courier.

---

Dr. Bull's Cough Syrup is fast taking the place of all the old fashioned Cough remedies. It never fails to relieve the most violent cold, and for throat diseases it is invaluable. Price 25 cents.

---

PRESBYTERIANS, NORTH AND SOUTH.—Some of us, North and South, who have a record in the past to look after, are afraid that either side will go more than half way in the settlement. O pshaw! What is the use of our standing on our dignity? If I had my way I would reach across the line, and with one hand take them by the beard, and with the other I would take them by the girdle, and in that grip of hearty Christian brotherhood I would have this whole trouble settled in three minutes. [Applause.] I tell you it is the disgrace of this century that the Presbyterian Church, North and South, are not in ecclesiastical correspondence to-day; and the greatest shame I ever suffered in all my life was when in this house three years ago, the attempt at fraternization was very basely defeated.—Talmage, Friday Night Talk.

---

Capt. Ayers Lefergee, a Fleming county poineer and a veteran of the Mexican war, denies the oft-repeated story that "Col. Johnson killed Tecumseh," and says emphatically that he did not kill him, but that one David Gooding did, and that he carried his "skelp" home with him, keeping and exhibiting it for several years as a trophy; and that it was finally lost by accident—the wind blew it out of the window, and before he could rescue it the dogs tore it to pieces.—Flemingsburg (Ky.) Democrat.

Copyright © 2023 Newspapers.com. All Rights Reserved.

# Exhibit 41

Exhibit 41
Page 136

Newspapers.com by Ancestry
The Independent Gazetteer (Philadelphia, Pennsylvania) · Sat, Apr 20, 1793 · Page 1
https://www.newspapers.com/image/39937952
Printed on Oct 29, 2023

# THE INDEPENDENT GAZETTEER, AND AGRICULTURAL REPOSITORY.

That the People have a Right to Freedom of Speech, and of writing and publishing their Sentiments—therefore the Freedom of the Press ought not to be restrained.——*Pennsylvania Bill of Rights.*

Let it be impressed upon your Minds, let it be instilled into your Children, that the Liberty of the Press is the PALLADIUM of all the civil, political, and religious Rights of Freemen.——*Junius.*

Price Six-Pence.] *SATURDAY*, April 20, 1793. [No. 1441.

## New Militia Law.

### An Act for the regulation of the Militia of the Commonwealth of Pennsylvania.

WHEREAS a well-regulated Militia is the only safe and constitutional method of defending a free state: *And whereas* the several laws enacted by the Legislature of this Commonwealth, for the regulation of the Militia thereof, have been found to require material alterations; in order to which it has been thought more adviseable to revise the whole system than to amend it by supplementary statutes; Therefore

Section I. *Be it enacted by the Senate and House of Representatives of the Commonwealth of Pennsylvania, in General Assembly met, and it is hereby enacted by the authority of the same,* That each and every free white male citizen, of this or any other of the United States residing in this Commonwealth, who is or shall be of the age of eighteen years, and under the age of forty-five years, except as herein after excepted shall severally and respectively be enrolled in the Militia, by the Captain or commanding officer of the company within whose bounds, such citizen shall reside, within three months after the passing of this act; and that it shall be at all times hereafter the duty of every such Captain or commanding Officer of a company to enroll every such citizen as aforesaid, and also those who shall from time to time arrive at the age of eighteen years, or being of the age of eighteen years and under the age of forty-five years, and not excepted by this act, shall come to reside within his bounds, and shall without delay notify such citizen of the said enrollment by a proper non-commissioned Officer of the company by whom such notice may be proved; and in all cases of doubt respecting the age of any person enrolled, or intended to be enrolled, the party questioning shall prove his age to the satisfaction of the officers of the company within whose bounds he may reside, or a majority of them.

Section II. *And be it further enacted by the authority aforesaid,* That the Vice-President of the United States, Officers Judicial and Executive of the Government of the United States, the Members of both Houses of Congress, and their respective Officers, Judges of the Supreme Court, Judges of the Court of Common Pleas, Attorney-General, Secretary and Treasurer of the State, Sheriffs, Gaolers and Keepers of Work-houses, all Post-Officers and Stage-drivers who are employed in the care and conveyance of the mail of the Post-Office of the United States, all ferry-men employed at any ferry on the post-roads, all Inspectors of exports, all Pilots, all Mariners actually employed in the sea service of any citizen or merchant within the United States, Ministers of Religion, of every denomination, Professors and Teachers in the University, Colleges, Academies and Schools, the Librarian of the Library company of Philadelphia, and of the Loganian Library, and menial servants of Ambassadors or Ministers and Consuls from foreign states, and no other person or persons, shall be and are hereby excepted from militia duty, notwithstanding their being above the age of eighteen, and under the age of forty-five years: And also all young men under the age of twenty-one years, and all servants purchased bona fide, and for a valuable consideration, though enrolled agreeably to the first section of this law, shall be exempted from furnishing the necessary arms, ammunition and accoutrements as are required by the fifth section thereof, and shall be excepted from militia duties and fines during such minority or servitude, except in cases of rebellion or an actual or threatened invasion of this or any of the neighboring states.

Section III. *And be it further enacted by the authority aforesaid,* That the militia of this Commonwealth shall, within the respective bounds herein after mentioned, be arranged into divisions, brigades, regiments, battalions and companies—that each brigade is to be formed, shall consist of not less than two, nor more than eight regiments, each regiment into two battalions, and each battalion into four companies, in such manner that no company shall consist of more than eighty, or less than forty individuals, or as near as may be, having regard to their local situations: there shall be to each battalion at least one company of grenadiers, light infantry or riflemen, and to each division there shall be at least one company of artillery, and one troop of horse, which shall be formed of volunteers from the respective brigades, at the discretion of the Governor, not exceeding one company of each to a regiment, nor more in number than one eleventh part of the infantry; *Provided always,* That the several volunteer corps of artillery, cavalry and infantry, which have hitherto existed in this commonwealth, and have not been included in the general formations of the militia, shall continue to exist as heretofore, and retain the privileges which they have hitherto enjoyed.

Section IV. *And be it further enacted by the authority aforesaid,* That the territory of this Commonwealth, for the purpose of making the arrangement in the preceding section mentioned, be and is hereby divided into division bounds, as follows, *to wit,* The city and county of Philadelphia shall form one division—The counties of Bucks and Montgomery one other division—The counties of Chester and Delaware one other division—The counties of Lancaster and York one other division—The counties of Berks and Dauphin one other division—The counties of Cumberland and Franklin one other division—The counties of Northampton, Northumberland and Luzerne, one other division—The counties of Bedford, Huntingdon, and Mifflin, one other division—And the counties of Westmoreland, Washington, Fayette and Allegheny one other division.—The city of Philadelphia shall form a brigade, and each county shall form a brigade; provided that it shall be lawful for the Governor to divide any county into two brigades, when the number of men enrolled in the militia of such county shall exceed four thousand.

Section V. *And be it further enacted by the authority aforesaid,* That in order that the militia may be properly armed, equipped and accoutred, every citizen enrolled, and notified of this enrollment in manner aforesaid, except as is herein before excepted, shall, within six months after receiving such notice, provide himself with the arms, ammunition and accoutrements herein after mentioned, viz. Every non-commissioned officer and private of the infantry, (including grenadiers and light infantry, and of the artillery,) shall have a good musket or fire-lock, a sufficient bayonet and belt, two spare flints and a knapsack, a pouch, with a box therein to contain not less than twenty-four cartridges suited to the bore of his musket or fire-lock, each cartridge to contain a proper quantity of powder and ball, or with a good rifle, knapsack, shot-pouch and powder-horn, twenty balls suited to the bore of his rifle, and a quarter of a pound of powder: the commissioned officers of infantry shall be armed with a sword or hanger, and an espontoon, and those of artillery with a sword or hanger, a fusee, bayonet and belt, and a cartridge box to contain twelve cartridges; the commissioned officers of the several troops of horse shall furnish themselves with good horses of at least fourteen hands and an half high, and shall be armed with a sword and pair of pistols, the holsters of which shall be covered with bear-skin caps; each light-horseman or dragoon shall furnish himself with a serviceable horse of at least fourteen hands and an half high, a good saddle, bridle, mail pillion and valise holsters, and a breast-plate and crupper, a pair of boots and spurs, a pair of pistols, a sabre and a cartouch box to contain twelve cartridges for pistols; the artillery and horse shall be uniformly clothed in regimentals, to be furnished at their own expence, the color and fashion to be determined by the Brigadier commanding the brigade to which they belong; every militia man shall appear so armed, accoutred and provided when called out to exercise or into service, (except that when called out on company days, to exercise only, he may appear without a knapsack) and every man so enrolled as aforesaid, and providing himself with the arms, ammunition and accoutrements required as aforesaid, shall hold the same exempted from all suits, distresses, executions, or sales for debt, or the payment of taxes: each battalion and regiment shall be provided with the state and regimental colours, by the field officers, and each company with a drum and fife, or bugle horn, by the commissioned officers of the company—the expences of such colors, drums, fifes or bugle-horns to be repaid to the officers out of the fines incurred by this act: *Provided always,* That whenever the field officers of any regiment shall judge any person enrolled therein unable to arm and equip himself as aforesaid, such person shall not be subject to any fine for not arming, any thing herein contained to the contrary notwithstanding.

Section VI. *And be it further enacted by the authority aforesaid,* That the Militia shall be officered as follows: To each division one Major-General, and two Aids-de-camp, with the rank of Major: to each brigade one Brigadier-General, with one Brigade-Inspector, to serve also as Brigade-Major, with rank of a Major; to each regiment, one Lieutenant-Colonel-Commandant, and to each battalion, one Major: to each company of infantry, (including light infantry and grenadiers) one Captain, one Lieutenant, one Ensign, four Sergeants, four Corporals, one Clerk, one Drummer, and one Fifer or Bugler; that there shall be a regimental staff, to consist of one Adjutant and one Quarter-Master, to rank as Lieutenants; one Pay-Master, one Surgeon and one Surgeon's Mate, one Sergeant Major, one Drum-Major, and one Fife-Major; there shall be to each company of Artillery, one Captain, two Lieutenants, four Serjeants, four Corporals, six Gunners, six Bombardiers, one Drummer, and one Fifer, and to each troop of Horse, there shall be one Captain, two Lieutenants, one Cornet, four Serjeants, four Corporals, one Sadler, one Farrier and one Trumpeter; there shall be an Adjutant-General appointed for the whole Militia.

Section VII. *And be it further enacted by the authority aforesaid,* That the Adjutant-General, Majors-General, Brigadiers-General, and Brigade-Inspectors, shall be appointed and commissioned by the Governor; the division and brigade Officers to be residing within their respective division and brigade bounds; that the Majors-General shall appoint their own Aids-de-Camp, out of the line of Captains or Subalterns; that the Field-Officers of each regiment shall appoint their respective regimental staff; that the Lieutenant-Colonels, Majors, Captains, Lieutenants and Ensigns, shall be elected in form and manner hereinafter mentioned and provided for; that all commissioned Officers shall be commissioned for seven years, and shall take rank according to the date of their commissions; and when two of the same grade, bear an equal date, then their rank shall be determined by lot, to be drawn by them before the commanding Officer of the brigade, regiment, battalion, company, or detatchment.

Section VIII. *And be it further enacted by the authority aforesaid,* That the duty of the Adjutant-General, shall be to distribute all orders from the Governor, as Commander in Chief of the Militia of the state, to the several corps; to attend all public reviews, when the Governor shall review the Militia; to obey all orders from him, relating to the carrying into execution, and perfecting the system of military discipline, established by this act; to furnish blank forms of the different returns that may be required, and to explain the principles, on which they should be made to receive, from the several Officers of the different corps throughout the state, returns of the Militia under their command; reporting the actual situations of their arms, accoutrements and ammunition, their delinquencies, and every other thing which relates to the general advancement of good order and discipline; all which the several Officers of the divisions, brigades, regiments and battalions, are hereby required to make, in such manner as the Governor shall direct; so that the said Adjutant-General may be furnished there-with; from all which returns, he shall make a general return, of all the Militia of the state, and lay the same before the Governor, and a duplicate thereof, before the President of the United States: that the said Adjutant-General, before he enters upon the exercise of the duties of his Office, shall give bond with two or more sufficient sureties, in the penalty of five thousand dollars, conditioned for the due and faithful performance of the said duties, and shall, in full compensation for his services, receive a yearly salary of eight hundred dollars.

Section IX. *And be it further enacted by the authority aforesaid,* That it shall be the duty of the Brigade-Inspectors, to attend the regimental and battalion meetings of the Militia composing their several brigades, during the time of their being under arms; to inspect their arms, ammunition and accoutrements; to superintend their exercise and manoeuvres, and introduce throughout the state, the system of military discipline established by this act, as well as such orders as shall from time to time receive from the Governor, as Commander in Chief of the Militia; to make returns to the Adjutant-General, at least once in every year, and at such stated time or times, as the Governor shall direct, of the Militia of the brigade to which he belongs, reporting therein the actual situation of the arms, accoutrements and ammunition of the several corps, and every other thing, which in his judgment may relate to their government, and the general advancement of good order and military discipline; that it shall moreover be the duty of the said Brigade-Inspectors, to superintend the elections of the field officers; to procure and furnish arms, accoutrements, ammunition, drums, fifes, bugle horns, carriages for the transportation of baggage and other articles that may be wanted for the use of their respective brigades, and to do all and every such other duties as are enjoined upon them by this act, in form and manner therein prescribed, and in full compensation for all their services, each of the said Brigade-Inspectors shall receive the yearly salary of two hundred dollars; and each of the said Inspectors, before he enters upon the duties of his office, shall give bond, with one or more sufficient sureties, in the penal sum of one thousand dollars, conditioned for the due and faithful performance of the said duties, and for the faithful accounting for, according to law, and paying of all the monies which shall come to his hands by virtue of this act, when thereunto lawfully required; and each of the said Inspectors shall once in every twelve months, make out compleat accounts of all the monies received by him, and of his expenditures, and return the same to the Adjutant-General, and on failure of accounting as aforesaid, each inspector shall forfeit and pay, for every such neglect, the sum of fifty dollars, to be applied as other fines are directed to be applied by this act; and on the death, removal, or resignation of any of the said Inspectors, such Inspector, his executors or administrators, shall, on the reasonable demand, in writing, of his successor in office, or of any other person who shall be appointed by the Governor, to receive the same, deliver up to the said successor, or other person as aforesaid, all and singular the books, duplicates, returns, and other papers belonging to, or in use in the said office, and on refusal thereof, he or they, so offending, shall forfeit the sum of one thousand dollars, and the necessary costs of prosecution, to be recovered by the said successor in office, or other person duly authorised as aforesaid, upon indictment, bill, plaint, or information, or by action of debt, in any Court of Record within this state, to be applied as other militia fines are directed to be applied by this act, and in case of a second refusal, such person or persons so refusing, shall suffer as well as the said penalty, as the further punishment of six months imprisonment, without bail or main-prize, and the Judges of the Courts where such penalty shall be recovered, shall order the said commitment accordingly.

Section X. *And be it further enacted by the authority aforesaid,* That each of the said Inspectors, shall, on or before the first Monday in May next, and some time between the first day and last day of March, in every succeeding year, issue his warrant, directed to the Captain or commanding officer for the time being, of each company of the several battalions, or some other fit person in his brigade, commanding him in the name of the Commonwealth, to deliver to him, the said Inspector, within ten days from and after the date of the said warrant, (on oath or affirmation, which the said Inspectors are hereby severally empowered to administer) a true and exact list of the names and surnames of each and every free able bodied white male citizen, of this or any other of the United States, residing within the bounds of his company, between the age of eighteen and forty five years, not being such as are above declared excepted from Militia duty, and lay such lists, within three days after he shall have received the same, before the Brigadier General of his brigade, who shall thereupon divide his said brigade into regimental battalions and companies, in manner herein before directed, to each of which he shall appoint proper districts or local sub-divisions, paying due regard to the conveniency of the inhabitants, and taking care that each person be annexed to the numerical class to which he formerly belonged.

Section XI. *And be it further enacted by the authority aforesaid,* That the elections of such officers as are by this act declared to be elective, shall be made as follows: The several Brigade-Inspectors shall, on or before the

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com by ancestry
https://www.newspapers.com/image/39937953

first Tuesday of June next, give notice, by advertisements, at eight or more of the most public places of each regiment bounds or district, appointing a certain day for each district, not less than ten days after the said notice, and requiring all the citizens enrolled in the said regiment, and residing within the bounds thereof, except as is herein before excepted, to meet at a certain place, as near the centre of the said district as may be, and then and there, between the hours of ten in the morning, and six in the afternoon of the said day, to elect by ballot, one Lieutenant-Colonel: and the enrolled inhabitants of each battalion bounds respectively, shall elect by ballot as aforesaid, on the same, or some other day, and at such place or places as shall be most convenient, but with the least possible delay, one Major: and the enrolled inhabitants of each company bounds respectively, shall elect by ballot as aforesaid, on the same or some other day, and at such place or places as shall be most convenient, but with the least possible delay, one Captain, one Lieutenant, and one Ensign; previous to which said election or elections respectively, the said enrolled inhabitants, shall elect two respectable citizens, to preside as judges thereof, who shall certify to the Inspector, the names of the persons so elected; and each Captain shall appoint a suitable person for a clerk in his company, and the said Inspector shall attend and superintend each and every of the said battalion elections, and after the officers are elected, shall give notice thereof to the Brigadier, who shall cause the Lieutenant-Colonels of his brigade to assemble together as soon as may be, to cast lots for rank of the regiments, and the said Lieutenant-Colonels shall afterwards call together the Majors and Captains of their respective regiments to cast lots in like manner for their respective ranks, and the ranks of the Lieutenant and Ensigns shall be determined by the ranks of the Captains respectively, and the said Inspectors shall, as soon as may be, after the officers shall have been elected, and their ranks ascertained, transmit proper certificates to the Governor, of the names of the persons so as aforesaid elected, and their ranks, in order that commissions may be granted to them, according to the said certificates; and elections for officers in the Light Horse, shall be made in like manner as elections for officers in the infantry and artillery; and in every case of future vacancy, whether by death, resignation or absence, as herein after provided, the Brigadier in whose brigade such vacancy or vacancies shall happen, shall immediately upon receiving notice thereof, cause one or more regiment, battalion or company elections, to be held in manner and form aforesaid, in order to supply the same, and shall, when there shall be occasion, cause the ranks to be ascertained, and make return to the Governor, in manner herein before provided; and whenever any vacancy or vacancies shall happen as aforesaid, in any Regiment, Battalion, or Company, the commanding officer of such Regiment, Battalion, or Company, for the time being, shall give immediate notice thereof to the Inspector of his Brigade, that the same may be filled up without loss of time: and if any Regiment, Battalion, Troop, or Company, being duly noticed and required, as aforesaid, shall neglect, or refuse to elect their officers as aforesaid, then it shall and may be lawful for the inspector of the Brigade, to which such regiment, Battalion, troop, or company shall belong, to nominate, with the approbation of the Brigadier-General, one suitable person to the Governor, in the room of each officer so neglected to be chosen; and the said Governor approving thereof, shall commission the said person, which shall be as effectual, to all intents and purposes, as if the said officers had been elected as before directed; and the said Inspector shall, as soon as may be, acquaint the parties so neglecting or refusing, with the appointments that shall have been made as aforesaid.

Section XII. *And be it further enacted by the authority aforesaid,* That if any commissioned officer shall remove out of the bounds of his proper division, brigade, battalion or company except within the city of Philadelphia (as the case may be) or shall be absent therefrom (otherwise than on militia duty) for more than six months, his office shall be thereby vacated; and if a light-horseman shall remove or be absent in like manner from the bounds of his troop, or be appointed or elected a commissioned officer in any other part of the militia, his place in the said light horse shall likewise be vacated.

Section XIII. *And be it further enacted by the authority aforesaid,* That every militia man migrating or removing out of the bounds of one battalion or company to another, shall apply to the commanding officer of the company to which he did belong, who shall give him a discharge, certifying the class to which he belongs, and whether he has served his tour of duty or not, and the time and date of said service, which certificate, the said militia man shall produce to the Captain or commanding officer of the company in whose bounds he next settles, within ten days after his settlement, and the said Captain or commanding officer is hereby required to enroll him in the class specified in the said certificate.

Section XIV. *And be it further enacted by the authority aforesaid,* That the whole of the Militia of this state shall be subject to be mustered and exercised in regiments and in companies, by their respective officers in the autumn or fall season of every year and the days herein after stated, to wit, in regiments as follow, the first regiments of each and every brigade in the Commonwealth shall be exercised on the third Monday in the month of October, the second regiments on the Tuesday following, the third regiments on the Wednesday, and so on, according to their numerical rank, on every day in the week, (Saturdays and Sundays excepted) until the whole number of regiments shall have mustered and exercised in the aforesaid manner, and the several regiments shall meet and exercise in companies on the first Monday in the month of October, and the Militia shall be, and is hereby indemnified and excused from mustering and exercising on any other days than those enumerated in this act.

Section XV. *And be it further enacted by the authority aforesaid,* That if any commissioned officer shall, without a lawful excuse, neglect or refuse to attend on any of the days herein before appointed for exercise, if a field officer he shall forfeit and pay the sum of four dollars, and every other commissioned officer shall forfeit and pay the sum of two dollars, and every non-commissioned officer or private, so neglecting or refusing to attend, shall forfeit and pay the sum of one dollar for every such neglect or refusal, except such commissioned officer, non-commissioned officer and privates who shall be summoned, and actually attending on any of the days of exercise aforesaid, as a juror or witness, in any Court within this Commonwealth; and the same fines shall be respectively paid by every officer, non-commissioned officer or private, who shall leave the parade on a day of exercise, before the regiment or company is discharged without leave first had and obtained of the officer commanding.

Section XVI. *And be it further enacted by the authority aforesaid,* In order to ascertain those persons who by their absence on the days of exercise, shall have incurred the fines above-mentioned, a Sergeant, or the Clerk of each company shall, on every such day, in presence of the Captain or commanding officer of the company, at the end of one hour after the time appointed for the meeting of the company, or regiment, and also after the exercise is over, and before the men are discharged, call over a muster-roll of the company, noting those who are absent, and a return shall be made, on the same or following day, of such absentees, which shall be signed by the Sergeant or Clerk, and by the Captain or commanding officer of the company, and shall, within ten days thereafter, if a regimental meeting, or if a company meeting, within ten days after the next regimental meeting, be returned by the said Captain or commanding officer of the company, upon his oath or affirmation, to the Inspector of the brigade, under the penalty of fifty dollars for every time

[*For the remainder see last page.*]

## American Intelligence.

*BOSTON, April 3.*

*Extract of a letter to a gentleman in this town, dated Port-au-Prince, March 13.*

"THE army which is out on the plains have got quarrelling among themselves, and are coming in to-day, to leave the plains to the mercy of the negroes, and you may depend that it will all be burnt to ashes. The Municipality made a request, or rather a demand, yesterday, that all the masters of vessels should furnish one third of their crew to go out on the plains—which they refuse. They are willing to guard the town to save their own goods if possible. What will be the consequence of our refusal I don't know; but we suppose that they will lay a general embargo. The people are in the greatest consternation you can conceive of; they expect when the army comes in they will again fight among themselves, and if they do, this town will again be burnt. There is another circumstance which we are afraid of: a commissary is expected here every moment, from the Cape, to enforce some act, which the people here are determined shall not take place. How it will be settled God only knows. I wish I was clear of this place of confusion, tumult and disorder; but it is impossible—they will not let one go."

*April 10.*

*Extract of a letter from a gentleman in Passamaquoddy, on the line which divides the United States from the British settlements, to his brother in this town, dated March 12, 1793.*

"We have very surprising accounts of the political state of Europe—We hear that War has absolutely commenced between France and Great-Britain. Courts, Assemblies, Governor and Counselors at Frederick-Town are in the utmost distress and confusion. The greatest dissentions prevail between the Democratic and Court parties—Governor, Counsellors and Mobs, form one general croud. A few days ago, the most boisterous debates arose and increased with such impetuous fury, that nothing could quell its rage, but swords and pistols, which were admitted into the Court House in St. John's.' What the result, will be is not known, but I believe may easily be conjectured."

*NORWICH, April 11.*

*Interesting Intelligence from the West-Indies.*

By a gentleman from New-London we learn, that on Tuesday last, Capt. Joseph Smith arrived there in 13 days from Gaudaloupe, who informs, that previous to his sailing the islands of Guadaloupe and Martinico were both given up to the English by the inhabitants, and the British flags were displayed on the forts of both islands. Capt. Smith brought a number of passengers.

*NEW-LONDON, April 11.*

*Extract of a letter from an American House at Cape-Francois to a Gentleman in this city, dated March 25, 1793.*

"On the 2nd inst. war with England, Holland, Russia, Germany, Prussia and Sardinia, was proclaimed here in form; many English vessels have since been stopped, and I fear will be condemned. A large fleet is expected here from France with troops, so that there will be little danger of an invasion of this Island—but the French trade must be destroyed. Good freights are already offered to American vessels, and some have begun to load for America and a market. We understand that a Commissary is gone from France to the government of the United States, in order to procure a loan that may be sufficient to supply the French Colonies with provisions. Something must be done on your side more than they have yet done, else this colony must be reduced to a deplorable state for want of provisions; they already begin to grow scarce."

Several British and Dutch vessels have arrived at the Cape, since the declaration of war, and were made prizes of.

*ALBANY, April 8.*

It is with the greatest pleasure we can announce to our readers, that, by accounts from various parts of the country, it appears that the maple sugar harvest has been more abundant this spring, than for six or seven years past—that the greatest exertions have been made in part with a view of gaining the bounty which was contemplated to be given by the legislature—that the new settlers have generally run upon the plan of gaining their sugar in a handsome manner fit for market—and although it is said, that the baneful spirit of party defeated the bounties for the present year, yet we flatter ourselves, that the next legislature will be fully impressed with the policy and necessity of the measure.

*NEW-YORK, April 15.*

Yesterday arrived from Calcutta, after a passage of four months and 15 days, the ship America, Capt. Bright.

By this arrival we have received accounts, that Tippoo Saib has so far complied with the requisitions of the treaty, as to pay two pagodas of the three which he was to pay to the English. Tippoo's two sons are still remaining in Calcutta.

It appears that the success of the English against Tippoo, was principally attributed to the bravery of some Americans (about 60 in number), who were officers in the army of Lord Cornwallis. These Americans were taken during the late war in America, sent over to London as prisoners, and from thence sent to the East Indies as private soldiers; where, by their good conduct they were promoted.

It was supposed in India when the America came away, that Tippoo certainly would make another attempt on the English the first favorable opportunity. This restless ambitious man, appears far from being satisfied with the late treaty, and if the French were to think of an attack upon the English settlements in India, Tippoo would be a powerful friend to them, and might be fatal to the English.

A number of American vessels had failed for Ostend, laden with sugar, when the America came away.

The America's cargo consists almost entirely of sugar.

*Extract of a letter to a respectable mercantile house in this city, dated Falmouth, February 13, via Philadelphia.*

"The English government have lately given 34s. per barrel for flour, and in proportion for wheat, to be landed in Great Britain, (but only by American bottoms) they continue to purchase thereat, and the French agents also. We are landing here some cargoes sold to our government, and others we are about to forward to France, by order of our correspondents; prices keep up in Spain and Portugal, so that, we think, the cargoes expected, will sell well, unless our government should cease to purchase.—We sold a few days since, a cargo of 250 tons of flour, at 34s. shillings per barrel, superfine, and 32s. fine; if the war continues we expect the American vessels will get good freight. An embargo is laid on all English vessels.

"20th Feb. It is said that our government hope to buy under 34s. shillings per barrel."

*ELIZABETH-TOWN, April 17.*

England is said to contain eight millions of inhabitants who send to the House of Commons, five hundred and thirteen members. At this rate every million upon average, to chuse 64 representatives. The cities of London and Westminster contain between them about a million of people, who elect not 64, but six Members for Parliament. The borough of old-Sarum, which contains only one inhabitant, sends two members.

*KINGSTON, (Jam.) Dec. 22.*

There has lately been a great flood at Honduras—great quantities of wood that was cut and ready for shipping was lost, and the price of that article has in consequence risen from 10l. to 12l. 10s. During the space of three months, commencing the latter end of July, it rained there almost incessantly. The flood at length became so great, the river rising more than seventy feet above its usual level, that the inhabitants were compelled to quit their houses and go on board their flat bottomed boats, in which they resided several days. Many negroes perished, and nearly the whole stock was destroyed. The loss of mahogany carried into the sea by the flood, is computed to be more than two million feet. On the 3d of Dec. the river was still forty feet above the customary level.

*ALEXANDRIA, April 11.*

The ship Mary Isabella, Captain Grayson, arrived here on Tuesday last from Barcelona. Captain Grayson informs, that on the 23d of February, as he was comming through the gut of Gibraltar, he spoke a British frigate; the commander of which informed him that hostilities had commenced between England and France, and that he was cruising there for the express purpose of giving this information to all British vessels; the commander of the frigate then advised Capt. Grayson to put into Gibraltar—he, however, proceeded on his voyage, but adds that a number of other British vessels put in, to wait for convoys to the ports to which they were respectively destined. There were fourteen ships of the line at Gibraltar at that time.

*PETERSBURG, April 10.*

*Extract of a letter from a gentleman in Norfolk, to the Printers hereof, dated April 7.*

"Last night arrived the sloop Farmer, Captain Drinkwater, in 12 days from St. Martins. Capt. Drinkwater informs, that a vessel arrived at Guadaloupe direct from France, in 22 days, and brought the account that WAR was proclaimed by France against England and Holland. On the next day (the 21st of March) it was proclaimed at Guadaloupe by beat of drum, and all the English and Dutch vessels were ordered to quit the place in 24 hours—that Capt. Drinkwater saw one of the Dutch Captains; and upon the intelligence being spread at St. Martins, those who had Dutch vessels in the French port immediately sent for them, and placed them under the protection of the guns in Old Bay—that all the inhabitants of St. Eustatia were very uneasy, and all the principal merchants were moving their property to St. Bartholomews, to be under the protection of the Danish flag—that there was no news or intelligence of Lord Hood's arrival in the West-Indies—and that Dumourier had made a descent in Holland, in which he had met with considerable success."

*BALTIMORE, April 12.*

*From a Correspondent.*

"We learn that the citizens of the state of Delaware are to be invited to an union with those of Pennsylvania and Maryland, for the purpose of removing the obstructions in the Susquehanna, and rendering that river navigable through its several branches to the tide-water of the bay of Chesapeake, and of communicating the Chesapeake by the means of a cross-cut canal with the river Delaware.

"Should the citizens of the state of Delaware approve the means, the several legislatures are, we understand, to be applied to for their sanction—How far such a plan would conduce to the true interests of the commerce of Maryland, or on the contrary be injurious to them, we do not presume to judge, but leave the discussion of this subject to persons better acquainted with its merits. We however think it our duty thus early to announce from very good authority, such a scheme being in agitation, in order that the public and the concerned may consider in time the object in all its various points of view, and throw such a light thereon, as its importance and magnitude require."

*Extract of a letter from a gentleman in Liverpool, to his friend in this town, dated February 22.*

"The French have taken great advantage of the English: Previous to their declaring war they had all their East and West-Indiamen insured at Lloyd's, and £.10,000 insured in this city; so that, if their ships are taken, the loss will fall upon this nation. I have great reason to believe, that the Dutch will not be dragged into the war—It is reported here, that they mean to acknowledge the French Republic, and remain neuter; if so, the French will be able to defend themselves against all their enemies. I have a quantity of sheet copper ready to ship; but am prevented from shipping that and many other articles, which are prohibited from exportation, viz. nails or rods, sheet-lead, iron in sheets, bars, &c. &c.—Ports for wheat and flour are not opened yet."

*PITTSBURGH, April 6.*

We hear from Baltimore, that Mr. Vigo, of Post St. Vincent's, passed through that place on a visit to the President of the United States, and says, that there is no doubt but a peace will be concluded between the Indian nations and the United States, at the treaty which is shortly to take place.

Monday evening last arrived in town from Legionville, Major General Wayne.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com by Ancestry

The Independent Gazetteer (Philadelphia, Pennsylvania) · Sat, Apr 20, 1793 · Page 4

https://www.newspapers.com/image/39937955

Printed on Oct 29, 2023

(Continued from the 3d page.)

...

Section XXXV. *And be it further enacted by the authority aforesaid,* That the Governor shall cause a sufficient number of copies of this law, and of the rules of discipline, approved and established by Congress in their resolution of the twenty-ninth day of March, one thousand seven hundred and seventy-nine, to be printed in the English and German languages, and distributed throughout the state, so that every general and field officer, every brigade inspector, and every captain, be furnished with one copy; and it shall be the duty of every captain, at every company meeting, to read, or cause to be read to the company, the same, or such part thereof as he may think necessary.

GERARDUS WYNKOOP, Speaker of the House of Representatives.

SAMUEL POWEL, Speaker of the Senate.

*Approved, April 11th, 1793.*

**Thomas Mifflin,**
Governor of the Commonwealth of Pennsylvania.

PHILADELPHIA: Printed by E. OSWALD, No. 156, Market-street, South, (between Fourth and Fifth-streets) where Subscriptions, at TWENTY SHILLINGS per Annum, Advertisements, Articles of Intelligence, Essays, &c. for this Paper, are gratefully received.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers

Newspapers.com by ancestry

https://www.newspapers.com/image/39937955

Printed on Oct 29, 2023

above three hours under arms at any one time, without allowing them a proper time to refresh themselves.

Article XVI. No company or regiment shall meet at a tavern on any of the days of exercise, nor shall march to any tavern before they are discharged, and any person who shall bring any kind of spirituous liquors to such place of training, shall forfeit such liquors so brought, for the use of the poor belonging to the ward, district, or township, where such offender lives.

Article XVII. All fines that shall be incurred by any breach of these rules, shall be paid into the hands of the Inspectors of the brigades to which the

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY Newspapers.com

# Exhibit 42

Exhibit 42
Page 141

Newspapers.com by Ancestry

The Weekly Clarion (Jackson, Mississippi) · Wed, Mar 13, 1878 · Page 6

https://www.newspapers.com/image/895126985

Printed on Jun 25, 2023

[CONCLUDED NEXT WEEK.]

## LAWS OF THE

# STATE OF MISSISSIPPI

[PUBLISHED BY AUTHORITY.]

AN ACT to prevent the carrying of concealed weapons, and for other purposes.

SECTION 1. Be it enacted by the Legislature of the State of Mississippi, That any person, not being threatened with, or having good and sufficient reason to apprehend an attack, or traveling (not being a tramp,) or setting out on a journey, or peace officer, or deputies in discharge of their duties, who carries concealed in whole or in part, any bowie knife, pistol, brass knuckles, slung shot or other deadly weapon of like kind or description, shall be deemed guilty of a misdemeanor, and on conviction, shall be punished for the first offence by a fine of not less than five dollars nor more than one hundred dollars, and in the event the fine and cost are not paid shall be required to work at hard labor under the direction of the board of supervisors or of the court, not exceeding two months, and for the second or any subsequent offense, shall, on conviction, be fined not less than fifty nor more than two hundred dollars, and if the fine and costs are not paid, be condemned to hard labor not exceeding six months under the direction of the board of supervisors, or of the court. That in any proceeding under this section, it shall not be necessary for the State to allege or prove any of the exceptions herein contained, but the burden of proving such exception shall be on the accused.

SEC. 2. Be it further enacted, That it shall not be lawful for any person to sell to any minor or person intoxicated, knowing him to be a minor or in a state of intoxication, any weapon of the kind or description in the first section of this act described, or any pistol cartridge, and on conviction shall be punished by a fine not exceeding two hundred dollars, and if the fine and costs are not paid, be condemned to hard labor under the direction of the board of supervisors or of the court, not exceeding six months.

SEC. 3. Be it further enacted, That any father, who shall knowingly suffer or permit any minor son under the age of sixteen years, to carry concealed, in whole or in part, any weapon of the kind or description in the first section of this act described, shall be deemed guilty of a misdemeanor, and on conviction, shall be fined not less than twenty dollars, nor more than two hundred dollars, and if the fine and costs are not paid, shall be condemned to hard labor under the direction of the board of supervisors, or of the court.

SEC. 4. Be it further enacted, That any student of any university, college or school, who shall carry concealed, in whole or in part, any weapon of the kind or description in the first section of this act described, or any teacher, instructor, or professor who shall, knowingly, suffer or permit any such weapon to be carried by any student or pupil, shall be deemed guilty of a misdemeanor, and, on conviction, be fined not exceeding three hundred dollars, and if the fine and costs are not paid, condemned to hard labor under the direction of the board of supervisors or of the court.

SEC. 5. Be it further enacted, That each justice of the peace before whom a conviction is had, shall, in addition to the costs now allowed by law, be entitled to a tax fee of two dollars and a half.

SEC. 6. Be it further enacted, That immediately after the passage of this act, the Secretary of State shall transmit a copy to each circuit judge in the State, who shall cause the same to be read in open court on the day for the calling of the State docket of the court.

SEC. 7. Be it further enacted, That this act take effect from and after its passage.

APPROVED, February 28, 1878.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 43

Exhibit 43
Page 143



Case 8:23-cv-01696-CJC-ADS Document 21-2 Filed 11/03/23 Page 144 of 157 Page ID #:510
Newspapers.com by ancestry
The Lyons Republican (Lyons, Kansas) · Thu, Sep 10, 1891 · Page 4
https://www.newspapers.com/image/427118938
Printed on Jun 25, 2023

# ORDINANCE NO. 179.

[First published in the Lyons REPUBLICAN, September 10th, 1891.]

An Ordinance relating to carrying concealed weapons, and repealing Ordinance No. 70.

Be it ordained by the Mayor and Councilmen of the City of Lyons, Kansas.

Sec. 1. Any person who is not engaged in any legitimate business, any person under the influence of intoxicating drink, who shall be found within the limits of the City of Lyons, carrying on his person a pistol, bowie knife, dirk or other deadly weapon, shall be subject to arrest upon charge of misdemeanor, and upon conviction shall be fined in a sum not exceeding fifty dollars, or by imprisonment in the city jail not exceeding one month, or by both such fine and imprisonment.

Sec. 2. Ordinance number seventy of the ordinances of the City of Lyons is hereby repealed.

Sec. 3. This Ordinance shall take effect after its publication in the Lyons Republican.

Passed and approved, Sept. 7th, 1891.

[seal] E. A. RICHARDS, Mayor.

Attest:—A. E. Magoffin, City Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.
Newspapers.com

# Exhibit 44

Exhibit 44
Page 145

Newspapers.com by Ancestry
K County Democrat (Blackwell, Oklahoma) · Thu, Aug 23, 1894 · Page 8
https://www.newspapers.com/image/604120328
Printed on Jun 25, 2023

## TOWN ORDINANCE NO. 21.

An Ordinance regulating and prohibiting the carrying of deadly weapons:

Be it ordained by the Board of Trustees of the town of Blackwell:

SECTION 1:—It shall be unlawful for any person within the corporate limits of the town of Blackwell to carry concealed on or about his person, saddle, or saddle bags, any pistol, revolver, boule knife, dirk, dagger, slung shot, billy, metal knucks, sand bag, or any other kind of knife or instrument manufactured or sold for the purpose of defnse except as in this ordinance provided.

SECTION 2:—It shall be unlawful for any person in the corporate limits of the town of Blackwell to carry upon or about his person any pistol, rovolver, boule knife, dirk knife, loaded cane, billy, metal knuckles, or any other offensive or defensive weapon except as in this ordinance provided.

SECTION: 3—Public officers, while in the discharge of their duties, or while going from their homes to their place of duty, or returning therefrom, shall be permitted to carry arms, but at no other time and under no other circumstances. Provided, however; that if any public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this ordinance as though he were a private person.

SECTION 4:—Persons shall be permitted to carry shotguns or rifles for the purpose of hunting, having them repaired, or for killing annimals, or for the purpose of using the same in public muster or military drills, or while traveling or moving from one place to another, and not otherwise.

SECTION 5:--It shall be unlawful for any person to point any pistol, revolver, shot gun or rifle, whether loaded or not, at any other person or persons either in anger or otherwise.

SECTION 6:--Any person violating the provisions of any of the forgoing sections, shall upon conviction, be adjudged guilty of a misdemeanor and be punished by a fine of not less than five dollars and costs, nor more than ten doliars and costs, and shall be committed until said fine and costs are paid.

SECTION 7:--This ordinance shall be in full force and effect ten days after its publication in the K County DEMOCRAT.

Passed August 7th 1894.

JOHN R. MAY, President.

Attest: BUEL W. HOLT, Town Clerk.

Per T. M. JONES, Deputy Town Clerk.

[First published in the K County DEMOCRAT, August 9th 1894.]

Copyright © 2023 Newspapers.com. All Rights Reserved.
POWERED BY Newspapers.com™

# Exhibit 45

Exhibit 45
Page 147

Newspapers.com by Ancestry

Wallace County Register (Wallace, Kansas) · Sat, Dec 24, 1887 · Page 7

https://www.newspapers.com/image/423668281

Printed on Jun 25, 2023

Owens lecture here before she leaves the Co.

AN ORDINANCE.—To prohibit intoxication breach of the peace, carrying of deadly weapons, the use of obscene language, the discharge of fire arms, and to close places of amusement on Sunday, in the city of Wallace Kansas, and to repeal certain ordinances in said city.

Be it ordained by the Mayor and Councilmen of the City of Wallace, in the State of Kansas.

Sec. 1. If any person shall be drunk in any highway, street or in any public place or building, or if any person shall be druck in his own house or private building or place disturbing his family or others, he shall be deemed guilty of a misdemeaner and upon conviction thereof shall be fined in any sum not exceeding $25 or by imprisonment in the city jail for a period not exceeding 30 days.

Sec. 2. Any person who shall wilfully disturb the peace or quiet of any person, family or neighborhood, shall upon conviction thereof be fined in a sum not exceeding $100, or by imprisonment in the city jail not exceeding 3 months.

Sec. 3. Any person who shall, while intoxicated be found carrying on his person, a pistol, bowie-knife, dirk or other deadly weapon, shall upon conviction be fined in a sum not exceeding $100, or by imprisonment in the city jail not exceeding 3 months.

Sec. 4. Any person who shall carry concealed or otherwise upon his person, any pistol, bowie knife, dirk or deadly weapon, shall upon conviction be fined in any sum not exceeding $100, or by imprisonment in the city jail not exceeding 3 months. Provided however, that this shall not apply to any peace officer, of the State, County or Cities of the State, and provided further that if it shall appear to the court trying offences under this section, that the accused was engaged in any legitimate business or calling, that would necessitate the carrying of any such weapons, such person shall be acquitted.

Sec. 5. Any person who shall discharge any fire arms, rockets, powder firework torpedoes or other dangerous or combustable material, upon any streets, lots, grounds, alleys or in the vicinity of any building, shall upon conviction be fined in any sum not exceeding $100, or by imprisonment in the city jail not exceeding 3 months. Provided however, that it shall appear to the court, trying offences under this section, that the offence charged was committed by the accused in defence of his person or property or in celebrating any national holiday, public event, and that the same was done in such a manner as not to endanger the lives or property of another, such person shall be acquitted.

Sec. 6. Any person who shall speak, utter or use any indecent language in any public place in the presence and hearing of any female shall upon conviction be fined in any sum not exceeding $100, or by imprisonment in the city jail not exceeding 3 months.

Sec. 7. Any person who shall on the first day of the week, commonly called Sunday, keep open any billiard room, ball or pin ally, skating rink, house, ground or other place of amusement, shall upon conviction be fined in any sum not exceeding $100, or by imprisonment, in the city jail not exceeding 3 months.

Sec. 8. Whoever shall aid assist, or counsel another to commit any of the offenses prohibited by this ordinance shall be deemed guilty of the same offense as the principal and punished accordingly notwithstanding, the principal may not have been charged with the offense.

Sec. 9. All fines and costs imposed by the Police Judge under this ordinance shall be by committenant of the accused to the city jail until the same is paid and the offenses herein denominated and prohibited shall extend to all such acts committed within the corporate limits of the city of Wallace.

Sec. 10. That an ordinance entitled, an ordinance relating to the carrying of deadly weapons, passed Nov. 26th, 1887, and published Dec. 3rd, 1887, and an ordinance, without title passed Nov. 17th, 1887, published Nov. 19, 1887, are hereby repealed, and this ordinance shall take effect and be in force from and after its publication in the Wallace County Register.

Passed and approved Dec. 22nd, 1887,

Attest: GEO. W. EWEN, Clerk Protem. A. B. CHRYSLER, Pres. of Council.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 46

Exhibit 46
Page 149

Newspapers.com by Ancestry

Dade County Advocate (Greenfield, Missouri) · Thu, Jan 21, 1886 · Page 4

https://www.newspapers.com/image/587532621

Printed on Jun 25, 2023

## Ordinance No. 39.

*Additional Penal Ordinance—Deadly or Dangerous Weapons—Malicious Mischief—Shop-lifting.*

Be it ordained by the Board of Aldermen of the City of Greenfield as follows:

SECTION I. If any person shall carry concealed upon or about his person, any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people are assembled for educational, literary or social purposes, or to any election precinct on any election day (whether National, State, School or Municipal), or into any Court room during the setting of Court, or into any other public assemblage of persons met for any lawful purpose other than for Militia drill or meetings called under the malitia laws of the state, having upon or about his person any kind of fire-arms, bowie-knife, dirk, dagger, slung-shot, or other deadly weapon, or shall in the presence of one or more persons exhibit any such weapon in a rude, angry and threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated, or under the influence of intoxicating drinks, or shall directly or indirectly sell or deliver, loan or barter to any minor, any such weapon, without the consent of the parent or guardian of such minor (within the limits of the City of Greenfield) he shall upon conviction thereof be fined not less than Fifty Dollars, nor more than Two Hundred Dollars; or be imprisoned in the County Jail not longer than six months, or may be punished by both such fine and imprisonment

SECTION II. Every person who shall wilfully and maliciously injure or remove any saddle, bridle, halter, hitch-rein, buggy or wagon harness, the personal property of another, or who shall wilfully and maliciously remove any tap or nut from the axle of any buggy, wagon or other vehicle, or otherwise injure the same, the personal property of another, or who shall wilfully or maliciously remove, deface or otherwise injure anything which is the personal property of another, and without the owners consent shall conceal, hide or do any act with the personal property of another, wilfully and maliciously which is calculated to annoy, damage or injure another or his property, shall upon conviction thereof be fined therefor in any sum not exceeding Fifty Dollars, or may be imprisoned in the County Jail not longer than six months, or may be punished by both such fine and imprisonment.

SECTION III. Every person who shall wilfully conceal about his person any article of personal property belonging to another, with intent to convert the same to his own use, or shall wilfully carry away from any dwelling house, shop or store, or from any public house any personal property not his own, or shall be guilty of any petit thievery ordinarily termed "Shop-lifting" shall upon conviction thereof be fined in any sum not exceeding One Hundred Dollars, or shall be committed to the County Jail for any term not exceeding six months or may be punished by both such fine and imprisonment.

SECTION IV. This ordinance shall be in full force and effect from and after its passage.

Passed and approved January 4th 1886.

WILL R. BOWLES, Mayor.
W. B. McREYNOLDS,
President Board Aldermen

ATTEST: SEYMOUR HOYT, City Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers powered by

# Exhibit 47

Exhibit 47
Page 151

Newspapers.com by Ancestry

The Brooklyn Union (Brooklyn, New York) · Thu, Aug 21, 1873 · Page 1

https://www.newspapers.com/image/541935131

Printed on Jun 25, 2023

# The Brooklyn Daily Union.

VOL. X. NO. 291 BROOKLYN THURSDAY AUGUST 21 1873 PRICE THREE CENTS

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

Newspapers.com by ancestry
The Brooklyn Union (Brooklyn, New York) · Thu, Aug 21, 1873 · Page 1
https://www.newspapers.com/image/541935131
Printed on Jun 25, 2023

## BOARD OF HEALTH.

## SANITARY CODE.

### ADOPTED JULY 15, 1873.

At a meeting of the Board of Health, for the city of Brooklyn, held at 66 Court street, on the 15th day of July, A. D., 1873.

Present—James Jourdan, the President of the Board of Health, Joseph C. Hutchinson, M. D., and J. T. Conkling, M. D., members of the said Board.

The said Board of Health by virtue of, and in pursuance of the authority conferred by section 9 of chapter 107 of the Laws of 1873, entitled "An act to establish a Board of Health in and for the city of Brooklyn, passed March 20, 1873." which said section declares that said Board shall possess within the city of Brooklyn, all the authority, and be charged with all the duties (unless otherwise provided for in this act) conferred or imposed upon the Metropolitan Board of Health, under an act entitled "An act to create a Metropolitan Sanitary District and Board of Health therein for the preservation of life and health, and to prevent the spread of disease," passed February twenty-sixth, eighteen hundred and sixty-six, chapter seventy-four, and also all the powers conferred by the amendments to said act, passed April nineteenth, eighteen hundred and sixty-six, and May twenty-fifth, eighteen hundred and sixty-seven, and also all the powers conferred by any act amendatory thereof, and also all the powers applicable to Brooklyn, conferred by an act for the regulation of tenement and lodging houses in the cities of New York and Brooklyn, passed May fourteenth, eighteen hundred and sixty-seven, and also all the powers conferred by an act to authorize the abatement and prevention of certain nuisances, deemed dangerous to the public health in the city of Brooklyn, passed April twenty-third, eighteen hundred and sixty-seven, and also all the authority, duty and powers, whether given by any law or by ordinance made thereunder heretofore (for the purpose of preserving or protecting life or health, or preventing disease) conferred upon or now belonging to or being exercised by the Board of Health of the city of Brooklyn, are hereby exclusively conferred upon, and shall hereafter be exclusively exercised by the aforesaid Board of Health of the city of Brooklyn, the members and officers thereof," do hereby direct, order, ordain and enact as follows:

#### DEFINITIONS OF TERMS.

SECTION 1. That the terms "Board," "this Board," and "said Board," shall be held to mean the "Board of Health of the City of Brooklyn;" that the word "Department" wherever used herein, shall be held to mean the "Board of Health of the City of Brooklyn;" that the words "person," "owner," "tenant," "lessee," "occupant," "contractor," "party," "manager," "Board," and "officer," shall respectively be held to apply to and include, both jointly and severally, each and all owners, part-owners, tenants, lessees, occupants, managers, contractors, parties in interest, persons, officers, boards and corporations who may sustain the relations, or may be in like position of any one or more thereof referred to in any ordinance or regulation; that every order, ordinance or regulation declared applicable to the built-up portion of Brooklyn, shall, so far as the subject-matter thereof is applicable (save as to interments), and so far as this Board has authority to make the same, be held to include and apply to the built-up portions of said city; that every word or phrase anywhere herein defined shall be held to include the same sense wherever used; that the words "city," or "this city," or "said city," whenever used herein, shall be held to mean the city of Brooklyn; that the word "regulations" shall be held to include "special regulation," (which latter will be from time to time issued, and will contain more detailed provisions that can be herein con-

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com by Ancestry

The Brooklyn Union (Brooklyn, New York) · Thu, Aug 21, 1873 · Page 1

https://www.newspapers.com/image/541935131

Printed on Jun 25, 2023

or fire any gun or other firearm or rock-blast in any public street, alley, or place within the built-up portions of said city, where any human life may be imperilled.

SEC. 174. That no person shall sell, loan, or give to, or allow to be taken by any other person, any fire-arm, or other deadly or dangerous weapon, when there shall be any reason for such first named person to think or believe that any danger to life may illegally result from the giving, loaning, selling, or from the use of such arm or weapon.

SEC. 175. That no large, or church bell shall be rung or tolled at any funeral in said city without a permit therefor from this Board, nor shall such bell be rung or tolled at any other time therein to the prejudice or peril of the life or health of any human being.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Powered by Newspapers.com

# Exhibit 48

Exhibit 48
Page 155

# CONCEALED WEAPONS.

## Judge Brannon's Decision on This Subject.

### HIS CONCLUSIONS VERY SWEEPING.

### The Law Recognizes No Difference in Persons and All Should be Prohibited from This Practice.

BUCKHANNON, W. VA., October 12.—At the late term of the Circuit Court of Upshur county, a young man by the name of Long was tried on an indictment for carrying a pistol contrary to the act of 1882. The evidence for the prosecution was that Long was seen going along the public highway with a revolver in his hand.

The defense proved that Long was a peaceable citizen of good moral character and that he carried the weapon becaus[e] that in passing along that road a sho[rt] time previously, he had been pursued b[y a] panther, and was alarmed for his safety.

**The Judge Ruled Out**

that part of the evidence relating to the danger of a panther, as an animal was not contemplated by the act of the Legislature which refers to the danger of bodily harm from some person as justifying the carrying of such weapons embraced in the law.

A verdict of guilty was rendered by the jury, and in the motion to arrest judgment and set aside the verdict, an able and elaborate argument was made by the prisoner's counsel. The ground set forth was the unconstitutionality of the law—first *conflicting with the Second and Fourteenth* amendments to the federal constitution, and also conflicting with our State constitution, which

**Prohibits Class**

legislation, it being contended that the feature which allows persons of good character and peaceable habits, under certain contingencies, to be exempt from the penalties of the law, is legislation in favor of a class.

The decision rendered by Judge Henry Brannon, who presided sustained the law. As the law is one which has universally met with public favor, and one that has evoked eloquent eulogies from the bench in various parts of the State, your correspondent called upon Judge Brannon with a request that a copy of his decision be furnished for publication a favor that His Honor politely granted. It is clear, concise, and will doubtless be

**Received as Conclusive.**

I herewith append it

The habit of carrying deadly weapons had become so prevalent and hurtful, that the Legislature, regarding the old statute inefficient, passed an act in 1882, forbidding a person to carry about his person any revolver or other pistol, dirk, bowie-knife, razor, slung shot, billy, metallic or *other false knuckles, or any other dangerous* or deadly weapon of like kind or character.

In this case it is urged that this act is void, because in violation of the Second Amendment of the Federal Constitution, which provides that "a well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed," and also because it grants the right to carry weapons for *self defense only* to persons who are quiet and peaceable citizens of good character and standing, and thus

**Violates the Fundamental Principle**

that all citizens stand equal before the law: and violates that provision of the Fourteenth amendment prohibiting States from passing "any law which shall abridge the privileges or immunities of citizens, or deny to any person within their jurisdiction the equal protection of the laws."

It is a very grave act for a court to overthrow and defeat an act of the Legislature, and should be done only when its unconstitutionality is manifest. Where the repugnance to the Constitution is undoubted, the judge must yield to that high duty of respecting that higest law, the will of the people expressed in the Constitution, rather than the will of the Legislature; but never where he is doubtful, and all doubts *go in favor of the act. All courts* hold this doctrine. Bridges v. Shallcross, 6 W. Va.

Is it the right of the citizen to wear [...] public places. For purposes of self-defe[nse] [i]n immediate danger its allows a peaceab[le] citizen of good character to carry weapon[s]. These exceptions in the act are useful a[nd] necessary; but who will say that it is useful or necessary privilege to the citiz[en] to go abroad through the land wear[ing] these deadly weapons?

But, it is argued here that the act di[s]criminates between citizens, by allowi[ng] persons of good character the right of sel[f] defense, while denying it to others. [It] does not deny the right of self-defense, f[or] if a person of the worst character we[re] assailed and in such danger as [to] warrant the exercise of the righ[t] of self defense and with his pist[ol] were to slay his adversary, he coul[d] plead self defense on trial for murde[r] whilst he might be indicted for carrying [a] pistol beforehand. *It is not a denial of th[e]* plea of self defense; it only denies to bad dangerous persons the right to arm befor[e]hand and carry weapons, because they ar[e] a danger to the place, whereas the

**Law-Abiding are Not.**

The power of regulation visited in th[e] Legislature for police purposes and th[e] maintenance of morals, law and order f[or] the good of society are necessarily wid[e] even though it may seem to work discrim[i]nation between persons.

The right to earn a livelihood is a grea[t] right; yet no once can practice law keep a hotel or sell liquo[r] without proving a good mora[l] character. Such has been the law fo[r] years, and no one has questioned its valid[ity]. A doctor must now prove a goo[d] character to practice. These powers of ap[parent] discrimination must exist *ex necessitate rei,* from the necessity of the cas[e]. Liberty to the citizen is a great attribut[e] and deserving of all protection; but i[t] must be liberty regulated by law and con[sistent] with the behests of organized civ[il] society, not mere self-willed, arbitrar[y] license. But suppose this feature limitin[g] the right to carry weapons for self-defens[e] to persons of character were invalid, i[t] should not destroy the whole act. A cour[t] which should be of opinion that this par[ticular] feature is void, would disregard i[t] by allowing the party to prove the dang[er] impending over him, and that

**He Carried the Weapon**

in self-defense, and dispensing with proo[f] of character. The act admits the ma[in] feature, the right to carry for self defense but adds the condition of good character but this latter provision is not so intimate[ly] connected with the self defense provi[sion] that it may not be separated from it and the self defense clause stand independ[ent] of it and be executed without it. Cooley says: "A statute may contai[n] some unconstitutional provisions, and ye[t] the same act may contain other usefu[l] and salutary provisions not obnoxious t[o] any just constituted exceptions. It woul[d] be inconsistent with all just principles o[f] constitutional law to adjudge these enact[ments] void, because they are associated i[n] the same act but not connected wit[h] or dependent on others whi[ch] are unconstitutional. Where, therefore, [a] part of a statute is unconstitutional, tha[t] fact does not authorize the courts to de[clare] the remainder void, unless all th[e] provisions are connected in subject matter dependent on each other, operating to[gether] for the same purpose, or otherwis[e] so connected together in meaning that i[t] cannot be presumed the Legislature wou[ld] have passed

**The One Without the Other.**

The constitutional and unconstitutiona[l] provisions may even be in the same sec[tion], and yet be perfectly distinct an[d] separable, so that the first may stan[d] through the last fall. The point is no[t] whether they are contained in the same section; for the distribution into section[s] is purely artificial, but whether they ar[e] essentially and inseparably con[nected] in substance. If, whe[n] the unconstitutional portion is stricke[n] out, that which remains is complete i[n] itself, and capable of being executed i[n] accordance with the apparent legislativ[e] intent, wholly independent of that whic[h] was rejected, it must be sustained."

The Fourteenth Amendment does no[t] apply. The right to carry the weapon[s] prohibited by this act is not a "privilege" or "immunity" within its meaning, no[r] does it deny the equal protection of the law. It is likely not designed to apply t[o] the right to bear arms, for the othe[r] amendment applies to that subject, and there is no need for this as to this subject It has other objects in view a discussion o[f] which would make this opinion too long but if it

**Could be at All Applied**

to this subject, it would not grant the righ[t] to bear arms such as those prohibited by this act, and the remarks above would answer this point.

abroad the small and insidious arms prohibited by this act? Or does the second amendment only guarantee the right to bear large arms, such as are useful in war and in defense of liberty against arbitrary power? Clearly the latter only. In days of tyranny long ago, when monarchical power sought supreme sway and to trample down freedom, history tells us that one of its favorite methods was the

**Disarming of the People**

and wrenching from their hands and homes those arms useful and effective in defense of liberty and dangerous only to tyrants. In this free country this amendment was incorporated to avoid the dangers of the past. Another reason for its adoption was this: Standing armies had been engines of oppression in the past, and American sentiment was opposed to them, and as a substitute reliance was placed on the citizen militia, and to render it efficient it was desirable to train it to the use of arms common in war. The intimate connection in the ammendment of this provision about learning arms with the language, "a well regulated militia being necessary to the security of a free state," shows that military efficiency and popular liberty were in the mind of its draftsman rather than individual privilege. If intended, it defends individual privilege to save the right of the citizen to keep at his home and premises arms ordinarily used in war, and has no reference to small weapons which may be hidden in the pocket and first seen when drawn to do their deadly work. The lives of the people and the public peace are the highest objects of the protection of the law, and this act has

**These High Objects,**

in view. The pistol, the bowie-knife, the stiletto, the slung shot, the billy and the knuckles are the weapons of the ruffian and law breaker, are used in the riot or affray, are dangerous in moments of anger or intoxication, and from them a vast amount of murder, bodily injury and family distress arise, and from them many a bitter tear has flowed. Certainly it was never intended by the constitution to prohibit the Legislature from protecting the lives of the people and the public peace from their greatest foes; it was not intended to withhold the power to regulate within the bounds of prudence and usefulness the bearing of these weapons It certainly can not be converted into a license to the evil disposed to make their persons walking arsenals to run rampant over the peace of the State, and disarm the Legislature of power to regulate or check it. Such a construction would make the Constitution defend lawlessness, tumult and anarchy, and sacrifice law, order and public security. I cannot yield to this dangerous construction. The construction of law must be reasonable. The act is wise and salutary, is doing good in this State, and the courts

**Should Sustain It.**

The great law writer Bishop, in his work on statutory crimes, sustains this view. Speaking of this clause in the Federal Constitution, he says:

"As to its interpretation, if we look at the question in the light of judicial reason, without the aid of specific authority, we shall be led to the conclusion that the provision protects only the right to 'keep' such 'arms' as are used for purposes of war in distinction from those which are employed in quarrels, brawls and fights between maddened individuals, since such only are properly known by the name of "arms," and such only are adapted to promote "*the security of a free State*." In like manner the right to "bear" arms refers merely to the military way of using them, not to their use in bravado or affray In Georgia and Kentucky such acts have been held void, but in Arkansas, Alabama Tennessee and Pennsylvania, they have been sustained, and Bishop says the Arkansas doctrine is approved generally by American courts. Remember that this act recognizes the right to keep and carry a pistol about one's dwelling house or premises, carrying it from the

**Place of Purchase**

home, and from home to a place of repair and back again, and only prohibits their carriage on the premises of others and in