C. D. Michel – SBN 144258
cmichel@michellawyers.com
Joshua R. Dale – SBN 209942
jdale@michellawyers.com
Konstadinos T. Moros – SBN 306610
kmoros@michellawyers.com
Alexander A. Frank – SBN 311718
afrank@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| RENO MAY, an individual; ANTHONY MIRANDA, an individual; ERIC HANS, an individual; GARY BRENNAN, an individual; OSCAR A. BARRETTO, JR., an individual; ISABELLE R. BARRETTO, an individual; BARRY BAHRAMI, an individual; PETE STEPHENSON, an individual; ANDREW HARMS, an individual; JOSE FLORES, an individual; DR. SHELDON HOUGH, DDS, an individual; SECOND AMENDMENT FOUNDATION; GUN OWNERS OF AMERICA; GUN OWNERS FOUNDATION; GUN OWNERS OF CALIFORNIA, INC.; THE LIBERAL GUN CLUB, INC.; and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED,<br><br>      Plaintiffs,<br> v.<br><br>ROBERT BONTA, in his official capacity as Attorney General of the State of California, and DOES 1-10,<br><br>      Defendants. | Case No.: 8:23-cv-01696 CJC (ADSx)<br><br>***MAY* PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EXCLUDING UNDER FEDERAL RULE OF EVIDENCE 702, OR DISREGARDING UNDER RULE 403, THE TESTIMONY OF DEFENDANT'S EXPERT WITNESSES:**<br><br> 1) **LEAH GLASER,**<br> 2) **JEANNE KISACKY,**<br> 3) **MARY FISSELL,**<br> 4) **JOSHUA SALZMANN,**<br> 5) **SHARON MURPHY,**<br> 6) **MICHAEL KEVANE,**<br> 7) **ZACHARY SCHRAG, AND**<br> 8) **ADAM WINKLER**<br><br>Hearing Date: December 20, 2023<br>Hearing Time: 1:30 p.m.<br>Courtroom: 9 B<br>Judge: Hon. Cormac J. Carney |

*MAY* MEMO. OF PTS. AND AUTH. ISO EXCL. EXPERT TESTIMONY

**TO THIS HONORABLE COURT:**

## INTRODUCTION

Plaintiffs Reno May, Anthony Miranda, Eric Hans, Gary Brennan, Oscar A. Barretto, Jr., Isabelle R. Barretto, Barry Bahrami, Pete Stephenson, Andrew Harms, Jose Flores, Dr. Sheldon Hough, DDS, The Second Amendment Foundation, Gun Owners of America, Inc., Gun Owners of California, Inc., The Liberal Gun Club, Inc., and California Rifle & Pistol Association, Incorporated, have lodged evidentiary objections to certain of the opinions of the expert witnesses offered by declaration by Defendant in support of his Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction. Plaintiffs have objected to these opinions based on, *inter alia*, Fed. R. Evid. 403 and 702, and have requested that such experts' opinions not be admitted into the record. In the alternative to sustaining the evidentiary objections of Plaintiffs, Plaintiffs request that this Court deem this to be a motion to disqualify these witnesses, and each of them, under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

The purpose of expert witness testimony is to assist the fact finder with understanding complicated technical issues that are beyond the ordinary fact finder's ability to understand. To be properly admissible, an expert witness's opinion must be based in something more than mere speculation and have a foundation in genuine knowledge about a complex factual issue that is material to the case.

The challenged declarations do not meet these standards for admissibility. Plaintiffs therefore request that the Court find each of the declarations of Leah Glaser, Jeanne Kisacky, Mary Fissell, Joshua Salzmann, Sharon Murphy, Michael Kevane, Zachary Schrag, and Adam Winkler inadmissible under Fed. R. Evid. 702. Alternatively, Plaintiffs request that the Court exclude each of the declarations under its Rule 403 discretionary authority.

## I. LEGAL STANDARD UNDER FEDERAL RULE OF EVIDENCE 702

An expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Under *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 589-91 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), courts must act as "gatekeepers" to exclude unreliable expert testimony. This requires courts to consider whether:

> (a) [t]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) [t]he testimony is based on sufficient facts or data; (c) [t]he testimony is the product of reliable principles and methods; and (d) [t]he expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

This list is not exhaustive. *Daubert*, 509 U.S. at 594-95; *Kumho*, 526 U.S. at 150-51. And no single factor is necessarily determinative. *Kumho*, 526 U.S. at 150-51; *see also* Fed. R. Evid. 702, advisory committee's note to 2000 amendment. Not all opinions of an expert are necessarily "expert opinions." *See United States v. Benson*, 941 F. 2d 598, 604 (7th Cir. 1991). Opinions outside the expert's expertise are inadmissible. *See Watkins v. Schriver*, 52 F. 3d 769, 711 (8th Cir. 1995) (affirming exclusion of neurologist's testimony "that the [plaintiff's neck] injury was more consistent with being thrown into a wall than with a stumble into the corner").

Nor do impressive professional qualifications suffice; the expert must have sufficient specialized knowledge to assist the trier of fact in deciding the specific issues in the case. *See Belk, Inc. v. Meyer Corp., U.S.*, 679 F. 3d 146, 162-63 (4th Cir. 2012). Moreover, an expert's suitability for testimony depends on the facts of the case. That a person is qualified to opine on one subject as an expert has no bearing on that person's qualification to opine on another unrelated subject. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999).

Under the standards for admissibility of expert witness testimony set forth in

Rule 702 and explained in *Daubert* and its progeny, The testimony of Leah Glaser, Jeanne Kisacky, Mary Fissell, Joshua Salzmann, Sharon Murphy, Michael Kevane, Zachary Schrag, and Adam Winkler, and each of them, should not be admitted or considered by the Court. If their testimony is admitted, because of the lack of relevance of their opinions, and in some instances, their offering of impermissible legal conclusions or harboring stated biases, the Court should give that testimony little weight.

Further, should the Court not exclude any of the declarants' testimony and exhibits under Rule 702, it should exercise its discretion under Rule 403 to exclude the declarants' irrelevant testimony and exhibits because they confuse the issues and needlessly present cumulative evidence.

By papering this Court with thousands of pages of declarations and supporting exhibits very little of which discusses or addresses the core issue this Court will decide on this motion—if SB 2's "sensitive places" restrictions are consistent with this nation's historical tradition of firearms regulation—the Attorney General appears to have submitted this mountain of testimony and evidence to impermissibly argue for a different analogical standard than the one identified in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. __, 142 S. Ct. 2111, 2126, 2132-33 (2022).

## II.   LEGAL STANDARD UNDER FEDERAL RULE OF EVIDENCE 403

While not necessarily inadmissible under Rule 702, expert testimony that is uninformative, duplicative, or boilerplate, or which fails to disclose the facts and rationale which underlaid the opinions expressed, See *Upsher-Smith Laboratories, Inc. v. Mylan Laboratories, Inc.*, 944 F. Supp. 1411. 1440 (D.Minn. 1996), citing *Van Dyke v. Coburn Enterprises, Inc.*, 873 F.2d 1094, 1100–01 (8th Cir. 1989); *Green Const. Co. v. Kansas Power & Light Co.*, 1 F.3d 1005, 1013–14 (10th Cir. 1993); *Davis v. Mason County*, 927 F.2d 1473, 1483–84 (9th Cir. 1991), cert. denied, 502 U.S. 899 (1991); and *Leefe v. Air Logistics, Inc.*, 876 F.2d 409, 410–11

(5th Cir.1989).

The State offered seven "historical witnesses" who opined little or not at all on historical firearm regulations in their expressed areas of expertise. They offered multiple witnesses to offer duplicative testimony and opinions about the history of parks, libraries, hospitals, taverns and places of public gathering, again, most or all of it devoid of any discussion of firearms laws and regulations.

When these witnesses did opine on firearms regulations, it was also unhelpful. They sometimes speculated, without citation to any evidence or laying a prior foundation, that a firearm regulation would have been "likely" to have existed in the place they offered testimony regarding. In other instances, they all but admitted the only firearm regulations they could cite were impermissible Post-Reconstruction era or 20th century regulations.

One expert admitted to not offering any evidence of firearms regulations at all (Zachary Schrag), and instead admitted the purpose of his declaration was to attempt to convince the court to adopt an analogical analysis broader than laws and regulations contrary to *Bruen*. And one expert (Adam Winkler), purported from the beginning that his goal was to impermissibly argue the constitutionality of the law, and thereafter repeatedly offered impermissible legal opinions that SB 2 was enforceable.

Because the state chose to bury this Court in thousands of pages of expert declarations and exhibits, most of which do not address the "central" issue before this Court of the existence, or lack thereof, of historical analogues to SB 2, and some of which purport to argue for a different standard other than *Bruen*, this Court should exercise its discretion under Rule 403 to disregard this white noise and legal argument characterized as expert opinion.

## III. WHY THE DECLARATIONS SHOULD BE STRICKEN OR DISREGARDED

### A. LEAH GLASER'S TESTIMONY

Glaser submits a rangy declaration discussing the history of parks on a national and state level. She opines on the history of spectator sports, playgrounds, and even exhibits such as world's fairs. The only discussion of firearms restrictions in her 81-paragraph declaration are a couple of Post-Reconstruction and 20th century restrictions on parks discussed in three paragraphs. She concludes her declaration by arguing that there were likely restrictions on firearms in parks and other public spaces because allowing firearms in parks would be inconsistent with these few prior restrictions she cited, most of which had to do with hunting.

Although she bombards the Court with history, almost all of it is irrelevant, and none of it gives the Court even the remotest idea what facts and rationale underlaid her inexplicable conclusion about the existence of firearms regulations.

### B. JEANNE KISACKY'S AND MARY FISSELL'S TESTIMONY

Kisacky and Fissell submit testimony and exhibits regarding the history of hospitals. Neither one discusses firearms regulations applicable during the relevant analogical period to hospital patients, visitors, or staff. Rather, they discuss the differences in the design of past hospitals versus present hospitals, and their purposes. Many of their opinions on this irrelevant topic lack citation to support their broad conclusion. One of them—Mary Fissell—admits at the end of her declaration that historically firearms weren't restricted from hospitals, but then offers wholly unsupported speculation as to the reason why such laws, speculation which, again, is not relevant to the analogical inquiry prescribed by *Bruen*. *See* Fissell Decl., ¶ 14. The other declarant—Jeanne Kisacky—doesn't mention firearms at all in her opinions.

None of their general historical information about hospitals is helpful for the Court's analogical inquiry.

### C. JOSHUA SALZMANN'S TESTIMONY

Salzmann offers opinions and exhibits regarding the history of transportation, including during the analogical period. Very little of his discussion includes a discussion of applicable firearms regulations. The only discussion of firearms regulations are discussion of a few private rail carrier restrictions on carrying firearms (many of which were implemented in the Post-Reconstruction era or in the 20th century), and one Chicago Post-Reconstruction era ordinance banning all public carry (in violation of *Bruen*), which Salzmann speculates was likely typical of other cities' laws, and would have applied to public trains in Chicago.

Other than Salzmann's brief speculation about the existence of Post-Reconstruction era laws, which is not helpful to the Court in determining the existence of analogical regulations, and his attempt to conflate a couple of Post-Reconstruction and 20th century private railroad rules into a history and tradition of firearms regulation, none of his opinions are relevant at all to the history of firearms regulation. His declaration offers no value to this Court.

### D. SHARON MURPHY'S TESTIMONY

Murphy provides testimony about the history of banks. She opines that modern banks are different from banks during the relevant analogical period, but does not identify any relevant firearms laws or regulations applicable to banks. She makes sweeping conclusions about the attitudes of Americans towards banks and robberies during the relevant period with such conclusions often being based on singular, anecdotal resources. *See, e.g.,* Murphy Decl., ¶ 22 (discussing a newspaper anecdote about a robbery in Dover, Delaware and making a broad conclusion about how Americans viewed bank robberies based on this).

Even if anecdotal evidence of American's views towards banks was relevant to the analogical inquiry of a history of tradition of firearms laws and regulations as to banks, Murphy's analysis is so conclusory, and relies on little more than singular accounts and her say-so about their meaning, that her opinions offer the Court little

reliability of indicia.

### E. MICHAEL KEVANE'S TESTIMONY

Kevane offers opinions about the general history of libraries with no discussion of firearms laws or regulations historically applicable to libraries.

### F. ZACHARY SCHRAG'S TESTIMONY

Professor Zachary Schrag's testimony is unhelpful to the Court and is inadmissible because he offers a lengthy opinion on topics that have nothing to do with the issues of the case. In doing so, he hopes to convince the Court to adopt an analogical standard in assessing the constitutionality of SB 2 different from the standard expressly set forth in *Bruen*.

Schrag could not make this clearer when he sets forth the correct analogical test stated in *Bruen* (Schrag Decl., ¶ 6), but then informs the court that "[i]t is not my purpose in this declaration to determine the 'Nation's historical tradition' of firearms regulation or even to scope out in detail the tasks that might be required to fairly describe that tradition." *Id*. ¶ 6.

Rather, he states the purpose of his testimony is "to explain in general the process of historical research, and the reasons that it is unpredictable, labor-intensive, and time-consuming." *Ibid*.

Thereafter he devotes 30 paragraphs and 13 pages of exhibits to discussing the history of . . . researching history, as well as the steps he believes historians should undertake. He does not cite one firearms statute or regulation or discuss any research he did to locate such laws.

Thus, his declaration does not inform the Court of any facts or issues pertinent to the Court's determination of whether SB 2 is consistent with the nation's historical tradition of firearms regulation. *Bruen*, 142 S. Ct. at 2126. Like with other declarations submitted by the state, the purpose of his declaration is to assist the State in advocating for the adoption by the Court of an analogical standard differing from what *Bruen* expressly requires, e.g.:

7

> To understand how, for example, conscription functioned in the world wars, we must look beyond the statute books and published regulations to newspapers, journals, institutional histories, soldiers' letters, and even the lyrics of popular songs. In my own work, I cite two examples of firearms regulation that took place not in the statehouse, *but on the street*.

Schrag Decl., ¶ 15.

He then argues that rather than look for analogical laws and regulations, the correct standard for assessing the constitutionality of a firearms regulation requires inquiry into and consideration of contemporaneous newspaper descriptions and other recordings of *events*. "These events eventually featured in criminal cases that were reported in newspapers, months after the confiscations, suggesting the need to look beyond the statutes to understand how Americans understood state police power." *Ibid*.

Schrag's declaration, which discusses no laws or regulations, and advocates for a historical standard not supported by *Bruen*, offers no help to the Court in assessing whether SB 2 fits historical analogues of laws and regulations consistent with the nation's historical tradition of firearms regulation. The entirety of his declaration should be stricken.

### G. ADAM WINKLER'S TESTIMONY

Professor Adam Winkler's testimony is unhelpful to the Court and is inadmissible because, from the start, he professes his purpose in making the declaration is to convince the court of a legal conclusion, an unhelpful and impermissible purpose for expert testimony. See *United States v. Boulware*, 558 F. 3d 971, 975 (9th Cir. 2009).

Expert testimony on matters of law is generally not admissible, it being court's task to determine issues of law for itself rather than to depend upon those who profess to be legal experts. *See Nationwide Mut. Ins. Co. v. American Reinsurance Co.*, 796 F.Supp. 275, 281 (S.D. Ohio 1991), *aff'd* 961 F.2d 1578, citing *Shahid v. City of Detroit*, 889 F.2d 1543 (6th Cir.1989) and *United States v.*

8

1 *Zipkin*, 729 F.2d 384 (6th Cir.1984). Matters of law are for a court's determination, and thus inappropriate subjects for expert testimony. *See Aguilar v. International Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992).

Thus, where expert reports and testimony contained a lengthy legal analyses of past precedent, complemented by arguments attempting to persuade the Court of Federal Claims that plaintiffs reasonably relied on legal opinions in a law firm's tax opinion letter, those reports and testimony were deemed inadmissible as they did not assist the Court in understanding the evidence or in determining a fact in issue. *See Stobie Creek Investments, LLC v. U.S.*, 81 Fed. Cl. 358, 360-61 (Fed. Cl. 2008). Similarly, an insurance expert's report, which quoted and analyzed various provisions of a marine cargo insurance policy, explained how provisions interrelated, and reached conclusions that policy excluded coverage for losses associated with damage and theft of goods held by insured, was deemed inadmissible because it would not help trier of fact where the report conducted a legal analysis that was solely within the province of district court. See *Navigators Insurance Company v. Goyard, Inc.*, 608 F. Supp. 3d 44, 48-49 (S.D.N.Y. 2022).

Yet from the start of his declaration, Winkler states his purpose to improperly invade the purview of the court in deciding the law of this matter: "I have been asked to provide an expert opinion on the constitutionality of provisions of California's SB 2 restricting the carrying of firearms in establishments that sell intoxicating liquor for consumption on premises [ ]; licensed public gatherings [ ]; places where gambling or gaming occurs, [ ]; and stadiums and sports areas. . . ." Winkler Decl., ¶ 1 (citations omitted).

Moreover, he then professes exactly what legal conclusions he hopes to convince the court to adopt:

  a. There is a long history and tradition of broad prohibitions on the carrying of weapons in places where the public congregates for social and commercial activity;

  b. There is a long history and tradition of restrictions on weapons in places of amusement and recreation;

  c. There is a long history and tradition of gun regulation to reduce the danger of mixing alcohol and firearms;

  d. Sensitive places restrictions barring weapons in places of public gathering have long been considered consistent with the constitutional right to bear arms.

*Id.*, ¶ 7.

  Thereafter, Winkler's declaration is filled with legal conclusions regarding the constitutionality of the state's sensitive places categories and restrictions. *See id.*, ¶ 14, 18, 19, 36 & 38.

  With a professed purpose of convincing the court of a particular legal conclusion, Winkler's declaration is akin to an amicus brief filed in support of the Attorney General, not an impartial expert opinion designed to help the court better understand the history of firearms regulation. If the Court is not inclined to exclude Winkler's testimony, it should give the testimony little weight in light of the express bias in Winkler's opinions and conclusions.

Dated: November 20, 2023      **MICHEL & ASSOCIATES, P.C.**

                 */s/ C.D. Michel*
                 C.D. Michel
                 Counsel for Plaintiffs

Dated: November 20, 2023      **LAW OFFICES OF DON KILMER**

                 */s/ Don Kilmer*
                 Don Kilmer
                 Counsel for Plaintiff The Second Amendment Foundation

# CERTIFICATE OF SERVICE
## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Case Name: *May, et al. v. Bonta*
Case No.: 8:23-cv-01696 CJC (ADSx)

IT IS HEREBY CERTIFIED THAT:

    I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

    I am not a party to the above-entitled action. I have caused service of:
**_MAY_ PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EXCLUDING UNDER FEDERAL RULE OF EVIDENCE 702, OR DISREGARDING UNDER RULE 403, THE TESTIMONY OF DEFENDANT'S EXPERT WITNESSES:**

**1) LEAH GLASER,
2) JEANNE KISACKY,
3) MARY FISSELL,
4) JOSHUA SALZMANN,
5) SHARON MURPHY,
6) MICHAEL KEVANE,
7) ZACHARY SCHRAG, AND
8) ADAM WINKLER**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Robert L. Meyerhoff, Deputy Attorney General
California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Email: Robert.Meyerhoff@doj.ca.gov
    *Attorney for Defendant*

    I declare under penalty of perjury that the foregoing is true and correct.

Executed November 20, 2023.

*Christina Castron*
Christina Castron