*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS

**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| 1 | 1402 | England | 4 Hen 4, c. 29 | "no Man be armed nor bear defensible armor to Merchant Towns Churches nor Congregations in the same." Opp. At 12. | Left out important context; this applied only to Welshmen, not all the king's subjects. Left out the phrase "in Affray of the Peace or the King's Liege People" in context to violate the law elsewhere than Towns, Churches, or Congregations. Compendium p. 19 (vol. 1 at 20). |
| 2 | 1721 | Pennsylvania | Pa. Laws 254-57 | 1721 Pennsylvania law making it a criminal offense to "carry any gun or hunt on the improved or inclosed lands of any plantation other than his own, unless he have license or permission from the owner of such lands or plantation." Opp. At 43. | Leaves out the context that this law was passed for the purpose of "persons carrying guns [AND] presuming to hunt on other people's lands." The law was not passed for the purpose of those carrying for self-defense, but for the purpose of hunting. Compendium p. 43 (vol. 1 at 44). |
| 3 | 1722 | New Jersey | *N.J. Laws 100-01* | 1722 New Jersey law providing for criminal penalties "if any Person or Persons shall presume . . . to carry any Gun, or hunt on the improved or inclosed Lands in any Plantation, other than his own, unless he have License of Permission from the Owner of such Lands or Plantation" Opp. At 43. | Leaves out the context that this law was passed for the purpose of "persons carrying guns [AND] presuming to hunt on other people's lands" Compendium p. 50 (vol. 1 at 51). |
| 4 | 1746 | New Jersey | N.J. Laws 146 | "Thus, many colonies prohibited the sale of alcohol to militiamen while on duty." Opp. At 21. | Left out the context that sales with "Leave from the Captain or Commanding Officer for the Time being" were exempt. Compendium p. 60 (vol. 1 at 61). |
| 5 | 1756 | Delaware | Del. Laws 13 | "Thus, many colonies prohibited the sale of alcohol to militiamen while on duty." Opp. At 21. | Out of context, prohibited the militia from appointing any place of meeting within a half mile of any "Inn or Tavern." However, did bar the presumption to "keep a Booth or tent or expose to sale at or Bring on any Pretence whatsoever any strong Liquor to such a place of Meeting." Compendium p. 66 (vol. 1 at 67). |

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS

**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| 6 | 1776 | Delaware | Del. Const. art. 28 | "To prevent any violence or force being used at the said elections, no person shall come armed to any of them." Opp. At 10<br><br>(outlawing "any 'battalion or company' from coming within a mile of a polling place for twenty-four hours before or after the election") Opp. At 36 | Left out context which may imply this or other portions of the amendment are dependent on the peace of the election site. "*Provided always*, That every elector may, in a peaceable and orderly manner, give in his vote on the said day of election." Compendium p. 92 (vol. 1 at 93).<br><br>Takes the amendment out of context. Prevented muster of the militia, not the militia members themselves. Only prohibited battalions or companies from giving their votes immediately succeeding each other if any other voter objected. Battalions and companies were also only prohibited from remaining within a mile and 24 hours of elections if it was in a manner that would impede the freely and conveniently carrying on of the election. *Id.* |
| 7 | 1780 | Pennsylvania | Pa. Laws 368 | Thus, many colonies prohibited the sale of alcohol to militiamen while on duty. Opp. at 21. | Takes the statute out of context. The statute prohibited militia meeting at a tavern. The statute also prohibited transporting liquor to places of exercise for the militia. "12th. No company or battalion fhall meet at a tavern on any of the days of cxercife, nor fhall march to any tavern before they are difchargcd; and any perfon who fhall bring any kind of fpiritous liquor to fuch place of training fhall forfeit fuch liquors fo brought for the ufe of the poor belonging to the townfhip where fuch offender lives." Compendium p. 101 (vol. 1 at 102). |
| 8 | 1786 | Virginia | 1786 Va. Laws 35 | In fact, around the time of the Founding, two jurisdictions—Virginia and North Carolina—expressly enacted or retained their own versions of the Statute of Northampton that were understood to impose restrictions on carrying weapons at public gatherings. Opp. | The statute limits carrying weapons at public gatherings The VA statute also limits imprisonment to one month. Compendium p. 104 (vol. 1 at 105).<br><br>The statute does limit in fairs or markets, but does so to the terror of the county. *Id.* |

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS

**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| | | | | at 18. Using this approach, the rich historical tradition of prohibiting the carry of firearms where people gather for social and entertainment purposes is the most relevant source of analogues. Laws during both the Founding era and the Reconstruction era prohibited firearms in these locations. 1786 Va. Laws 35, Comp. Ex. 31 (restricting firearms "in fair or markets") Opp. At 26. | |
| 9 | 1787 | New York | N.Y. Laws 345 | This category has historical roots in laws prohibiting firearms in places of election and legislative assembly. Opp. At 10. | Takes the statute out of context. Only prohibits the force of arms in the context of intimidation. "That all elections shall be free and that no person by force of arms nor by malice or menacing or otherwise presume to disturb or to hinder any citizen of this State to make free election upon pain of fine and imprisonment and treble damages to the party grieved." Compendium p. 107 (vol. 1 at 108). |
| 10 | 1793 | Pennsylvania | Pa. Laws 473 | Thus, many colonies prohibited the sale of alcohol to militiamen while on duty . . . [t]hese militia- and military-focused liquor laws extended into and after the Founding period with numerous States enacting similar laws. Opp. At 21. | Takes the statute out of context, prohibited militias to meet at taverns, marching to taverns before discharge, and transporting liquors to the place of militia exercise. This is a renactment of similar language from a 1780 PA law. CA's language implies this is a new law. Compendium p. 113 (vol. 1 at 114). |
| 11 | 1799 | New Jersey | N.J. Laws 436-37 | Thus, many colonies prohibited the sale of alcohol to militiamen while on duty . . . [t]hese militia- and military-focused liquor laws | Takes the statute out of context, prohibited transporting liquors to the place of a militia exercise. "ARTICLE l6. Any person, who shall bring any kind of spiritous liquors to the place of exercise, shall forfeit such |

3

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS

**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| | | | | extended into and after the Founding period with numerous States enacting similar laws. Opp. at 21. | liquors, for the use of the poor, belonging to the city or township, where such exercise is had ; and the commanding officer of the regiment, battalion or company, is charged with the execution of this article." Compendium p. 116 (vol. 1 at 117). |
| 12 | 1817 | Maryland | 1817 Md. Laws 15 | Thus, many colonies prohibited the sale of alcohol to militiamen while on duty . . . [t]hese militia- and military-focused liquor laws extended into and after the Founding period with numerous States enacting similar laws. Opp. at 21. | The cited page appears to not regulate liquor sales or similar liquor laws at all. The only reference liquor or drunkenness is a prohibition on non-commissioned officers from appearing drunk. Compendium p. 130 (vol. 1 at 131). |
| 13 | 1820 | New Hampshire | N.H. Laws 322 | In early America, it was uncommon for civilians to carry arms in certain crowded gatherings, such as while "attending [public] meetings," . . . or in "a place where persons were assembled for amusement." . . . Other early American laws reflecting these concerns involved prohibitions on firearms near parades and on trains. Opp. at 17. | Law is taken entirely out of context. The cited law makes no mention of trains, and only applied to non-commissioned officers or privates on any day of muster. The law also only prohibited loaded arms at parade by militia members on duty. Compendium p. 136 (vol. 1 at 137). |
| 14 | 1851 | Illinois—City of Chicago | Chicago, Ill., Regulating the Keeping and Conveying Gun Powder and Gun Cotton | And still other laws prohibited "retailer[s] of intoxicating liquors" from being issued a permit to keep or sell gunpowder. Opp. at 22. | The law in question makes no mention of intoxicating liquors at all. Compendium p. 180 (vol. 1 at 181). |
| 15 | 1852 | New Mexico [Territory] | N.M. Laws 69 | When jurisdictions in the United States began enacting more location-specific restrictions in the 19th century, it was common for these laws to prohibit weapons at | Takes the law out of context. Only prohibited carrying arms into balls or fandangos, but the law does not designate these balls or fandangos as being open to the public. Compendium p. 184 (vol. 1 at 185). |

4

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS

**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| | | | | large gatherings that were open to the public. Opp. at 18. | |
| 16 | 1858 | New York | New York, N.Y., Ordinances of the Central Park (Mar. 16, 1858) | Plaintiffs are unlikely to succeed on their challenge to Section 26230(a)(11)'s restriction on firearms at playgrounds and youth centers. These types of spaces did not exist in their modern form at either the Founding or Reconstruction (see Brewer Decl., ¶¶ 16, 23; Glaser Decl., ¶ 69), and the challenged modern regulations are "reasonably proportionate" to relevant historical analogues. See Antonyuk, 639 F. Supp. 3d at 324. Opp. at 31. | The law prohibited the carry of fire-arms in Central Park. The law makes no reference to spaces primarily occupied by children, as central park is primarily occupied by adults. Compendium p. 192 (vol. 1 at 193). |
| 17 | 1858 | Minnesota -- City of St. Paul | St. Paul, Minn. 689 | Plaintiffs are unlikely to succeed on their challenge to Section 26230(a)(11)'s restriction on firearms at playgrounds and youth centers. These types of spaces did not exist in their modern form at either the Founding or Reconstruction (see Brewer Decl., ¶¶ 16, 23; Glaser Decl., ¶ 69), and the challenged modern regulations are "reasonably proportionate" to relevant historical analogues. See Antonyuk, 639 F. Supp. 3d at 324. Opp. at 22. | The compendium lists this as an 1858 ordinance while the opposition to MPI document lists this as an 1888 ordinance. The document linked on the compendium only shows a gunpowder law, but is shown to be pages 123-124 of the 1886 St. Paul ordinances, and not page 689 of the 1858 or 1888 ordinances. The state of CA seems to be citing to three possible sources for a vaguely referenced ordinance. |
| 18 | 1859 | Connecticut | Conn. Acts 61-63 | And a Connecticut statute from 1859 prohibited the sale of alcohol to anyone within one mile of a military ground or encampment | § 5 of the act considered liquor sales near military parade-grounds to be a nuisance in the same way gambling is. The act makes no mention of firearms as the primary reason liquor and gambling are prohibited. |

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS

**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
|  |  |  |  | because such areas contained a large concentration of persons carrying firearms. Opp. at 22. | This act more relates to military cohesion than firearms safety. Compendium p. 199 (vol. 1 at 200). |
| 19 | 1868 | Pennsylvania -- City of Philadelphia | FIRST ANNUAL REPORT OF THE COMMISSIONERS OF FAIRMONT PARK, Philadelphia, Pa., (Apr. 14, 1868) | Plaintiffs are unlikely to succeed on their challenge to Section 26230(a)(11)'s restriction on firearms at playgrounds and youth centers. These types of spaces did not exist in their modern form at either the Founding or Reconstruction (see Brewer Decl., ¶¶ 16, 23; Glaser Decl., ¶ 69), and the challenged modern regulations are "reasonably proportionate" to relevant historical analogues. See Antonyuk, 639 F. Supp. 3d at 324. Opp. at 31. | The law prohibited the carry of fire-arms in Fairmont Park. The law makes no reference to spaces primarily occupied by children, as public parks are primarily occupied by adults. Compendium p. 227 (vol. 2. at 25). |
| 20 | 1870 | Texas -- City of San Antonio | San Antonio, Tx., An Ordinance, Concerning the carrying of Arms or Deadly Weapons (Dec. 14, 1870) | Applying a "more nuanced approach," Section 26230(a)(7)'s restriction on carrying firearms in modern-day healthcare facilities falls squarely within the Nation's historical tradition of prohibiting the carry of firearms in sensitive places. First, health facilities inarguably serve the "scientific purpose" of administering medical treatment, and states and municipalities have traditionally prohibited firearms in places where persons assembled for "scientific purposes." Opp. at 30. | While the law does say educational purpose locations are prohibited, hospitals do not appear in the ordinance's exhaustive list. There is no evidence hospitals were understood to fall under the ordinance. Compendium p. 252 (vol. 2 at 50). |
| 21 | 1870 | Texas | 1870 Tex. Gen. Laws 63 | Other early American laws reflecting these concerns involved | While the act does state that ball rooms and the like are prohibited, the act does not label public parades or |

6

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS

**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| | | | | prohibitions on firearms near parades and on trains . . . (banning guns in any "ball room, social party or other social gathering composed of ladies and gentlemen"). Opp. at 17. | trains as prohibited places. Nor were trains considered public places as you needed a ticket to enter them. Nor are trains considered social gatherings. Compendium p. 255 (vol. 2. at 53). |
| | | | | Third, a place may be sensitive because of the people who congregate there, including particularly vulnerable groups such as children, the elderly, and those suffering from illness . . . The sensitivity of such places finds considerable support in Reconstruction-era laws prohibiting guns in "any school room or other place where persons are assembled for educational, literary or scientific purposes." Opp. at 28 | The act makes no reference to children or any of these other groups. If these specific groups were the target of such regulation the state left out significantly more locations where children, the sick, and the elderly congregate. Why not specifically list out hospitals if the sick are a protected group? Why not specifically list out all places where children congregate? This portion of the opposition takes the act wildly out of context. *Id.* |
| | | | | | Takes the term "scientific purposes" out of context. Hospitals unquestionably existed in 1870, but they are missing from this exhaustive list. There is no evidence that hospitals were understood to be places of "scientific purposes" in this act. *Id.* |
| | | | | Applying a "more nuanced approach," Section 26230(a)(7)'s restriction on carrying firearms in modern-day healthcare facilities falls squarely within the Nation's historical tradition of prohibiting the carry of firearms in sensitive places. First, health facilities inarguably serve the "scientific purpose" of administering medical treatment, and states and municipalities have traditionally prohibited firearms in places where persons assembled for | |

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS

**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| | | | | "scientific purposes." Opp. at 30. | |
| 22 | 1871 | Texas | Tex. Gen. Laws 25 | Applying a "more nuanced approach," Section 26230(a)(7)'s restriction on carrying firearms in modern-day healthcare facilities falls squarely within the Nation's historical tradition of prohibiting the carry of firearms in sensitive places. First, health facilities inarguably serve the "scientific purpose" of administering medical treatment, and states and municipalities have traditionally prohibited firearms in places where persons assembled for "scientific purposes." Opp. at 30. | Takes the term "scientific purposes" out of context. Hospitals unquestionably existed in 1871, but they are missing from this exhaustive list. There is no evidence that hospitals were understood to be places of "scientific purposes" in this act. Compendium p. 263 (vol. 2 at 61). |
| 23 | 1872 | North Carolina – Rock Spring Campground | Act of the General Assembly (July 20, 1872), reprinted in THE CHARLOTTE DEMOCRAT (N.C.), July 30, 1872 | After the Founding, as explained in greater detail below, see infra, Section I(C)(2)(a), many of the general regulations prohibiting firearms at public gatherings and assemblies specifically mentioned places of worship as examples of prohibited, sensitive locations . . . And the territories of Arizona in 1889 and Oklahoma in 1890 and 1893 prohibited the carry of firearms into "any church or religious assembly." . . . Localities enacted similar restrictions in places of worship. Opp. at 13. | Takes the statute out of context. "That any person or persons refusing by force or threats, or by drawing of deadly weapons, such as pistols or knives, or any other dangerous weapon, to be arrested…" Also, this appears to be a regulation incorporated by the Trustees of the Rock Spring Camp Ground, so this is not even an ordinance of the entire city of Charlotte, North Carolina. Compendium p. 270 (vol. 2 at 68). |
| 24 | 1874 | Missouri | Mo. Laws 43 | ("any church or place [of worship], any school room or place where people are assembled for | Takes the statute out of context. Only concealed carry is prohibited in these "sensitive places." "[H]aving concealed about his person any kind of fire-arms, |

8

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS

**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| | | | | educational, literary or social purposes, . . . or into any other public assemblage of persons met for any lawful purpose [other than militia mustering]); Opp. at 19.<br><br>And third, California's 107 teaching hospitals17—where physicians complete their medical training and which "follow a tripartite mission of clinical care, education and research"18—share many of the same characteristics as schools; thus, prohibiting firearms in these hospitals falls within the historical tradition of designating places that serve "educational purposes" as sensitive places. Opp. at 31. | bowi-knife, dirk, dagger, slung-shot, or other deadly weapon…" Compendium p. 293 (vol. 2 at 91).<br><br>While the law does say educational purpose locations are prohibited, hospitals do not appear in the act's exhaustive list. The first teaching hospital in the United States did not appear in 1874 Missouri, it appeared in 1874 Pennsylvania. There is no evidence hospitals were understood to be prohibited under this act. Hospitals should therefor not be considered under the educational and research purposes for this act. *Id.* |
| 25 | 1875 | Missouri | Mo. Laws 50 | And third, California's 107 teaching hospitals—where physicians complete their medical training and which "follow a tripartite mission of clinical care, education and research"—share many of the same characteristics as schools; thus, prohibiting firearms in these hospitals falls within the historical tradition of designating places that serve "educational purposes" as sensitive places. Opp. at 31. | While the law does say educational purpose locations are prohibited, hospitals do not appear in the act's exhaustive list. Teaching hospitals were already in existence. Hospitals should therefor not be considered under the educational and research purposes for this act. Compendium p. 295 (vol. 2 at 93). |
| 26 | 1877 | Virginia | Va. Acts 305 | First, places that are "sensitive" by virtue of the activities taking place there include many forms of | This law does not prohibit carry at places of election or legislative assembly. It only prohibits in places of worship while services are being held or on Sundays. |

9

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS
**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| | | | | government property, locations where people are free to exercise their constitutional rights, or locations particularly attractive to terrorism or organized crime . . . This category has historical roots in laws prohibiting firearms in places of election and legislative assembly. Opp. at 10. | Compendium p. 312 (vol. 2 at 110). [slightly ambiguous: "or without good and sufficient cause thereof, shall carry any such weapon on Sunday at any place other than his own premises" i.e. If you have good cause you can carry outside your home on Sundays.] |
| 27 | 1878 | Mississippi | Miss. Laws 175-76 | States and localities also have historically prohibited the carrying of firearms by intoxicated individuals. Opp. at 22.<br><br>Third, a place may be sensitive because of the people who congregate there, including particularly vulnerable groups such as children, the elderly, and those suffering from illness . . . The frequent presence of children in a particular location strongly indicates that the area should be deemed sensitive for Second Amendment purposes . . . The sensitivity of such places finds considerable support in Reconstruction-era laws prohibiting guns in "any school room or other place where persons are assembled for educational, literary or scientific purposes." Opp. at 28.<br><br>And third, California's 107 teaching hospitals17—where | § 2 does not prohibit carry specifically to intoxicated people, but does bar sales of any weapons mentioned in § 1. § 1, however, bars carry to "any person, not being threatened with, or having good and sufficient reason to apprehend an attack, or traveling (not being a tramp) or setting out on a jounrye, or peace officers, or deputies in discharge of their duties." Compendium p. 322 (vol. 2 at 120).<br><br>§ 4 of the law only prohibited students and pupils. The act did not bar adults from carrying. *Id*.<br><br>While the law does say educational purpose locations are prohibited, hospitals do not appear in the act's exhaustive list. Teaching hospitals were already in existence, yet neither teaching hospitals or hospitals were not included among this list. There is no evidence hospitals were intended to be included among the state's exhaustive list. Hospitals should therefor not be considered under the educational and research purposes for this act. *Id*. |

10

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS
**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| | | | | physicians complete their medical training and which "follow a tripartite mission of clinical care, education and research"18—share many of the same characteristics as schools; thus, prohibiting firearms in these hospitals falls within the historical tradition of designating places that serve "educational purposes" as sensitive places. Opp. at 31. | |
| 28 | 1878 | Missouri | State v. Reando, reprinted in THE STATE JOURNAL (Jefferson City, Mo.), Apr. 12, 1878 | Courts of the era not only upheld the constitutionality of firearm prohibitions in places of worship, but also evinced the general sentiment that religious gatherings are no place for dangerous weapons. See State v. Reando (Mo. 1878), Comp. Ex. 101 (upholding the constitutionality of Missouri's law prohibiting carry of firearms in, among other locations, churches). Opp. at 13. | Takes the court out of context. The court upheld Sess. Acts, 1874, 43, on the basis it does not outright prohibit the right to keep and bear arms. The court ruled that it still allows open carry in the so-called sensitive places. Compendium p. 326 (vol. 2 at 124). [ "If the statute in question had the effect of denying this right, and absolutely prohibiting citizens from keeping and bearing arms, we would not hesitate to pronounce it void, as being violative of a constutional right secured to every man by the constitution of the State. It, however, has no such scope. It simply denies to the citizen the right to enter certain places therein designated, having concealed about his person any kind of firre arms, bowie knife, etc…. Under this statute the right to enter, even such places, by any person bearing arms openly and exposed to public view is not prohibited…"] |
| 29 | 1879 | Missouri | Mo. Laws 224 | First, places that are "sensitive" by virtue of the activities taking place there include many forms of government property, locations where people are free to exercise their constitutional rights, or | Statute does not specifically list legislative assembly as part of its exhaustive list but does bar concealed carry into, among others, "any other public assemblage of persons met for any lawful purpose, other than for militia drill or meetings called under the militia law of this state…" (prohibiting "concealed" carry of |

11

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS
**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| | | | | locations particularly attractive to terrorism or organized crime . . . This category has historical roots in laws prohibiting firearms in places of election and legislative assembly. Opp. at 10. | "firearms" in "any other public assemblage of persons met for any lawful purpose other than for militia drill"). Compendium p. 331 (vol. 2 at 129). |
| | | | | Other early American laws reflecting these concerns involved prohibitions on firearms near parades and on trains . . . (prohibiting "concealed" carry of "firearms" in "any other public assemblage of persons met for any lawful purpose other than for militia drill") | Trains would not be considered public places as they require a ticket to enter and ride. *Id.* |
| | | | | | The law does not include hospitals or other places where these groups may be found. Playgrounds were first built in 1859, yet this law does not include playgrounds among the exhaustive list. The sick are frequently found at hospitals, but these locations are not included among the exhaustive list. *Id.* |
| | | | | (prohibiting "concealed" carry of "firearms" in "any other public assemblage of persons met for any lawful purpose other than for militia drill"). Opp. at 17 n.11. | While the law does prohibit in places of education, the law does not include hospitals among the exhaustive list of prohibited places. Teaching hospitals were already in existence. There is no evidence hospitals were understood to be included among the act's exhaustive list. *Id.* |
| | | | | Third, a place may be sensitive because of the people who congregate there, including particularly vulnerable groups such as children, the elderly, and those suffering from illness . . .The sensitivity of such places finds considerable support in Reconstruction-era laws prohibiting guns in "any school room or other place where persons are assembled for educational, literary or scientific purposes." | |

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS
**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| | | | | Opp. at 28<br><br>And third, California's 107 teaching hospitals17—where physicians complete their medical training and which "follow a tripartite mission of clinical care, education and research"18—share many of the same characteristics as schools; thus, prohibiting firearms in these hospitals falls within the historical tradition of designating places that serve "educational purposes" as sensitive places. Opp. at 30. | |
| 30 | 1881 | Illinois – City of Chicago | Chicago, Ill. 391-92 | Plaintiffs are unlikely to succeed on their challenge to Section 26230(a)(11)'s restriction on firearms at playgrounds and youth centers. These types of spaces did not exist in their modern form at either the Founding or Reconstruction (see Brewer Decl., ¶¶ 16, 23; Glaser Decl., ¶ 69), and the challenged modern regulations are "reasonably proportionate" to relevant historical analogues. See Antonyuk, 639 F. Supp. 3d at 324. Opp. at 31. | Chicago banned carry of firearms in any of the public parks. California is using this in context of playgrounds and Youth Centers. The ordinance was written for the purpose of protecting the trees, plants, turf, etc. from damage. The ordinance was not written for the protection of children. Compendium p. 341 (vol. 2 at 139). |
| 31 | 1883 | Missouri | 1883 Mo. Laws 76 | And third, California's 107 teaching hospitals—where physicians complete their medical training and which "follow a tripartite mission of clinical care, education and research"—share | While the law does prohibit in places for educational purposes, hospitals are not present among the states exhaustive list. Teaching hospitals first appeared in 1765 in Pennsylvania. Compendium p. 379 (vol. 2 at 177). |

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS
**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| | | | | many of the same characteristics as schools; thus, prohibiting firearms in these hospitals falls within the historical tradition of designating places that serve "educational purposes" as sensitive places. Opp. At 31. | |
| 32 | 1883 | Missouri – Tower Grove Park | Tower Grove Park, Mo. 117 | Plaintiffs are unlikely to succeed on their challenge to Section 26230(a)(11)'s restriction on firearms at playgrounds and youth centers. These types of spaces did not exist in their modern form at either the Founding or Reconstruction (see Brewer Decl., ¶¶ 16, 23; Glaser Decl., ¶ 69), and the challenged modern regulations are "reasonably proportionate" to relevant historical analogues. See Antonyuk, 639 F. Supp. 3d at 324. Opp at 31. | The rules and regulations adopted by the Board of Commissioners prohibit the carry of firearms within the park itself. Playgrounds were first built in 1859, so playgrounds might technically be included, but they are not singled out by this rule. Compendium p. 383 (vol. 2 at 181). |
| 33 | 1883 | Wisconsin | Wis. Sess. Laws 290 | States and localities also have historically prohibited the carrying of firearms by intoxicated individuals. Opp. At 22. | Did not prohibit the carry of all firearms, only pistols and revolvers. Compendium p. 387 (vol. 2 at 185). |
| 34 | 1887 | Kansas -- City of Stockton | Ordinance No. 76: An Ordinance Prohibiting Deadly Weapons, July 1, 1887, reprinted in STOCKTON REVIEW AND ROOKS COUNTY RECORD (Kan.) July 1, 1887 | And third, California's 107 teaching hospitals[17]—where physicians complete their medical training and which "follow a tripartite mission of clinical care, education and research"[18]—share many of the same characteristics as schools; thus, prohibiting firearms in these hospitals falls within the | Teaching hospitals were already in existence at the time of the passage of this act. Hospitals, even teaching hospitals, do not appear among the city's exhaustive list of prohibited places. There is no evidence hospitals were understood to be included among the ordinance's exhaustive list. Compendium p. 427 (vol. 3 at 40). |

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS

**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| | | | | historical tradition of designating places that serve "educational purposes" as sensitive places. Opp. at 30. | |
| 35 | 1888 | Minnesota, City of St. Paul | 8 St. Paul, Minn. 689 | Plaintiffs are unlikely to succeed on their challenge to Section 26230(a)(11)'s restriction on firearms at playgrounds and youth centers. These types of spaces did not exist in their modern form at either the Founding or Reconstruction (see Brewer Decl., ¶¶ 16, 23; Glaser Decl., ¶ 69), and the challenged modern regulations are "reasonably proportionate" to relevant historical analogues. See Antonyuk, 639 F. Supp. 3d at 324. Opp. at 31. | Prohibition on the carry of firearms in public parks. The purpose of the ordinance was to prevent hunting, as it specifically states that shooting of birds in parks is prohibited. Compendium p. 438 (vol. 3 at 51). |
| 36 | 1890 | Missouri -- City of Columbia | Columbia, Mo. | third, California's 107 teaching hospitals17—where physicians complete their medical training and which "follow a tripartite mission of clinical care, education and research"18—share many of the same characteristics as schools; thus, prohibiting firearms in these hospitals falls within the historical tradition of designating places that serve "educational purposes" as sensitive places. Opp. at 31. | Hospitals are not included in the ordinance's exhaustive list of prohibited places. Teaching hospitals were already in existence, but are also not included among the listed prohibited places. There is no evidence teaching hospitals or even hospitals were understood to be covered by this ordinance. Compendium p. 452 (Vol. 3 at 65). Only prohibits concealed carry, brandishing, and armed while intoxicated. |
| 37 | 1894 | Missouri -- City of Huntsville | Huntsville, Mo., An Ordinance In Relation to | And third, California's 107 teaching hospitals17—where physicians complete their medical training and which "follow a | In the state's exhaustive list, educational purposes does appear but hospitals are absent. Teaching hospitals were already in existence, but are not mentioned among this list. There is no evidence either hospitals or |

15

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS
**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**

| No. | Year | Jurisdiction | Citation | State's Description of Regulation | Why Description Is Misleading |
|---|---|---|---|---|---|
| | | | Carrying Deadly Weapons (July 17, 1894) | tripartite mission of clinical care, education and research"18—share many of the same characteristics as schools; thus, prohibiting firearms in these hospitals falls within the historical tradition of designating places that serve "educational purposes" as sensitive places. Opp. at 31. | teaching hospitals were understood to be a part of the ordinance's exhaustive list. Compendium p. 533 (vol. 3 at 146). Again, only a ban on *concealed* carry. |
| 38 | 1897 | Federal | Yellowstone National Park, Regulations of June 1, 1897 | By 1900, the carrying of firearms was prohibited in more than two dozen parks across at least ten different states. See Young Decl., ¶¶ 34–35, 37. Once the park movement took hold on the national level, Yellowstone National Park banned firearms in 1897. Opp. at 33. | Yellowstone still allowed firearms in the park upon written permission from the superintendent. Compendium p. 581 (vol. 4 at 18). |
| 39 | 1936 | Federal | 1. Fed. Reg. 791 (June 27, 1936) | By 1900, the carrying of firearms was prohibited in more than two dozen parks across at least ten different states. See Young Decl., ¶¶ 34–35, 37. Once the park movement took hold on the national level, Yellowstone National Park banned firearms in 1897. Comp. Ex. 186; see also Glaser Decl., ¶ 32 (explaining influence of park movement on national level). And after a national rule-making commission was established, firearms were banned from all national parks in 1936. Opp. at 33. | Carry of firearms allowed in parks with written permission of the superintendent or custodian. Compendium p. 638 (vol. 4 at 75). |

*Reno May et al v. Robert Bonta et al*, 8:23-cv-01696-CJC-ADS
**Appendix: Disagreements with Defendant's Characterization of Historical Laws and Treatises Cited in Opposition to Plaintiff's Motion for Preliminary Injunction**