Rob Bonta
Attorney General of California
Mark R. Beckington
R. Matthew Wise
Supervising Deputy Attorneys General
Todd Grabarsky
Jane Reilley
Lisa Plank
Robert L. Meyerhoff
Deputy Attorneys General
State Bar No. 298196
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone: (213) 269-6177
  Fax: (916) 731-2144
  E-mail: Robert.Meyerhoff@doj.ca.gov
*Attorneys for Rob Bonta, in his Official Capacity as
Attorney General of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Reno May**, an individual, et al.;<br><br>Plaintiffs,<br><br>v.<br><br>**Robert Bonta**, in his official capacity as Attorney General of the State of California, and Does 1-10, | Case No. 8:23-cv-01696 CJC (ADSx)<br>8:23-cv-01798 CJC (ADSx)<br><br>**SUR-REBUTTAL DECLARATION OF DR. MARY FISSELL IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION**<br><br>Date: December 20, 2023<br>Time: 1:30 p.m.<br>Courtroom: 9B<br>Judge: Hon. Cormac J. Carney<br>Action Filed: September 15, 2023 |
| **Marco Antonio Carralero**, an individual, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**Robert Bonta**, in his official capacity as Attorney General of California,<br><br>Defendant. | |

**SUR-REBUTTAL DECLARATION OF DR. MARY FISSELL**

I, Dr. Mary Fissell, declare under penalty of perjury that the following is true and correct:

1. This declaration is based on my own personal knowledge and experience, and if I am called to testify as a witness, I could and would testify competently to the truth of the matters discussed in this declaration.

2. I have been retained by the Office of the Attorney General for California as an expert on the history of medical facilities and hospitals in America, with an emphasis on the similarities and differences between hospitals as they existed in the Founding era (in and around the year 1791) and hospitals as they exist in the modern era.

3. I previously provided a declaration in the above-captioned matters in support of the State of California's opposition to the *May* and *Carralero* Plaintiffs' motions for preliminary injunction. See Decl. of Dr. Mary Fissell, *May v. Bonta*, C.D. Cal. No. 8:23-cv-01696 CJC (ADSx) (Dkt. No. 21-3); *Carralero v. Bonta*, C.D. Cal. No. 8:23-cv-01798 CJC (ADSx) (Dkt. No. 20-3) (Fissell Decl.). My professional background and qualifications, and my retention and compensation information, are set forth in Paragraphs 3 and 4 of my prior declaration.

4. I have been asked by the Office of the Attorney General to review and provide an expert opinion regarding some of the statements made in the Plaintiffs' reply briefs and supporting documents in these matters. *May* Dkt. Nos. 29, 29-9, 29-14, 29-15; *Carralero* Dkt. No. 29. I have reviewed those briefs and documents, and have prepared this sur-rebuttal declaration in response.

**I. RESPONSE TO STATEMENTS MADE IN *MAY* PLAINTIFFS' EVIDENTIARY OBJECTIONS TO FISSELL DECLARATION**

5. The *May* Plaintiffs object to my opinion that "[t]o the extent that early hospital rules do not specify that inmates or visitors could not carry firearms, this absence is due to the fact that the nature of these institutions made it very unlikely

that such a rule would be necessary." Fissell Decl. ¶ 14. Specifically, they assert that I provide "no citation to facts or sources" to support this opinion and claim that I made an "admission" that I am "speculating" as to this opinion. *See* Pls.' Evidentiary Objections to Fissell Decl. ¶ 2, *May v. Bonta* Dkt. No. 29-7.

6. First, the *May* Plaintiffs' claim that I did not cite to facts or sources in support of my opinion is inaccurate. To the contrary, my declaration includes a detailed factual description of the nature of Founding-era hospitals (including, but not limited to, the indigent patient populations served by these early hospitals and the emphasis these institutions placed on order and control), and this factual description is supported by numerous citations to primary and secondary sources. *See* Fissell Decl. ¶¶ 5-12. The expert opinion that I provide in Paragraph 14 of my declaration is supported by, and predicated upon, these historical facts and citations.

7. Second, my declaration does not contain any "admission" that I am "speculating" in rendering this expert opinion. The historical profession, from Carlo Ginzburg to Marisa Fuentes, has regularly analyzed silences and documents and created plausible, historically sound explanations for these silences by examining the circumstances in which the document was crafted. Careful attention to a document's creation is a hallmark of professional historical scholarship. Here, I reached the opinion set forth in Paragraph 14 of my declaration after a diligent examination and analysis of the circumstances under which Founding-era hospital rules were written, as described in Paragraphs 5-12 of my declaration.

## II. RESPONSE TO STATEMENTS MADE BY THE *MAY* PLAINTIFFS' DECLARANT, CLAYTON CRAMER

8. The *May* Plaintiffs' declarant, Clayton Cramer, concedes that I provide "logical explanations for the absence" of rules or statutes explicitly prohibiting arms in Founding-era hospitals, but then claims that "other evidence suggests that [my] reasoning is based on false premises." Clayton Cramer Rebuttal Decl. ¶ 57, *May v. Bonta* Dkt. No. 29-15. However, Cramer does not identify the purported

"other evidence" that he is referring to, nor does he explain what "false premises" my reasoning is allegedly based upon.

9. Cramer also cites to my statement that there were few hospitals in Founding-era America because it was a largely rural country that lacked the population densities sufficient to support a large number of hospitals. *See* Fissell Decl. ¶ 1. Cramer agrees that this statement is "certainly true," but then goes on to argue that there was another reason for the scarcity of hospitals: families caring for the mentally ill. *See* Clayton Cramer Rebuttal Decl. ¶¶ 59-62, *May v. Bonta* Dkt. No. 29-15. He then discusses Founding-era home health care for the mentally ill, including the details of a case involving a father who provided domiciliary care to his mentally ill son in Symsbury, Connecticut. *Id.*

10. However, Cramer's discussion of home care for certain mentally ill patients is not relevant to how Founding-era hospitals operated because, as explained in my declaration, early hospitals serviced those who could not afford home care. Nor does this discussion undermine any of my opinions. To the contrary, Cramer's statements are entirely consistent with my opinion that home care was one dimension of a system of care that developed in a largely rural economy, in which there was low population density and many people who were able to care for their ill relatives in a domestic setting because they had the space to do so. As stated in my declaration, the preference for receiving medical treatment at home—rather than in a hospital—is a major contributing factor to the paucity of hospitals in early America.

11. Next, Cramer discusses whether urbanization promotes mental illness (*see* Clayton Cramer Rebuttal Decl. ¶¶ 63-66, *May v. Bonta* Dkt. No. 29-15), but this discussion is not pertinent to—nor does it contradict—any of my opinions.

12. Paragraph 67 of Cramer's rebuttal declaration is in fundamental agreement with my analysis and opinions. Hospital care in eighteenth-century America largely consisted of caretaking because, in Cramer's words, "[w]ithout X-

ray machines, and IVs, what could a hospital do, other than bed rest?" Clayton Cramer Rebuttal Decl. ¶¶ 67, *May v. Bonta* Dkt. No. 29-15. Indeed, much medical care in any Founding-era setting was a mix of nursing care and watchful waiting, and the inmates of infirmaries were in need of warm beds and regular meals as much as medical care. Cramer's acknowledgement of "the limits of the [colonial period] medical profession's toolbox" (*id.*) directly supports my opinion that hospitals in late eighteenth and early nineteenth century America were very different from the high-tech medical workplaces that exist today.

13. Cramer then objects that I do "not ever point to institutional rules or laws regulating arms possession seem (*sic*)." Clayton Cramer Rebuttal Decl. ¶¶ 67, *May v. Bonta* Dkt. No. 29-15. First, given the time constraints imposed by Plaintiffs' motions for preliminary injunction and the patchy survival of early American records, I cannot and do not definitely state that no Founding-era hospital had a written rule explicitly prohibiting firearms. Second, as set forth in my declaration, such rules would not have been necessary because the inmates of Founding-era hospitals were too destitute to own firearms; had they not been destitute, they would not have been eligible for admission to such institutions.

14. In response to my opinion that specific rules governing firearms were unnecessary because "because it was assumed that those who had managed to navigate the networks of charity and patronage to gain admission were going to be well-behaved" (Fissell Decl. ¶ 8), Cramer points to the mentally ill who were confined to the Pennsylvania Hospital (Clayton Cramer Rebuttal Decl. ¶¶ 73, *May v. Bonta* Dkt. No. 29-15). However, this example is complicated by the fact that in this particular institution, care for the mentally ill was administered in a separate area of the hospital than care for patients with physical illnesses. The mentally ill included paying patients, who might be physically restrained. There were many more attendants for this part of the hospital than the medical part upstairs, and inmates' behavior was governed closely by such attendants. It is an exception to

the usual functioning of infirmaries, almshouses, and poorhouses both because it took mentally-ill *paying* patients, and it because it relied upon physical restraints and close attendance as much as written rules to govern behavior. Fissell Decl. ¶ 8. Given such physical restraints and close attendance of the mentally ill at Philadelphia Hospital, it would have been even more unnecessary for this institution to have a separate written rule explicitly prohibiting firearms. Moreover, hospitals of any kind were rare in early America, and institutions dedicated to the care of the mentally ill were even scarcer. Limiting the historical analysis to only those hospitals that provided mental health treatment does not provide a complete and accurate historical picture of Founding-era health care facilities.

### III. RESPONSE TO STATEMENT MADE IN *CARRALERO* PLAINTIFFS' REPLY BRIEF

15. Finally, the *Carralero* Plaintiffs claim that "there is historical evidence that doctors *on house calls* carried firearms"; in support of this claim, they cite to one source for the proposition that one doctor "carried guns while visiting patients for medical *house calls*." *Carralero v. Bonta* Dkt. No. 29 at 28 n.11 (emphasis added). However, the *Carralero* Plaintiffs do not present any evidence that Founding-era doctors carried firearms while treating patients in hospitals, and the fact that one such doctor carried a firearm while making house calls has no bearing on this issue.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 4, 2023, at Baltimore, Maryland.

_____
Dr. Mary Fissell

# CERTIFICATE OF SERVICE

Case Names: **_Reno May, et al. v. Robert Bonta, et al.;_**
**_Carralero, Marco Antonio, et al. v. Rob Bonta_**

Case Nos. **8:23-cv-01696-CJC (ADSx); 8:23-cv-01798-CJC (ADSx)**

I hereby certify that on December 7, 2023, I electronically filed the following document with the Clerk of the Court by using the CM/ECF system:

**SUR-REBUTTAL DECLARATION OF DR. MARY FISSELL IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished electronically by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct.

Executed on December 7, 2023, at San Francisco, California.

| Vanessa Jordan | _Vanessa Jordan_ |
|---|---|
| Declarant | Signature |