1  C. D. Michel – SBN 144258
   cmichel@michellawyers.com
2  Anna M. Barvir – SBN 268728
   abarvir@michellawyers.com
3  Konstadinos T. Moros – SBN 306610
   kmoros@michellawyers.com
4  MICHEL & ASSOCIATES, P.C.
   180 East Ocean Blvd., Suite 200
5  Long Beach, CA 90802
   Telephone: (562) 216-4444
6
   Donald Kilmer-SBN 179986
7  Law Offices of Donald Kilmer, APC
   14085 Silver Ridge Road
8  Caldwell, Idaho 83607
   Telephone: (408) 264-8489
9  Email: Don@DKLawOffice.com

10 Attorneys for Plaintiffs

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                    SOUTHERN DIVISION

14 RENO MAY, an individual;            Case No.: 8:23-cv-01696 CJC (ADSx)
   ANTHONY MIRANDA, an individual;
15 ERIC HANS, an individual; GARY      **FIRST AMENDED COMPLAINT**
   BRENNAN, an individual; OSCAR A.    **FOR DECLARATORY AND**
16 BARRETTO, JR., an individual;       **INJUNCTIVE RELIEF**
   ISABELLE R. BARRETTO, an
17 individual; BARRY BAHRAMI, an       **42 U.S.C. §§ 1983 & 1988**
   individual; PETE STEPHENSON, an
18 individual; ANDREW HARMS, an
   individual; JOSE FLORES, an
19 individual; DR. SHELDON HOUGH,
   DDS, an individual; SECOND
20 AMENDMENT FOUNDATION; GUN
   OWNERS OF AMERICA; GUN
21 OWNERS FOUNDATION; GUN
   OWNERS OF CALIFORNIA, INC.;
22 LIBERAL GUN OWNERS
   ASSOCIATION; and CALIFORNIA
23 RIFLE & PISTOL ASSOCIATION,
   INCORPORATED,
24
                       Plaintiffs,
25          v.

26 ROBERT BONTA, in his official
   capacity as Attorney General of the
27 State of California, and DOES 1-10,

28                     Defendants.

---

                              1
                  FIRST AMENDED COMPLAINT

NOW COME Plaintiffs Reno May, Anthony Miranda, Eric Hans, Gary Brennan, Tony Barretto, Isabelle R. Barretto, Barry Bahrami, Pete Stephenson, Jose Flores, Andrew Harms, Dr. Sheldon Hough, DDS, The Second Amendment Foundation, Gun Owners of America, Gun Owners Foundation, Gun Owners of California, Inc., the Liberal Gun Owners Association, and the California Rifle & Pistol Association, Incorporated (collectively "Plaintiffs"), and through their respective counsel, bring this action against Defendant Attorney General Robert Bonta, in his official capacity, and make the following allegations.

## INTRODUCTION

1.     In *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Supreme Court provided its third statement in recent memory affirming that the Second Amendment is not a second-class right and reiterating that firearm regulations must comport with the original meaning of the amendment's text as understood in the Founding era. In doing so, *Bruen* put an end to discretionary firearm licensing regimes and vindicated the natural right to be armed in public for lawful purposes including self-defense. To be sure, the Court restated its dicta from *District of Columbia v. Heller*, 554 U.S. 570 (2008), enumerating a discrete category of so-called "sensitive places" where firearms presumptively may be prohibited survived, but only as a limited exception to the general rule that the Second Amendment secures a broad right to be armed in all but a very few public places. Finally, anticipating sophistry from jurisdictions hostile to the Second Amendment, the Court explained that "there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Bruen*, 597 U.S. at 31.

2.     Unsurprisingly, however, the California legislature and governor have treated the central holding in *Bruen* as, at best, policy preferences rather than constitutional requirements.  To that end, California has enacted policies that

eviscerate the very right to be armed in public that the plain language of the Second Amendment secures and that our forebears uniformly understood to preexist any constitutional text. California's newly passed Senate Bill 2 (hereafter "SB 2") turns the *Bruen* decision on its head, making nearly every public place in California a "sensitive place" (in name only), and forbidding firearm carry even after someone has undertaken the lengthy and expensive process to be issued a concealed handgun license ("CCW permit") under state law.[1]

3.    California's atextual, ahistorical, novel "sensitive places" include every park and playground, every hospital, all public transportation, any place that sells alcohol for consumption on the premises (which includes many restaurants that offer beer and wine with dinner or restaurants with a bar), all land under the control of the Department of Parks and Recreation or the Department of Fish and Wildlife (with exceptions for hunting), libraries, churches, banks, and many more. California's SB 2 even transforms private businesses into "gun-free zones" by default, imposing an unprecedented affirmative duty on private business owners to post signage to authorize people exercising an enumerated constitutional right to enter the property.

---

[1] Obtaining a CCW permit in California is already a time-consuming process involving a lengthy application, police interview, background check with fingerprints, training course and shooting proficiency exam, psychological exam at the issuing authority's discretion, and sometimes more than $1,000 in fees. Jake Fogelman, *California City to Charge More Than $1,000 for Gun Carry Permits*, The Reload (Mar. 1, 2023, 3:29 PM), <https://thereload.com/california-city-charges-more-than-1000-for-gun-carry-permits/> (as of August 14, 2023). Indeed, while not the subject of this lawsuit, SB 2 also makes the process to get a CCW permit even more difficult than it already is, and those portions of the law will also likely face legal challenges of their own. This case focuses on the pretextual "sensitive places" doctrine of SB 2. Only law-abiding and responsible citizens would willingly subject themselves to California's onerous CCW permit process just to exercise a natural right. SB 2 abuses these citizens' good faith. Criminals will continue to carry illegally.

4.      In stark contrast to SB 2, *Bruen* recognized a general right to be armed in public places, subject only to limited, historically valid exceptions. In defiance of that holding, California has made the right a rare exception in most public places. Californians who desire to exercise their enumerated right to carry are essentially limited to some streets and sidewalks (so long as those public places are not adjacent to certain other "sensitive" places), plus a few businesses willing to post a "guns allowed" sign at the risk of potentially losing other customers by doing so.

5.      And, although not relevant to its constitutional infirmity, it is worth noting that SB 2 does nothing to impede criminals who, of course, will not bother to qualify for and obtain CCW permits and who certainly will not follow the law on "sensitive places" when committing other crimes.

6.      SB 2 creates a patchwork quilt of locations where Second Amendment rights may and may not be exercised, thus making exercise of the right so impractical and legally risky in practice that ordinary citizens will be deterred from even attempting to exercise their rights in the first place.

7.      In short, if California must issue ordinary citizens CCW permits after *Bruen*, California has decided that it simply will render these permits effectively useless.

8.      Each of the Plaintiffs named in this Complaint, as well as the members and supporters of the associational Plaintiffs, will have their Second Amendment rights to keep ***and bear*** arms infringed if the challenged provisions of SB 2 are not enjoined.

## PARTIES

### Plaintiffs

9.      The individual Plaintiffs are law-abiding residents of California who (save one) have CCW permits issued under California Penal Code Section 26150.

10.      The associational Plaintiffs are non-profit civil rights organizations representing their members who have CCW permits and who are harmed by SB 2.

4

FIRST AMENDED COMPLAINT

The associational Plaintiffs have standing independently of the individual Plaintiffs because their members have standing to sue in their own right (and indeed, several individual Plaintiffs are also members of the associational Plaintiffs), the right to carry is germane to their mission to protect Second Amendment rights, and the constitutional questions presented here do not strictly require the participation of only individual members. *Int'l Longshore & Warehouse Union v. Nelson*, 599 F. App'x 701, 702 (9th Cir. 2015).

11.     Plaintiffs bring this action to vindicate their Second Amendment rights to publicly bear arms for self-defense.

12.     All individual Plaintiffs are natural persons and citizens of the United States.

13.     All individual Plaintiffs are eligible to possess firearms under state and federal law and currently own at least one firearm. All individual Plaintiffs also have valid CCW permits. Each individual Plaintiff desires to carry a firearm in public just as they did prior to SB 2, especially considering the rising crime plaguing California.[2]

14.     Plaintiff Reno May is a resident of Sonoma County, California, and a law-abiding citizen of the United States. Mr. May has a CCW permit issued pursuant to California Penal Code Section 26150 by the Sonoma County Sheriff's Department. Prior to SB 2, Mr. May carried a handgun daily, except when he visited one of the very few places where that carry was prohibited, such as schools or courthouses. SB 2 harms Mr. May in many ways, including but not limited to:

---

[2] Will Shuck, *Amid pandemic, California murder rate shows shocking rise*, Capitol Weekly (Dec. 8, 2021), <https://capitolweekly.net/amid-pandemic-california-murder-rate-shows-shocking-rise/> (as of June 7, 2023) ("Preliminary numbers from California's biggest cities suggest that 2020's stunning 30-percent increase in the statewide murder rate – the largest since 1960 – has continued to rise this year....").

FIRST AMENDED COMPLAINT

a) Mr. May is a regular customer at a gun store called Sportsman's Arms, and he normally carries when he visits that business establishment. Sportsman's Arms, however, shares a parking lot with several other businesses, including an establishment that serves alcohol. Because SB 2 forbids carrying arms even in the parking lots of establishments that serve liquor, Mr. May cannot carry his sidearm while patronizing Sportsman's Arms.

b) Furthermore, while Sportsman's Arms may choose to put up a sign allowing its customers to carry arms in the establishment, most businesses are unlikely to do so, and Mr. May will be barred by the State from carrying while he engages in commerce if he also chooses to exercise his right of self-defense in public.

c) Under SB 2, Mr. May cannot carry arms when he fills up his car with gas because every gas station that he patronizes also sells lottery tickets.[3] If a business sells any out-of-state lottery tickets (i.e., not the California State Lottery), arms bearing is forbidden within that business and its parking lot.

d) Mr. May also cannot exercise his right to public carry in the Santa Rosa Plaza because the mall hosts an "athletic facility" which is considered a "sensitive place" under SB 2. He thus cannot carry arms in the mall, in its parking lot, or on any of the adjacent sidewalks.

e) Mr. May frequently visits the city of San Francisco and the greater Bay Area. When he does, he exercises his right to carry while using the Bay Area Rapid Transit system ("BART").  But for SB 2 and its prohibition

---

[3] It is important to note that while SB 2 allows private businesses to post signs affirmatively allowing carry, such signs do not matter if the business serves alcohol or sells lottery tickets (besides the California lottery). Those are separate prohibitions under SB 2.

FIRST AMENDED COMPLAINT

against carrying on public transportation, Mr. May would continue carrying a firearm for personal protection while using BART, as he would on all the other public transportation he currently uses.

    f)  While conducting his due diligence research to comply with the post-*Bruen* changes to California law,[4] Mr. May discovered that there is not a single location he regularly visits, besides some sidewalks, where he could actually carry a firearm under SB 2. From his bank to his favorite restaurants, to his gym, everything is now off-limits. His right to carry a firearm for personal protection will be effectively eliminated once SB 2 takes effect, in spite of his record of safe and responsible carry and his valid CCW permit.

    15.    Plaintiff Anthony Miranda is a resident of Kings County, California, and a law-abiding citizen of the United States. Mr. Miranda has a CCW permit issued pursuant to California Penal Code Section 26150 by the Kings County Sheriff's Department. The infringements on Mr. Miranda's Second Amendment rights caused by SB 2 include but are not limited to:

    a)  Prior to SB 2, Mr. Miranda carried daily, except when he intended to visit one of the very few places where carry was prohibited, such as schools or courthouses. SB 2 changes that status quo and now Mr. Miranda practically cannot carry arms in public.

    b)  For example, most of the restaurants Mr. Miranda frequents serve alcohol, so he is barred by SB 2 from carrying within those establishments even if he is not consuming alcohol. He patronizes Chili's, Applebee's, Buffalo Wild Wings, and other chains of that

---

[4] Prior to this lawsuit, Mr. May released a video on YouTube in which he described some of the places where he could no longer carry, despite having his CCW permit. <https://youtu.be/ZFW5zU1oEEI> (as of June 8, 2023). While the video was about SB 918, it applies just as much to SB 2, as the list of "sensitive places" is identical.

FIRST AMENDED COMPLAINT

nature. He also likes to visit local establishments that serve alcohol, such as Figaro's and El Tarasco, both in Hanford, and Sal's in Selma.

c) Mr. Miranda does a lot of his shopping in the Hanford Mall. Mr. Miranda will no longer be able to carry there because some of the businesses inside it serve alcohol, so he cannot even park his car on the premises. And even if the mall had no businesses that served alcohol, it shares a parking lot with restaurants that serve alcohol, so carry is prohibited in the mall's parking lot and its adjacent sidewalks.

d) Nor could Mr. Miranda easily stop for gas while publicly carrying arms, given nearly all gas stations in the State sell both California and out-of-state lottery tickets.

e) Mr. Miranda will also be barred from carrying a firearm for self-defense in his church unless the church chooses to post a sign affirmatively allowing firearms, even though it doesn't currently prohibit those with valid CCW permits from carrying. Given recent attacks in churches that targeted people of faith, Mr. Miranda fears for his life. He knows that SB 2 would disarm him because he intends to comply with the law, but those restrictions will not stop criminals intent on violence from attacking people of faith.

f) Mr. Miranda cannot carry his licensed sidearm while walking in the community where he lives, because his community has a park in the middle of it. Under SB 2, that park and the streets and sidewalks adjacent to it are now off-limits for Mr. Miranda while he is carrying. For example, prior to SB 2, he regularly carried his firearm as he walked to a mailbox across the street from the park to retrieve his mail. SB 2 now makes that act subject to prosecution under the California Penal Code.

FIRST AMENDED COMPLAINT

g) As with Mr. May, these are just a few examples of how SB 2 impacts the right to carry arms in public. Mr. Miranda's right to carry will be infringed by SB 2 once it takes effect, despite his CCW permit.

16.    Plaintiff Eric Hans is a resident of Riverside County, California, and a law-abiding citizen of the United States. Mr. Hans has a CCW permit issued pursuant to California Penal Code Section 26150 by the Riverside County Sheriff's Department. He sometimes travels out of state, and therefore also has an out-of-state permit issued by Arizona, which is also valid and recognized in the State of Nevada.

a) Prior to SB 2, Mr. Hans carried daily, except when he visited one of the very few places where carry was prohibited, such as schools or courthouses. SB 2's drastic change in the status quo means that Mr. Hans will no longer be able to carry at nearly all of the places he visits.

b) SB 2 causes even more harm to Mr. Hans than most other people because his employment involves constant travel around Southern California. Mr. Hans carries to defend himself during his regular travel to these unfamiliar areas. Often, he must stop at gas stations in places he has never been before. Being unfamiliar with such areas, he typically has no way to know what types of businesses or facilities exist in any given location, much less will he have advance knowledge of which businesses have taken the step to post signage allowing firearms.  Thus, he is at risk of inadvertently violating the law by carrying a firearm during his travels.

c) As part of his business duties, Mr. Hans carries and must deposit large sums of cash at the bank, and he carries a pistol when he does so for his own safety. His bank does not otherwise prohibit his carrying of a concealed firearm, and yet SB 2 strips away his ability to enter a bank

FIRST AMENDED COMPLAINT

or its parking lot (meaning he cannot even leave his gun secured in his car), despite his CCW permit.

d) Mr. Hans lives directly across the street from a city park, so now if he happens to need to park his car on the street, he risks being in violation of SB 2. While the new law includes an exception for people who must walk through a park to access their residence, it is not clear if that exception applies to the sidewalks and street adjacent to the park. Even if Mr. Hans is covered by that exception, he frequently goes for walks in that same park while carrying, and but for SB 2, would continue to do so.

e) Furthermore, Mr. Hans carries in all of the shopping malls, grocery stores, and restaurants he visits across the state. He also carries at church every Sunday. These places will now be off-limits to him unless these destinations affirmatively post a sign announcing that CCW permit holders are allowed to carry on the property. Of course, those properties also must not otherwise fall under any other SB 2 restrictions.

f) As with the other individual Plaintiffs listed above, this is merely a sample of the ways Mr. Hans's right to publicly carry arms is harmed, in spite of his compliance with California's existing (pre-SB 2) laws on public carry and its CCW permit process.

17.    Plaintiff Gary Brennan is a resident of San Diego County, California, and a law-abiding citizen of the United States. Mr. Brennan has a CCW permit issued pursuant to California Penal Code Section 26150 by the San Diego County Sheriff's Department. SB 2's harm to Mr. Brennan's right to public carry of arms includes but is not limited to:

a) Mr. Brennan carried a firearm daily, except when he intended to visit one of the very few places where carry was prohibited, such as schools

or courthouses. Due to the changes made by SB 2 to the status quo,
Mr. Brennan will effectively no longer be able to carry at nearly all of
the places he frequents once the law takes effect.

b) Mr. Brennan is the President of the San Diego County Wildlife
Federation. As part of his duties, he regularly visits and hikes through
public lands. He frequently carries a firearm while performing his
duties. While SB 2 exempts certain areas that allow hunting, Mr.
Brennan regularly travels through areas that do not allow hunting. He
is harmed by SB 2 in both his role as President of the Federation and
his own recreational hobbies.

c) Mr. Brennan is also a certified CCW firearms instructor/trainer for the
San Diego County Sheriff's Department, and frequently instructs
students how to safely carry a firearm. SB 2's complexity alone affects
his ability to provide certainty and clear guidance to his students, given
all of the places where public carry of a firearm is jeopardized by SB
2's arbitrary and capricious maze of rules.

d) Mr. Brennan also cannot carry at church, at his bank, or at private
businesses, unless those establishments post the State's required
signage. This is particularly troubling to Mr. Brennan, given that he
frequents many nice restaurants throughout San Diego County and
California generally, and all of them serve alcohol.  This is so even if
Mr. Brennan is not consuming alcohol.

e) Mr. Brennan's position as the President of the San Diego County
Wildlife Federation frequently requires him to carry large sums of cash
to the bank, and he can no longer do so while carrying for self-
protection, due to SB 2.

FIRST AMENDED COMPLAINT

f) As with the other named Plaintiffs, these are just a few examples of the many ways Mr. Brennan's right to carry will be harmed by SB 2, in spite of his compliance with the CCW permit process.

18. Plaintiffs Oscar A. Barretto, Jr. and Isabelle R. Barretto are a married couple who reside in Ventura County, California. They are both law-abiding citizens of the United States. The Barrettos each have CCW permits issued pursuant to California Penal Code Section 26150 by the Ventura County Sheriff's Department.

a) Prior to SB 2 becoming law, each of them carried daily, except when they intended to go to one of the very few places where carry was prohibited, such as schools or courthouses. Due to the status quo changes made by SB 2, the Barrettos are practically unable to carry arms publicly at nearly all of the places they frequent.

b) The need to be able to effectively defend one's self is especially acute for the Barrettos due to Mr. Barretto's former career as a retired California Bail Fugitive Recovery Agent. His work brought him in contact with many unsavory individuals, some of whom likely still harbor ill will towards him. Indeed, his career is one of the major reasons the Barrettos decided to obtain CCW permits in the first place. Now that SB 2 has rendered those permits largely useless, their lives are in danger as a result of being unable to bear arms for self-defense.

c) The Barrettos also attend church regularly and teach Sunday school at a church that is located on the Camarillo airport grounds. Prior to SB 2, they carried to church in case of a violent attack against people of faith like them. Now, they can no longer do so. Even if their church was willing to post signs allowing them to carry, the church's parking lot is located on government-run airport grounds, and is thus a gun-free zone under SB 2.

12
FIRST AMENDED COMPLAINT

d) Mr. Barretto also needs to regularly attend doctor's appointments for treatment of his diabetes and for physical therapy. SB 2 now prohibits Mr. Barretto from carrying his means of self-defense during, to, and from all of these medical appointments.

e) Most of the restaurants the Barrettos frequent, as well as parks and other places of recreation, are now off-limits if they want to exercise their right to carry arms.

f) The Barrettos do not consume alcohol, and yet SB 2 restricts them from some of their favorite restaurants even though there is no risk of them becoming intoxicated.

g) As with the other named individual Plaintiffs, these are just a few examples of how the Barrettos will effectively lose their rights to carry once SB 2 takes effect, despite their CCW permits.

19. Plaintiff Barry Bahrami is a resident of San Diego County, California and a law-abiding citizen of the United States. Mr. Bahrami has a CCW permit issued pursuant to California Penal Code Section 26150 by the San Diego County Sheriff's Department.

a) Prior to SB 2's enactment, Mr. Bahrami carried a firearm daily, except when he visited one of the very few places where such carry was prohibited, like schools or courthouses. Due to the changes made by SB 2, Mr. Bahrami will no longer be able to carry at nearly all the places he frequents once the law takes effect.

b) Mr. Bahrami has two children aged 10 and 9, respectively. He is a very involved father and takes his children on trips throughout the state. His son is a big fan of trains, including freight trains, and so they visit railroads and public transit stations. Mr. Bahrami rides the train with his children too and carries his firearm as allowed by law, including on weekend trips between Oceanside and San Clemente to get ice cream

13

by the pier. Both children love to play in parks and visit the library, so
Mr. Bahrami takes them to these places frequently. SB 2 will end all
these sorts of trips if Mr. Bahrami insists on exercising his right to be
armed in public to protect his children. Thus, one of his primary
objectives in obtaining a CCW permit is undone by SB 2.

c)  As with the other individual Plaintiffs, these are just a few examples of
SB 2's impact on law-abiding citizens. Mr. Bahrami's right to carry
will be effectively eliminated once SB 2 takes effect.

20.    Plaintiff Pete Stephenson is a resident of Alameda County, California,
and a law-abiding citizen of the United States. Mr. Stephenson is a veteran who was
honorably discharged in the mid-2000s. Mr. Stephenson has a CCW permit issued
pursuant to California Penal Code Section 26150 by the Alameda County Sheriff's
Department. The ways in which SB 2 harms Mr. Stephenson include but are not
limited to:

a)  Prior to SB 2 becoming law, Mr. Stephenson carried daily, except
when he visited one of the very few places where carry was prohibited,
such as schools or courthouses. Due to the changes made by SB 2, Mr.
Stephenson will effectively no longer be able to carry at nearly all the
other places he frequents once the law takes effect.

b)  One example of the way SB 2 harms Mr. Stephenson is that he
frequently takes his family to visit public attractions in San Francisco,
including Fisherman's Wharf, the city's museums, and parks. While
there, he will often visit banks (e.g., to withdraw cash from an ATM),
dine in restaurants, go shopping, and otherwise enter typical privately
owned businesses that are open to the public like shops, galleries, and
so forth. On these regular trips to San Francisco, the easiest way to
travel is by BART (Bay Area Rapid Transit), from the
Dublin/Pleasanton station near Mr. Stephenson's residence in

14

FIRST AMENDED COMPLAINT

Livermore, to stations in San Francisco and back. SB 2 will make this impossible if he wants to exercise his right to carry arms in public because SB 2 bans carry on public transportation.

c) As with the other individual Plaintiffs, these are just a few examples, and many more could be listed at length. Mr. Stephenson's right to carry will be effectively eliminated once SB 2 takes effect, despite his CCW permit.

21. Plaintiff Andrew Harms is a resident of Los Angeles County, California, and a law-abiding citizen of the United States. Mr. Harms has a CCW permit issued pursuant to California Penal Code Section 26155 by the Glendale Police Department.

a) Prior to SB 2 becoming law, Mr. Harms carried daily, except when he intended to visit one of the very few places where carry was prohibited, such as schools or courthouses. Due to the changes made by SB 2, Mr. Harms will effectively no longer be able to carry at nearly all of the other places he frequently visits.

b) In particular, Mr. Harms takes his children to various places such as restaurants for meals, parks and playgrounds so they can play, and libraries so they can check out books. All of those will be off-limits once SB 2 takes effect.

c) As with the other individual Plaintiffs, these are just a few examples, and many more could be listed at length. Mr. Harms's right to carry will be effectively eliminated once SB 2 takes effect, despite his CCW permit.

22. Plaintiff Jose Flores is a resident of Fresno County, California, and a law-abiding citizen of the United States. He has never been found by any law enforcement agency, any court, or any other government agency to be irresponsible,

unsafe, or negligent with firearms in any manner, and he is not prohibited from owning firearms.

    a) Mr. Flores has a CCW permit issued by the Fresno County Sheriff's Department.

    b) Mr. Flores is a first-generation Mexican American, a small business owner, and an advocate for Second Amendment rights. He comes from a family of entrepreneurs who own multiple businesses in Fresno. During his high school years, Mr. Flores witnessed a brutal murder outside his family's restraint where a man was mercilessly stabbed multiple times. It was a transformative experience that reinforced his unwavering belief in the importance of the right to self-defense and the Second Amendment – especially the right to be armed in public places. Since he became eligible to purchase firearms, he has been an avid gun owner with a genuine interest in protecting and preserving the constitutional right to keep and bear arms.

    c) SB 2 will limit Mr. Flores from carrying in most places he frequents on a daily basis..

23.    Plaintiff Sheldon Hough, DDS, is a resident of San Bernardino County, California, and a law-abiding citizen of the United States. Dr. Hough has a CCW permit issued pursuant to California Penal Code Section 26150 by the San Bernardino County Sheriff's Department.

    a) Prior to SB 2's addition to the statute books, Dr. Hough carried arms in public daily, except when he intended to visit any of the few places where carry was prohibited, such as schools or courthouses. Due to the changes made by SB 2, Dr. Hough will effectively no longer be able to carry at nearly all of the places he frequents.

    b) Dr. Hough and his wife, who have been married since 1970, have both made a commitment never to drink alcoholic beverages. There is,

FIRST AMENDED COMPLAINT

therefore, no risk of him becoming intoxicated while he carries arms in

public. Yet under SB 2, if he wants to go out to dinner with his wife,

Dr. Hough cannot do so while carrying because nearly all the

restaurants he patronizes also serve alcohol.

c) Due to SB 2, Dr. Hough cannot carry in his own dental office. SB 2

makes Dr. Hough's office off-limits for the public carry of arms for

him and his patients.

24.    Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit

membership organization. It is incorporated under the laws of the state of

Washington and was founded in 1974. SAF has over 720,000 members and

supporters nationwide, including thousands of members in California. SAF is

dedicated to promoting a better understanding about our constitutional heritage to

privately own, possess, and carry firearms through educational and legal action

programs designed to better inform the public about gun control issues. SAF has

been a pioneer and innovator in defense of the right to keep and bear arms, through

its publications and public education programs like the Gun Rights Policy

Conference. SAF also expends significant sums of money sponsoring public

interest litigation to defend its own interests to disseminate information to like-

minded individuals. SAF members with CCW permits are harmed by SB 2 because

it effectively makes their efforts and the permits themselves futile by making nearly

every public place a "sensitive place" where firearms are forbidden.

25.    Plaintiff Gun Owners of America ("GOA") is a California non-stock

corporation and a not-for-profit membership organization with its principal place of

business in Springfield, Virginia and is organized and operated as a non-profit

membership organization that is exempt from federal income taxes under Section

501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1976 to preserve

and defend the Second Amendment rights of gun owners. It has more than 2 million

members and supporters across the country, including residents within this judicial

FIRST AMENDED COMPLAINT

district and throughout the State of California.  GOA members and supporters with CCW permits are harmed by SB 2 because it effectively makes their permits pointless by making nearly everywhere they go in their daily lives a place where carry is forbidden.

26.    Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock corporation and a not-for-profit legal defense and educational foundation with its principal place of business in Springfield, Virginia and is organized and operated as a non-profit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. GOF was formed in 1983 and is supported by gun owners across the country, within this judicial district, and throughout the State of California who, like the individual Plaintiffs, will be irreparably harmed by the implementation and enforcement of SB 2.  GOF's supporters with CCW permits are harmed by SB 2 because it effectively makes their permits pointless by making nearly everywhere they go in their daily lives a place where carry is forbidden.

27.    Plaintiff Gun Owners of California, Inc. ("GOC") is a non-profit organization incorporated under the laws of the state of California with headquarters in El Dorado Hills, California. GOC is dedicated to the restoration of the Second Amendment in California. GOC members with CCW permits are harmed by SB 2 because it effectively makes their permits pointless by making nearly everywhere they go in their daily lives a place where carry is forbidden.

28.    Plaintiff Liberal Gun Owners Association of California ("LGC" and also known as the "Liberal Gun Club of California") carries a rich tradition in the state. As a nonprofit mutual benefit organization registered in California, LGC promotes training and education, diversity, inclusion, and ownership of modern firearms for self-defense. LGC believes that the new, modern shooter is intentionally gender-neutral, and they represent an important part of the firearm owner community. Their members help to represent the minority voices of gun

owners across the state. The mission of the LGC is to provide a pro-Second
Amendment voice for left-of-center gun owners in the national conversation on
firearms. To achieve its mission, LGC encourages new participation in shooting
sports and provides firearm safety and shooting instruction programs as well as
providing a forum for civil discourse on Second Amendment issues. LGC's
members and supporters with CCW permits are harmed by SB 2 because it
effectively makes their permits pointless by making nearly everywhere they go in
their daily lives a place where carry is forbidden.

29.    Plaintiff California Rifle & Pistol Association ("CRPA") is a non-
profit membership and donor-supported organization qualified as tax-exempt under
26 U.S.C. Section 501(c)(4) with its headquarters in Fullerton, California. Founded
in 1875, CRPA seeks to defend the civil rights of all law-abiding individuals,
including the enumerated right to bear firearms for lawful purposes like self-
defense.  CRPA regularly participates as a party or amicus in litigation challenging
unlawful restrictions on the right to keep and bear arms. It also provides guidance to
California gun owners regarding their legal rights and responsibilities. CRPA
members include law enforcement officers, prosecutors, professionals, firearm
experts, and the general public.  CRPA members with CCW permits are harmed by
SB 2 because it effectively makes their permits pointless by making nearly
everywhere they go in their daily lives a place where carry is forbidden.

30.    The individual Plaintiffs, and members and supporters of the
associational Plaintiffs, wish to continue to exercise their constitutional rights to
carry a firearm in public for self-defense, but they cannot continue to do so without
risking criminal charges, because SB 2 makes most places off-limits for carry even
for those with valid CCW permits.

31.    The individual Plaintiffs intend to continue to carry their firearms in all
places they did before SB 2 was enacted and only refrain from doing so in order to
not be charged with a crime. In other words, but for Defendants' enforcement of

FIRST AMENDED COMPLAINT

statutes and policies that prohibit the individual Plaintiffs and members and
supporters of the associational Plaintiffs from lawfully carrying a firearm in public,
they would continue carrying a firearm in public for self-defense.

**Defendants**

32.     Defendant Robert Bonta is the Attorney General of California. He is
the chief law enforcement officer of California. Defendant Bonta is charged by
Article V, Section 13 of the California Constitution with the duty to see that the
laws of California are uniformly and adequately enforced. Defendant Bonta also
has direct supervision over every district attorney and sheriff in all matters
pertaining to the duties of those respective officers. Defendant Bonta's duties also
include informing the public, local prosecutors, and law enforcement regarding the
meaning of the laws of California, including enforcing the law in places where
concealed carry is forbidden as defined by SB 2. He is sued in his official capacity.

33.     The true names or capacities – whether individual, corporate,
associate, or otherwise – of the Defendants named herein as Does 1 through 10 are
presently unknown to Plaintiffs and are therefore sued by these fictitious names.
Plaintiffs pray for leave to amend this Complaint to show the true names or
capacities of these Defendants if and when they have been determined.

**JURISDICTION AND VENUE**

34.     This Court has original jurisdiction over this civil action under 28
U.S.C. Section 1331 because the claims arise under the Constitution and laws of the
United States, thus raising federal questions.

35.     This Court also has jurisdiction under 28 U.S.C. Section 1343(a)(3)
and 42 U.S.C. Section 1983 because this action seeks to redress the deprivation,
under color of the laws, statutes, ordinances, regulations, customs, and usages of
the State of California, political subdivisions, and state actors thereof, of the rights,
privileges, and/or immunities secured to all persons and citizens by the United
States Constitution and by Acts of Congress.

FIRST AMENDED COMPLAINT

36.     Plaintiffs' claims for declaratory and injunctive relief are authorized by
28 U.S.C. Sections 2201-02, and their claim for attorneys' fees is authorized by 42
U.S.C. Section 1988.

37.     Venue in this judicial district is proper under 28 U.S.C. Section
1391(b)(2) because a substantial part of the events or omissions giving rise to the
claims occurred in the Central District, Southern Division. All of the associational
Plaintiffs have members who live within Orange County, and Plaintiff CRPA is
located in Fullerton. Moreover, a related case that shares Plaintiffs with this case
(both Reno May and CRPA) is proceeding in the Southern Division, with the
Attorney General also listed as the Defendant. *See Lance Boland, et al. v. Robert
Bonta*, Case No. 8:22-cv-01421-CJC(ADSx).

## THE RIGHT TO KEEP AND BEAR ARMS

38.     The Second Amendment to the United States Constitution provides:
"A well regulated Militia, being necessary to the security of a free State, the right of
the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

39.     The Supreme Court has recognized that the Second Amendment right
to keep and bear arms is an individual right that contemplates, in part, the right of
law-abiding, competent adults to "possess and carry weapons in case of
confrontation." *Heller*, 554 U.S. at 592 .

40.     The Supreme Court has also held that the Second Amendment, by way
of its incorporation through the Fourteenth Amendment, applies equally to prohibit
infringements of that right by state and local governments. *McDonald v. City of
Chicago*, 561 U.S. 742, 750 (2010).

41.     *Heller* established a "text, history, and tradition" framework for
analyzing Second Amendment challenges. *Bruen*, 597 U.S. at 19-23 (citing *Heller*,
554 U.S. at 634). The *Heller* Court then assessed the historical evidence to
determine the prevailing understanding of the Second Amendment at the time of its
ratification in 1791. Based on that assessment, the Court concluded that aDistrict of

FIRST AMENDED COMPLAINT

Columbia statute that prohibited possession of the most common type of firearm in the nation (the handgun) lacked a Revolutionary-era analog, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment. Thus, the District of Columbia's handgun ban at issue in that case was declared unconstitutional.

42.    More recently, the Supreme Court confirmed and clarified *Heller*'s historical approach to analyzing the Second Amendment's scope:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 24.

43.    In correcting the misapplication of *Heller* by the lower courts between 2010 and 2022, the *Bruen* Court confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 8.

44.    The *Bruen* Court retained some dicta from the *Heller* decision and noted that the carrying of arms may be restricted in certain presumptively "sensitive places." But the Court has also noted that "the historical record yields relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited." *Id.* at 30.

45.    The *Bruen* Court issued its own caution about sensitive places, warning state actors that "expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly [as it] would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense." *Id.* at 31.

FIRST AMENDED COMPLAINT

46.    The Supreme Court unequivocally confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 10. That right extends to any public area that is not a "sensitive place." *Heller*, 554 U.S. at 592, 626-27. Attorney General Bonta has already conceded that this holding means California can no longer require subjective "good cause" to obtain a permit.[5]

47.    The Supreme Court's current universe of "sensitive places" where the right can be restricted include "legislative assemblies, polling places, and courthouses." *Bruen*, 597 U.S. at 30.

48.    Beyond those specific places, the Court has instructed courts to conduct a historical inquiry to determine whether particular areas were considered (or would have been considered) "sensitive places" during the Founding era. *Id.* at 2135-36. While the Court noted that there may be "new and analogous sensitive places" to those historically considered as such, it also noted that the term could not be so broad as to "include all 'places where people typically congregate.'" *Id.* at 2133.

49.    The Second and Fourteenth Amendments thus guarantee to all law-abiding, competent adults the right to carry firearms and ammunition for self-defense in all public areas that have *not* historically been considered "sensitive places" or their modern analogues based on relevant history.

**[CCW Permit Holders Are Effective First Responders]**

50.    On July 17, 2022, a gunman opened fire at Greenwood Park Mall in Greenwood, Indiana. Tragically, the assailant managed to kill three people.

_____

[5] Until recently, California law required "good cause" to issue a permit.  Cal. Penal Code § 26150(a)(2) (Deering 2022). That requirement fails under *Bruen*, as the Attorney General of California has already confirmed through a legal alert memorandum he sent out directing state and local officials to cease enforcing it. A copy of that legal alert can be found here: <https://crpa.org/news/blogs/ag-bonta-good-cause-requirement-is-unconstitutional/> (as of June 7, 2023).

23

FIRST AMENDED COMPLAINT

Fortunately, his rampage was quickly cut short, thanks to the actions of 22-year-old Elisjsha Dicken. Dicken, who was legally carrying a concealed handgun, fired on the attacker, killing him, and ending the slaughter. Dicken's actions likely saved the lives of his girlfriend, who was there with him, and countless others as well.[6]

51.    On December 29, 2019, two people were killed in a crowded church in Texas when an attacker opened fire. A congregant, Jack Wilson, killed the assailant with his legally carried concealed handgun, stopping the attack in seconds. Other armed congregants were also present and quickly responded as well.[7]

52.    On August 4, 2018, 150 children at a back-to-school event in a Florida park were engaging in festivities when a shooter opened fire. Before anyone could be injured or killed, an armed bystander who was legally carrying a handgun stopped the gunman.[8]

53.    On June 23, 2023, a man wearing a helmet and carrying a rifle walked into the Turnberry Towers condominium complex in Las Vegas and fired shots at the front desk. The violent attack was stopped by an armed employee before the

---

[6] National Review Editors, *A Good Guy with a Gun*, National Review (July 20, 2022, 6:30 AM), <https://www.nationalreview.com/2022/07/a-good-guy-with-a-gun/> (as of June 7, 2023) ("Just 15 seconds elapsed between the beginning of the shooting at the Greenwood Park Mall and Elisjsha Dicken's intervening. Had Dicken not been there, the three innocent people who were killed would have been joined by many others.").

[7] Travis Fedschun, *Texas Church Shooting: Gunman Kills 2, 'Heroic' Congregants Take Down Shooter*, Fox News (Dec. 29, 2019, 7:47 PM), <https://www.foxnews.com/us/texas-church-shooting-texas-injured-active> (as of June 7, 2023); Fox News Editors, *Texas Man Who Stopped Church Shooting Says He 'Had To Take Out' Gunman Because 'Evil Exists,'* Fox News (Dec. 30, 2019, 2:39 PM), <https://www.foxnews.com/us/texas-church-shooting-man-take-out-gunman-west-freeway-church> (as of June 7, 2023).

[8] Kyle Swenson, *Bullets flew at a Florida 'Peace in the City' event for kids. An armed bystander was ready.*, Washington Post (Aug. 7, 2018, 5:00 AM), <https://www.washingtonpost.com/news/morning-mix/wp/2018/08/07/bullets-flew-at-a-florida-peace-in-the-city-event-for-kids-an-armed-bystander-was-ready/> (as of June 7, 2023).

FIRST AMENDED COMPLAINT

1    man could hurt anyone. A resident who witnessed the incident told reporters the

2    employee was "a hero who deserves recognition for stepping in."[9]

3    54.    Most criminally violent encounters are not as dramatic as mass

4    shooting situations, but they still represent deadly threats. On August 31, 2019, a

5    man in Ohio threatened people in a McDonald's with a knife. A customer inside

6    with a carry permit confronted the man at gunpoint. The man put down his knife

7    and was later arrested by the police without further incident.[10]

8    55.    There are countless more examples of legally armed men and women

9    heroically stopping violent attacks and saving lives. Such actions make armed

10    citizens "first responders" of the kind that stop violence in public places, even

11    before the police can arrive.

12    56.    One database has recorded over 780 defensive gun-use incidents in

13    2022 alone.[11] But such databases can only capture incidents reported by the media,

14    leaving out countless defensive gun uses that did not result in causalities and did

15    not make the news.

16    57.    The five heroic individuals listed above, as well as the thousands more

17    who have defended themselves with their lawfully carried handguns, come from

18    diverse backgrounds and all walks of life. But they would have all been considered

19    *criminals* in California under SB 2, as the people in these examples each carried

20    somewhere that is forbidden under this new law.

21    _____

22
23    [9] *Man Hailed 'Hero' for Stopping Shooter at Condo Complex in Las Vegas*,
     Scripps News Las Vegas (June 25, 2023), <https://scrippsnews.com/stories /man-
24    hailed-hero-for-stopping-shooter-at-condo-complex-in-las-vegas/> (as of June 27,
     2023).
25    [10] NBC4 Staff, *Police: Man with Gun Stops Man with Knife in Coshocton
     McDonald's*, NBC4 (Sept. 2, 2019, 11:12 AM),
26    <https://www.nbc4i.com/news/local-news/police-man-with-gun-stops-man-with-
     knife-in-coshocton-mcdonalds/> (as of June 7, 2023).
27    [11] Heritage Staff, *Defensive Gun Uses in the U.S.*, Heritage (July 26, 2022),
     <https://datavisualizations.heritage.org/firearms/defensive-gun-uses-in-the-us/> (as
28    of June 7, 2023).

1

**[CCW Permit Holders Are Law-Abiding]**

2    58.    Punishing good people is apparently a feature and not a bug of SB 2.

3    The law targets perhaps the most law-abiding demographic in the country – citizens

4    with CCW permits. Even before the *Bruen* decision, over 40 states were either

5    "shall issue," where a permit must be issued to all citizens who apply and qualify,

6    or "constitutional carry," where anyone who is legally eligible to own a gun may

7    carry a pistol concealed or openly without a permit.

8    59.    In California, permit issuance is done at the county level, and most

9    counties in the state were, effectively, "shall issue" despite the unconstitutional

10    good-cause requirement that was previously codified but is now defunct after

11    *Bruen*. For instance, Tehama County Sheriff's Department stated on its Concealed

12    Weapons Permits website that "Sheriff-Coroner Dave Kain supports the right of

13    law-abiding citizens to keep and bear arms. In this regard, all qualified residents of

14    Tehama County are eligible to apply for a permit to carry concealed weapons."[12]

15    An identical statement existed on the website before the *Bruen* ruling.[13]

16    60.    Despite most counties in California being effectively "shall issue" for

17    decades before *Bruen*, there have been no crime problems resulting from people

18    who were issued CCW permits in those counties. In fact, last year's failed SB 918

19    was opposed by the California State Sheriffs' Association – in part – because

20    people with CCW permits almost never commit crimes and are not a problem for

21    law enforcement. The Association stated in a letter to all members of the California

22    State Assembly that SB 918 "greatly restricts when and where licensees may carry

23    concealed and could severely restrict the exercising of the right [to bear arms]. . . .

24    [*I*]*ndividuals who go through the process to carry concealed legally are*

25

26    ────────────

[12] <https://tehamaso.org/concealed-weapons/> (as of June 8, 2023).
27    [13] <https://web.archive.org/web/20210918103718/https://tehamaso.org/
administration/licenses-permits/concealed-weapons/> (archived snapshot as of
28    Sept. 18, 2021).

FIRST AMENDED COMPLAINT

*exceedingly unlikely to violate the law*," yet SB 918 turns much of the state into 'no-carry' zones that will do nothing to foster public safety."[14]

61.    The evidence available from other states also establishes how overwhelmingly peaceable and law-abiding people with CCW permits are. For example, in 2020, Texas had 1,626,242 active concealed-carry weapon license holders.[15] That made people with such licenses 5.7% of Texas's population, yet according to the Texas Department of Public Safety, they only committed 0.4334% of the state's serious crimes, being responsible for just 114 out of a total of 26,304 convictions. Even among those few convictions, only some of the crimes involved a gun at all. And of the ones that did, license holders were responsible for an even smaller proportion of them. For example, there were 1,441 convictions for aggravated assault with a deadly weapon in 2020, but people with a valid concealed weapon license were just 4 of those, or 0.2776% of the total, which is below their per-capita 5.7% share of the population as a whole.

62.    The State of Florida confirms this phenomenon. As of May 31, 2023, the state had issued a total of 5,764,684 concealed weapon licenses since October 1, 1987, of which 2,598,330 are currently active.[16] In that nearly 26-year timespan, only 18,290 permits have been revoked (for any reason) without being subsequently reinstated. This is roughly 0.3% of the total permits issued.

63.    Florida was the state where the modern right-to-carry movement originally gathered steam (though a handful of states had liberal permit-issuance policies before then). The state's enactment of shall-issue permitting was met with

---

[14] <https://www.cocosheriff.org/home/showpublisheddocument/496/637973844465821905> (emphasis added) (as of Sept. 4, 2023).

[15] All data for Texas is from the Texas Department of Public Safety and can be found at <https://www.dps.texas.gov/section/handgun-licensing/demographic-reports-fiscal-year-2020> (as of August 14, 2022).

[16] All data for Florida is from the Florida Division of Licensing and can be found at <https://www.fdacs.gov/Divisions-Offices/Licensing/Statistical-Reports> (as of June 7, 2023).

FIRST AMENDED COMPLAINT

breathless predictions of wild west-style violence and "blood in the streets," but none of that happened. Indeed, at least one prominent opponent admitted his error. Florida Representative Ronald A. Silver stated in 1990 that "[t]here are lots of people, including myself, who thought things would be a lot worse as far as that particular situation [carry reform] is concerned. I'm happy to say they're not." Clayton E. Cramer & David B. Kopel, *"Shall Issue": The New Wave of Concealed Handgun Permit Laws*, 62 Tenn. L. Rev. 679, 692-93 (1995). John Fuller, general counsel for the Florida Sheriffs Association, added: "I haven't seen where we have had any instance of persons with permits causing violent crimes, and I'm constantly on the lookout." *Id.* The Metro Dade Police Department originally kept detailed records of every incident involving concealed weapon licensees from enactment of the new law in 1987 until August 31, 1992. They stopped doing so because the rarity of such incidents made the effort a waste of time. *Id.*

64.    There are more states with similar data, but Plaintiffs believe these examples, along with the California State Sheriffs' Association's letter, make the point: Even if Defendants could use "public safety" as a reason to curtail the right to carry in places that are not truly sensitive (and Defendants cannot, because *Bruen* forbids such interest balancing), people with carry permits are dramatically more law-abiding than the population as a whole and are thus unlikely to ever pose a threat that can be addressed by SB 2's draconian policies. Fear of CCW permit holders is irrational, given these statistics. Worse yet, SB 2 dissuades good people from exercising their rights to carry in most places, where people otherwise would have a chance to stop or mitigate criminal attacks. SB 2's ultimate effect is the continuation of California's regressive slide into urban anarchy, while law-abiding citizens are left powerless to defend themselves.

65.    Recently, after Hawaii passed a law very similar to SB 2, some of the Plaintiffs in this action filed an amicus brief. *See Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 WL 5043805, at *1 (D. Haw. Aug. 8, 2023). Some of the

statistical evidence presented here was presented to that court. The *Wolford* court

relied in part on this evidence to conclude that there is indeed little threat from

people with CCW permits:

> Although it is possible post-<u>Bruen</u> that more conceal carry
> permits are eventually issued in Hawai'i, that alone does not
> negate Plaintiffs' position that the vast majority of conceal carry
> permit holders are law-abiding. <u>See, e.g.,</u> GOA Amicus Brief at
> 21-22 (stating that Texas in 2020 had [1,441] convictions for
> aggravated assault with a deadly weapon but only four of those
> convictions were people with valid concealed carry permits –
> roughly 0.278% of the total).

*Id.* at *91-92.

## LEGISLATIVE HISTORY OF SB 2

66.    California politicians (including Attorney General Bonta), angry at the

Supreme Court for striking down the subjective "good cause" standard under which

thousands were wrongly denied their constitutional rights to carry, responded in

kind.

67.    First, only a short time after the Court's ruling, the California

Department of Justice leaked the names and private confidential individual

addresses of hundreds of thousands of individuals with CCW permits, including

hundreds of judges and other public officials, exposing them to danger.[17]

68.    Then, in 2022, the legislature tried but failed to pass SB 918. While SB

918 would have  made numerous changes to the Penal Code and would have made

*obtaining* a permit much more difficult (in ways that are unconstitutional just as SB

2 does), its most nefarious goal was to make almost every place imaginable a

---

[17] Katy Grimes, *Assemblyman Patterson Makes Audit Request of Calif. DOJ Over Leaked Gun Owners List*, The California Globe (July 19, 2022, 12:07 PM), <https://californiaglobe.com/fr/assemblyman-patterson-makes-audit-request-of-calif-doj-over-leaked-gun-owners-list/> (as of June 7, 2023) ("'The DOJ is supposed to keep Californians safe. This dump of information does the opposite,' Patterson said. 'The Attorney General and Department of Justice should not investigate themselves,' Patterson said. 'I don't trust them.'").

"sensitive place" where carrying arms is forbidden, even with a CCW permit. The bill included a "vampire provision" that declared that all private businesses are *per se* "sensitive places" unless the business owners place a sign on their door stating that firearms are permitted on the premises.

69.    SB 918 failed last year in part because even law enforcement officers and their agencies opposed it. The California State Sheriffs' Association wrote in a letter to all members of the California State Assembly that "the bill greatly restricts when and where licensees may carry concealed and could severely restrict the exercising of the right. Again, individuals who go through the process to carry concealed legally are exceedingly unlikely to violate the law, yet SB 918 turns much of the state into 'no-carry' zones that will do nothing to foster public safety."[18]

70.    Notably, even after SB 918 failed to pass, there was no flood of violent crime from people who had only just received CCW permits for the first time. This is common sense – people who go through a costly and time-consuming application process so they can carry firearms legally are simply not likely to break the law. Violent criminals don't bother with CCW permits and simply carry illegally. This was just as true before *Bruen* as it is now.

71.    Unfortunately, SB 918 was resurrected in 2023 in the form of SB 2. Indeed, the "sensitive places" in SB 2 are identical to those listed in SB 918, including the "vampire provision."

72.    Politicians and their supporting interest groups lined up for a press conference to announce the bill on February 1, 2023.[19] If there was any doubt that the point of SB 2 was to repudiate and nullify the *Bruen* ruling, the speakers at the press conference erased that doubt. A speaker from the Giffords organization

_____

[18] *Supra* note 15.
[19] <https://twitter.com/i/broadcasts/1vAxRAXgXRVJl> (as of June 7, 2023).

FIRST AMENDED COMPLAINT

1    complained about the "radical *Bruen* ruling" and lamented the fact that there was a

2    "flood of applicants" now seeking to exercise their constitutional rights. A speaker

3    from a similar organization, Brady, said the bill would help with the "disastrous

4    effect of the *Bruen* decision."[20]

5        73.    At that same press conference, Governor Newsom used air quotes

6    when discussing the "right" to carry firearms outside the home, making his

7    contempt for the Constitution clear. He also praised the dissent in *Bruen* and

8    complained about judges who issued rulings upholding Second Amendment rights.

9    When a member of the press asked if there was any known issue of people with

10   CCW permits committing crimes, the Governor dodged the question twice and

11   instead complained again about the judges he dislikes. He also called *Bruen* a "very

12   bad ruling."

13       74.    The legislative history of SB 2 is replete with vocal opposition from

14   law enforcement groups such as the Peace Officers Research Association of

15   California (PORAC), the largest law enforcement organization in California.

16   PORAC intends to submit a declaration in support of Plaintiffs' motion for

17   preliminary injunction in this matter.

18       75.    The California State Sheriffs' Association also opposed SB 2, just as it

19   opposed SB 918. In its argument to the State Senate in opposition to SB 2, the

20   Association reiterated that "[t]he circumstance of a CCW holder committing a

21   crime is exceedingly rare yet this bill imposes overreaching provisions that will

22   likely be challenged in court, leaving uncertainty in issuance procedures. Instead of

23   focusing on a law-abiding population, efforts should address preventing gun crimes

24   committed by those who disobey the law and holding them accountable."

25       76.    Other law enforcement groups in opposition to SB 2 include:

26   Arcadia Police Officers' Association

27   _____

28       [20] *Id.*

FIRST AMENDED COMPLAINT

1    Burbank Police Officers' Association

2    California Coalition of School Safety Professionals

3    Claremont Police Officers Association

4    Corona Police Officers Association

5    Culver City Police Officers' Association

6    Deputy Sheriffs' Association of Monterey County

7    Fullerton Police Officers' Association

8    Los Angeles School Police Officers Association

9    Murrieta Police Officers' Association

10   Newport Beach Police Association

11   Orange County Sheriff's Department

12   Palos Verdes Police Officers Association

13   Placer County Deputy Sheriffs Association

14   Pomona Police Officers' Association

15   Riverside County Sheriff's Office

16   Riverside Police Officers Association

17   Riverside Sheriffs' Association

18   San Bernardino County Sheriff's Department

19   Santa Ana Police Officers Association

20   Upland Police Officers Association

21        77.    In addition to ignoring the widespread opposition from law

22   enforcement, the legislature ignored  district court rulings that struck down large

23   portions of similar laws passed by New York and New Jersey while drafting SB 2.

24   Undaunted, the California legislature acted on Governor Newsom's instructions and

25   passed SB 2.

26        78.    In the legislative findings for SB 2, the authors wrote that "when it

27   comes to restrictions on carrying firearms in public, the United States Supreme

28   Court has recognized three times that states may restrict the carrying of firearms in

FIRST AMENDED COMPLAINT

'sensitive places.'" The findings predictably omit the Court's warnings against making effectively every place a "sensitive place," including its admonition that "there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Bruen*, 597 U.S. at 31.

79.     In other legislative findings, the authors attempted to place blame on people with CCW permits for criminal violence, stating that "[b]roadly allowing individuals to carry firearms in most public areas increases the number of people wounded and killed by gun violence." Yet the data from other states is clear; people with CCW permits very rarely commit crimes. Indeed, the legislative findings contain **no evidence** that *people with CCW permits* commit a large share of crime because no such evidence exists. Nor is there evidence to suggest that the majority of California counties, which were "shall issue" in practice before *Bruen*, had any significant number of crimes committed by people exercising their rights pursuant to California's then-existing CCW policies. SB 2 is not a response to any public safety crisis. It is a response to a political crisis by a legislature and governor who believe they can score points with their voters by restricting the constitutionally enumerated rights of others.

80.     While many of SB 2's changes and additions to the Penal Code are unconstitutional and likely will face legal challenges in other cases, this Complaint is focused on how SB 2 makes nearly everywhere in California off-limits for licensed firearm carry, even for those with a valid CCW permit.

## GENERAL ALLEGATIONS

### [Impact of SB 2 on the Public Carry of Arms]

81.     SB 2 adds Section 26230 to the Penal Code, which reads in pertinent part as follows:

> (a) A person granted a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person pursuant to

Section 26150, 26155, or 26170 shall not carry a firearm on or into any of the following:

(1) A place prohibited by Section 626.9.

(2) A building, real property, or parking area under the control of a preschool or childcare facility, including a room or portion of a building under the control of a preschool or childcare facility. Nothing in this paragraph shall prevent the operator of a childcare facility in a family home from owning or possessing a firearm in the home if no child under child care at the home is present in the home or the firearm in the home is unloaded, stored in a locked container, and stored separately from ammunition when a child under child care at the home is present in the home so long as the childcare provider notifies clients that there is a firearm in the home.

(3) A building, parking area, or portion of a building under the control of an officer of the executive or legislative branch of the state government, except as allowed pursuant to paragraph (2) of subdivision (b) of Section 171c.

(4) A building designated for a court proceeding, including matters before a superior court, district court of appeal, or the California Supreme Court, parking area under the control of the owner or operator of that building, or a building or portion of a building under the control of the Supreme Court, unless the person is a justice, judge, or commissioner of that court.

(5) A building, parking area, or portion of a building under the control of a unit of local government, unless the firearm is being carried for purposes of training pursuant to Section 26165.

(6) A building, real property, and parking area under the control of an adult or juvenile detention or correctional institution, prison, or jail.

(7) A building, real property, and parking area under the control of a public or private hospital or hospital affiliate, mental health facility, nursing home, medical office, urgent care facility, or other place at which medical services are customarily provided.

(8) A bus, train, or other form of transportation paid for in whole or in part with public funds, and a building, real property, or parking area under the control of a transportation authority supported in whole or in part with public funds.

(9) A building, real property, and parking area under the control of a vendor or an establishment where intoxicating liquor is sold for

FIRST AMENDED COMPLAINT

consumption on the premises.

(10) A public gathering or special event conducted on property open to the public that requires the issuance of a permit from a federal, state, or local government and sidewalk or street immediately adjacent to the public gathering or special event but is not more than 1,000 feet from the event or gathering, provided this prohibition shall not apply to a licensee who must walk through a public gathering in order to access their residence, place of business, or vehicle.

(11) A playground or public or private youth center, as defined in Section 626.95, and a street or sidewalk immediately adjacent to the playground or youth center.

(12) A park, athletic area, or athletic facility that is open to the public and a street or sidewalk immediately adjacent to those areas, provided this prohibition shall not apply to a licensee who must walk through such a place in order to access their residence, place of business, or vehicle.

(13) Real property under the control of the Department of Parks and Recreation or Department of Fish and Wildlife, except those areas designated for hunting pursuant to Section 5003.1 of the Public Resources Code, Section 4501 of Title 14 of the California Code of Regulations, or any other designated public hunting area, public shooting ground, or building where firearm possession is permitted by applicable law.

(14) Any area under the control of a public or private community college, college, or university, including, but not limited to, buildings, classrooms, laboratories, medical clinics, hospitals, artistic venues, athletic fields or venues, entertainment venues, officially recognized university-related organization properties, whether owned or leased, and any real property, including parking areas, sidewalks, and common areas.

(15) A building, real property, or parking area that is or would be used for gambling or gaming of any kind whatsoever, including, but not limited to, casinos, gambling establishments, gaming clubs, bingo operations, facilities licensed by the California Horse Racing Board, or a facility wherein banked or percentage games, any form of gambling device, or lotteries, other than the California State Lottery, are or will be played.

(16) A stadium, arena, or the real property or parking area under the control of a stadium, arena, or a collegiate or professional sporting or eSporting event.

FIRST AMENDED COMPLAINT

(17) A building, real property, or parking area under the control of a public library.

(18) A building, real property, or parking area under the control of an airport or passenger vessel terminal, as those terms are defined in subdivision (a) of Section 171.5.

(19) A building, real property, or parking area under the control of an amusement park.

(20) A building, real property, or parking area under the control of a zoo or museum.

(21) A street, driveway, parking area, property, building, or facility, owned, leased, controlled, or used by a nuclear energy, storage, weapons, or development site or facility regulated by the federal Nuclear Regulatory Commission.

(22) A church, synagogue, mosque, or other place of worship, including in any parking area immediately adjacent thereto, unless the operator of the place of worship clearly and conspicuously posts a sign at the entrance of the building or on the premises indicating that licenseholders are permitted to carry firearms on the property. Signs shall be of a uniform design as prescribed by the Department of Justice and shall be at least four inches by six inches in size.

(23) A financial institution or parking area under the control of a financial institution.

(24) A police, sheriff, or highway patrol station or parking area under control of a law enforcement agency.

(25) A polling place, voting center, precinct, or other area or location where votes are being cast or cast ballots are being returned or counted, or the streets or sidewalks immediately adjacent to any of these places.

(26) Any other privately owned commercial establishment that is open to the public, unless the operator of the establishment clearly and conspicuously posts a sign at the entrance of the building or on the premises indicating that licenseholders are permitted to carry firearms on the property. Signs shall be of a uniform design as prescribed by the Department of Justice and shall be at least four inches by six inches in size.

(27) Any other place or area prohibited by other provisions of state law.

FIRST AMENDED COMPLAINT

(28) Any other place or area prohibited by federal law.

(29) Any other place or area prohibited by local law.

Cal. Penal Code § 26230(a).

82.    This case does not involve a challenge to any of the presumptively "sensitive places" currently identified by the U.S. Supreme Court. Rather, the focus of this suit is the radical expansion of so-called "sensitive places" made by SB 2.

83.    SB 2 leaves Plaintiffs with few, if any, places they can carry arms for self-defense. For example:

    a) If Plaintiffs have to pick up a child from daycare, they cannot carry a weapon for self-defense and/or the defense of their child.

    b) If they are going into any building (or adjacent parking lot) under the control of an officer of the State's legislative or executive branch, or of a local government, they cannot carry there, even in the absence of any posted signage and even if they are not aware of who controls the building or the parking lot.

    c) Plaintiffs are forbidden to exercise their rights where a municipality provides city-owned public parking in a downtown area or shopping center to allow for commerce to be conducted. CCW holders cannot park in those areas, notwithstanding that the CCW holder is present in that parking lot to transact business wholly unrelated to any government function or agency, e.g., to make purchases at a mall, deposit cash at a bank, etc.  Under SB 2, every municipally owned parking lot is now a no-go "gun free zone" for concealed carry permit holders exercising their rights to public carry of arms. Plaintiffs may have no idea they are even violating the law if it is not clear who owns the building or parking lot they have entered.

    d) Plaintiffs cannot carry arms into a building where medical services are provided, even if those services are only provided in some rooms in

FIRST AMENDED COMPLAINT

the building, and they are not aware of it, as this would violate SB 2.

e)  SB 2 makes all public transportation off-limits for carry, effectively
nullifying a constitutional right when Plaintiffs (or other people with
CCW permits) must rely on public transportation to conduct their daily
activities, including going to and from work, grocery shopping, and
other common activities. SB 2 thus creates a means-test (access to
private transportation) for the exercise of a constitutionally enumerated
right that shall not be infringed.

f)  If Plaintiffs (or other permit holders) park in a parking lot of an
establishment where alcohol is served while they are carrying, even if
they do not enter that establishment, they are in violation of SB 2.

g)  All major "public gatherings" are also off-limits, as are playgrounds,
athletic areas and facilities, and parks, as well as the streets and
sidewalks adjacent to them.  Since public gatherings often involve the
exercise of other constitutional rights (speech, assembly, petition,
religious exercise), Plaintiffs are required to trade one constitutional
right for another.

h)  The public carry of arms is now forbidden even on land operated by
the Department of Parks and Recreation or Department of Fish and
Wildlife, except in those areas that allow hunting or recreational
shooting.

i)  Plaintiffs also would be forbidden to carry in casinos or their parking
lots, as well as almost anywhere lottery tickets are sold.  Because
almost all businesses that sell California lottery tickets also sell multi-
state lottery tickets (like Powerball), SB 2 eliminates just about every
convenience store, gas station, and grocery store from being a place
where a person can carry arms to protect themselves.  Thus, even if
those businesses put up a sign affirmatively allowing their patrons to

38
FIRST AMENDED COMPLAINT

carry arms on the premises to undo SB 2's unprecedented vampire provision, other SB 2 provisions independently make customers' carry illegal.

j) Plaintiffs who wish to exercise their rights to carry are also excluded from stadiums, arenas, public libraries, airports, amusement parks, zoos, museums, all places of worship that do not affirmatively post signs allowing firearms, and financial institutions. Additionally, the parking lots of all such places are also considered "sensitive places" Under SB 2.

k) Perhaps most egregiously of all, SB 2 adds a "vampire clause" for private businesses. While some states with "shall issue" permitting systems allow private businesses to put up signs that forbid carrying arms into the business, SB 2 inverts that policy. If a business wants to welcome people with carry permits, it is compelled to put a sign on its door saying so. In the parts of California hostile to Second Amendment rights, most businesses will opt not to post such a sign (politically unpopular speech) for fear of public backlash, further ostracizing Plaintiffs. There is no historical basis for this kind of compelled speech on businesses that wish to *allow* constitutionally permissible activity in their privately owned places of public accommodation. Whether or not a business is actually sensitive, of course, is not determined by the desires of the State or even of that business. It is either categorically justified pursuant to *Bruen*'s exacting historical test, or it isn't. It cannot be made sensitive based on the subjective desires of the State or a business's owners.

l) On top of all of that, SB 2 also allows local governments unfettered and open-ended discretion to create additional places where carry is forbidden, though it is difficult to imagine what is left to restrict.

39

FIRST AMENDED COMPLAINT

84.     In essence, Plaintiffs are left with some streets, some sidewalks, a few parking lots, and a handful of private businesses that are willing to put up signs allowing carry (so long as those businesses are not restricted under another SB 2 provision) as places where they can exercise their rights to carry arms for self-defense in public.

85.     Plaintiffs cannot carry arms for self-defense at all if they use public transportation for their daily affairs, and even those who own their own vehicles risk having to constantly leave their firearms in their car, exposing them to theft.

86.     SB 2 infringes the right of self-defense of law-abiding citizens while empowering violent predators with the knowledge that they are unlikely to encounter armed resistance at nearly any public place. Indeed, criminals will have even greater freedom to act with impunity because, absent preliminary and permanent injunctive relief, even existing permit holders will be almost entirely prohibited from carrying in public.

87.     SB 2 makes obtaining a CCW permit futile. Plaintiffs now have far fewer places to exercise the right to carry than they did before SB 2 and even before *Bruen*. They effectively have to map out their entire day ahead of time (including consulting property records) if they want to try and exercise their right to carry arms in public to ensure they do not inadvertently stray into a prohibited place.

88.     The State bears the burden to prove that all areas included in SB 2 are supported by a broad and enduring early American tradition of identical or relevantly similar regulation. *Bruen*, 597 U.S. at 17 (explaining that the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation").

89.     The State cannot meet its burden under *Bruen*; there are *no* relevantly similar historical analogues restricting arms in the myriad places that SB 2 transmutes into "sensitive places"—let alone a widespread tradition of state regulation broad enough to survive review.

FIRST AMENDED COMPLAINT

90.     The Supreme Court held that some places may be "sensitive" but that the historical record supports the existence of "relatively few" such places. *Bruen*, 597 U.S. at 30. Making nearly every public place a "sensitive place," the State has eviscerated the right to bear arms and acts in open defiance of the Supreme Court.

91.     All but one of the Plaintiffs had a CCW permit before *Bruen.* Their rights are now diminished by SB 2 after *Bruen.*

92.     But for the adoption and enforcement of SB 2, the individual Plaintiffs and members and supporters of the associational Plaintiffs with CCW permits would carry firearms and ammunition in places that do not—in fact or by law— meet the *Bruen* definition of a "sensitive place." They refrain from exercising this constitutional right out of legitimate fear of criminal prosecution.

93.     Accordingly, Plaintiffs seek declaratory relief that (1) the State's expansive list of "sensitive places" fails the *Heller-Bruen* test and (2) as written, SB 2's restriction on CCW permit holders possessing a firearm or ammunition in places that are not historically sensitive violates the Second and Fourteenth Amendments.

94.     Plaintiffs also seek preliminary and permanent injunctive relief to halt the enforcement of SB 2, now codified as Penal Code Section 26230, except for those places where carry would have been illegal before the passage of SB 2.

## DECLARATORY RELIEF ALLEGATIONS

95.     There is an actual and present controversy between the parties. Plaintiffs contend that SB 2 is unconstitutional, both facially and as applied to them, because it precludes Plaintiffs and other law-abiding individuals from exercising their enumerated rights to publicly bear arms in *non*-sensitive places. Plaintiffs anticipate that Defendants will deny and dispute this contention. Plaintiffs desire a judicial declaration of their rights and of the duties of the State on this question.

FIRST AMENDED COMPLAINT

96.    Specifically, Plaintiffs contend that the following subsections of section 26230 are unconstitutional, both facially and as applied to Plaintiffs (except as noted in footnotes):

(5) A building, parking area, or portion of a building under the control of a unit of local government, unless the firearm is being carried for purposes of training pursuant to Section 26165.[21]

(7) A building, real property, and parking area under the control of a public or private hospital or hospital affiliate, mental health facility, nursing home, medical office, urgent care facility, or other place at which medical services are customarily provided.

(8) A bus, train, or other form of transportation paid for in whole or in part with public funds, and a building, real property, or parking area under the control of a transportation authority supported in whole or in part with public funds.

(9) A building, real property, and parking area under the control of a vendor or an establishment where intoxicating liquor is sold for consumption on the premises.[22]

(11) A playground or public or private youth center, as defined in Section 626.95, and a street or sidewalk immediately adjacent to the playground or youth center.

(12) A park, athletic area, or athletic facility that is open to the public and a street or sidewalk immediately adjacent to those areas, provided this prohibition shall not apply to a licensee who must walk through such a place in order to access their residence, place of business, or vehicle.

_____

[21] For this subsection, Plaintiffs raise an as-applied challenge to the restriction on carry in any "building" or "portion of a building under the control of a unit of local government" that is of a type challenged by Plaintiffs in this lawsuit. For example, a municipal library is a building typically under the control of a local government, and Plaintiffs have separately challenged the restriction on carry in libraries. Plaintiffs also bring an as-applied challenge to the restriction on carry in any parking area "under the control of a local government." *See* ¶ 98 *infra*.

[22] For this subsection, Plaintiffs raise only an as-applied challenge as to restaurants that serve alcohol. They do not challenge restrictions on carry while drinking, nor do they challenge restrictions on carry in bars and nightclubs. Instead, they are concerned with being excluded from carrying in restaurants and similar establishments that primarily serve food but also happen to serve alcohol.

(13) Real property under the control of the Department of Parks and Recreation or Department of Fish and Wildlife, except those areas designated for hunting pursuant to Section 5003.1 of the Public Resources Code, Section 4501 of Title 14 of the California Code of Regulations, or any other designated public hunting area, public shooting ground, or building where firearm possession is permitted by applicable law.

(14) Any area under the control of a public or private community college, college, or university, including, but not limited to, buildings, classrooms, laboratories, medical clinics, hospitals, artistic venues, athletic fields or venues, entertainment venues, officially recognized university-related organization properties, whether owned or leased, and any real property, including parking areas, sidewalks, and common areas.[23]

(15) A building, real property, or parking area that is or would be used for gambling or gaming of any kind whatsoever, including, but not limited to, casinos, gambling establishments, gaming clubs, bingo operations, facilities licensed by the California Horse Racing Board, or a facility wherein banked or percentage games, any form of gambling device, or lotteries, other than the California State Lottery, are or will be played.[24]

(17) A building, real property, or parking area under the control of a public library.[25]

(22) A church, synagogue, mosque, or other place of worship, including in any parking area immediately adjacent thereto, unless the operator of the place of worship clearly and conspicuously posts a sign at the entrance of the building or on the premises indicating that licenseholders are permitted to carry firearms on the property. Signs shall be of a uniform design as prescribed by the Department of Justice and shall be at least four inches by six inches in size.

---

[23] Plaintiffs challenge this subsection only as applied to hospitals owned by a college or university that are not on a college campus. For example, there are many UCLA hospitals and medical facilities throughout Los Angeles that are not themselves on school grounds. Plaintiffs contend those are not sensitive.

[24] Plaintiffs challenge this subsection as applied to places that sell lottery tickets, with Plaintiffs' particular concern being that they will not be able to carry while stopping at nearly any gas station in the state.

[25] Plaintiffs do not challenge this restriction as to libraries found within other places deemed sensitive by Penal Code section 26230, which Plaintiffs have not challenged in this lawsuit (e.g., a school library or a law library in a courthouse).

FIRST AMENDED COMPLAINT

(23) A financial institution or parking area under the control of a financial institution.

(26) Any other privately owned commercial establishment that is open to the public, unless the operator of the establishment clearly and conspicuously posts a sign at the entrance of the building or on the premises indicating that licenseholders are permitted to carry firearms on the property. Signs shall be of a uniform design as prescribed by the Department of Justice and shall be at least four inches by six inches in size.

97.    Plaintiffs also challenge each and every subpart of section 26230 as to the "parking areas" portions of the law, except when a given parking area is already off-limits for carry due to a law other than section 26230. For example, Plaintiffs do not challenge restrictions on carrying in the parking areas of school zones because carry is also restricted in such parking areas under California's Gun Free School Zones Act. As an additional example, parking lots of federal facilities generally also prohibit carry under existing federal law, meaning that Plaintiffs do not challenge the parking lots restriction found in section 26230(a)(21), which is applicable to nuclear facilities monitored by the federal Nuclear Regulatory Commission.

98.    Declaratory relief, in addition to injunctive relief, or in the alternative, is necessary to immunize individual plaintiffs, and the officer, directors, and members of the institutional/associational plaintiffs from firearm regulations that violate the Second Amendment, and to create record of the habit, pattern, and custom of California's likely continuing wrongful conduct that violates the U.S. Constitution.

## INJUNCTIVE RELIEF ALLEGATIONS

99.    Injunctive relief is necessary to prevent the State from enforcing SB 2 against people with CCW permits who carry firearms in public. Specifically, Plaintiffs will request that this Court permanently enjoin—statewide—the

FIRST AMENDED COMPLAINT

enforcement of California Penal Code section 26230(a), subsections (5), (7), (8), (9), (11), (12), (13), (14), (15), (17), (22), (23), and (26).[26]

100.   Plaintiffs also request that this Court enjoin each and every subpart of section 26230(a) that restricts carry "parking areas," except when the parking area already prohibits carry due to existing law other than section 26230.

101.   Defendants' enforcement of SB 2 denies Plaintiffs the right to possess firearms or ammunition in places where they are constitutionally entitled to do so without subjecting themselves to the risk of criminal prosecution, including for the lawful purpose of carrying those arms for self-defense.

102.   If not enjoined by this Court, Defendants (and law enforcement agencies throughout the state) may enforce SB 2 in violation of Plaintiffs' Second and Fourteenth Amendment rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate and unascertainable and would not fully redress any harm suffered by Plaintiffs to engage in activity protected by the Second and Fourteenth Amendments.

103.   The injunctive relief sought would eliminate that irreparable harm and allow Plaintiffs to exercise their rights to possess a firearm and ammunition in *non-sensitive* public places, including for self-defense. Accordingly, injunctive relief is appropriate.

**FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

104.   Plaintiffs hereby reallege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

105.   SB 2 prohibits Plaintiffs (and similarly situated people) with CCW

---

[26] For some of these subsections, Plaintiffs advance only as applied challenges as indicated in this complaint, *supra*.

1  permits from carrying firearms in public for lawful purposes, including self-
2  defense, in violation of the Constitution.

3      106.   Plaintiffs are prohibited from possessing a firearm or ammunition in
4  places listed in the Penal Code section 26230, which includes areas that are
5  manifestly *not* "sensitive places" under Supreme Court precedents interpreting the
6  original meaning of the Second Amendment.

7      107.   By prohibiting law-abiding adults, like Plaintiffs, from bearing arms
8  for self-defense in places where the Second and Fourteenth Amendments guarantee
9  their rights to do so, SB 2 violates those Amendments.

10     108.   Defendants are thus propagating customs, policies, and practices that
11 deprive California residents, including Plaintiffs, of their constitutional rights to
12 bear arms for self-defense in *non*-sensitive public places, as guaranteed by the
13 Second and Fourteenth Amendments.

14     109.   Defendants cannot satisfy their burden to justify these customs,
15 policies, and practices that preclude Plaintiffs from exercising those enumerated
16 rights.

17     110.   Plaintiffs are thus entitled to declaratory and injunctive relief against
18 such unconstitutional customs, policies, and practices.

19                                  **PRAYER**

20     WHEREFORE, Plaintiffs request that judgment be entered in their favor and
21 against Defendants as follows:

22     1.    A declaration that SB 2, codified at California Penal Code section
23 26230(a), includes areas that are not "sensitive places" where restrictions on
24 firearm and ammunition possession have traditionally been tolerated under the
25 Second Amendment;

26     2.    A declaration that California Penal Code section 26230(a) violates the
27 Second and Fourteenth Amendments facially and as applied to Plaintiffs, insomuch

28

FIRST AMENDED COMPLAINT

1    as it precludes law-abiding citizens from possessing a firearm or ammunition in

2    public areas that are not "sensitive places;"

3          3.     An order preliminarily and permanently enjoining Defendants and all

4    other officers, agents, servants, employees, and persons under the authority of the

5    State, from enforcing California Penal Code Section 26230(a), subsections (5), (7),

6    (8), (9), (11), (12), (13), (14), (15), (17), (22), (23), and (26);[27]

7          4.     Plaintiffs also request that this Court enjoin each and every subpart of

8    section 26230(a) that restricts carry in "parking areas," except when the parking

9    area already prohibits carry due to existing law other than section 26230;

10         5.     Nominal damages;

11         6.     Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C.

12   Section 1988; and

13         7.     All other relief the court deems appropriate.

14

15                       Respectfully Submitted,

16   Dated:  March 3, 2025           **MICHEL & ASSOCIATES, P.C.**

17

18                       */s/Konstadinos T. Moros*

19                       Konstadinos T. Moros
                         Counsel for Plaintiffs

20   Dated:  March 3, 2025           **LAW OFFICES OF DON KILMER**

21

22                       */s/ Don Kilmer*
                         Don Kilmer

23                       Counsel for Plaintiff The Second Amendment
                         Foundation

24

25

26

27

28

      [27] For some of these subsections, Plaintiffs advance only as applied
challenges as indicated in this complaint, *supra*.

FIRST AMENDED COMPLAINT

**ATTESTATION OF E-FILED SIGNATURES**

I, Konstadinos T. Moros, am the ECF User whose ID and password are being used to file this FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. In compliance with Central District of California L.R. 5-4.3.4, I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: March 3, 2025            */s/Konstadinos T. Moros*
                               Konstadinos T. Moros

FIRST AMENDED COMPLAINT

1
2

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

3
4

Case Name: *May, et al. v. Bonta*
Case No.: 8:23-cv-01696 CJC (ADSx)

5
6

IT IS HEREBY CERTIFIED THAT:

7
8

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

9

I am not a party to the above-entitled action. I have caused service of:

10
11

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

12

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

13
14
15
16

Robert L. Meyerhoff, Deputy Attorney General
California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Email: Robert.Meyerhoff@doj.ca.gov
    *Attorney for Defendant*

17
18

I declare under penalty of perjury that the foregoing is true and correct.

19

Executed March 3, 2025.

20

_Laura Fera_
Laura Fera

21
22
23
24
25
26
27
28

CERTIFICATE OF SERVICE